**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re | Chapter 15 / Chapter 11 |
| Crédito Real, S.A.B. de C.V., SOFOM, E.N.R., | Case No. 22-10630 (JTD)<br>Case No. 22-10696 (JTD) |
| Putative Debtor.[1] | |

**DECLARATION OF ALEJANDRO SAINZ IN SUPPORT OF THE OBJECTION OF
THE AD HOC GROUP TO THE (I) VERIFIED PETITION FOR RECOGNITION OF
FOREIGN MAIN PROCEEDING AND (II) MOTION OF THE PUTATIVE DEBTOR TO
DISMISS THE INVOLUNTARY CHAPTER 11 PETITION**

I, Alejandro Sainz, declare as follows:

1.      I am an attorney duly admitted to practice in Mexico.  I am the founding partner of
Sainz Abogados, S.C. ("**Sainz Abogados**" or the "**Firm**"), located at Boulevard Manuel Ávila
Camacho 24, Floor 21, Lomas de Chapultepec 11000, Mexico City, Mexico.  I am the head of the
Firm's Insolvency and Restructuring Practice Group and a member of the Firm's Mergers &
Acquisitions and Finance, Compliance and Investigation practice groups.

2.      For over 30 years, I have advised and represented clients in cross-border insolvency
and restructurings.  I also have broad experience in cross-border reorganizations and purchase and
sale of assets in special situations and distress.

3.      Sainz Abogados and I have been ranked as Band 1 Mexican advisors in Chambers
Latin America, The Legal 500, and Who's Who Legal, among many other publications.

4.      I have participated in many insolvency matters related to Mexican entities.  For
example, I have represented Grupo ICA, MG Polimeros, Iusacell Celular and Isolux de México in

---

[1]      The Putative Debtor's corporate headquarters is located at Avenida Insurgentes Sur No 730, 20th Floor, Colonia
Del Valle Norte, Alcadía Benito Juárez, 03103, Mexico City, Mexico.

their cross-border restructuring and *Concurso* proceedings, some of which included the Mexican law aspects of Chapter 15 proceedings.  I have also represented the ad-hoc committees of noteholders in the cross-border insolvency proceedings of Corporación Durango, Cementos Chihuahua, Comercial Mexicana, Vitro, Maxcom, Hipotecaria Su Casita, Homex, Oceanografía, Oro Negro and Grupo Idesa, some of which included the Mexican law aspects of Chapter 15 proceedings.  I also represented Grupo Sare, Copamex, and Grupo Javer in their out-of-court cross-border restructuring proceedings, as well as Grupo Aeroméxico and subsidiaries in all of the Mexican law aspects of their cross-border Chapter 11 restructuring procedure, among many others.

5.      I hold a *Licenciado en Derecho* degree (J.D. equivalent) from Universidad Panamericana, in Mexico City.  I am a member in good standing of the Mexican Bar Association and currently chair the Restructuring and Insolvency Commission (*Derecho Concursal*) of the Mexican Bar Association.  I have spoken on many panels, forums and seminars concerning *Concurso* proceedings and cross-border restructuring matters of Mexican entities involved in Chapter 11 and Chapter 15 proceedings.

6.      Except as otherwise indicated, all statements set forth in this Declaration are based upon my personal knowledge; my review of the docket in the above-captioned case (the "**Chapter 11 Proceeding**"), relevant documents, information provided to me by members of the Firm's restructuring team working under my supervision, and publicly available information; and/or my opinion based upon my experience, knowledge, and information concerning applicable Mexican law and the facts described herein.  If called upon to testify, I would testify competently to the statements set forth herein.

7.     This Declaration comprises matters that reflect my view of Mexican law and statements of fact.  My statements regarding Mexican law represent my view of the law as an attorney admitted and authorized to practice in Mexico.

8.     I am fluent in English and make this Declaration without the aid of a translator. This declaration includes translations from Spanish to English.  I certify that I am fluent in both Spanish and English and the translations contained herein are true and accurate to the best of my ability.

**I.    Overview of a Mexican Corporate Dissolution and Liquidation.**

9.     The General Law of Business Organizations (*Ley General de Sociedades Mercantiles*) ("**GLBO**"), is a Mexican federal corporate law that generally provides the rules of formation, bylaws, and corporate governance requirements for various privately-held business entities.  GLBO Article 229 addresses the out-of-court dissolution and liquidation process of wholly-owned corporate subsidiaries and affiliates not subject to controversial or litigious proceedings.  Under GLBO Article 229, when the estate of the company concerned exceeds its liabilities and there is a surplus for the benefit of shareholders or partners, the company may be dissolved due to any of the following causes: (i) expiration of the corporate term set forth in the bylaws; (ii) impossibility of continuing performing the company's corporate purpose or if such purpose has been achieved; (iii) shareholder resolution adopted in accordance with the bylaws and applicable legal provisions through an extraordinary shareholders meeting, requiring a supermajority quorum for installation and adoption of resolutions; (iv) a decrease in the number of shareholders to less than the minimum required by the GLBO (*i.e.,* less than two); (v) the loss of two-thirds of the capital stock of a Mexican company; and (vi) judicial or administrative resolution issued by a competent court, pursuant to the applicable legal provisions.  The purpose

of the dissolution and liquidation proceeding under the GLBO is to provide <u>for a simplified</u> <u>proceeding that allows enterprises to carry out a simple, expedited, and gratuitous dissolution and</u> <u>liquidation process</u>.  This proceeding is not applicable for restructurings; rather, it is used for simplified liquidations in very particular situations and that comply with clear conditions to avoid the closing of businesses with pending obligations before shareholders or third parties.[2]

10.    The common practice is that shareholders would voluntarily decide to dissolve and liquidate the company under this process.[3]

---

[2]    *See* arguments issued by the Committee of Economics of the Chamber of Representatives of the Mexican Federal Government (Comisión de Economía de la Cámara de Diputados. Issued in the Parliamentary Gazette - Gaceta Parlamentaria - December 12, 2017). Available at, http://sil.gobernacion.gob.mx/Archivos/Documentos/2017/12/asun_3644002_20171212_1516825716.pdf

Page 13, ¶ 4. "En la minuta de mérito, se señala que el procedimiento simplificado de disolución y liquidación únicamente debe ser dirigido para aquellas empresas que se ubiquen en supuestos específicos y que cumplan con condiciones claras, a efecto de evitar el cierre de sociedades con obligaciones pendientes de cubrir, ya sea para sus accionistas o con terceros."

----------
An English translation is provided below.

"In the minutes, it is stated that the simplified dissolution and liquidation procedure should only be used by those companies that are located in specific assumptions and that comply with clear conditions, in order to avoid the wind-down of companies with pending obligations, either with its shareholders or with third parties."

[3] Supreme Court of Justice of the Nation
Digital registry: 198597
Instance: Collegiate Circuit Courts
Ninth Period
Subject(s): Civil
Thesis: XIV.2o.48 C
Source: Gazette of the Federal Judicial Seminar and its Gazette. Book V, June 1997, page 784
Type : Isolated

CORPORATIONS. PRIOR TO TURNING TO THE JUDICIAL AUTHORITY TO REQUEST THE DECLARATION OF A DISSOLUTION, IT SHALL BE PROPOSED TO THE SHAREHOLDERS MEETING.

Article 232 of the GLBO provides that within the dissolution causes of a company, sections I to V of Article 229 of said law, the expiration of the term provided in the agreement is the only cause that will occur for the sole passing of time; in any other hypothesis, when the registration is not made upon confirmation by the company of the corresponding cause, the dissolution will be registered in the Public Registry of Commerce and, if that is not the case, any interested party may appear before the judicial authority to request it.  Article 182, section II of the referred law

11.    Moreover, if a dissolution cause is met, then an Extraordinary General Shareholders Meeting of the company may resolve the early dissolution and liquidation of the company pursuant to articles 229, subsection III, and 182, subsection II (for Mexican corporations), of the GLBO[4].

---

provides that the early dissolution of the company shall be determined in an extraordinary shareholders meeting, and such celebration may be requested by any shareholder as provided under the following Articles 183 and 184. In this context, it is evidenced that in every case of dissolution, different to those in which the term expires, it is necessary that the business corporation pronounce itself in that regard, prior to making the corresponding request to the corresponding judicial body; if such determination has not been approved by the shareholders meeting, the judge is prevented to declare it.

SECOND COLLEGIATE COURT OF THE FOURTH CIRCUIT.

Direct amparo 185/97.  Irene del Socorro Rivas Garrido. April 24, 1997.  Unanimous vote. Reporting judge:  Pablo V. Monroy Gómez.  Secretary: José Guadalupe Orta Méndez.

[4] Supreme Court of Justice of the Nation

Digital registry: 2020032
Instance: Collegiate Circuit Courts
Tenth Period
Subject(s): Civil
Thesis: XVII.1o.C.T.31 C (10a.)
Source: Gazette of the Federal Judicial Seminar. Book 67, June 2019, Volume VI, page 5364
Type : Isolated

BUSINESS CORPORATION. A THIRD PARTY DIFFERENT TO THE SHAREHOLDERS LACKS LEGITIMATE INTEREST TO REQUEST THE VERIFICATION OF A DISSOLUTION CAUSE OR ITS REGISTRATION IN THE PUBLIC REGISTRY OF COMMERCE.

The systematic interpretation of Articles 182, 183, 184, 229 and 232 of the GLBO provides that within the causes that originate the dissolution of a company are those under sections I and III of said Article 229, which do not require any declaration, while the remainder causes do; likewise pursuant to numeral 182, section II the early dissolution of a company shall be determined in an extraordinary meeting, which pursuant to Articles 183 and 184 referred herein may only be initiated by the administrator or board of directors call, or by the statutory auditor or the shareholders; therefore once the dissolution cause is confirmed by the shareholders and when it is not registered in the Public Registry of Commerce "any interested party" may go to the judicial authority to request that a corresponding registration is made, referring such term solely to the shareholders of the company involved in the dissolution proceeding, since, pursuant to Article 182, sections I, II and II above mentioned, the shareholders of a legal entity, shall have within its exclusive faculties, among others, extend the duration of the company, early dissolve it or increase or reduce its capital stock; therefore a third party different to the shareholders lack of a legitimate interest to request the confirmation of a dissolution cause or its inscription, as the fact that a commercial relation exists between companies only provides an interest resulting from its commercial relationship, but not its interference in internal matters of the company; moreover, if the legislator´s intention would have been to grant any third party such faculty, then he would have provided so.

The minutes of such meeting must be notarized before a notary public, who must issue a public instrument evidencing notarization.  The public instrument then must be registered in the Public Registry of Commerce of the place where the registered office of the company is located according to its bylaws ("**Registry**").

12.     Once the dissolution of the company is properly approved by its General Extraordinary Shareholders' Meeting or, in rare cases, ordered by a competent court, the company's board of directors must refrain from entering into new business transactions or commence new operations pursuant to article 233 of the GLBO.  If the board violates this requirement, the board is jointly or severally liable for any transactions performed.  Powers of attorney previously granted to a company's attorneys-in-fact, other than the managers, continue to be effective only for purposes of implementing the liquidation, as well as for activities and faculties not specifically reserved to the liquidator.

13.     Once dissolved, the company shall be placed in liquidation.  Thus, the GBLO is not meant to implement restructurings, approve plans of reorganization, or conduct restructurings or liquidations involving multiple types of creditors.  Rather, the corporate liquidation is entrusted to one or more liquidators (if several liquidators are appointed, they will act as a collegiate body), who are considered the company's legal representatives and are liable for any acts performed in excess of the limits or their appointment, faculties, and powers.  The liquidator(s) are appointed by an Extraordinary General Shareholders Meeting (*i.e.*, the same meeting where the resolution

---

FIRST COLLEGIATE COURT IN CIVIL AND LABOR MATTERS OF THE SEVENTEENTH CIRCUIT.

Direct amparo 706/2018. Inmobiliaria Axial, S.A. de C.V. March 22, 2019. Unanimous vote. Reporting Judge: María del Carmen Cordero Martínez. Secretary: Silvia Patricia Chavarria Hernández.  This thesis was published on Friday, June 7, 2019 at 10:13 a.m. in the Federal Judicial Seminar.

concerning the company's dissolution is approved), by the court, or by the shareholders' petition. The board of directors are to continue in office until (i) the liquidator(s) assumes his/her position and (ii) the public instrument containing the notarization of the shareholders meeting is recorded before the Registry.

14.    As set forth in Article 242 of the GLBO, the liquidator has the following duties: (i) to conclude any unfinished businesses and terminate the corporate operations of the company pending at the time of dissolution; (ii) to collect any and all accounts receivable and pay the accounts payable; (iii) to sell the property and assets of the company; (iv) to liquidate (pay) each shareholder for its interest; (v) to prepare a final liquidation balance sheet of the company, which shall be submitted for the discussion and approval of the shareholders in a subsequent General Extraordinary Shareholders Meeting (once the final balance is approved, it must be recorded in the Registry and published in the Electronic System of the Mexican Ministry of Economy (https://psm.economia.gob.mx/PSM/)); and (vi) to obtain the cancellation of the company´s registration with the Registry.[5]  Unlike the Concurso Law, the GLBO does not provide for (i) a

---

[5] GLBO, Art. 242.

Articulo 242 Ley General de Socidades Mercantiles.-

Salvo el acuerdo de los socios o las disposiciones del contrato social, los liquidadores tendrán las siguientes facultades:

I.- Concluir las operaciones sociales que hubieren quedado pendientes al tiempo de la disolución;

II.- Cobrar lo que se deba a la sociedad y pagar lo que ella deba;

III.- Vender los bienes de la sociedad;

IV.- Liquidar a cada socio su haber social;

V.- Practicar el balance final de la liquidación, que deberá someterse a la discusión y aprobación de los socios, en la forma que corresponda, según la naturaleza de la sociedad.

El balance final, una vez aprobado, se depositará en el Registro Público de Comercio; deberá publicarse en el sistema electrónico establecido por la Secretaría de Economía previsto en el artículo 50 Bis del Código de

specific priority rule or ranking of payments to stakeholders or (ii) any classification or categories

of creditors.  The GLBO is completely silent as to how to categorize a company´s creditors and

how to rank them.

15.    The liquidator must also file the respective notices of liquidation and closing before

the relevant tax and administrative authorities, and prepare and file, when appropriate, tax notices,

tax guarantees, and tax returns corresponding to the liquidation period.

16.    Fifteen days after the publication in the Electronic System, the liquidator will call

and hold a third and last Extraordinary General Shareholders Meeting for the shareholders, not the

creditors, to discuss and approve the final liquidation balance sheet.  Once approved, the liquidator

upon having paid all the company´s debts, shall pay, if any, each shareholder the corresponding

---

Comercio;

VI.- Obtener del Registro Público de Comercio la cancelación de la inscripción del contrato social, una vez concluida la liquidación.

Lo dispuesto en las fracciones anteriores no será aplicable cuando el nombramiento del liquidador se realice conforme al procedimiento del artículo 249 Bis 1 de esta Ley.

----------

An English translation of Article 242 of the GLBO is provided below:

Except by agreement of the partners or the provisions of the articles of incorporation, the liquidators shall have the following powers:

| | |
|---|---|
| I. | To conclude the corporate operations pending at the time of dissolution; |
| II. | To collect what is owed to the company and pay what it owes; |
| III. | To sell the assets of the company; |
| IV. | To liquidate to each partner his corporate assets; |
| V. | To prepare the final balance sheet of the liquidation, which must be submitted for discussion and approval of the partners, in the corresponding form, according to the nature of the company. The final balance sheet, once approved, will be deposited in the Public Registry of Commerce; it must be published in the electronic system established by the Ministry of Economy provided for in Article 50 Bis of the Commercial Code; |
| VI. | To obtain from the Public Registry of Commerce the cancellation of the registration of the corporate contract, once the liquidation is concluded. The provisions of the preceding sections will not be applicable when the appointment of the liquidator is made in accordance with the procedure of Article 249 Bis 1 of this Law. |

liquidation quota; shareholders shall surrender their shares for cancellation.  Upon the foregoing, the cancellation of the company´s registry with the Registry shall proceed.

II.    **Overview of a Mexican Insolvency Proceeding (*Concurso Mercantil*).**

17.    The Mexican law on insolvency and bankruptcy (*Ley de Concursos Mercantiles*) ("**LCM**" or "**Concursos Law**") is a federal, specialized law that governs all the procedural steps, including detailed rights and remedies of creditors, of the sole formal in-court federal insolvency procedure available under Mexican law for companies.  This is known as the "*Concurso Mercantil*" or *Concurso* proceeding, including a particular chapter for recognition of foreign proceedings or for the recognition of the *Concurso* proceeding before foreign insolvency courts. Article 17 of the LCM and the General Decree 4/2022[6] provide that the competent authority to hear insolvency and commercial bankruptcy cases are the specialized Federal Bankruptcy Courts located in Mexico City (the "**Bankruptcy Court**").

18.    The *Concurso* proceeding is the only commercial insolvency proceeding available for companies in Mexico.  All insolvency proceedings of companies or merchants are governed by the LCM, whether aimed for restructuring process (phase of conciliation or *conciliación*) or liquidation (phase of liquidation or *quiebra*).  LCM Article 1 expressly recognizes that it is a law of public interest and that the proceeding is public.[7] Therefore, any person may request access to the information in a *Concurso* proceeding.

---

[6] General Decree of the Federal Judiciary Council with respect to the creation, denomination and beginning of operations of the First and Second District Courts in Insolvency Proceedings, as well as their competence, territorial jurisdiction, domicile, rules of turns, system of receipt and distribution of cases**.**

[7] LCM, Art. 1.  La presente Ley es de interés público y tiene por objeto regular el concurso mercantil. Es de interés público conservar las empresas y evitar que el incumplimiento generalizado de las obligaciones de pago ponga en riesgo la viabilidad de las mismas y de las demás con las que mantenga una relación de negocios. Con el fin de garantizar una adecuada protección a los acreedores frente al detrimento del patrimonio de las empresas en concurso, el juez y los demás sujetos del proceso regulado en esta Ley deberán regir sus actuaciones, en todo momento, bajo los principios de trascendencia, economía procesal, celeridad, publicidad y buena fe.
-----------

19.     A petition for insolvency or *Concurso Mercantil* in Mexico is commenced by (a) the company filing a voluntary concurso petition (a "**Voluntary Petition**"), (b) a creditor or other interested party filing an involuntary lawsuit (a "**Involuntary Petition**"), or (c) the company filing a pre-packed voluntary petition (a "**Pre-packed Petition**") with the support of a simple majority of its creditors.  Under each scenario, the *Concursos* Law expressly requires the petitioning party to meet various requirements, file several documents to support the company's insolvency status, and to comply with the completion of various formats authorized by the Federal Institute of Specialists for Insolvency Procedures (*Instituto Federal de Especialistas de Concursos Mercantiles* or "**IFECOM**").[8]  For instance, for a Voluntary Petition, Article 20 of the *Concursos Law* requires the company to file audited financial statements for the last three fiscal years, the last available unaudited financial statements for the last month, and a resolution of the shareholders meeting approving the filing, as well as the list of creditors, assets, inventory, liabilities, lawsuits, among other requirements.[9]

20.     Upon the filing of an Involuntary or Voluntary Petition and, if applicable, its admission by the Bankruptcy Court, the formal process prior to the declaration of formal

---

An English translation of Article 1 of the LCM is provided below:

This Law is of public interest and its purpose is to regulate *concurso* proceedings. It is in the public interest to preserve companies and to prevent the generalized non-compliance with payment obligations from jeopardizing the viability of such companies and of others with which they maintain a business relationship. In order to guarantee an adequate protection to creditors against the detriment of the assets of the companies under a *concurso* proceeding, the judge and the other subjects of the process regulated in this Law must govern their actions, at all times, under the principles of transcendence, procedural economy, celerity, publicity, and good faith.

[8] *See* LCM.
On May 12, 2000, the LCM was published in the Official Gazette of the Federation, and with it the creation of the Federal Institute of Specialists in Concurso Proceedings (Instituto Federal de Especialistas de Concursos Mercantiles) (IFECOM) was ordered.  The IFECOM is a body associated with the Federal Judiciary Council, empowered with technical and operating autonomy under the LCM.

[9] LCM, Art. 20.

insolvency or declaration of concurso begins.  This is known as inspection or *visita* stage (the "**Visita Stage**"), which does not apply to Pre-packed Petitions.

      A.    **The *Visita* Stage.**

    21.    Upon the admission of the Voluntary or Involuntary Petition by the Bankruptcy Court, the judge orders the IFECOM to appoint an independent Examiner.  The Examiner cannot be appointed by the debtor or creditors and has no conflict of interest.  The Examiner is the only authority entitled by the *Concursos* Law to determine if the debtor meets the test for insolvency under the statute.  Thus, for example, the Mexican District Attorney or local court lacks authority to determine if the debtor meets the requirements of insolvency or decide if commencing an insolvency proceeding under the LCM is proper.  The LCM is the only specialized law governing in-court insolvency proceedings that are supervised by a specialized federal Bankruptcy Court and that meet public policy rules and allow creditors to exercise their rights and obtain remedies under a legal framework.

    22.    During the Visita Stage, the Examiner reviews and audits the company's books and records to determine whether the company satisfies the LCM's insolvency requirements to be eligible for *Concurso Mercantil* (the "**Insolvency Test**"), and provides a preliminary report pursuant to the IFECOM rules to the Bankruptcy Court.  The Examiner may also recommend to the Bankruptcy Court the issuance of pre-emptive measures (*i.e.*, stay) to protect the debtor's assets and estate.

    23.    The Insolvency Test focuses on whether the company has generally failed to comply with its obligations.  Article 10 of the LCM provides that the Insolvency Test is satisfied when (a) the company has failed to comply with its payment obligations in respect of two or more creditors, (b) 35% or more of all the company's outstanding liabilities are 30 days overdue, and/or (c) the company has insufficient liquid assets and receivables as established in the LCM (*e.g.*, cash,

cash equivalents, and liquid securities) to support at least 80% of its obligations which are due and payable.[10]  In cases involving Voluntary Petitions, the company must satisfy the tests set forth in (a) and either (b) or (c) above to be declared insolvent.  Alternatively, the company may satisfy the Insolvency Test if it can prove that it will be generally in default with respect to its payment obligations within 90 days from the filing of the Voluntary Petition.  In cases involving an Involuntary Petition, the company must satisfy the tests set forth in each of (a), (b), and (c) to satisfy the Insolvency Test.

24.     The Bankruptcy Court will then review the Examiner's report and, if satisfied that the Insolvency Test is met, enter a judgment formally declaring the company into insolvency or *Concurso Mercantil* (the "**Concurso Judgment**").

---

[10] LCM, Art. 10.

An English translation of Article 10 of the LCM is provided below:

For purposes of this Law, the generalized default in payment of the obligations of a merchant referred to in the preceding Article, consists of the default of its payment obligations to two or more different creditors and when the following conditions are met:

I.     That of the overdue obligations, which are referenced in the preceding paragraph, those that have been overdue for at least thirty days represent thirty-five percent or more of the obligations attributable to the merchant as of the date on which the complaint or request was filed, and

II.     The merchant does not have enough of the assets mentioned in the following paragraph, to pay at least eighty percent of its overdue obligations as of the filing date of the complaint or request for commercial bankruptcy.

The assets that must be considered for purposes of the provisions of section II of this Article shall be:

a)     Cash on hand and on demand deposits;

b)     Fixed-term deposits and investments whose maturity is not more than ninety calendar days after the filing date of the complaint or declaration of commercial bankruptcy;

c)     Customers and accounts receivable whose maturity is not more than ninety calendar days after the filing date of the complaint or petition; and

d)     The securities regularly sold and purchased in the relevant markets, which may be sold within a maximum term of thirty bank business days, and whose valuation is known as of the filing date of the complaint or request.

The inspector's report and expert opinions offered by the parties must expressly refer to the circumstances defined in the subsections above.

B.    The *Concurso Mercantil.*

25.    Upon issuance of the Concurso Judgment, the company (debtor) is formally subject to an insolvency proceeding governed exclusively by the *Concursos* Law before the Bankruptcy Court.  Under Article 43[11] of the LCM, the Concurso Judgment must provide, among other things, that the company is in general default of its payment obligations.

---

[11] LCM, Art. 43.

An English translation of Article 43 of the LCM is provided below:

The judgment of declaration of commercial bankruptcy must contain:

I.        Name or company name and address of the merchant and, as applicable, the full name and addresses of unlimitedly liable partners;

II.       The date on which it is issued;

III.      The basis for the judgment in terms of the provisions of Article 10 of this law, and, as applicable, a list of creditors that the inspector identified in the accounting records of the merchant, without this exhausting the procedure for recognition, classification and ranking of the credits referenced in Title Four of this Law;

IV.      The order to the Institute to designate the bankruptcy conciliator through the random mechanism previously established, along with the determination that, in the meantime, the merchant and his/her/its administrators, managers, and employees will have the obligations attributed by law to the depositaries;

V.       The declaration of opening of the conciliation stage, unless the bankruptcy of the merchant has been filed or requested;

VI.      The order to the merchant to immediately make available to the conciliator the books, records and other documents of his/her/its company, and the funds required to pay the recording expenses and the publications provided in this Law;

VII.     The order to the merchant allowing the conciliator and the trustees to perform the activities inherent to their positions;

VIII.    The order to the merchant to suspend the payment of debts acquired prior to the date when the commercial bankruptcy ruling becomes effective; except for those that are indispensable for the ordinary operation of the company, including any indispensable credit to maintain the ordinary operation of the company, and the liquidity required during the processing of the business reorganization, with respect to which it must inform the judge within seventy-two hours after effecting these;

IX.      The order to suspend during the conciliation stage, all orders for seizure or enforcement against the property and rights of the merchant, with the exceptions provided in Article 65;

X.       The look back period;

XI.      The order to the conciliator to publish an extract of the judgment in terms of Article 45 of this Law;

XII.     The order to the conciliator to record the judgment in the public registry of commerce corresponding to the Address of the merchant, and in such places where it has an agency, branch, or property subject to recording in any public registry;

XIII.    The order to the conciliator to start the credit recognition procedure;

XIV.     The notice to the creditors so that those that wish to, may request the acknowledgment of their credits; and

XV.      The order to issue, at the expense of whoever requests it, a certified copy of the judgment.

26.     The *Concurso Mercantil* consists of two stages:  (1) conciliation (*conciliación*) (the "**Conciliation Stage**"), which is equivalent to a Chapter 11 proceeding, and/or (2) bankruptcy or liquidation (*quiebra*) (the "**Liquidation Stage**"), which is equivalent to a Chapter 7 proceeding.

27.     A company may file a Voluntary Petition in Liquidation Stage, although in most of the cases a company files the petition in Conciliation Stage.

### i.     Conciliation Stage.

28.     The purpose of the Conciliation Stage is to encourage a binding reorganization agreement among the company and a majority of its creditors (*i.e.*, a restructuring plan or creditors agreement) that preserves the business as a going concern and avoids the company's liquidation. A *conciliador* (the "**Conciliator**") is appointed by the IFECOM[12] as ordered in the Concurso Judgment, who is responsible for mediating between the company and its creditors on the terms of a consensual plan of reorganization, initiating the formal and fully regulated process of proof of claims (by preparing a list of claims to the Bankruptcy Court),[13] and, if necessary, requesting the removal of the company from the management of the business.[14]  The Conciliator is also responsible for reviewing the ordinary operation of the company's business, approving the expenses during the in-court proceeding, and filing various public reports before the Bankruptcy Court.  Finally, the Conciliator reviews the company's accounting, books, and records, and supervises any company transactions during the Conciliation Stage.

29.     Upon the commencement of the Conciliation Stage, the company, IFECOM, and the Examiner are served with the Concurso Judgment.  Creditors receive notice through a

---

[12] In a case involving a Pre-Packed Petition, both the debtor and the petitioning creditors (the majority of all creditors) must appoint an ad-hoc individual to act as Conciliator.

[13] The list of creditors is prepared based on the company's books and records and creditors' proofs of claim.

[14] If the company is removed from the administration, the Conciliator would then assume responsibility for managing the company's business.

publication in the Official Gazette of the Federation (*Diario Oficial de la Federación*).  A summary of the Concurso Judgment in the Public Registry corresponding to the domicile of the company is also published.  Additionally, the Conciliator mails notices to identified creditors.

30.     The Concurso Judgment generally stays all acts of collection by creditors.  Notably, however, entry of the Concurso Judgment does not necessarily stay all lawsuits involving the company; rather, it stays proceedings concerning the attachment of assets, enforcement decisions, and execution of judgments against the company.  Some exceptions not applicable here may arise, including, for example, labor proceedings and those provided in the last paragraph of Article 65 of the LCM.[15]

31.      Unless the conciliator is removed for cause, the company may continue to operate the business in the ordinary course as a debtor-in-possession.  The Conciliator has the authority to resolve, among other things: (a) non-ordinary course dispositions of assets; (b) the assumption or rejection of material contracts; and (c) after a Concurso Judgment has been entered, preferred and senior financing against the estate (equivalent to "DIP" financing).

32.     Pursuant to the LCM, some transactions may be invalidated if entered into during the period starting on the day which is 270 calendar days prior to the Concurso Judgment.  Such period can be extended up to three years under some situations regulated by LCM, and can be doubled (540 calendar days) for intercompany and related party transactions ("**Look-Back Period**").  Any creditor may assert a claim of fraudulent conveyance and seek to set aside or void

---

[15] LCM, Art. 65.

An English translation of the relevant paragraph of Article 65 of the LCM is provided below:

"As of the issuance of the commercial bankruptcy judgment and until the conciliation stage ends, no attachment or enforcement mandate against the goods and rights of the merchant may be executed.

When the attachment or enforcement order addresses labor, the suspension shall not take effects set forth in constitutional Article 123, section A, subsection XXIII and its regulatory provisions considering the salaries for the two years before the commercial bankruptcy; when the attachment or execution order has a fiscal nature, the prescriptions of Article 69 of this Law should be followed."

transactions carried out during the Look-Back Period. The *Concursos* Law also contains provisions imposing liability on company officers and directors for wrongdoing affecting creditors.

33.     Under the LCM, creditors have the right to submit written proofs of claim in the *Concurso Mercantil* to the Conciliator to obtain the recognition, classification, and ranking of their claims. Once proofs of claim are submitted and the applicable time periods have run, the Conciliator must publish a detailed provisional list of claims (which is challengeable by creditors) and then a definitive list of claims. After certain procedural periods have elapsed, the Bankruptcy Court then issues a formal judgment through which it acknowledges the creditors' claims, rank, and classification, including subordinated claims (intercompany claims) that rank junior to other claims (the "**Recognition Judgment**"). The Recognition Judgment is subject to appeals by any creditor or by the debtor.

34.     The Conciliation Stage is limited to 185 days; however, the Bankruptcy Court may extend the term for up to two additional periods of 90 days each (for a maximum of 365 days). The first extension can be requested by the Conciliator or recognized creditors that represent more than 50% of the total recognized debt. The second extension must be requested by the debtor and the recognized creditors that represent at least 75% of the total recognized debt.

35.     The Conciliator may approve any new credits, new collateral, or substitutions of the existing collateral and the sale of any assets when not related to the ordinary operation of the company subject to LCM rules aimed to protect the estate and rights of the creditors. In such approvals, the Conciliator takes into account the opinion of any existing intervenors, which are independent individuals appointed by creditors and that represent the rights of creditors pursuant to the LCM. Preferred and senior financing may be granted for the administration of the estate or

to keep the ordinary course of business of the company and the liquidity required during the *Concurso* proceeding, by following certain guidelines applicable to the Conciliator.

36.     As stated above, intervenors may be appointed by creditors.  They represent the interest of the creditors in the *Concurso* proceeding and oversee the actions of the Conciliator or receiver (*síndico*), as well as the acts performed by the debtor with respect to its administration and operation.  Any creditor or group of creditors representing at least 10% of the value of the credits owed by the debtor, pursuant to the preliminary list of credits or the Recognition Judgment, is entitled to request the appointment of an intervenor.

37.     Likewise, pursuant to Article 37 of the LCM, the Bankruptcy Court may order pre-emptive measures at any stage of the *Concurso Mercantil* once the Concurso Judgment is entered.[16]

38.     The Conciliation Stage ends upon (a) an agreement among the company and a majority of its creditors for a consensual restructuring approved by the Bankruptcy Court in the form of a Plan of Reorganization of *Concurso* agreement (*convenio concursal*); (b) the expiration of the term limit set forth above, at which time the *Concurso* proceeding will move to the Liquidation Stage; (c) the request of the Conciliator and the Bankruptcy Court approval of such request; (d) the company's request; or (e)  the creditors' request and the company's acceptance. In the case of (b) through (e), the company enters the Liquidation Stage (*Quiebra*) of the *Concurso Mercantil* following the Bankruptcy Court's entry of a formal judgment for liquidation (the "**Liquidation Judgment**").

---

[16] LCM, Art. 37.
An English translation of the relevant section of LCM Art. 37 is: "The judge may order the preemptive measures it considers necessary, in any stage of the *Concurso* proceeding, upon receipt of the petition, or ex officio."

### ii.     The Liquidation Stage.

39.     If the *Concurso Mercantil* proceeds to the Liquidation Stage, IFECOM appoints an independent receiver, liquidator, or trustee (*síndico*) (the "**Receiver**")[17] to operate the company in the Liquidation Stage.  The Receiver then makes public the Order for Liquidation and files a report concerning the company's books and records, assets, and balance sheet.  All of the company's assets are turned over to the Receiver.  The Receiver then takes steps to liquidate or otherwise dispose of the debtor's assets for the highest possible price pursuant to the rules and procedures expressly provided in the *Concursos* Law.  The proceeds are then used to provide distributions to creditors in accordance with the claims and rankings set forth in the Recognition Judgment.  The Receiver follows the LCM's strict rules of publicity and operability to guaranty the transparency of a sale procedure and follows the guidance and forms determined by the IFECOM.

40.     The Liquidation Stage is supervised by the IFECOM and the Receiver, and the length of the procedure will vary depending on the type of industry and the time required to auction, sell, and reach agreements among creditors and the conciliator to offset claims.

41.     The Liquidation Stage is aimed to terminate any pending company operations, collect any amounts in favor of the debtor, and liquidate any outstanding amounts of the debtor in favor of creditors and, ultimately, its shareholders.  The liquidation concludes with the cancellation of the company's bylaw's registration.

42.     Pursuant to Article 198 of the LCM, the sale of the debtor's assets is carried out through a public auction.  The auction cannot occur prior to 10 days or after 90 days following the publication of the call for an auction.  The Receiver must notify the call for the auction pursuant to the IFECOM rules.

---

[17] IFECOM may also request that the Conciliator act as the Receiver.

III.      **A Mexican Dissolution Proceeding Cannot be Characterized as an Insolvency Proceeding.**

43.      The LCM was created under the principles of the Mexican Constitution.  The main protections of the LCM include due process of law, the right of previous hearing, the protection of labor rights, and the respect of rights and remedies of creditors.  This LCM's goal is to preserve businesses and prevent the generalized default of payment obligations, while recognizing public policy considerations concerning debtors, creditors, and Mexico's economics.      The LCM provides transparency and equity by allowing the parties involved the opportunity to know and share information among them.  Another relevant principle contained in the *Concursos* Law is that it has a multidisciplinary vision that covers the legal aspect, as well as the fields of administration, economics, and accounting.  Likewise, the LCM provides a robust protection to all creditors and a detailed procedure for recognition and ranking of claims, as well as special rules regarding limitation on voting and recoveries of intercompany, related party, claims that are classified as subordinated only by the LCM.

44.      Mexico has been one of the first countries to adopt the United Nations Commission on International Trade Law (UNCITRAL) Model Law on Cross-Border Insolvency (the "**Model Law**"), which was expressly incorporated in Title Twelfth of the LCM.[18]

---

[18] LCM, Exposicion De Motivos (Legislative Intent): *"Accordingly with the above mention consideration the drafting Commission acknowledge the necessity to move forward with the modernization of the legislation that regulates the commercial and financial activity in our country, incorporating to the LCM Initiative a chapter in international cooperation in proceedings, and making the necessary adequation to the Model Law of the Commission for the Legislation on International Commerce of the United Nations."*

Ley de Concursos Mercantiles Published on May 12, 2000. In Force. Category: Law. Legislative Processes. Legislative Intent. Chamber of Origin: Senators, Legislative Intent, Mexico City, November 23, 1999. Initiative filed by the Senators: (Parliamentary Groups PRD, PRI and Independents), available at https://legislacion.scjn.gob.mx/Buscador/Paginas/wfProcesoLegislativoCompleto.aspx?q=V95NcogKxHpUN4bFbj Wt9j8muee4v7g9xqmeAc4IckxeEdPlu8MLP2XcTLligZH5rcjz5B5e+I8if5pLE4OQjg==.

45.     It is my understanding that Chapter 15 under the U.S. Bankruptcy law in a large part adopts the Model Law as well.  Accordingly, the public policy principles that apply to recognizing foreign insolvency proceedings are generally equivalent under the LCM and Chapter 15, particularly with respect to how each law defines a "foreign proceeding," "foreign main proceeding," and "foreign representative."

46.     Under Article 279 of the LCM, Mexico defines "foreign proceeding" as a collective judicial or administrative proceeding in a foreign State, including an interim proceeding, pursuant to a law relating to insolvency under which the debtor's assets and affairs are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

47.     The elements necessary to qualify as an insolvency proceeding under the LCM are: (i) basis in insolvency-related law of the originating State; (ii) involvement of creditors collectively; (iii) control or supervision of the assets and affairs of the debtor by a court or another official body; and (iv) reorganization or liquidation of the debtor as the purpose of the proceeding.

48.     An insolvency proceeding must be a collective one and therefore requires: (i) that substantially all of the assets and liabilities of the debtor are considered in the proceeding, subject to local priorities and statutory exceptions and local exclusions relating to the rights of secured creditors; (ii) those creditors that are adversely affected by the proceeding are provided with a right to participate (though not necessarily the obligation); (iii) claims are submitted for recognition and

---

Text in Spanish:

*Con base en las consideraciones anteriores la Comisión redactora reconoció la necesidad de seguir avanzando en la modernización de ordenamientos jurídicos que regulan la actividad comercial y financiera de nuestro país, incorporando a la Iniciativa de Ley de Concursos Mercantiles un capitulo de cooperación internacional de procedimientos, para lo cual se realizaron las adecuaciones necesarias a la Ley Modelo de la Comisión para la Legislación sobre Comercio Internacional de las Naciones Unidas.*

equitable distribution or satisfaction; and (iv) creditors have the right to participate in the proceedings and to receive notice of the proceedings.

49.    The Guide to Enactment and Interpretation of the UNCITRAL Model Law on Cross Border Insolvency clearly states that the Model Law is not intended to serve as a tool for concentrating assets in a winding up or in a conservation proceeding that does not also include provisions related to, nor address, the claims of creditors.[19]

50.    A corporate dissolution and liquidation under the GLBO, even when governed by a local court (which is absolutely an extraordinary event for other type of liquidation scenarios), is not a collective and universal proceeding.  That is because there is no mechanism for creditors to proactively participate in the proceeding.  The GLBO does not provide the rights, protections, and remedies that the LCM expressly provides to creditors, and the GLBO has no provisions dealing with foreign insolvency proceeding as the LCM expressly does.  A liquidation procedure under the GLBO cannot, and should not, be recognized abroad as a "main insolvency proceeding" under the rules set forth above, as opposed to a formal *Concurso* proceeding that is governed by the *Concursos* Law and supervised by the federal and specialized Bankruptcy Court.  I am not aware of any GLBO proceeding in Mexico having been recognized as a foreign main proceeding in a U.S. chapter 15 proceeding, or in an analogous foreign proceeding in any other country.

51.    Unlike a *Concurso* proceeding, a simple dissolution and liquidation proceeding under the GLBO provides no statutory rights to the debtor´s creditors within a liquidation framework.

---

[19]    U.N. Commission on International Trade Law, UNCITRAL Model Law on Cross-Border Insolvency with Guide to Enactment and Interpretation, at 69, U.N. Sales No.: E.14.V.2 (2014).

52.    Moreover, under the Mexican legal system, a GLBO dissolution is not considered as a public policy matter, and it is not a public proceeding, and does not give required protections to creditors, particularly for companies involving multiple cross-border debtors.

53.    The dissolution and liquidation process under the GBLO provides no due process to creditors, because they are not involved in the procedure and receive no notice or service of process.  The company's creditors effectively lack standing to appear or file any document or writ in a GLBO dissolution and liquidation.  And as explained, since as the general proceeding under the GLBO is not public, creditors do not have access to docket filings.

54.    Creditors or interested third parties likewise have no statutory right under the GLBO to appear in the dissolution and liquidation proceedings nor to file recourses or remedies against the dissolution and liquidation judgment or against the orders issued during the liquidation proceeding resulting from the corporate dissolution.  Clearly, the minimal articles set forth in the GLBO, governing a corporate dissolution and liquidation proceeding, meant for unsophisticated liquidation cases, which is used mainly for corporate dissolutions approved by Shareholders Meeting or requested, in minimal cases, by minority and not conflicted shareholders, does not satisfy the public policy requirements of an actual insolvency proceeding.  Thus, only the formal *Concurso* proceeding set forth in the *Concursos* Law, governed by specialized and federal Bankruptcy Courts, and supervised by the IFECOM, meets the required public policy standards to be recognized as "main insolvency procedure" under other foreign insolvency laws.  Accepting and recognizing a corporate dissolution and liquidation procedure under the GLBO as a "main insolvency procedure" would irreparably affect the rights, remedies and recoveries of domestic and international creditors of a company, altering the applicable rule of law and public policy requirements.

55.     The only available recourse under Mexican law to challenge a fraudulent or "informal" dissolution and liquidation process under the GLBO is a constitutional remedy or challenge filed in a higher court (*amparo*) evidencing that the creditors received no notice nor have a standing in the dissolution proceeding.  Creditors are entitled to file a constitutional remedy (*amparo*) if it is necessary to challenge any proceeding that violates due process, but a liquidation judgment issued by a local court under the GLBO does not allow any participation of creditors.

56.     A GLBO dissolution and liquidation proceeding violates the due process required under a formal insolvency proceeding, as it gives creditors (i) no opportunity to defend themselves; (ii) no legal standing to file evidence; (iii) no opportunity to be heard; and (iv) no ability to receive a fair, efficient, and effective judgment.  Moreover, in my view, it is a violation on the part of a company's management and directors of a publicly held company to divest of all the company's property without providing a reasonable opportunity to its creditors, employees, and shareholders to present and enforce their claims before the liquidation becomes legally effective.

57.     In Mexico, a company must meet the Insolvency Test under the LCM, as described above, to be subject to an insolvency proceeding under the LCM.  In contrast, the GLBO does not provide for any "test" to proceed with a dissolution and liquidation.  Nor does the GLBO require the petitioning party to meet various requirements to be admitted in such a process as required under the LCM.  Under the GLBO, there is no analysis of the financial situation of the Company by an independent expert appointed by the Court and the IFECOM, as such corporate proceeding is purported to assist those companies that want a direct liquidation process and to split the remaining estate among shareholders of a company, but when there are still assets to pay the company's indebtedness in full.  Thus, only the formal *Concurso* process is appropriate when a Mexican company faces formal in-court insolvency proceedings involving multiple creditors that

clearly will not have a full recovery and payment of their claims, aimed to reach a plan of reorganization or even an orderly liquidation process, preserving the rights and remedies of creditors, the route that shall be followed is only the formal *Concurso* process exclusively governed by the *Concursos* Law and supervised by specialized and federal Bankruptcy Courts.  In my view, any company or shareholder purporting to liquidate a company under the minimal articles of the GBLO is attempting to avoid the formal procedure set forth in the LCM and the rights and remedies of creditors under the only formal and specialized insolvency and bankruptcy procedure governed by the *Concursos* Law.  In my view, a liquidation process under the GLBO will affect the rights and remedies of all creditors.

58.    There are no statutory rights or adequate protection to creditors in a GLBO dissolution proceeding.  There is no right or opportunity for local or foreign creditors to (i) file their proofs of claims and to have a federal judge approve the recognition of the company's credits, (ii) participate or negotiate a plan of reorganization, (iii) appoint an intervenor to supervise the proceeding, (iv) review past operations performed by the company within the Look-Back Period, (v) initiate actions against fraudulent conveyance, (vi) contest the recognition of claims, or (vi) demand to segregate any assets in possession of the company, among many other rights and remedies vested to creditors under the LCM.

59.    Unlike a *Concurso* proceeding, the GLBO does not provide adequate protection for impaired creditors or secured creditors and there is no process of recognition and ranking of credits. There is no rule or provision regarding the discharge of claims, neither substantive nor procedural, on how the liquidation procedure should be conducted.  The GLBO contains no obligation to maximize the value of the assets nor to conduct the sale through a public auction, in contrast to the clear rules and proceedings set forth in the LCM.  Under the GLBO, there is no adequate protection

against detriments to the estate or to recover value of the company's assets.  Further, the GLBO contains no provisions to regulate the consequences of a company's contracts.

60.     The IFECOM, created specifically to attend insolvency proceedings governed by the LCM and be an entity of the federal judicial branch that participates in a *Concurso* proceeding has the authority to even issue General Rules applicable to insolvency proceedings governed by the *Concursos* Law and assist the Bankruptcy Courts when a *Concurso* procedure exists.  It administers the registrations of specialists in *Concurso* proceedings, supervises the services provided by such specialists, and issues opinions with respect to the consideration that should be received by the specialists due to the services provided within a *Concurso* proceeding, among many other responsibilities.  There is no equivalent in the GLBO dissolution and liquidation process.  While the IFECOM supervises the *Concurso* proceeding governed by the LCM, the IFECOM is not a party in a corporate dissolution and liquidation case under the GLBO.

61.     Here, the liquidator was not appointed by the IFECOM, but by the petitioning shareholder who also served as director, officer, and legal representative of the Putative Debtor. Therefore, the IFECOM does not and will not supervise the actions of the non-independent liquidator.

62. The GLBO's dissolution and liquidation proceeding is not a collective and universal proceeding that could be recognized under a U.S. Chapter 15 proceeding.  In Mexico, the LCM is the specialized and sole legislation that governs insolvency proceedings[20].  The LCM is considered

---

[20] Mr. Lopez Melih (Founder partner of the firm Lopez Melih y Estrada S.C. together with Mr. Estrada) filed two Declarations in the Chapter 15 corresponding to the entities Integradora de Servicios Petroleros Oro Negro, S.A.P.I. de C.V. and Peforadora Oro Negro, S. de R.L. de C.V. and expressly stated in his affidavit that the LCM was the applicable law that governed insolvency proceedings in Mexico.  True and correct copies of such declarations are attached hereto as **Exhibits A** and **B**.

*See* Exhibit A ¶ 7: "*This Declaration (a) provides an overview of the Mexican Business Reorganization Act (in Spanish, Ley de Concursos Mercantiles, the "LCM"), **the statute that governs Mexican insolvency proceedings** (in Spanish, concursos mercantiles).*"

a public interest law and is both a procedural and substantive law.  It regulates the stages and mechanisms of a collective and universal formal proceeding to reorganize or liquidate a company, and provides clear actions and remedies within the *Concurso* proceeding for the company and its creditors.

63.    Pursuant to Article 1 of the LCM, creditors must be adequately protected against detriments to the debtor's estate.  Therefore, the Bankruptcy Court and the other parties to the formal *Concurso* process must obey several public policy principles, such as transparency, economy, publicity and good faith.  These principles are not incorporated nor afforded by the corporate liquidation proceeding under the GLBO.

64.    The legislative intent of the LCM supports that the *Concurso* proceeding is a collective and universal proceeding: "*In order to protect the economic and social value of a Company in distress, it is necessary to foresee a collective proceeding that enables to maximize value, and at the same time, afford an equal footing to creditors.*"[21]

65.    The LCM expressly provides that the GBLO will serve only as a supplementary legislation,[22] which supports that a Mexican court cannot apply any provision of the LCM to a procedure foreseen in the GBLO.

---

[21]    LCM, Exposicion De Motivos (Legislative Intent), Published on May 12, 2000. In Force. Category: Law. Legislative Processes. Legislative Intent. Chamber of Origin: Senators, Legislative Intent, Mexico City, November 23, 1999. Initiative filed by the Senators: (Parliamentary Groups PRD, PRI and Independents), available                                                                                                                                        at https://legislacion.scjn.gob.mx/Buscador/Paginas/wfProcesoLegislativoCompleto.aspx?q=V95NcogKxHpUN4 bFbjWt9j8muee4v7g9xqmeAc4IckxeEdPlu8MLP2XcTLligZH5rcjz5B5e+I8if5pLE4OQjg==.

Text in Spanish.

 "*A fin de proteger el valor económico y social de una empresa en crisis, es necesario contar con un procedimiento colectivo que permita maximizar dicho valor y, al mismo tiempo dar un trato equitativo a los acreedores.*"

[22] LCM, Art. 8.

An English translation of Article 8 of the LCM is provided below:

66.     The GLBO dissolution proceeding does not meet the requirements to be considered as a universal and collective proceeding and therefore cannot be characterized as an insolvency proceeding nor a "foreign proceeding" under UNCITRAL rules.

67.     In my opinion, the intended dissolution and liquidation of the Putative Debtor under the GLBO, without giving prior notice to creditors and/or other shareholders, is a major violation of duty on the directors and officers of the Putative Debtor.  This is especially true because the Putative Debtor is a publicly held company in an insolvency situation, with substantial tax, labor and economic obligations against third parties, including domestic and international creditors facing in the aggregate billions of dollars of exposure in real claims, with possible potential personal and criminal implications for parties associated with the filing of the liquidation process under the GLBO and other wrongdoings and possibly fraudulent conveyances committed by the Company, and some of its officers and directors, prior to the filing of such corporate lawsuit that in my view only attempted to avoid the applicability of the *Concursos* Law and, thus, affecting rights and remedies of all creditors otherwise provided in a formal *Concurso* proceeding under the LCM or in a Chapter 11 case.

## IV.    Conclusion

68.     It is my opinion that the only insolvency proceeding that can be characterized as a "foreign proceeding" under Mexican law is the *Concurso Mercantil* provided under the LCM.  The *Concurso Mercantil* is the only collective and universal proceeding providing clear rights and

---

"*The following are, in the following order, supplementary to this law:*
  I.      *The Commercial Code;*
  II.     *The commercial laws;*
  III.    *Special and general trade usages;*
  IV.     *The Federal Code of Civil Procedures, and*
  V.      *The Federal Civil Code.* "

remedies to creditors and, therefore, the only formal procedure that can be deemed as a "foreign proceeding" for recognition purpose.  To the best of my knowledge there are no legal precedents that a simple liquidation proceeding under the GLBO has been considered as a "main insolvency proceeding" for purposes of a Chapter 15 of a Mexican entity.

69.     It is also my opinion that a dissolution and liquidation under the GLBO and, thus, the Mexican Liquidation Proceeding cannot be characterized or deemed as an insolvency proceeding nor as a foreign proceeding as neither the rights or interest of creditors, employees or shareholders are duly protected and no due process of law is afforded.

* * *

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 26th day of August, 2022
in Mexico City, Mexico

*/s/ Alejandro Sainz*
Alejandro Sainz