**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | ) | Chapter 15 / Chapter 11 |
| | ) | |
| Crédito Real, S.A.B. de C.V., SOFOM, E.N.R.,[1] | ) | Case No. 22-10630 (JTD) |
| | ) | Case No. 22-10696 (JTD) |
| | ) | |
| Debtor in a Foreign Proceeding. | ) | |
| | ) | |

**REPLY IN SUPPORT OF (I) VERIFIED PETITION FOR
RECOGNITION OF FOREIGN MAIN PROCEEDING AND (II) MOTION TO DISMISS
THE INVOLUNTARY CHAPTER 11 PETITION**

---

[1]   The last four identifying digits of the tax number and the jurisdiction in which Crédito Real pays taxes is Mexico — 6815.  Crédito Real's corporate headquarters is located at Avenida Insurgentes Sur No. 730, 20th Floor, Colonia del Valle Norte, Alcaldía Benito Juárez, 03103, Mexico City, Mexico.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT .............................................................................................................5

I. The Court Should Grant Recognition to the Mexican Liquidation Proceeding ....................5

    A. The Mexican Liquidation is a "Proceeding"...........................................5

    B. The Mexican Liquidation is "Collective" ...............................................9

        i. The Mexican Liquidation Proceeding is for the benefit of all creditors........................................................................................ 9

        ii. Notice of the Mexican Liquidation Proceeding complied with applicable Mexican law .......................................................... 10

        iii. All stakeholders have been afforded due process by the Mexican courts.................................................................................... 11

    C. The Mexican Liquidation is a Proceeding Related to Insolvency .........................13

    D. The Mexican Liquidation Proceeding is a Court-Supervised Process...................15

    E. Recognition of the Mexican Liquidation Proceeding Would Not be Manifestly Contrary to U.S. Public Policy .............................................17

II. Dismissal of the Chapter 11 Proceeding is Appropriate ....................................20

    A. The Court Lacks Jurisdiction Over Crédito Real...................................20

        i. The Exercise of Jurisdiction Would Impose an Unfair Burden on Crédito Real ....................................................................... 23

        ii. The U.S. Lacks a Strong Interest in Crédito Real's Restructuring ........... 24

        iii. The Involuntary Case Will Not Further Creditors' Interests in Obtaining Convenient and Effective Relief............................................. 24

        iv. Mexico Does Not Have an Interest in a Conflicting Proceeding in the U.S......................................................................................... 25

    B. The AHG Has Failed to Prove Standing to File the Involuntary Case .................26

    C. The Court Should Exercise its Discretion to Dismiss the Involuntary Case under Section 305(a)(1) of the Bankruptcy Code ...................................27

i

|     | i.   | The Mexican Liquidation Proceeding Offers a More Appropriate Forum to Protect the Interests of the Parties | 27 |

i.    The Mexican Liquidation Proceeding Offers a More Appropriate Forum to Protect the Interests of the Parties .............................................. 27

ii.   The Involuntary Case Would Be Administratively Inefficient ................. 28

iii.  The Involuntary Case Lacks a Legitimate Bankruptcy Purpose ............... 29

D.    The Court Should Dismiss the Involuntary Case Under Section 1112(b) ............. 29

E.    The Court Should Dismiss the Involuntary Case Under Section 305(a)(2) of the Bankruptcy Code .............................................................................................. 30

CONCLUSION ...................................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102 (1987) ...........................................................................................................24

*AstroPower Liquidating Trust v. Xantrex Tech., Inc. (In re AstroPower Liquidating Trust)*, 335 B.R. 309 (Bankr. D. Del. 2005)..........................................23

*Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195 (3d Cir. 2006) ................................7

*Burtch v. Opus LLC (In re Opus E. LLC.)*, 698 F. Appx. 711 (3d Cir. 2017) ...........................14

*Equity Broad. Corp. v. Shubert (In re Winstar Commc'ns, Inc.)*, 284 B.R. 40 (Bankr. D. Del. 2002) .............................................................................22

*GMAM Investments Funds Trust I v. Globo Comunicacoes e Participacoes S.A. (In re Globo Comunicacoes e Participacoes S.A.)*, 317 B.R. 235 (S.D.N.Y. 2004) ...............................................................................................22

*In re ABC Learning Ctrs. Ltd.*, 445 B.R. 318 (Bankr. D. Del. 2010) .....................6, 11, 13, 16, 17

*In re ABC Learning Ctrs. Ltd.*, 728 F.3d 301 (3d Cir. 2013) ...................................2, 5, 10, 14, 18

*In re Bd. of Dirs. of Multicanal S.A.*, 314 B.R 486 (Bankr. S.D.N.Y. 2004) ....................... passim

*In re Betcorp Ltd.*, 400 B.R. 266 (Bankr. D. Nev. 2009)........................................ passim

*In re Cenargo Int'l, PLC*, 294 B.R. 571 (Bankr. S.D.N.Y. 2003)...................................21

*In re Compania de Alimentos Fargo, S.A.*, 376 B.R. 427 (Bankr. S.D.N.Y. 2007) .....................30

*In re Condor Flugdienst GmbH*, 627 B.R. 366 (Bankr. N.D. Ill. 2021).........................11

*In re Creative Fin., Ltd.*, 543 B.R. 498 (Bankr. S.D.N.Y. 2016)...................................20

*In re Energy Coal S.P.A.*, 582 B.R. 619 (Bankr. D. Del. 2018) ...................................11

*In re ENNIA Caribe Holding N.V.*, 594 B.R. 631 (Bankr. S.D.N.Y. 2018) ...............................19

*In re Garcia Avila*, 296 B.R. 95 (Bankr. S.D.N.Y. 2003) ............................................19

*In re Gee*, 53 B.R. 891 (Bankr. S.D.N.Y. 1985)..........................................................21

*In re Gold & Honey, Ltd.*, 410 B.R. 357 (Bankr. E.D.N.Y. 2009) ...............................19

*Helicópteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 414-16 (1984)..............................21

iii

*In re Manley Toys Ltd.*, 580 B.R 632 (Bankr. D.N.J. 2018) .................................................. passim

*Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194 (3d Cir. 1991) ....................................21

*In re MMG LLC*, 256 B.R. 544 (Bankr. S.D.N.Y. 2000) .................................................................6

*Nelson v. Mass. Gen. Hosp.*, 2007 U.S. Dist. LEXIS 70455, at *90 (S.D.N.Y.
    Sept. 20, 2007) ........................................................................................................................22

*In re Netia Holdings S.A.*, 277 B.R. 571 (Bankr. S.D.N.Y. 2002) ..................................................6

*In re OAS, S.A.*, 533 B.R 83 (Bankr S.D.N.Y. 2015) ..............................................................18, 19

*In re Oi S.A.*, 587 B.R. 253 (Bankr. S.D.N.Y. 2018) ....................................................................19

*In re Petroforte Brasileiro de Petroleo Ltda.*, 542 B.R. 899 (Bankr. S.D. Fla.
    2015) .........................................................................................................................................18

*In re Rede Energia S.A.*, 515 B.R. 69 (Bankr. S.D.N.Y. 2014) .....................................................19

*Samba v. Int'l Petroleum Prods. & Additives Co. (In re Black Gold S.A.R.L.)*, 635
    B.R. 517 (B.A.P. 9th Cir. 2022) ...............................................................................................20

*In re Suntech Power Holdings* Co., 520 B.R. 399 (Bankr. S.D.N.Y. 2014) ..............................21

*In re Toft*, 453 B.R. 186 (Bankr. E.D.N.Y. 2011) ........................................................................19

*In re Tradex Swiss AG*, 384 B.R. 34 (Bankr. D. Mass. 2008) ......................................................17

*Official Committee of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
    549 B.R. 56 (S.D.N.Y. 2016)....................................................................................................22

*In re Ward*, 201 B.R. 357 (Bankr. S.D.N.Y. 1996) ...............................................................10, 17

*In re Xacur*, 219 B.R. 956 (Bankr. S.D. Tex. 1998) ...............................................................21, 23

*In re Yukos Oil Co.*, 321 B.R. 396 (Bankr. S.D. Tex. 2005) ........................................................30

## STATUTES AND RULES

11 U.S.C. § 101(23) .....................................................................................2, 3, 6, 13, 14, 16

11 U.S.C. § 305(a)(1) ............................................................................................................28, 30

11 U.S.C. § 305(a)(2) .....................................................................................................................31

11 U.S.C. § 1502.............................................................................................................................17

UNCITRAL Model Law.................................................................................................................14

iv

**MISCELLANEOUS**

COLLIER ON BANKRUPTCY P. 101.23 (16th 2022)............................................................................7

HOUSE REPORT ON THE BANKRUPTCY ABUSE PREVENTION AND
CONSUMER PROTECTION ACT OF 2005, H.R. REP. NO. 109-31, pt. I
(2005), reprinted in 2005 U.S.C.C.A.N. 88 ...................................................................................13

Robert Wagstaff (the "**Foreign Representative**"), duly appointed as the foreign representative by Mr. Fernando Alonso-de-Florida Rivero, the court-appointed liquidator (the "**Mexican Liquidator**") of the Special Expedited Commercial proceeding *(Via Sumaria Especial Mercantil)* for the liquidation (the "**Mexican Liquidation Proceeding**") of Crédito Real, S.A.B. de C.V., SOFOM, E.N.R., ("**Crédito Real**") pending in the 52nd Civil State Court of Mexico City (the "**Mexican Court**") under Articles 229, 232, 233, 236 and others of the *Ley General de Sociedades Mercantiles*, as originally published in the *Diario Oficial de la Federación* on August 4, 1934, and last revised on June 14, 2018 (as amended, the "**Mexican Corporations Law**"), respectfully submits this reply (the "**Reply**") (a) in response to the *Objection Of The Ad Hoc Group To The (I) Verified Petition For Recognition Of Foreign Main Proceeding and (II) Motion Of Crédito Real To Dismiss The Involuntary Chapter 11 Petition* [Case No. 22-10696 (JTD), Docket No. 55] (the "**AHG Obj.**")[2] and (b) in support of the *Verified Petition for Recognition of Foreign Main Proceeding* [Case No. 22-10630 (JTD), Docket No. 2] (the "**Verified Petition**")[3] and the *Motion of Crédito Real to Dismiss the Involuntary Chapter 11 Petition* [Case No. 22-10696, Docket No. 5] (the "**Motion to Dismiss**"). The Foreign Representative relies on and incorporates the *Declaration Of Juan Pablo Estrada Michel Pursuant To 28 U.S.C. § 1746* [Case No. 22-10630 (JTD), Docket No. 3] (the "**First Estrada Declaration**"), the *Supplemental Declaration Of Juan Pablo Estrada Michel* [Case No. 22-10630 (JTD), Docket No. 43], (the "**Second Estrada Declaration**"), the *Third Declaration of Juan Pablo Estrada Michel Pursuant To* 28 U.S.C. § 1746 (the "**Third Estrada Declaration**") and the *Declaration of José Ramón Cossío-Díaz in Support*

---

[2]    This Reply also addresses the informal *pro se* objection of Mr. Stanislav Bozhenko dated August 22, 2022, [Case No. 22-10630 (JTD), Docket No. 41] (the "**Bozhenko Letter**").

[3]    Capitalized terms used herein but not otherwise defined shall have the meaning set forth in the Verified Petition.

*of the Verified Petition and Motion to Dismiss* (the "**Cossío-Díaz Declaration**"), and respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The AHG's opposition to the recognition of the Mexican Liquidation Proceeding and insistence that this Court should instead force Crédito Real — a Mexican company, which has the majority of its assets and business in Mexico and which is subject to a Mexican insolvency proceeding — into a U.S. plenary chapter 11 case against its will is without merit and unprecedented.  Despite prior negotiations with the AHG, Crédito Real decided against filing a voluntary chapter 11 case that would have required a $135 million secured DIP loan from members of the AHG (more than half of which was to pay professional fees) to fund what was essentially a liquidating plan.  In reaction to that decision, certain members of the AHG resorted to filing an involuntary bankruptcy petition as a coercive litigation tactic to convince Crédito Real to "ultimately [] transition to voluntary [chapter 11] proceedings."[4]  Such a brazen attempt to weaponize international insolvency laws to force a liquidating Mexican company into an involuntary U.S. chapter 11 case is not a valid defense to the Motion to Dismiss.

2.      The basis for dismissing the Involuntary Case is further strengthened by the filing of the Mexican Liquidation Proceeding, which was commenced in accordance with the laws of Mexico, Crédito Real's home country.  Relying on a number of Mexican legal expert opinions that are largely irrelevant to issues of U.S. law, the AHG argues that recognition is improper because the Mexican Liquidation Proceeding is (i) not a "foreign proceeding" (a position that, as explained below, is not supported by either the statute or precedent), and (ii) manifestly contrary to U.S. public policy (an incredibly high standard that the AHG does not come close to meeting).  The

---

[4]      *Transcript of Status Conference,* August 9, 2022 at 12:13-14.

1

AHG's strategies and arguments are contradictory to fundamental principles of comity, which clearly favor recognition under chapter 15 of title 11 of the U.S. Code (the "**Bankruptcy Code**") of the Mexican Liquidation Proceeding and dismissal of the Involuntary Case.

3.      Indeed, the Mexican Liquidation Proceeding satisfies each of the elements of a "foreign proceeding" under section 101(23) of the Bankruptcy Code, including:

- The Mexican Liquidation Proceeding is a "collective judicial proceeding" as it was commenced in the Mexican Court, which by order appointed the Mexican Liquidator to act as an independent fiduciary empowered to liquidate Crédito Real's assets for the benefit of all of its stakeholders.

- The Mexican Liquidation Proceeding is governed by a "law relating to insolvency" because, among other reasons, it was commenced under the Mexican Corporations Law with the Mexican Court on the basis of a statutory requirement that Crédito Real had lost 2/3 of the value of its capital stock.

- The Chapter 15 Debtor's assets and liabilities are subject to the "supervision" of the Mexican Court, as the Mexican Liquidation Proceeding was commenced and will end by order of that Court and any party in interest can challenge any act by the Mexican Liquidator or seek dismissal of the Mexican Liquidation Proceeding in the Mexican Court.

Indeed, the Third Circuit has affirmed that a substantially similar liquidation proceeding recognized by this Court under chapter 15 was a "foreign proceeding" entitled to recognition.[5]

4.      Ignoring the statute and binding precedent, the AHG instead focuses on the distinctions between the Mexican Liquidation Proceeding and a chapter 11 case.  In doing so, the AHG argues for a standard that was long ago rejected by U.S. courts.  A foreign proceeding need not be the same as a case under the U.S. Bankruptcy Code to be granted chapter 15 recognition. Moreover, the purported gaps that the AHG identifies as alleged fatal "deficiencies" in the Mexican Corporations Law are either supplemented and filled by other applicable Mexican laws and procedures, in accordance with principles of statutory interpretation under Mexico's civil law,

---

[5]     *In re ABC Learning Ctrs. Ltd*., 728 F.3d 301 (3d Cir. 2013) (granting recognition to a similar liquidation proceeding, which was conducted out-of-court under the Australian corporations law).

or are entirely inapplicable.

5.     Moreover, the AHG's due process concerns ring hollow.  Its members received proper notice of the Mexican Liquidation Proceeding under Mexican law but, unlike another stakeholder, they have declined to challenge its commencement in the Mexican Court.  Despite the AHG's complaints, **no Mexican court has determined that creditors lack standing** to complain in the Mexican Liquidation Proceeding.  The AHG has also declined to engage with the Mexican Liquidator in any way and failed to raise any concerns with the  Mexican Court regarding the Liquidator's conduct in the Mexican Liquidation Proceeding.  Instead, just one of its members (Monex) is actively pursuing a constitutional challenge to the Mexican Liquidation Proceeding through an *amparo* process in a Mexican federal court.  While that action has so far not yielded the result the AHG would like, it does not mean the AHG has been denied due process in Mexico.

6.     Attempting to discredit the Mexican Liquidation Proceeding, the AHG proffers Mexican legal experts who opine that the only insolvency law in Mexico is the *Ley Concurso Mercantiles* and then laboriously compare the Mexican Liquidation Proceeding to *concurso*. These expert opinions, however, are irrelevant.  *First*, the definition of "foreign proceeding" under section 101(23) of the Bankruptcy Code is an issue of U.S. — not Mexican — law and is for this Court to decide, not foreign law experts.  *Second*, that a *concurso* proceeding would be entitled to recognition or in the Mexican legal expert's view, is the preferred insolvency proceeding in Mexico does not preclude recognition of the Mexican Liquidation Proceeding by this Court under chapter 15.  Countries (including the U.S.) can and do have more than one proceeding capable of chapter 15 recognition under multiple bodies of law related to insolvency.  Each proceeding must be evaluated on its own merits under the requirements of chapter 15.[6]

---

[6]    Ironically, in spite of all its focus on *concurso*, the AHG then goes on to argue that (i) *concurso* is unavailable to Crédito Real because it lacks the audited financial statements needed to file a *concurso* and (ii) the AHG's

3

7.      The AHG also fails to show how the Mexican Liquidation Proceeding is "manifestly contrary to the public policy of the United States" under section 1506 of the Bankruptcy Code.  Contrary to the AHG's arguments, however, Mexican law does provide for an order and priority of payments of Crédito Reals's liabilities.  The Mexican Liquidator is required to distribute Crédito Real's assets to creditors ahead of shareholders and to secured and other priority creditors before distributions can be made to unsecured creditors.  Mexican law does not permit local creditors to receive preferential treatment or prejudice U.S. creditors in the Mexican Liquidation Proceeding, nor does it allow any shareholder to obtain a release of liability or any distribution ahead of creditors.  To date, the Mexican Liquidator has only made distributions to secured and priority creditors, and no party in interest has sought to challenge these distributions in the Mexican Court.

8.      Finally, the AHG's objection to the Motion to Dismiss fails for five main reasons. *First,* Crédito Real lacks "extensive contacts" with the U.S., as it has limited U.S. assets and no operations, employees or representatives in the United States.  The mere borrowing of U.S. debt and the limited submission to the New York courts in a bond indenture is insufficient to force a plenary U.S. chapter 11 case on this Mexican company.  Indeed, the offering memoranda for the New York Notes clearly disclosed that Mexican insolvency proceedings, including a liquidation, may take place in Mexico.  *Second*, the Involuntary Case is unlikely to be successful, as the Mexican Court has already exercised exclusive jurisdiction over Crédito Real's assets; courts in Mexico will not ignore applicable Mexican law to give effect to orders of this Court.  *Third*, this Court should dismiss this Involuntary Case under either section 305(a)(1) or section 1112(b) of

---

involuntary chapter 11 case against Crédito Real is the U.S. is the sole proceeding to liquidate this Mexican company.

the Bankruptcy Code because the interests of all parties will be better served in the Mexican Liquidation Proceeding. *Fourth*, the Insolvency Case lacks a legitimate restructuring purpose, as it was filed as a negotiation tactic. *Fifth*, should the Court recognize Crédito Real's Mexican Liquidation Proceeding under chapter 15, the purposes of chapter 15 are best served by dismissal of the Involuntary Case as expressly provided by section 305(a)(2) of the Bankruptcy Code.

9.     As the Third Circuit recognized, in enacting chapter 15 of the Bankruptcy Code, Congress' "overriding objective [is to] enable[] courts and insolvency administrators to operate effectively and efficiently in international insolvency cases with the goals of maximizing the value the debtor's global assets."[7] Those objectives are best served here by allowing the Mexican Liquidator to move forward without interference and the Mexican Court to oversee the Mexican Liquidation Proceeding, in accordance with Mexican law. Accordingly, this Court should dismiss the Involuntary Case and recognize the Mexican Liquidation Proceeding under chapter 15.

## **ARGUMENT**

### I.     The Court Should Grant Recognition to the Mexican Liquidation Proceeding

10.     The Mexican Liquidation Proceeding satisfies each of the elements of a "foreign proceeding" under section 101(23) of the Bankruptcy Code,[8] which is broadly construed.[9]

### A.     The Mexican Liquidation is a "Proceeding"

11.     The AHG argues that the Mexican Liquidation Proceeding is not a "proceeding"

---

[7]     *In re ABC Learning Ctrs. Ltd.*, 728 F.3d at 305.

[8]     Section 101(23) of the Bankruptcy Code defines "foreign proceeding" as a "collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation." 11 U.S.C. §101(23). The AHG does not dispute that the Mexican Liquidation Proceeding is pending in Mexico — a foreign country — or that the Mexican Liquidation Proceeding is for the purpose of liquidation, but disputes that all other elements of this definition are met.

[9]     *In re Netia Holdings S.A.*, 277 B.R. 571, 580-81 (Bankr. S.D.N.Y. 2002) ("The language of section 101(23) is broad, and by its terms encompasses a broad array of types of proceedings."); *In re MMG LLC*, 256 B.R. 544, 550 (Bankr. S.D.N.Y. 2000).

because it "does not provide for a statutory framework that imposes meaningful constraints" on Crédito Real.[10]  This is false as courts have held that a process that results in the termination of authority of a company's directors, and is one that, once commenced, cannot be stopped by the shareholders of the debtor is support for finding the existence of a "proceeding" under section 101(23) of the Bankruptcy Code.[11]

12.    Here, the Mexican Liquidator — an independent fiduciary, appointed by the Mexican Court (and ***not*** by the shareholder as alleged by the AHG)— has displaced management and the Board and has assumed control of Crédito Real's affairs for the purpose of liquidating the business.[12]  The Mexican Liquidation Proceeding will end when the Mexican Liquidator has completed liquidating the business, presents the final balance sheet to the Mexican Court and receives an order from the Mexican Court establishing that his appointment and duties have ended.[13]  And while the Mexican Liquidation Proceeding was commenced by the shareholder, it cannot be terminated by that shareholder.[14]

13.    Rather than analyzing the standards for chapter 15 recognition, the AHG instead cherry-picks examples of statutory provisions available under the *Ley Concurso Mercantiles* (the "**LCM**"), but not in the Mexican Liquidation Proceeding, claiming that the statutory framework provided by the Mexican Corporations Law is "deficient" because it does not mirror the LCM. The AHG and its experts' laborious comparisons to, and self-serving conclusions about, the

---

[10]    AHG Obj. ¶ 44 (citing *In re ABC Learning Ctrs. Ltd.*, 445 B.R. at 328).

[11]    *See, e.g.*, *In re Betcorp Ltd.*, 400 B.R. 266, 280 (Bankr. D. Nev. 2009) ("The fact that commencing this type of external administration terminates the authority of the company's directors, combined with the fact that the winding up cannot be stopped by the equity interest holders once they have passed the special resolution, lends further support to a finding that this Australian legal process is a proceeding.").

[12]    First Estrada Decl. ¶ 17.

[13]    Third Estrada Decl. ¶ 14.

[14]    *Id.*

6

"proper" Mexican insolvency process for Crédito Real being a *concurso* are, however, irrelevant.[15] "Courts have construed the definition of 'foreign proceeding' under the Bankruptcy Code broadly."[16]   Foreign countries can have a "multitude" of proceedings "to end a corporation's existence" and U.S. courts evaluate each proceeding on its own merits applying chapter 15's standards.[17]  The foreign law expert testimony submitted by the AHG regarding the application of the UNCITRAL Model Law to the Mexican Liquidation Proceeding purports to opine on a matter of U.S. law — the interpretation of chapter 15 of the Bankruptcy Code — that is for this Court to decide, not foreign law experts.[18]

14.    The alleged "deficiencies"[19] of the Mexican Corporations Law are also misplaced. The statutory provisions the AHG claims are missing from the Mexican Corporations Law are either (i) supplemented by other laws that, in accordance with Mexico's civil law statutory interpretation procedure, can be applied to the Mexican Liquidation Proceeding[20] or (ii) unnecessary in the context of the Mexican Liquidation Proceeding:

i.    Regulation of the final distribution of a debtor's assets:  While not setting forth a detailed priority waterfall, the Mexican Corporations Law is clear that debt must be repaid ahead of equity, and is supplemented by the Mexican Federal Civil Code, which provides that creditors with a lien or other privilege are paid ahead of unsecured creditors.  Consequently, administrative, tax, employee, secured and

---

[15]    AHG Obj. ¶¶ 45, 52-54.

[16]    COLLIER ON BANKRUPTCY P 101.23 (16th 2022).

[17]    *See, e.g.*, *In re Betcorp Ltd.*, 400 B.R. at 278.

[18]    *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006) (finding that the district court "must ensure that an expert does not testify as to the governing law of the case").

[19]    AHG Obj. ¶¶ 41, 45, 49.

[20]    Third Estrada Decl. ¶ 3.  Indeed, U.S. courts have recognized that, in civil law countries, statutes often supplement each other in order to facilitate statutory interpretation and their application.  *In re Bd. of Dirs. of Multicanal S.A.*, 314 B.R 486, 504 (Bankr. S.D.N.Y. 2004) (recognizing that the absence of detailed statutory framework Argentine courts could apply other laws to resolve disputes concerning the law governing the proceeding).

certain other priority claims (including pre-judgment attachments) are paid ahead of general unsecured creditors as a matter of Mexican law.[21]

ii.  <u>Avoidance actions</u>:  While "the prevention of fraudulent dispositions" is not a factor that U.S. courts consider in connection with a request for recognition under section 1517 of the Bankruptcy Code,[22] such protections are available during the Mexican Liquidation Proceeding as parties in interest may pursue avoidance actions under provisions of the Mexican Federal Civil Code.[23]

iii.  <u>Proofs of claim and creditors' rights to contest the validity and priority of claims</u>: No proof of claim process is required in the context of the Mexican Liquidation Proceeding; rather, claims recorded in the company's books and records are presumptively valid without further creditor action.  But creditors are permitted to engage with the liquidator and proffer evidence regarding the quantum of their claim where they disagree with the company's books.  If necessary, creditors can also challenge the allowed amount of their claim, the validity and priority of claims, and any distributions received in a Mexican court.[24]  Despite, the AHG's attempts to superimpose U.S. procedural requirements on the Mexican Liquidation Proceeding, U.S. courts have granted comity to other foreign insolvency regimes that lack a proof of claims process.[25]

iv.  <u>Ability of creditors to negotiate a plan or liquidation with the debtor</u>:  While the purpose of the Mexican Liquidation Proceeding is liquidation rather than reorganization of the company, creditors have the ability to engage with the Mexican Liquidator and may propose the terms of a settlement or other value-maximizing transaction.  The liquidator will consider any such proposal in accordance with his fiduciary duties, which include a duty of care to protect the interests of creditors, inform himself regarding the company, avoid conflicts of interests, and preserve confidential information.  To the extent that creditors are dissatisfied with the liquidator's response to any such proposal, they may seek to challenge the liquidator's conduct in a Mexican court.[26]

---

[21]  Third Estrada Decl. ¶¶ 21-24.

[22]  Instead, Congress provided that this factor applies to a foreign representative's request for additional relief *following* recognition pursuant to section 1507(b)(3) of the Bankruptcy Code.  Even under an analysis section 1507(b)(3), U.S. courts have held that avoidance actions do not need to be identical to U.S. law for a foreign representative to be granted additional relief.  *In re Bd. of Dirs. of Multicanal S.A.*, 314 B.R. at 508  ( "[a]lthough the procedures in Argentina are not identical to the treatment of preferences and fraudulent conveyances under U.S. insolvency law, they need not be.").

[23]  Third Estrada Decl. ¶ 17.

[24]  *Id.* ¶¶ 18, 29-30.

[25]  *In re Bd. of Dirs. of Multicanal S.A.*, 314 B.R. at 509 (finding that proof of claim requirement was unnecessary in Argentinian process where all claims were automatically recognized without the need for any burdensome action by creditors).

[26]  Third Estrada Decl. ¶¶ 20, 32-36.

8

v.  <u>Appointment of an intervenor, examiner or trustee</u>:  The Mexican Liquidator is a fiduciary that is supervised by the Mexican regulators and the Mexican courts and bears personal liability for 10 years for any act that exceeds the scope of his authority.[27]  The appointment of any other estate fiduciary in these circumstances is not necessary and would be redundant.

**B.    The Mexican Liquidation is "Collective"**

15.    The AHG argues that the Mexican Liquidation Proceeding is not "collective" because it "does not contemplate meaningful participation by all creditors" and was commenced by a shareholder.[28]  Not only is the AHG incorrect regarding creditor participation in the Mexican Liquidation Proceeding, but it misstates the standard for a "collective" proceeding and ignores the due process that stakeholders have already been afforded by the Mexican courts in the Mexican Liquidation Proceeding to date.

i.    *The Mexican Liquidation Proceeding is for the benefit of all creditors*

16.    In the Third Circuit a proceeding is "collective" if it "considers the rights and obligations of all creditors" as opposed to being for the benefit of a single creditor or class of creditors.[29]  Here, the Mexican Liquidator owes a paramount duty of care to all creditors and must consider the rights of all creditors in distributing assets according to a statutory priority waterfall that is provided by Mexican law.[30]  Although the AHG notes that the shareholder (Mr. Romanos) commenced the proceeding,[31] the AHG does not and cannot argue that the Mexican Liquidation

---

[27]    *Id.* ¶ 32; Cossío-Díaz ¶ 24.

[28]    AHG Obj. ¶¶ 2, 47.  The Bozhenko Letter falsely contends that the "liquidation of the company via Mexican Court increases the risks that the interests and rights of international bond investors will be violated."

[29]    *ABC Learning Ctrs.*, 728 F.3d at 308.  In articulating this standard, the Third Circuit found that an Australian liquidation was collective "because the liquidator must consider the rights of all the creditors in distributing assets" whereas receivership was not because the receiver "only represents the interests of the secured creditors." *Id.*; *see also In re Manley Toys Ltd.*, 580 B.R. 632, 640 (Bankr. D.N.J. 2018) (finding Hong Kong winding up was collective where liquidator owed duty to all creditors).

[30]    Third Estrada Decl. ¶¶ 31, 34.

[31]    AHG Obj. ¶¶ 49-50.  While the AHG casts aspersions regarding the subjective intent of the shareholder in commencing the Mexican Liquidation Proceeding, the AHG has offered no evidence of the shareholder's motivations and nor are they relevant to the matter before the Court.  Moreover, the AHG does not and cannot

Proceeding is being conducted for Mr. Romanos' sole benefit,[32] or that it can it shield Mr. Romanos from personal civil or criminal liability.[33]  Indeed, U.S. courts have found that various liquidations commenced by shareholders were "collective" proceedings eligible for chapter 15 recognition.[34]

       ii.   *Notice of the Mexican Liquidation Proceeding complied with applicable Mexican law*

17.    The AHG further complains that the Mexican Liquidation Proceeding is not "collective" because creditors did not receive service of process of the commencement of the proceeding in the manner that is required by U.S. law.[35]  Courts, however, do not superimpose U.S. standards of notice on a foreign proceeding; rather, the relevant inquiry is whether notice is adequate under the foreign law.[36]  The Mexican Corporations Law does not require creditors to be formally served with court papers.[37]  Instead, notice of the commencement of a liquidation proceeding and decisions of the Mexican courts affecting the proceeding, including decisions of

---

[32]  While Mr. Sainz does contend that the liquidator's final balance sheet is approved by shareholders rather than creditors (Sainz Decl. ¶ 14), this does not occur where (as here) the dissolution is under the supervision of the Mexican Court.  Third Estrada Decl. ¶ 29.

[33]  Third Estrada Decl. ¶ 14 n. 19.

[34]  *See, e.g.*, *In re Betcorp Ltd.*, 400 B.R. at 278-80  (recognizing Australian liquidation commenced by shareholder resolution); *In re Manley Toys Ltd.*, 580 B.R. at 636, 640 (recognizing Hong Kong liquidation commenced by shareholder resolution); *In re Ward*, 201 B.R. 357, 362 (Bankr. S.D.N.Y. 1996) (recognizing Zambian liquidation proceeding commenced by shareholder resolution and later ratified by creditors).

[35]  AHG Obj. ¶ 47.

[36]  *In re ABC Learning Ctrs. Ltd.*, 445 B.R. at 329 *aff'd* 728 F.3d 301 (finding Australian winding up was a collective proceeding irrespective of lack of notice to certain U.S. creditors where administrators complied with Australian requirements to contact all known creditors and complete publication notice); *In re Manley Toys Ltd.*, 580 B.R. at 641 (granting recognition where objecting creditor did not receive timely notice of creditors' meeting where notice period under Hong Kong law was not violated); *In re Condor Flugdienst GmbH*, 627 B.R. 366, 377 (Bankr. E.D. Ill. 2021) (granting full force and effect to German confirmation order where creditors received notice under German law, and holding that "[w]hile the notice utilized in the Foreign Proceeding was not the same as would have been afforded here, as noted above, it is not necessary for the court to second guess those processes").

[37]  Third Estrada Decl. ¶ 15.  Additionally, while the docket in the Mexican Liquidation Proceeding is not publicly available, counsel for parties in interest can register for electronic docket notifications.  *Id.* n. 21.

identify any provision of Mexican law that would afford the shareholder any release in respect of any alleged personal or criminal liability pursuant to the Mexican Liquidation Proceeding.

10

RLF1 27942059v.1

the liquidator, is given by publication in the Official Gazette, and annotations in the Public

Registry.  Those steps occurred in the Mexican Liquidation Proceeding in accordance with the

notice requirements of Mexican law.[38]

18.    In addition, the AHG and other creditors received actual notice of the

commencement of the Mexican Liquidation Proceeding through service of the Verified Petition in

this Chapter 15 Case.  Courts have found objections to recognition on the basis of alleged concerns

regarding notice particularly unpersuasive where the objecting creditor had actual notice.[39]  The

Mexican Liquidator also provided notice that went above and beyond the requirements of Mexican

law by publicly filing a report with the Mexican Stock Exchange that provided an update on the

progress of the Mexican Liquidation Proceeding.[40]  If any creditor believes it necessary or is unable

or unwilling to resolve matters directly with the Mexican Liquidator, it can challenge the actions

and decisions of the Mexican Liquidator in a Mexican court.[41]

iii.    *All stakeholders have been afforded due process by the Mexican courts*

19.    While the AHG contends that it lacks standing to be heard by the Mexican Court in

respect of the commencement of the Mexican Liquidation Proceeding, it did not even try.[42]

Creditors are afforded ample opportunity to participate in the Mexican Liquidation Proceeding by

---

[38]    Third Estrada Decl. ¶ 15.

[39]    *In re ABC Learning Ctrs. Ltd.*, 445 B.R. at 329, *aff'd* 728 F.3d 301 (overruling creditor's objection that proceeding was not "collective" where notice of foreign proceeding was proper under foreign law and objecting creditor had actual notice and an opportunity to be heard by local courts); *In re Energy Coal S.P.A.*, 582 B.R. 619 (Bankr. D. Del. 2018) (granting recognition to an Italian restructuring plan, despite imperfect notice under foreign law, as interests of creditors were sufficiently protected through other communications).

[40]    The report was filed and served in this Chapter 15 Case as an update under section 1518 of the Bankruptcy Code concurrently with this Reply.  *Statement Notifying the Court of the Developments in the Mexican Liquidation Proceeding Pursuant to 11 U.S.C. 1518 and 28 U.S.C. § 1746* [Case No. 22-10630 (JTD), Docket No. 53].  The Mexican Liquidator will continue filing periodic reports with the Mexican Court regarding the progress of the Mexican Liquidation Proceeding, and the Foreign Representative will continue to file those updates in this Chapter 15 Case.

[41]    Third Estrada Decl. ¶ 30.

[42]    AHG Obj. ¶¶ 2, 3, 47, 59, 67.

11

engaging with the liquidator and by bringing challenges in a Mexican court.[43]

20.     Article 232 of the Mexican Corporations Law expressly provides that all parties in interest have thirty (30) days from the entry of the order commencing the liquidation under the Mexican Corporations Law to challenge its commencement.  Indeed, a shareholder availed itself of these rights and challenged the Mexican Order in an appeal that is currently pending in the Mexican Court.[44]  The AHG received actual notice of the Mexican Order on the same day that it was entered through service of the chapter 15 papers but it did not pursue a similar challenge in the Mexican Court.[45]

21.     Instead, one member of the AHG elected to challenge the Mexican Liquidation Proceeding in Mexico through a constitutional challenge known as an *amparo* in the Mexican federal court system.[46]  Although, the *amparo* process was not, as the AHG suggests, "the only recourse available to creditors"[47] under the Mexican Corporations Law, that was the recourse the AHG chose.  The AHG had notice of exactly what was happening in the Mexican Court, it had multiple options for its challenging those actions and it is actively pursuing one of those options.[48] The fact that the AHG's challenge has not been successful does not mean it did not receive due process.

---

[43]   Third Estrada Decl. ¶¶ 25-30; Cossío-Díaz Declaration ¶¶ 17-19.

[44]   *Id*. ¶ 28.  As set forth in the Second Mexican Law Declaration, appeals are filed directly with the lower state court of first instance that entered the challenged order.  If the lower state court finds that an appeal complies with the legal requirements under the *Código de Comercio* (the "**Mexican Commercial Code**") and Mexican procedural law, it admits and submits such appeal for review by the Mexican Appellate Court (*efecto devolutivo*).  Second Estrada Decl. ¶ 23.

[45]   *Certificate of Service* [Case No. 22-10630 (JTD), Docket No. 38].

[46]   Second Estrada Decl. ¶¶ 14-21.

[47]   AHG Obj. ¶ 47.

[48]   *In re ABC Learning Ctrs. Ltd*., 445 B.R. 318, 329 (Bankr. D. Del. 2010),  *aff'd* 728 F.3d 301 (overruling creditor's objection that proceeding was not "collective" where notice of foreign proceeding was proper under foreign law and objecting creditor had actual notice and an opportunity to be heard by local courts).

12

### C.     The Mexican Liquidation is a Proceeding Related to Insolvency

22.     The AHG further argues that the Mexican Liquidation Proceeding is not "a law related to the insolvency or the adjustment of debts" as required by section 101(23) of the Bankruptcy Code.  This argument runs contrary to the legislative history of both the UNCITRAL Model Law and chapter 15 of the Bankruptcy Code, as well as the precedent in this Circuit.

23.     Congress has instructed that interpretation of chapter 15 should be aided by the Guide to Enactment promulgated by UNCITRAL.[49]  The Guide to Enactment provides that the phrase "or other law relating to insolvency" in Article 2(a) of the UNCITRAL Model Law should be interpreted broadly noting "liquidation and reorganization might be conducted under law that is not labelled as insolvency law (e.g. company law)."[50]  Congress further broadened the types of laws that could qualify for chapter 15 recognition by adding the phrase "or the adjustment of debt" when it defined "foreign proceeding" in section 101(23) of the Bankruptcy Code.  In light of this legislative history, U.S. courts have granted recognition to foreign proceedings commenced under corporations laws.[51]

24.     Here, the Mexican Corporations Law provides for a court-ordered dissolution and liquidation proceeding that is conditioned on an event related to insolvency — the loss by a company of two-thirds of its shareholder capital.[52]  While a company need not be insolvent to

---

[49]     HOUSE REPORT ON THE BANKRUPTCY ABUSE PREVENTION AND CONSUMER PROTECTION ACT OF 2005, H.R. REP. NO. 109-31, pt. I, at 105 (2005), reprinted in 2005 U.S.C.C.A.N. 88, 169 ("Interpretation of this chapter on a uniform basis will be aided by reference to the Guide and the Reports cited therein, which explain the reasons for the terms used and often cite their origins as well.").

[50]     UNCITRAL Model Law on Cross-Border Insolvency with Guide to Enactment and Interpretation, at 73.

[51]     *See, e.g.*, *In re ABC Learning Ctrs. Ltd.*, 728 F.3d at 307-08 (affirming recognition of Australian winding up under Corporations Act ); *In re Betcorp Ltd.*, 400 B.R. at 278 (same).

[52]     Third Estrada Decl. ¶ 7.

13

obtain chapter 15 recognition,[53] the Third Circuit has determined that a similar test —

unreasonably small capital — is an accepted indicia of insolvency.[54]  The Mexican legislators'

intent that an insolvent company may liquidate under the Mexican Corporations Law is also

reflected in the priority rule established by Articles 242-243 of the Mexican Corporations Law,

which provide that shareholders cannot receive a recovery until creditors are paid in full.[55]  Such

a priority rule would be redundant if the Mexican Corporations Law was intended only to facilitate

solvent liquidations.

25.    The legislative history of the Mexican Corporations Law further supports the

statute's application to insolvent liquidations.  The legislative history acknowledges that many

companies (approximately 40%) in Mexico are statistically doomed to fail and therefore a

simplified liquidation procedure was necessary to facilitate the exit of inefficient companies, which

promotes the reuse of resources in more productive activities.[56]

26.    There are also various other provisions of the Mexican Corporations Law (other

than those provisions that provide for the liquidation and dissolution of a company) that render the

general character of the Mexican Corporations Law "a law related to insolvency".  Those

provisions include: the distribution of proceeds of the liquidation of a partnership; the liquidation

priority of shares in the event of capital loss; and restrictions of the ability of companies to pay

---

[53]  *In re Betcorp Ltd.*, 400 B.R. at 282 (granting recognition to solvent winding up proceeding and finding that the "law related to insolvency" requirement of section 101(23) "does not require the company to be either insolvent or to be contemplating using the provisions of the [foreign] law to adjust any debts").

[54]  *See, e.g., Burtch v. Opus LLC (In re Opus E. LLC.)*, 698 F. Appx. 711, 715 (3d Cir. 2017) ("there are three tests for determining whether an organization is solvent at a given point in time: the balance sheet test, the cash flow test and the inadequate capital test . . . an entity has unreasonably small capital if it lacks the ability to generate sufficient profits to sustain operations").

[55]  Third Estrada Decl. ¶¶ 21-22.

[56]  Third Estrada Decl. ¶ 8.

dividends ahead of paying creditors where the company is in financial distress.[57]  The Mexican Corporations Law must also be interpreted as part of the broader statutory framework for liquidation provided by the Mexican Commercial Code and the Mexican Federal Civil Procedure Code, which regulate various additional matters related to insolvency and the adjustment of debt such as a liquidator's ability to adjust a company's debts through negotiating settlements and paying creditors less than the face value of their claims, among other things.[58]

27.     The AHG contends, as a matter of Mexican law, that the Mexican Liquidation Proceeding is not an "insolvency" proceeding because the LCM (which governs a *concurso* proceeding) is Mexico's "specialized legislation that governs insolvency."[59]  But the LCM did not supersede the Mexican Corporations Law — these two statutes, and their alternative regimes for liquidating a company coexist.[60]  While the AHG contends that the Mexican Liquidation Proceeding is not appropriate for an entity of Crédito Real's size or with its capital structure, the AHG can point to no provision of Mexican law that limits a Mexican company being subject to the liquidation procedure provided under the Mexican Corporations Law.  No such limitation exists.[61]

### D.      The Mexican Liquidation Proceeding is a Court-Supervised Process

28.     The AHG claims that the Mexican Liquidator has "unilateral authority to liquidate Crédito Real's assets in his sole discretion without any significant judicial guardrails or oversight."[62]  However, in doing so, the AHG ignores the clear jurisdiction, supervision and

---

[57]   *Id.* ¶ 10.

[58]   *Id.* ¶¶ 11-12.

[59]   AHG Obj. ¶ 52.

[60]   Cossío-Díaz Declaration ¶¶ 20-21, 25-27; Third Estrada Decl. ¶ 13.

[61]   Third Estrada Decl. ¶ 4; Cossío-Díaz Decl. ¶¶ 15-16.

[62]   AHG Obj. ¶ 55.

15

control that the Mexican regulators and Mexican courts exercise over the Mexican Liquidation Proceeding.

29.     U.S. courts have held that the "supervision" requirement of section 101(23) does not require the foreign proceeding to be conducted in-court as a proceeding under the Bankruptcy Code would be.  The fact that liquidators, including the Mexican Liquidator, "proceed with most of their duties without court involvement . . . do[es] not undermine the [foreign] court's supervisory role."[63]  Indeed, in the *Betcorp* and *ABC Learning Ctrs.* decisions cited by the AHG, courts granted recognition to Australian liquidations, even though such proceedings could conceivably be conducted entirely out of court.[64]  The ability of creditors to challenge a liquidator's conduct, including through appeals after the action has been taken by the liquidator, is sufficient to meet the requirement of court supervision.[65]

30.     Here, the Mexican Liquidation Proceeding has a higher level of court supervision than certain other winding up proceedings that have been granted chapter 15 recognition.  The Mexican Liquidation Proceeding was commenced by order of the Mexican Court, and the liquidator was selected and appointed by the Court.[66]  The Mexican Liquidator is an attorney and

---

[63]     *In re ABC Learning Ctrs. Ltd.,* 445 B.R. at 332 (acknowledging that even in a proceeding under the Bankruptcy Code, bankruptcy courts typically give deference to business judgments and do not direct the daily activities of debtors).

[64]     *In re Betcorp Ltd.*, 400 B.R. at 279-80; *In re ABC Learning Ctrs. Ltd.*, 445 B.R. at 332; *see also In re Ward*, 201 B.R. at 361 (recognizing Zambian winding up even though there was no proceeding in court at all).

[65]     *In re Betcorp Ltd.*, 400 B.R. at 284 (finding ability of liquidators and creditors to request a court to determine "any question arising in the winding up of a company" and the ability of any person "aggrieved by an act, omission, or decision of . . . a liquidator to appeal to an Australian court" amounted to supervision by a judicial authority); *In re ABC Learning Ctrs. Ltd.*, 445 B.R. at 332 (same); *In re Ward*, 201 B.R. at 361 (granting recognition to Zambian winding up under section 304 where proceeding was "not strictly a judicial proceeding" but was conducted by a court-sanctioned liquidator and aggrieved persons have access to appellate courts to redress grievances regarding the conduct of the winding up); *In re Manley Toys*, 580 B.R. at 639 (granting recognition to Hong Kong winding up which was "largely administrative in nature" where parties in interest may "access Hong Kong courts to protect their rights").

[66]     Third Estrada Decl. ¶ 5.

an officer of the Mexican Court, and any party in interest can apply to the Mexican Court to seek to remove the liquidator for cause, challenge his decisions or challenge the commencement of the Mexican Liquidation Proceeding itself.[67] Indeed, certain stakeholders (including a member of the AHG) have already done so. Additionally, the Mexican Federal Institute of Business Reorganization Specialists (*Instituto Federal de Especialistas de Concursos Mercantiles* or the "**IFECOM**")[68] performs a supervisory function by assessing the professional qualifications of prospective liquidators approving those professionals who are fit to act as liquidators, and, upon request of any party in interest, monitors a liquidator's performance and adherence to its duties and ethical standards. The list of liquidators is revised on an annual basis, and the IFECOM may remove any liquidator who has not complied with his duties or ethical standards under Mexican law.[69]

### E.   Recognition of the Mexican Liquidation Proceeding Would Not be Manifestly Contrary to U.S. Public Policy

31. For recognition to be denied as being "manifestly contrary to U.S. public policy" under section 1506 the AHG must show "exceptional circumstances concerning matters of fundamental importance"[70]. This is a very high threshold, as "even the absence of certain procedural or constitutional rights will not itself be a bar under § 1506."[71] Although the AHG cites

---

[67]   *Id.* ¶ 36.

[68]   Regulatory authorities are encompassed within the definition of "foreign court" for the purposes of chapter 15 recognition. 11 U.S.C. 1502 (defining "foreign court" as a "judicial *or other authority*"); *In re Betcorp Ltd.*, 400 B.R. at 277-78 ("Insolvency proceedings do not necessarily involve the intervention of a judicial authority; the expression 'court' in this Regulation should be given a broad meaning and include a person or body empowered by national law to open insolvency proceedings."); *In re Tradex Swiss AG*, 384 B.R. 34, 42 (Bankr. D. Mass. 2008) (Swiss Federal Banking Commission held to be a foreign court under chapter 15 because it controls and supervises liquidation of entities, such as a debtor, that are in brokerage trade).

[69]   First Estrada Decl. ¶ 23.

[70]   *In re ABC Learning Ctrs. Ltd.*, 728 F.3d at 309 citing .N. Comm'n on Int'l Trade Law, Guide to Enactment of the UNCITRAL Model Law on Cross—Border Insolvency, ¶ 89, U.N. Doc A/CN.9/442 (1997).

[71]   *In re OAS, S.A.*, 533 B.R. 83, 104 (quoting *Ad Hoc Grp. of Vitro Noteholders v. Vitro SAB de CV* (*In re Vitro SAB de CV*), 701 F.3d 1031, 1069 (5th Cir. 2012)).

to three key principles of U.S. public policy that are supposedly violated, none of these alleged issues warrant denying recognition of the Mexican Liquidation Proceeding under section 1506.

32.     *First*, the AHG complains that the Mexican Liquidation Proceeding is "procedurally unfair" based on an alleged lack of notice and an opportunity to be heard in the Mexican Liquidation Proceeding.[72]   As set forth above, the AHG is wrong.  Creditors received sufficient notice and may challenge the commencement of the Mexican Liquidation Proceeding, challenge any act taken by the Mexican Liquidator, or seek to remove the Mexican Liquidator for cause.  *Supra* ¶¶ 16-21, 30-30.  Chapter 15 courts have repeatedly observed that the ability to challenge actions after they have occurred in a foreign proceeding, including through appellate review, contribute to a finding of due process in foreign proceedings.[73]   The AHG has failed to show how it has been denied due process in Mexico, particularly where one AHG member is actively pursuing its rights in an *amparo* proceeding in the Mexican courts.[74]   *Supra* ¶ 21.

33.     *Second*, the AHG further claims that the Mexican Corporations Law "suffers from substantive flaws" because it lacks priority rules equivalent to those in the U.S.[75]   This is incorrect.  Although a foreign distribution scheme need not be identical to the priority waterfall provided by

---

[72]   AHG Obj. ¶¶ 3, 59, 69.

[73]   *See, e.g.*, *In re ENNIA Caribe Holding N.V.*, 594 B.R. 631, 642 (Bankr. S.D.N.Y. 2018) (finding that due process concerns over lack of adequate notice of foreign emergency restructuring proceeding were obviated by the ability to challenge implementation of the proceeding on appeal in foreign court system); *In re OAS, S.A.*, 533 B.R. at 105  ("Due process is satisfied because these ex parte proceedings and orders are subject to ex post review, just as the consolidation order has been subject to ex post review in Brazil."); *In re Petroforte Brasileiro de Petroleo Ltda.*, 542 B.R. 899, 908 (Bankr. S.D. Fla. 2015) (finding that non-debtors, which were brought into Brazilian insolvency proceeding through an ex parte order, received due process because they were permitted to proceed on appeal).

[74]   The AHG points to no case in which recognition of a foreign proceeding was denied based on procedural issues. All the cases the AHG cites in support of its argument point to a clear conflict between the laws or court order granted in the foreign state and a law or policy in the United States (like granting nonconsensual third party releases (*In re Vitro*), or defying a U.S. bankruptcy court order (*In re Gold & Honey*), or privacy rights (*In re Toft*)).  AHG Obj. ¶¶ 56-57.

[75]   AHG Obj. ¶¶ 3, 60.

the Bankruptcy Code,[76] the order of priority applied in the Mexican Liquidation Proceeding substantially accords with U.S. law.  The Mexican Corporations Law is clear that equity cannot be paid ahead of creditors, local Mexican creditors are not preferred over foreign creditors, and secured and priority creditors are paid ahead of unsecured creditors.  *Supra* ¶¶ 8, 16.  Accordingly, the AHG's concerns that the Mexican Liquidator will make a distribution to Mr. Romanos or other shareholders prior to unsecured creditors is unfounded as it would violate Mexican law.[77] Similarly, the AHG's claims that local creditors have been paid ahead of "other similarly situated creditors,"[78] is misguided conjecture.  All distributions made to date have been to secured and other priority creditors in accordance with the priority waterfall established by Mexican law.[79]

34.    *Third*, the AHG contends that Mr. Romanos "blatantly disregarded" the automatic stay initiated by the Involuntary Case and commenced the Mexican Liquidation Proceeding to "frustrate creditors" for his own benefit.  Not only has the AHG presented no evidence of Mr. Romanos' subjective intent, courts are clear that motivations or "bad acts" that precipitate a foreign proceeding are irrelevant to the court's consideration of whether recognition should be denied under section 1506.[80]  Moreover, the AHG has failed to point to any provision of Mexican law that

---

[76]    *See, e.g.*, *In re Rede Energia S.A.*, 515 B.R. 69, 97 (Bankr. S.D.N.Y. 2014) (enforcing Brazilian plan that authorized distributions with priorities that differ from those provided in the U.S. Bankruptcy Code); *In re Bd. of Dirs. of Telecom Arg., S.A.*, 528 F.3d 162, 173 (2d Cir. 2008) (comity "does not require that foreign proceedings afford a creditor identical protections as under U.S. bankruptcy law"); *In re Garcia Avila*, 296 B.R. 95, 113 (Bankr. S.D.N.Y. 2003) (rejecting creditor's request to deny enforcement of a Mexican plan due to the absence of a Mexican "best interest of creditors" test); *In re Oi S.A.*, 587 B.R. 253, 269 (Bankr. S.D.N.Y. 2018) (enforcing Brazilian restructuring plan notwithstanding disparate treatment of unsecured creditors where such treatment had a reasonable basis and received due process).

[77]    AHG Obj. ¶ 60 .

[78]    AHG Obj. ¶¶ 49, 60.  The Bozhenko Letter also contends that there has not been "equal treatment" of creditors due to payments to certain Mexican banks while international bondholders are not receiving interest.  This argument similarly fails to appreciate the priority waterfall established by Mexican law.

[79]    Third Estrada Decl. ¶ 19.

[80]    *Samba v. Int'l Petroleum Prods. & Additives Co. (In re Black Gold S.A.R.L.)*, 635 B.R. 517, 529 (B.A.P. 9th Cir. 2022) (Collecting cases and observing "[o]nly a handful of courts have addressed whether a foreign debtor's misconduct or 'bad faith' is a proper basis for invoking § 1506 to deny recognition.  Those that have done so have concluded that misconduct or bad faith, standing alone, is insufficient.") (citations omitted); *In re Creative Fin.,*

would provide Mr. Romanos with a personal benefit.  Additionally, Crédito Real acquiesced to the Mexican Liquidation Proceeding based on the indisputable fact that it had lost more than two thirds of its capital stock and was therefore subject to liquidation under the Mexican Corporations Law.[81] Had Crédito Real initiated the Mexican Liquidation Proceeding there would have been no alleged stay violation;[82] denying recognition here would be inequitable and inefficient.  Indeed, courts have recognized foreign proceedings filed shortly after involuntary chapter 11 cases where the debtor's center of main interest is in the foreign jurisdiction to promote the objectives of chapter 15.[83]

## II.     Dismissal of the Chapter 11 Proceeding is Appropriate

### A.     The Court Lacks Jurisdiction Over Crédito Real

35.     As explained in the Motion to Dismiss, the exercise of general jurisdiction by a court is appropriate only when a defendant has had "continuous and systematic general business contacts" with the forum that are of a magnitude and type that make it reasonable to exercise such

---

*Ltd. (In Liquidation)*, 543 B.R. 498, 516 (Bankr. S.D.N.Y. 2016) (declining recognition on other grounds but observing that section 1506 cannot be invoked by reason of bad faith conduct as bad faith filings in chapter 11 cases are not to the level of public policy).

[81]   Second Estrada Decl. ¶ 9.

[82]   *See, e.g.*, *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991) ("Although the scope of the automatic stay is broad, the clear language of section 362(a) indicates that it stays only proceedings *against* a 'debtor' – the term is used by the statute itself.  The statue does not address actions brought by the debtor which would inure to the benefit of the bankruptcy estate.") (citations omitted) (emphasis in original).

[83]   *In re Cenargo Int'l, PLC*, 294 B.R. 571 (Bankr. S.D.N.Y. 2003) (deferring to English proceedings filed in violation of automatic stay where all parties other than U.S. creditors agreed that the English proceeding would be the most efficient and effective way to reorganize the company); *In re Suntech Power Holdings* Co., 520 B.R. 399 (Bankr. S.D.N.Y. 2014) (granting recognition to provisional liquidation under Cayman law, which was filed after involuntary chapter 7 petition); *see also In re Bd. of Dirs. of Multicanal S.A.*, 314 B.R at 491 (dismissing involuntary proceeding in favor of recognition under chapter 15's predecessor statute where it "would not be appropriate or feasible to attempt the involuntary reorganization of an Argentine company in a U.S. Chapter 11 case" where the U.S. case would conflict with, rather than complement, the Argentine insolvency proceeding); *see also In re Gee*, 53 B.R. 891, 904 (Bankr. S.D.N.Y. 1985) (dismissing involuntary chapter 11 proceeding where recognition of Cayman liquidation under chapter 15's predecessor statute would "best assure an economical and expeditious administration of the estate").

jurisdiction.[84]  Here, Crédito Real lacks the "extensive contacts" with the United States warranting

the exercise of general jurisdiction.[85]  Although the AHG argues otherwise, none of the activities

cited by the AHG are sufficient to confer the general jurisdiction necessary to establish the plenary

powers in a bankruptcy case.

36.    *First*, contrary to the AHG's pleas otherwise,[86] the borrowing of money in the U.S.

for capital or operating purposes, is incidental to Crédito Reals' primary business and does not

amount to a continuous business contact.[87]  Nor does that jurisdiction exists because Crédito Real

has a bank account in the United States.[88]  Indeed, the decision the AHG relies on, *Official

Committee of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank,*[89] analyzed whether the

court had *specific jurisdiction* over a claim related specifically to a U.S. bank account.  The court

declined to consider whether the bank account established general jurisdiction.[90]

37.    *Second*, the AHG and the Bozhenko Letter rely on a contractual forum selection

clause to argue that Crédito Real has submitted to this Court's jurisdiction.  Under the documents

governing the New York Notes, Crédito Real did submit to the jurisdiction of the New York courts

---

[84]    *Helicópteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 414-16 (1984).

[85]    *See In re Xacur*, 219 B.R. 956, 966 (Bankr. S.D. Tex. 1998) (dismissing involuntary chapter 11 petition where jurisdiction over debtor did not exist).

[86]    AHG Obj. ¶ 82.

[87]    *See Nelson v. Mass. Gen. Hosp.*, 2007 U.S. Dist. LEXIS 70455, at *90 (S.D.N.Y. Sept. 20, 2007) (dismissing complaint for lack of personal jurisdiction and stating that "[t]here are numerous cases in which corporations that raised capital . . . in New York were not deemed subject to general jurisdiction").  The case cited by the AHG, *GMAM Investments Funds Trust I v. Globo Comunicacoes E Participacoes S.A. (In re Globo Comunicacoes E Participacoes S.A.)*, 317 B.R. 235, 258 n.16 (S.D.N.Y. 2004) did not make a finding as to jurisdiction, and cautioned that "unique nature of an involuntary bankruptcy action" may weigh against finding jurisdiction based on the decision to raise capital in the United States.

[88]    AHG Obj. ¶ 84.

[89]    549 B.R. 56, 70 (S.D.N.Y. 2016) (involving a claim asserted that the bank account was used to fund terrorist attacks facilitated by the defendant).

[90]    *Id.* at 63 n.9 ("[f]rom the outset of the adversary proceedings, the Committee acknowledged that the Complaint failed to plead a prima facie case with regard to general jurisdiction").

21

with respect to all disputes under the relevant indenture and notes.  It did not, however, submit to a plenary U.S. bankruptcy case that necessarily would involve the reorganization of Crédito Real's Mexican assets and operations, impacting all creditors' rights—including creditors outside of the United States—as against the debtor with the goal of restructuring Crédito Real's debt and rehabilitating its business.[91]  The AHG cites no authority finding general jurisdiction to adjudicate an involuntary chapter 11 case involving a foreign debtor on account of a forum selection clause in a debt document.  Instead, it relies on *AstroPower Liquidating Trust v. Xantrex Technology, Inc. (In re AstroPower Liquidating Trust)*,[92] which again concerned whether a bankruptcy court had *specific jurisdiction* over a defendant in an adversary proceeding.

38.    *Third*, although the AHG argues that jurisdiction exists because Crédito Real has a subsidiary in the United States, Credito Real USA, Inc.,[93] the mere existence of assets within a forum do not create general jurisdiction.[94]  Indeed, Crédito Real USA, Inc. and its subsidiaries collectively accounted for a mere 8% of the Company's total loan portfolio.[95]

39.    Moreover, despite the AHG's protests, the exercise of personal jurisdiction over Crédito Real would not be fair or reasonable.  In assessing whether jurisdiction exists over an involuntary chapter 11 debtor, the *Xacur* court considered "the burden on the defendant, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and

---

[91]    *See Equity Broad. Corp. v. Shubert (In re Winstar Comm'ns)*, 284 B.R. 40, 43-4, 52 (Bankr. D. Del. 2002) (finding that party did not consent to bankruptcy court jurisdiction by entering into purchase agreement and release agreement with a jurisdictional provision for any "proceeding or claim brought by any other party pursuant to this Agreement" that "omits any reference to Bankruptcy Court jurisdiction").

[92]    335 B.R. 309 (Bankr. D. Del. 2005).

[93]    The Bozhenko Letter makes a similar point, seeking to draw attention to the company's operations outside of Mexico "including in the United States, Costa Rica, Honduras, Nicaragua and Panama."

[94]    *See In re Xacur*, 219 B.R. at 966 (dismissing involuntary petition and finding that the exercise of jurisdiction would be unfair and ineffective where most of debtor's assets were in Mexico).

[95]    Motion to Dismiss ¶ 13; *Declaration of Robert Wagstaff* [Case No. 22-10842 (DSJ), Docket No. 7] ¶ 19.

22

effective relief, and the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction."[96]    Each of these factors suggests that the exercise of personal jurisdiction here would be neither fair nor reasonable.

i.    *The Exercise of Jurisdiction Would Impose an Unfair Burden on Crédito Real*

40.    The AHG argues that the exercise of jurisdiction in this case would not impose an unfair burden because "Crédito Real's legal counsel is based in the United States and regularly appears on behalf of clients in chapter 11 proceedings before this Court."[97]    Under that theory, no involuntary chapter 11 case could ever impose an unfair burden.    The AHG further argues that travel from Mexico to Delaware is not "overly difficult" and notes the increased use of virtual proceedings resulting from the COVID-19 pandemic.[98]    Again, the suggestion that the mere existence of air travel and Zoom meetings alleviates all burden is unpersuasive.    To the contrary, the burden on Crédito Real here is significant, as all of the personnel who would be required to participate in the involuntary chapter 11 case are located in Mexico.[99]    The AHG ignores the substantial body of authority finding that the unique burden placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of extending personal jurisdiction.[100]

41.    In its argument that the Involuntary Case would not be burdensome, the AHG also repeats its unfounded attacks on the Mexican Liquidation Proceeding,[101] each of which were

---

[96]    *In re Xacur*, 219 B.R. at 967-68.

[97]    AHG Obj. ¶ 89.

[98]    *Id.* ¶ 90.

[99]    *Declaration of Robert Wagstaff* [Case No. 22-10842 (DSJ), Docket No. 7] ¶¶ 15-16.

[100]    *See Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 114 (1987) ("The unique burden placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching long arm personal jurisdiction over national borders.").

[101]    AHG Obj. ¶ 92.

rebutted above.[102]   Given that Crédito Real already is liquidating under Mexican law in the

Mexican Liquidation Proceeding (and seeking recognition of the Chapter 15 Case), proceeding

with this Involuntary Case in the United States would only needlessly dissipate estate assets.[103]

> ii.   *The U.S. Lacks a Strong Interest in Crédito Real's Restructuring*

42.    The U.S. has no real interest in presiding over this restructuring, as Crédito Real

has limited assets in the United States, and does not have any operations, employees or

representatives in the United States.  The AHG does not contend otherwise, and only focuses on

alleged harm to creditors in the United States[104] — ignoring the substantial number of Crédito

Real's creditors located outside of the U.S.[105]  The AHG itself only represents a fraction of

bondholders (under 17% of the bonds),[106] and an even smaller fraction of all creditors of Crédito

Real.  Unable to establish a strong U.S. interest in the restructuring of Crédito Real and ignoring

the U.S. courts' long history of respecting foreign insolvency proceedings,[107] the AHG instead

repeats its litany of unfounded attacks on the Mexican Liquidation Proceeding.[108]

> iii.   *The Involuntary Case Will Not Further Creditors' Interests in Obtaining Convenient and Effective Relief*

43.    With no operations and limited assets in the U.S., there is no prospect for a

successful reorganization of Crédito Real in this forum, especially given the strong likelihood that

---

[102]   *Supra* ¶¶ 14, 16, 17-21, 32.

[103]   *See In re Bd. of Dirs. of Multicanal S.A.*, 314 B.R 486, 522 (Bankr. S.D.N.Y. 2004) (noting that a "central purpose" of the modified universality approach of the Bankruptcy Code is to avoid the waste and inefficiency of multiple proceedings).

[104]   AHG Obj. ¶ 93.

[105]   Verified Petition ¶ 23 (noting that the vast majority of the Putative Debtors' 300 trade creditors are located in Mexico).

[106]   *See Verified Statement Pursuant to Bankruptcy Rule 2019* [Docket No. 22-10696 (JTD), Docket No. 27].

[107]   *See, e.g.*, *Multicanal*, 314 B.R. at 501, 521 ("U.S. courts have recognized that foreign courts have an interest in presiding over the insolvency proceedings of their own domestic business entities to promote the systematic distribution of a debtor's assets").

[108]   AHG Obj. ¶ 94.

the Mexican Court will not give effect to orders of this Court.[109]  Without the cooperation of the

Mexican Court, which has already asserted exclusive jurisdiction over Crédito Real's estate, and

which can exercise *in rem* jurisdiction over most of the Company's assets, any attempt by this

Court to restructure Crédito Real's business would be futile.[110]  In response, the AHG again

incorrectly argues that the Mexican Liquidation Proceeding is insufficient because it deprives the

AHG of notice and an opportunity to be heard.[111]  But the AHG is simply ignoring the issue of

enforceability.  Regardless of the AHG's provincial complaints about due process (which are

wrong — *Supra* ¶¶ 14, 16, 17-21, 32), the AHG does not explain how it will obtain convenient and

effective relief without the cooperation of the Mexican Court.  The AHG cannot square its desire

to impose an involuntary U.S. chapter 11 case on Crédito Real with the obvious practical reality

of the situation.

> iv.    *Mexico Does Not Have an Interest in a Conflicting Proceeding in the U.S.*

44.    The AHG launches parochial attacks on the Mexican Liquidation Proceeding by

claiming that Mexican interests would be best served by a court in the U.S. assuming

jurisdiction.[112]  The AHG claims that "Mexico has an interest in preserving actual and perceived

fairness of its own legal system" and suggests that the involuntary chapter 11 case is the solution.[113]

To the contrary, if any unfairness arises during the course of the Mexican Liquidation Proceeding,

it is for a Mexican court to address.  The AHG effectively concedes as much, noting two pending

---

[109]    Third Estrada Decl. ¶ 37.

[110]    *Cf. Multicanal S.A.*, 314 B.R. at 521 (in dismissing the U.S. case under section 305, the court found that concurrent proceedings in Argentina and the United States would "hinder rather than advance an equitable distribution," noting that "a concurrent U.S. case would be deemed to conflict with, rather than complement [Argentine law], and that it would receive no recognition in Multicanal's home country . . . to the extent it purported to administer assets in Argentina.").

[111]    AHG Obj. ¶ 96.

[112]    *Id.* ¶ 98.

[113]    *Id.* ¶ 100.

actions challenging the Mexican Liquidation Proceeding.[114]    Rather than assume that Mexican

courts are incapable of establishing a fair process for the liquidation of a Mexican corporation, the

Court should instead defer to the Mexican courts' resolutions of those appeals.

**B.    The AHG Has Failed to Prove Standing to File the Involuntary Case**

45.    Section 303 of the Bankruptcy Code sets forth the minimum number of creditors

required to commence an involuntary case and contains restrictions as to which types of creditors

may commence an involuntary bankruptcy case.  Among other things, Section 303(b)(1) provides

that an involuntary case may be commenced:

> by three or more entities, each of which is either a holder of a claim against such
> person that is not contingent as to liability or the subject of a bona fide dispute as
> to liability or amount, or an indenture trustee representing such a holder, if such
> noncontingent, undisputed claims aggregate at least $15,775 more than the value
> of any lien on property of the debtor securing such claims held by the holders of
> such claims.

46.    In its Objection, the AHG does not dispute that it is their burden to establish

eligibility under section 303(b) of the Bankruptcy Code.  Yet two of the three AHG petitioners —

Institutional Multiple Investment Fund LLC and VP Fund Solutions (Liechtenstein) AG — have

not provided appropriate evidence of their holdings. They either did not have such evidence, or

ostensibly elected not to provide it when they filed the Involuntary Case.

47.    The AHG also argues that a declaration attaching account statements is sufficient

evidence of the beneficial ownership of a bond.[115]    While tacitly acknowledging that the

declarations attached to the involuntary petition did not satisfy this standard, the AHG belatedly

attempts to cure the defective evidence for one of the two bondholders, Institutional Multiple

---

[114]    *Id.* ¶ 101.

[115]    *Id.* ¶ 105.

Investment Fund LLC, by now providing account statements.[116]    Even with that additional

statement, the AHG has still failed to establish that the Involuntary Case was filed by "three or

more entities."  The second purported bondholder, VP Fund Solutions (Liechtenstein) AG, failed

to provide a declaration with a supporting account statement; its only evidence is a letter from a

Liechtenstein bank to "Solitaire Global Bond Fund" purporting to confirm bond holdings.  Not

only is the letter not an account statement, but the name of the addressee on the letter differs from

the name of the entity listed on the involuntary petition, "Solitaire Fund," that is purportedly

managed by VP Fund Solutions (Liechtenstein) AG.  Thus, the AHG has failed to meet its

evidentiary burden under section 303(b).

### C.    The Court Should Exercise its Discretion to Dismiss the Involuntary Case under Section 305(a)(1) of the Bankruptcy Code

48.    Should the Court find that it does have jurisdiction and the AHG has standing, the

Court should nevertheless dismiss the Involuntary Case in the exercise of its discretion because

the interests of Crédito Real and its creditors will be better served by dismissal.[117]    Indeed, the

AHG concedes that deference to a foreign court is appropriate where — as here — the foreign

proceedings are procedurally fair and do not contravene the laws or public policy of the U.S.[118]

### i.    *The Mexican Liquidation Proceeding Offers a More Appropriate Forum to Protect the Interests of the Parties*

49.    Although the AHG argues that the Mexican Liquidation Proceeding "fails to

adequately protect the interests of [Crédito Real's] creditors,"[119] as explained above, the Mexican

Liquidation Proceeding affords ample due process to all creditors and parties in interest.

---

[116]    *Id.* ¶ 107.

[117]    *See* 11 U.S.C. § 305(a)(1) ("The court, after notice and a hearing, may dismiss a case under this title, at any time if . . . the interests of creditors and the debtor would be better served by such dismissal.").

[118]    AHG Obj. ¶ 28.

[119]    *Id.* ¶ 67.

27

*Supra* ¶¶ 14, 16, 17-21, 32.  Also as explained above, and contrary to the AHG's arguments,[120] the Mexican Liquidation Proceeding was commenced by reason of Crédito Real's insolvency and is pending under a law related to insolvency.  *Supra* ¶¶ 22-27.  Finally, the AHG's suggestion that the Mexican Liquidation Proceeding was not foreseeable is unpersuasive.[121]  The offering memoranda for the New York Notes clearly stated that Crédito Real is "incorporated in Mexico, and most of our assets and operations are located in Mexico.  As a result we are subject to political, economic, legal and regulatory risks specific to Mexico." [122]  The offering memoranda even acknowledged that Crédito Real may be liquidated pursuant to applicable Mexican law.[123]

### ii.    *The Involuntary Case Would Be Administratively Inefficient*

50.    The AHG also claims that the Involuntary Case would not be administratively inefficient.  But the vast majority of parties interested in Crédito Real's liquidation are in Mexico.  Requiring the parties in interest to appear in this Court, whether remotely or otherwise, would be administratively inefficient.   Additionally, without the support of evidence or logic, the AHG suggests that Mexican courts will enforce the orders of this Court, and ignore their own.[124]  The best the AHG can muster is a weak attempt to distinguish *Multicanal* on the basis that the Mexican Liquidation Proceeding is less developed than the Argentine law in that case.  But the *Multicanal* court based its decision not on the perceived quality of the foreign insolvency regime, but largely on "[t]he inability of [that] Court to force the rehabilitation of this debtor over its objection."[125]  .

---

[120]  *Id.* ¶ 68.

[121]  *Id.* ¶ 70.

[122]  Offering    Memorandum    for    8%    Senior    Notes    due    2028,    available    at http://cdn.investorcloud.net/creal/InformacionFinanciera/Prospectos/Notas-2028.pdf at 50, 52.

[123]  *Id.* at 52 (describing Putative Debtor's payment obligations where "the Issuer is actually declared bankrupt or dissolved or put into liquidation for purposes of Mexican law").

[124]  AHG Obj. ¶ 72.

[125]  *Multicanal, S.A.*, 314 B.R. at 523.

Many other courts have reached similar conclusions.[126]

> iii.    *The Involuntary Case Lacks a Legitimate Bankruptcy Purpose*

51.     As explained in the Motion to Dismiss, the AHG has commenced this Involuntary Case as a negotiation tactic rather than for purposes of reorganizing the debtor, which weighs in favor of dismissal.[127]   In response, the AHG admits that it filed the Involuntary Case in response to the actions of Crédito Real in connection with the parties' negotiations.[128]    Accordingly, dismissal of this proceeding is appropriate for lack of a true restructuring purpose.

### D.    The Court Should Dismiss the Involuntary Case Under Section 1112(b)

52.     The same reasons that support dismissal under section 305(a)(1) also support dismissal for cause under section 1112(b) of the Bankruptcy Code.[129]   Most of Crédito Real's assets and businesses are located in Mexico.   This Court is not uniquely qualified to resolve the issues the Involuntary Case would present, and it is unclear whether the Court's orders would be enforced in Mexico even if the Involuntary Case continued.   Nor is there any evidence that the Involuntary Case would be in the "best interest of creditors and the estate" under section 1112(b) given the proceeding underway in Mexico.   Accordingly, dismissal under section 1112(b) is appropriate.   The AHG's only response to these facts is to again attack and mischaracterize the nature of the Mexican Liquidation Proceeding.[130]   Notwithstanding the AHG's contentions (all of which are refuted herein), the Mexican Liquidation Proceeding is the most appropriate forum for

---

[126]   Motion to Dismiss ¶ 56.

[127]   *In re Compania de Alimentos Fargo, S.A.*, 376 B.R. 427, 440 (Bankr. S.D.N.Y. 2007) (finding a petition was filed for an improper purpose where the parallel chapter 11 case would "hijack" the foreign proceeding in an effort to "increase [petitioners'] leverage in any negotiations.").

[128]   AHG Obj. ¶ 74.

[129]   *See In re Yukos Oil Co.*, 321 B.R. 396, 407 (Bankr. S.D. Tex. 2005) (noting that both section 305 and section 1112 provided the "procedural mechanisms" for dismissal).

[130]   AHG Obj. ¶ 75.

the liquidation of Crédito Real.  Accordingly, dismissal under section 1112(b) is appropriate.

**E.     The Court Should Dismiss the Involuntary Case Under Section 305(a)(2) of the Bankruptcy Code**

53.     Section 305(a)(2) of the Bankruptcy Code provides as follows:

> (a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if . . .
> (2) (A) a petition under section 1515 for recognition of a foreign proceeding has been granted; and
> (B) the purposes of chapter 15 of this title would be best served by such dismissal or suspension.

11 U.S.C. § 305(a)(2).

54.     As set forth in the Motion to Dismiss,[131] if this Court grants the Verified Petition recognizing the Mexican Liquidation Proceeding, the Court should dismiss the Involuntary Case because doing so would best serve the purposes of chapter 15.

## CONCLUSION

55.     For the reasons set forth herein the Court should overrule the Objection and grant the Verified Petition and the Motion to Dismiss.

*[Remainder of Page Intentionally Left Blank]*

---

[131]   Motion to Dismiss ¶ 59.

Dated: September 14, 2022

Respectfully submitted,


/s/ *Amanda R. Steele*

**RICHARDS, LAYTON & FINGER, P.A.**

Mark D. Collins (No. 2981)
John H. Knight (No. 3848)
Paul N. Heath (No. 3704)
Amanda R. Steele (No. 5530)
920 North King Street
Wilmington, DE 19801
Telephone:  (302) 651-7700
Facsimile:   (302) 651-7701
collins@rlf.com
knight@rlf.com
heath@rlf.com
steele@rlf.com

*Co-Counsel to the Foreign Representative*

**WHITE & CASE LLP**

John K. Cunningham (*pro hac vice* pending)
J. Christopher Shore (*pro hac vice* pending)
Philip M. Abelson (*pro hac vice* pending)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
jcunningham@whitecase.com
cshore@whitecase.com
philip.abelson@whitecase.com

Richard S. Kebrdle (*pro hac vice* pending)
Jason N. Zakia (*pro hac vice* pending)
Jesse Green (*pro hac vice* pending)
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
rkebrdle@whitecase.com
jzakia@whitecase.com
jgreen@whitecase.com

*Co-Counsel to the Foreign Representative*