**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 15 / Chapter 11 |
| Crédito Real, S.A.B. de C.V., SOFOM, E.N.R.,[1] | Case No. 22-10630 (JTD)<br>Case No. 22-10696 (JTD) |
| Debtor in a Foreign Proceeding. | |

**THIRD DECLARATION OF**
**JUAN PABLO ESTRADA MICHEL PURSUANT TO 28 U.S.C. § 1746**

I, Juan Pablo Estrada Michel, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct to the best of my knowledge, information and belief:

1.    I am a Mexican citizen, founding partner of the Mexico-based law firm of López Melih y Estrada, and member in good standing of the Mexican Bar Association.

2.    I hereby submit this third declaration (the "**Third Estrada Declaration**")[2] in support of the *Verified Petition for Recognition of Foreign Main Proceeding* [ECF No. 2] (the "**Verified Petition**") filed by Robert Wagstaff (the "**Petitioner**" or the "**Foreign Representative**"), duly appointed as the foreign representative by Mr. Fernando Alonso-de-Florida Rivero, the court-appointed liquidator (the "**Mexican Liquidator**") of the Special Expedited Commercial proceeding *(Via Sumaria Especial Mercantil)* for the dissolution and liquidation (the "**Mexican Liquidation Proceeding**") of Crédito Real, S.A.B. de C.V., SOFOM,

---

[1]    The last four identifying digits of the tax number and the jurisdiction in which Crédito Real pays taxes is Mexico — 6815.  Crédito Real's corporate headquarters is located at Avenida Insurgentes Sur No. 730, 20th Floor, Colonia del Valle Norte, Alcaldía Benito Juárez, 03103, Mexico City, Mexico.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Reply or the First Estrada Declaration, as applicable.

E.N.R., ("**Crédito Real**")[3] pending in the 52nd Civil State Court of Mexico City (the "**Mexican Court**") pursuant to Articles 229, 232, 233, 236 and others of the *Ley General de Sociedades Mercantiles*, as originally published in the *Diario Oficial de la Federación* on August 4, 1934 and last revised on June 14, 2018 (as amended, the "**Mexican Corporations Law**" or "**LGSM**") and in further support of the *Reply in Support of (I) Verified Petition for Recognition of Foreign Main Proceeding and (II) Motion of the Putative Debtor to Dismiss the Involuntary Chapter 11 Petition* (the "**Reply**"), filed contemporaneously herewith.  I also rely on and incorporate my *Declaration Of Juan Pablo Estrada Michel Pursuant To 28 U.S.C. § 1746* [Case No. 22-10630 (JTD), Docket No. 3] (the "**First Estrada Declaration**") and my *Supplemental Declaration Of Juan Pablo Estrada Michel* [Case No. 22-10630 (JTD), Docket No. 43] (the "**Second Estrada Declaration**"). I also reviewed and make reference to: the *Objection Of The Ad Hoc Group To The (I) Verified Petition For Recognition Of Foreign Main Proceeding And (II) Motion Of Crédito Real To Dismiss The Involuntary Chapter 11 Petition* [Case No. 22-10696 (JTD), Docket No. 55] (the "**AHG Obj.**"); the *Declaration of Alejandro Sainz in Support of the Objection of the Ad Hoc Group to the (I) Verified Petition for Recognition of Foreign Main Proceeding and (II) Motion of the Putative Debtor to Dismiss the Involuntary Chapter 11 Petition* [Case No. 22-10696 (JTD), Docket No. 56] (the "**Sainz Decl.**"); and the *Declaration of Luis Manuel Camp Méjan Carrer* [Case No. 22-10696 (JTD) Docket No. 58] (the "**Méjan Declaration**").

I.      **Mexico's Civil Law System**

3.      Mexico operates under a civil law system.  As such, there is a complex statutory and constitutional framework designed to provide a solution to any case from both a substantive

---

[3]      The term "Chapter 15 Debtor" is used in the context of this omnibus reply to refer to Crédito Real, S.A.B. de C.V., SOFOM, E.N.R in the context of Case No. 22-10630 (JTD) (the "**Chapter 15 Case**") and the term "Putative Debtor" refers also to the Chapter 15 Debtor in the context of the involuntary chapter 11 Case No. 22-10696 (JTD) (the "**Involuntary Case**") transferred to this Court.

and procedural standpoint.  Indeed, Mexican law does not require that a single statute or code regulation govern a case.  When the Mexican Corporations Law is silent on any issue in dispute, other statutes play a supplemental role and operate to fill any gap, in accordance with Mexico's well-established civil law tradition.

**A.      Additional Information Concerning the Mexican Liquidation Proceeding and Mexican Corporations Law**

*1.   Liquidation under the Mexican Corporations Law is not limited to small businesses*

4.      As I discussed in my First Estrada Declaration, the Mexican Corporations Law regulates the life cycle of a Mexican company.  Mr. Saniz claims that the Mexican Corporations Law is intended to provide for a "simplified proceeding," which the AHG contends renders the Mexican Corporations Law "not applicable for restructurings" or companies with "complex" capital structures.  Sainz Decl. ¶ 9.  However, there is no provision of the Mexican Corporations Law that limits its application in this manner.  In fact, the Mexican Corporations Law is applicable more broadly than a simple governance structure for dissolutions — it governs everything related to corporate existence.  Moreover, there is nothing in the *Ley Concurso Mercantiles* (the "**LCM**"), the law which governs *concurso* proceedings, that requires a liquidation of a Mexican company, "complex" or not, to be conducted solely under the LCM.

*2.   The Mexican Liquidation Proceeding is subject to heightened scrutiny by the Mexican Court and is subject to special procedures because it was commenced by a Court order*

5.      While Mr. Sainz notes that the "common practice is that shareholders would decide to dissolve and liquidate the company" under the Mexican Corporations Law, he recognizes that the dissolution of a company "in rare cases" can be ordered by a competent court.  Sainz Decl. ¶ 12. The Mexican Liquidation Proceeding is such a "rare case."  When a company is placed into a dissolution and liquidation proceeding by court order, the proceeding is subject to an inherently

3

higher level of court supervision than what Mr. Sainz outlines in his declaration.  The Mexican

Liquidation Proceeding of the Chapter 15 Debtor was commenced by order of the Mexican Court,

and the Mexican Liquidator (a well-recognized Mexican insolvency attorney and an officer of the

Court) was selected and appointed by the Court (and <u>not</u> by a shareholder).

6.      Additionally, Mr. Sainz focuses on explaining the ordinary process for liquidation

and dissolution where the dissolution is approved by an Extraordinary Shareholder Meeting and

shareholders appoint the liquidator rather than the Court.  However, as I explain below certain

additional and special procedures apply to the Mexican Liquidation Proceeding because it was

commenced by order from the Mexican Court in a case initiated by a sole shareholder.[4]

>    3.  *The Mexican Liquidation Proceeding is Under a Law (the Mexican*
>        *Corporations Act) Relating to an Insolvency Proceeding*

7.      The Mexican Corporations Law relates to insolvency and the adjustment of debt in

a number of ways.  As a preliminary matter, while a company does not need to be insolvent to

liquidate under the Mexican Corporations Law, one of the statutory triggers for the liquidation of

a Mexican company under the Mexican Corporations Law is that the company has lost two-thirds

of its shareholder capital.  Article 229.V ("The business entities shall dissolve . . . for the loss of

two thirds of the shareholders' capital").

8.      Indeed, the legislative history of the Mexican Corporations Law acknowledges that

many companies (approximately 40%) in Mexico are statistically doomed to fail and as such the

---

[4]      Roberto Mantilla Molina, one of the most recognized scholars on Commercial Law in Mexico, analyzed this scenario in *Derecho Mercantil* (Ed. Porrúa, p. 457) and comments that "It is not true that a company that wishes to avoid dissolution could avoid it… at least, while the cause for dissolution exists, any interested party could obtain a judicial declaration for dissolution…In my opinion, in the case of shareholder's capital loss: no one could be forced to remain in the company if they do not wish to, after its failure has been demonstrated through the loss of two thirds of the capital stock." and also "I do not consider that an agreement by a shareholder's meeting is required for dissolution under Mexican Law regarding the dissolution causes established on sections II, IV and V of article 229: no legal provision says so."

liquidation procedure was necessary to facilitate the exit of inefficient companies, which promotes the reuse of resources in more productive activities.[5]  That an insolvent and failed company may liquidate under the Mexican Corporations Law is also reflected in the priority waterfall established by Articles 242-243 of the statute.[6]

9.     In particular, Article 243 of the Mexican Corporations Law, as I discuss further below, requires that the liquidator cannot pay shareholders until creditors are paid.  Indeed, shareholders can only receive value when creditors are first paid in full or there is some guaranty that the creditors will get paid in full.  It is inherent that this fundamental concept of "insolvency" was included in the formulation of these provisions because one cannot pay shareholders if the value of the company's assets is not sufficient to pay creditors.[7]

10.     There are also various other provisions of the Mexican Corporations Law that indicate the general character of the Mexican Corporations Law relates to insolvency.  Those provisions include, (i) the distribution of proceeds of the liquidation of a partnership, (ii) the

---

[5]     Those elements and purposes were considered in the presentation and explanation of intent of the last bill that modified the Mexican Corporations Law, which was finally published and enacted on January 24, 2018 (this is, awhile after the LCM was enacted).

[6]     The Mexican statutes, regulations and other citations have been translated into English for purposes of my Declaration. For the convenience of the Court and the parties, a certified translation of such statutes, regulations and other citations will be provided as soon as available.

[7]     Articles 2728, 2729 and 2730 of the Mexican Federal Civil Code further support this conclusion, as they provide in the liquidation scenario social debts and obligations shall be paid before any contribution could be reimbursed and any profit, if remaining, distributed.  Mexican Federal Civil Code:

Article 2728.- If, once the social commitments are paid and the partners' contributions are reimbursed, any assets would remain, they would be considered profits and would be distributed among the partners in the manner agreed upon. If no agreement is reached, they would be distributed proportionally to the contributions made.

Article 2729.- Neither the social capital nor the profits could be distributed before the dissolution of the company and only after the corresponding liquidation, unless agreed different.

Article 2730.- If in the liquidation of the company there are not sufficient assets to pay the social commitments and to reimburse the contributions to the partners, **the deficit would be considered loss** and it would be shared by the partners in the way established on the precedent article. (emphasis added)

liquidation priority of shares in the event of capital loss, and (iii) restrictions of the ability of companies to pay dividends ahead of paying creditors where the company is in financial distress. *See* Mexican Corporations Law, Arts. 18[8], 19[9], 23[10], 113[11], 137[12].

11.    The Mexican Corporations Law, complemented with the applicable supplementary provisions of the *Código de Comercio* ("**Mexican Commercial Code**") and the *Código Civil Federal* (the "**Mexican Federal Civil Code**"), is also related to the "adjustment of debts" as it permits the liquidator to adjust a company's debts through negotiating settlements and paying creditors less than the face value of their claims.  See Mexican Corporations Law, Arts. 10, 240, 241, 242-II and 243, Mexican Commercial Code, Arts. 1, 2, 5, 6-bis, 78, 81, 1054, et. al., Mexican Federal Civil Code, Arts. 1796, 1798, 1800, 1858, 1859, and 2944.

---

[8] Article 18.- In the case of shareholder's capital loss, such capital should be reimbursed to the company or reduced before any distribution of profits is done or assigned.

[9] Article 19.- The distribution of profits can only be made after the financial statements that show them have been duly approved by the shareholders' meeting. Nor may distribution of profits be made until the losses suffered in one or several previous years have been restored or absorbed through the application of other equity items, or the share capital has been reduced. Any stipulation to the contrary will not produce legal effect, and both the company and its creditors may repeat for the advances or distributions of profits made in contravention of this article, against the people who have received them, or demand their reimbursement from the administrators who have paid them, one and the other being jointly and severally liable for said advances and distributions.

[10] Article 23 - The particular creditors of a partner may not, while the partnership lasts, enforce their rights except on the profits that correspond to the partner according to the corresponding financial statements, and, when the partnership is dissolved, on the portion that corresponds to it in the liquidation. Likewise, they may make effective their rights on any other reimbursement made in favor of the partners, such as return of premiums on shares, returns of additional contributions and any other similar.

They may, however, seize the portion that corresponds to the partner in the liquidation and, in stock companies, they may seize and sell the debtor's shares.

When the shares are collateralizing the management of the administrators or commissioners, the seizure will produce the effect that, when the time comes for the shares to be returned, they are made available to the authority that carried out the seizure, as well as the dividends caused from the date of the proceeding.

[11]    Article 113. […] Upon liquidation of the company, the limited voting shares will be redeemed before the ordinary ones. […]

[12]    Article 137 - The shares of enjoyment will be entitled to the net profits, after the dividend indicated in the social contract has been paid to the non-reimbursable shares. The same contract may also grant the right to vote to the shares of enjoyment. In case of liquidation, the enjoyment shares will concur with the non-reimbursed ones, in the distribution of the company's assets, after these have been fully covered, unless the articles of association establish a different criterion for the distribution of the surplus.

12.     Moreover, other federal Mexican commercial legislation and statutes are applicable to and supplement a liquidation of a Mexican company conducted under the Mexican Corporations Law.  *See* Mexican Commercial Code, Arts. 2 &1054; Mexican Federal Civil Code, Arts. 2163[13], 2173[14], 2728, 2729, 2730, 2944[15], 2964[16], 2977, 2979, 2980, 2982, 2985, 2993, 2988, *et. al.*  These statutes regulate issues that relate to insolvency and the adjustment of debt such as: (i) the ability to unwind acts defrauding creditors that result on the insolvency of the debtor; (ii) settlement agreements; (iii) the general rule that the assets of the debtor shall respond to pay his debts; and, (iv) supplementary provisions recognizing priority rules and establishing that creditors with a lien or other privilege under Mexican Law are paid ahead of unsecured creditors.  Thus, the complete legal framework of which the Mexican Corporations Law is a part of, relates to insolvency and the adjustment of debt, among other matters.

13.     Messrs Méjan and Sainz contend as a matter of Mexican law that the Mexican Liquidation Proceeding is not an "insolvency" proceeding, because in their opinion the LCM is Mexico's specialized insolvency legislation and has different eligibility criteria than the Mexican Corporations Law.[17]  However, the comparison to the *concurso* is irrelevant, as the LCM did not supersede the Mexican Corporations Law.  These statutes coexist, as do their separate liquidation procedures.

---

[13]     Article 2163.- The acts done by a debtor to defraud of its creditor, can be annulled, by the creditor´s petition, if the insolvency of the debtor results from such acts and if the creditor's claim arises prior to such acts.

[14]     Article 2173.- Every act or contract enacted within the thirty days prior to the judicial declaration of bankruptcy or concurso, and which prefer an existing creditor over other creditors can be annulled.

[15]     Article 2944.- Settlement is a contract by virtue of which the parties, by making reciprocate concessions, put an end to an existing dispute or prevent a future one.

[16]     Article 2964.- The debtor satisfies its debts with all its assets, except those that, under the law, cannot be transferred or attached.

[17]     Méjan Decl.¶ 13; Sainz Decl. ¶ 21.

7

*4.  Termination of a Mexican Liquidation Proceeding Requires a Court Order*

14.     While the Mexican Liquidation Proceeding was commenced by the shareholder, it cannot be terminated by the shareholder.[18]  The Mexican Liquidation Proceeding is subject to the jurisdiction of the Mexican Court and cannot be suspended or terminated prematurely without a resolution by the Mexican Court.  In the absence of an order of the Mexican Court terminating the Mexican Liquidation Proceeding or removing the Mexican Liquidator for cause,[19] the Mexican Liquidation Proceeding will only end when the Mexican Liquidator has completed the liquidation and winding up, presents the final balance sheet with the Mexican Court, and seeks an order of the Mexican Court establishing that his appointment and duties have ended.[20]

---

[18]     The Mexican Liquidation Proceeding also does not shield a shareholder from personal civil or criminal liabilities, contrary to the AHG's contentions.  AHG Obj. ¶ 49.

[19]     *See* Mexican Corporations Law, Art. 238.

[20]     As recognized in precedent registered as follows: Registro digital 176691, Tribunales Colegiados de Circuito, Novena Época, Materia Común,  Tesis: III.2o.A.51 K, Aislada, Semanario Judicial de la Federación y su Gaceta, Tomo XXII, Noviembre de 2005, página 881.

LIQUIDATOR OF A BUSINESS CORPORATION. HE MUST CONTINUE TO PERFORM HIS DUTIES EVEN AFTER THE TERM OF HIS APPOINTMENT HAS EXPIRED, UNTIL THE NEWLY APPOINTED PERSON TAKES CHARGE THEREOF.

From the joint and settled interpretation of the provisions of articles 235, 238, 244 and 245 of the Mexican Corporations Law, the following rules applicable to business corporations in liquidation: 1) That the liquidators are the legal representatives of the corporation; 2) That, upon the revocation of the appointment of liquidator (by agreement of the partners or by a court order), the liquidator shall remain in charge until the newly appointed one takes charge thereof; 3) That the corporations, even after being dissolved, retain their legal personality for the purposes of liquidation; and, 4) That the liquidators must keep the books and papers of the corporation for ten years after the date on which the liquidation is concluded.  In this context, it is clear that, if the appointment of a liquidator is revoked, the rule to be observed is that he will remain in charge, until he is replaced by the newly appointed one, by operation of law; [and] *a fortiori*, it should be understood that the liquidator, whose term of appointment has expired, will remain in charge, since the logic for such continuity is the same in both instances, that is, there is a conclusion or termination of his duties, although caused by various reasons.  The foregoing consideration is consistent with and complementary to the fact that even after the corporation is dissolved, it retains its legal personality, given that it must remain liable to third parties for obligations or operations that, given their nature, have not been completed in its entirety at the time of the liquidation, [which should happen,] necessarily by conduct of the liquidator who remains in charge, since such liquidator is required by law to keep the books and papers of the corporation for a term of ten years, obviously, so that he can answer any questions that may have remained outstanding .

SECOND COLLEGIATE COURT IN ADMINISTRATIVE MATTERS OF THE THIRD CIRCUIT.

Amparo Directo 32/2005. Guadalajara World Trade Center. October 14, 2005. Unanimous decision. Speaker: Enrique Rodríguez Olmedo. Secretary: Claudia Patricia Guerrero Vizcaino.

**B.    The Alleged "Deficiencies" of the Mexican Corporations Law are Unpersuasive**

*1.  Notice throughout the Mexican Liquidation Proceeding has been and will continue to be proper*

15.    The Mexican Corporations Law does not require creditors to be formally served with court papers, as service of process is only required by the procedural law to the Defendant, which in the case was Crédito Real.[21]  Instead, notice of the commencement of a liquidation proceeding and relevant decisions taken in the case, including those by the liquidator, can be found by interested parties via publication in the Official Gazette or the Public Registrar, and are given by annotations in the Public Registrar and the publication of relevant events by the Company.  This form of notice to interested parties is standard in the Mexican Legal system, and is governed by statute.  As of the date of this Declaration, in my opinion, the Mexican Liquidation Proceeding has complied, in all respects, with applicable Mexican law notice requirements.[22]

16.    Moreover, the Mexican Liquidator has publically filed a status update with the Mexican stock exchange, which is over and above what is required under the law.[23]

*2.  Avoidance Actions remain available to creditors*

17.    While the Mexican Corporations Law does not provide creditors with the express right to pursue specific avoidance actions, this statute includes general rights for any interested parties to appeal or file incidental petitions on the case.[24]  In addition, Articles 2163 to 2176 of the

---

[21]    While the docket in the Mexican Liquidation Proceeding is not publicly available, counsel of interested parties can register for electronic docket notifications.

[22]    The effectiveness of such notice is validated by the fact that interested parties have appeared before the Mexican Court in the Liquidation Proceeding (such as the Moreno Appeal discussed in my Second Estrada Declaration) or have chosen to try an *amparo* proceeding (such as the Monex Amparo as discussed in my Second Estrada Declaration).

[23]    A copy of the status update is attached hereto as **<u>Exhibit A.</u>**

[24]    *See* Mexican Corporations Law, Arts. 232, 236; Mexican Commercial Code, Arts. 1054, 1349 et seq., 1336 et seq., 1362; Mexican Federal Civil Procedure Code, Art. 1.

Mexican Federal Civil Code regulate actions seeking to unwind transactions defrauding creditors. In accordance with Mexico's civil law tradition and the provisions that provide for supplementary application of statutory law in the case[25] creditors and other parties in interest may invoke these provisions of the Mexican Federal Civil Code to pursue avoidance actions, including in connection with the Mexican Liquidation Proceeding. While avoidance actions may not expressly be a part of the Mexican Liquidation Proceeding, as Messrs Méjan and Sainz complain, there is nothing, to my knowledge, in the Mexican Liquidation Proceeding that would prevent any creditor from bringing such actions in any Mexican court, including the Mexican Court.

### 3. *Proofs of Claims and Creditors' Rights to Contest the Validity and Priority of Claims*

18. No proof of claim process is required in the context of the Mexican Liquidation Proceeding as all claims recorded in the company's books and records are presumptively valid without creditors being required to take any burdensome action. However, creditors are permitted to engage with the liquidator regarding their claims and can proffer evidence to the liquidator regarding the quantum of their claim where they disagree with the amount recorded in the company's books. If necessary, creditors can also challenge the allowed amount of their claim, the validity and priority of claims, and any distributions received in a Mexican court, including the Mexican Court.

19. I understand that all distributions made to date by the Mexican Liquidator have been to secured and other priority creditors in accordance with the priority waterfall established by Mexican law.

---

[25]    *See* Mexican Commercial Code, Arts. 2 and 1054.

### 4. *Plan of Reorganization or Liquidation Negotiations with Crédito Real*

20.     While the purpose of the Mexican Liquidation Proceeding is the liquidation and winding up rather than the reorganization of the company, creditors have the ability to engage with the liquidator and may propose the terms of a settlement or other value-maximizing transaction. The liquidator will consider such proposal in accordance with his fiduciary duties (as discussed below).  To the extent that creditors are dissatisfied with the liquidator's response to any such proposal, as set forth above, they may seek to challenge the liquidator's conduct in a Mexican court.

### 5. *Distributions of the Debtor's Assets*

21.     While the Mexican Corporations Law does not set forth a detailed priority waterfall similar to that articulated in the Bankruptcy Code, Articles 242-43 of the Mexican Corporations law are clear that the Mexican Liquidator must pay creditors ahead of shareholders.  Specifically, Article 242 of the Mexican Corporations Law establishes the following steps that a liquidator must take to liquidate a company, each of which must occur sequentially:

> *Except for the agreement of the partners or the provisions of the articles of incorporation, the liquidators will have the following powers:*
>   I.   *Conclude the company's operations that have been pending at the time of the dissolution;*
>  II.   ***Collect what is owed to the company and pay what it owes;***
> III.   *Sell the assets of the company;*
>  IV.   ***Settle each partner's shares of the capital;***
>   V.   *Present the final balance of the liquidation, which must be submitted to the discussion and approval of the partners, in an appropriate manner, according to the nature of the company.*
> *[...]*

22.     This interpretation is supported by Article 243 of the Mexican Corporations Law, which provides that no shareholder may demand a distribution from the company, unless such

distribution is "compatible with the interests of the creditors of the company."[26]  The legislative history states that Article 243 is one of the Mexican Corporations Law's "most important innovations" that "establishes an essential measure of protection for third parties."[27]

23.     As set forth above, under Mexican law, where there is a gap in a specific statute, courts and, in this case, the Mexican Liquidator look to other laws, such as the priority rules in the Mexican Federal Civil Code and the *Código Federal de Procedimientos Civiles* (the "**Mexican Federal Civil Procedure Code**"), to "fill" the void, as explained before.  With respect to priority of distributions, the Mexican Corporations Law is supplemented by various Articles of the Mexican Federal Civil Code, including 2976, 2980, 2981, 2983, 2993, and 2996-98, which provides that creditors with a lien or other privilege under Mexican Law are paid ahead of unsecured creditors.[28]  The effect of these provisions is that administrative, tax, employee, secured

---

[26]     Article 243.- No partner may demand from the liquidators the total payment of his claim; however, [a partner] may demand partial distribution either if such payment is compatible with the interests of the creditors of the company while its liabilities have not been paid, or if a deposit has been made for the corresponding amount in the case there is any inconvenience in making such payment.

The agreement about partial distribution shall be published in the electronic system established by the Ministry of Economy, and creditors shall have the right to object pursuant to the form and terms provided for in Article 9.

[27]     The Mexican Corporations Law was enacted and published on August 4, 1934, and the legal explanation of its intentions provided by the legislator explains that:

"The Law dedicates a **chapter to the liquidation of companies in which there are valid precepts for all types**, thus abandoning the criterion of the Code in force, in which the rules related to this matter are scattered, despite the fact that there are **common problems that must be solved uniformly**.

It should be noted as **one of the most important innovations, the one included in article 243 that establishes an essential measure of protection for third parties**."

[28]  Mexican Federal Civil Code, Article 2967.- The due capitals will be paid in the order established in this title, and if after satisfied funds belonging to the contest remain, the corresponding revenues will be paid, in the same order in which the capitals were paid, but reduced interest to legal rate, unless a lower rate has been agreed upon. Unless there are sufficient assets for all creditors to be paid, the revenues will be covered at the agreed rate that is higher than the legal one.

Article 2976.- The credits will be graduated in the order that they are classified in the following chapters, with the priority that is established in them for each class.

Article 2980.- Tax debts from taxes will preferably be paid with the value of the assets that caused them.

and certain other priority claims (including prejudgment attachments) are paid ahead of general unsecured creditors.

24.     Additionally, there is no provision of Mexican law that would permit the interests of local Mexican creditors to be preferred to creditors located outside of Mexico.  As discussed above, to my knowledge, all distributions made to date have been to secured and other priority creditors in accordance with the priority waterfall established by Mexican law.

### C.     Creditor Participation in the Mexican Corporation Law

25.     Messrs Sainz and Méjan suggest that creditors and parties in interest do not have a meaningful opportunity to be heard in the Mexican Liquidation Proceeding as compared to a

---

Article 2981.- Mortgage creditors and pledgers do not need to go into bankruptcy proceedings to collect their credits. They can deduct the actions that correspond to them by virtue of the mortgage or the pledge, in the respective trials, in order to be paid with the value of the assets that guarantee their credits.

Article 2983.- When the value of the mortgaged or pledged assets is not enough to cover the credits that guarantee, for the debtor balance, the creditors in question will enter the contest, and will be paid as third-class creditors.

Article 2993.- With the value of the goods that are mentioned, they will be paid preferably: I. The debt for salvage expenses, with the value of the thing salvaged; II. The debt contracted before the contest, expressly to carry out works of rigorous conservation of some goods, with the value of these; provided that it is proven that the borrowed amount was used in those works; III. The credits referred to in article 2644, with the price of the built work; IV. Credits for *Seed*s, cultivation and harvesting expenses, with the price of the harvest for which they were used and that is in the possession of the debtor; V. The credit for freight, with the price of the goods transported, if they are in the possession of the creditor; VI. Lodging credit, with the price of the debtor's furniture in the house or establishment where he is staying; VII. The lessor's credit, with the price of the attachable movable property found within the leased property or with the price of the fruits of the respective harvest if the property is rustic; VIII. The credit that comes from the price of the goods sold and not paid, with the value of them, if the creditor makes his claim within sixty days after the sale, if it was made in cash, or the due date, if the sale was term.  In the case of personal property, preference will cease if they have been immobilized; IX. The credits recorded in the Property Registry, by virtue of a court order, for embargoes, kidnappings or execution of sentences, on the goods recorded and only in terms of subsequent credits.

CHAPTER VI

Third Class Creditors

Article 2996.- Satisfied the credits that have been discussed above, the credits that appear in a public deed or in any other authentic document will be paid.

CHAPTER VII

Fourth Class Creditors

Article 2997.- Once the credits listed in the preceding chapters have been paid, the credits that appear in a private document will be paid.

Article 2998.- With the remaining assets, all other credits that are not included in the previous provisions will be paid. Payment will be made pro rata and regardless of the dates or the origin of such credits."

*concurso*.  However, this comparison to the *concurso* is misguided and fails to take into account the statutory rights of creditors both under the Mexican Corporations Law and other applicable Mexican statutes, including Mexico's Constitution, Mexican Commercial Code and Mexican Federal Civil Procedure Code.  Mexican law is clear that any "person aggrieved" can appear and challenge any action in any proceeding in a Mexican court.[29]  This, of course, includes any action by the Mexican Liquidator and the Mexican Court.  No court in Mexico has ever determined that creditors lack standing to complain in the Mexican Liquidation Proceeding.

26.     Indeed, as discussed in my Second Estrada Declaration, a shareholder availed itself of these rights and challenged the Mexican Order in an appeal that is currently pending in the Mexican Court.[30]

27.     Additionally, Article 232 of the Mexican Corporations Law expressly provides that within 30 days from the entry and registration of the Mexican Order, all parties in interest may challenge the existence of a dissolution cause and a Mexican liquidation proceeding under the Mexican Corporations Law.

28.     Also as I explained in my Second Estrada Declaration, any party in interest can challenge the Mexican Liquidation Proceeding and, under a certain legal theory actions of the Mexican Liquidator, in federal court in a constitutional challenge known as an *amparo*.  One of the members of the Ad Hoc Group has brought such a challenge.  However, as I explained in my Second Estrada Declaration the challenges that have been brought by stakeholders in Mexico do

---

[29]     *See Constitución Política de los Estados Unidos Mexicanos* (the "**Mexican Constitution**"), Arts. 1, 8, 14, 16, 17, 104, *et. al*.; Mexican Commercial Code, Arts. 1054, 1349 *et. seq*., 1336 *et. seq*., 1362; Mexican Federal Civil Procedure Code, Arts. 1° *et. al*.

[30]     As set forth in my Second Estrada Declaration, appeals are filed directly with the lower state court of first instance that entered the challenged order.  If the lower state court finds that an appeal complies with the legal requirements under the Mexican Commercial Code and Mexican procedural law, it admits and submits such appeal for review by the Mexican Appellate Court (*efecto devolutivo*).  Second Estrada Decl. ¶ 23.

not affect the existence or validity of Crédito Real's liquidation process or the procedural acts undertaken, and orders entered, in the Mexican Liquidation Proceeding.  Notwithstanding these proceedings, which remain pending, (i) the Mexican Liquidator remains in place and empowered to act on behalf of Crédito Real, (ii) the precautionary measures staying all actions against Crédito Real remain in effect under Mexican law, and (iii) creditors continue to have the ability to seek relief from the Mexican Court with respect to any action taken by the Mexican Liquidator and the Mexican Court would have discretion to consider such requests.

29.    In a liquidation proceeding commenced under the Mexican Corporations Law that was not commenced by court order, shareholders would approve the final balance sheet.  However, here, since the Mexican Liquidation Proceeding was initiated by a judicial order and is under the supervision of the Mexican Court, the shareholder approval process is conducted in open court with the opportunity for parties in interest to participate.  Mexican Corporations Law Arts. 229, 242-V.

30.    Moreover, as discussed above, creditors are afforded opportunity to participate in the Mexican Liquidation Proceeding by engaging with the Mexican Liquidator, including with respect to matters concerning their claims, distributions and on any other matter they would like to be heard, and can challenge the actions of the Mexican Liquidator in a Mexican court.  I understand that the Ad Hoc Group has not contacted the Mexican Liquidator regarding any matter, including its claim or any of its purported grievances regarding the Mexican Liquidation Proceeding.

## II.    Collective Nature of the Mexican Liquidation Proceeding

31.    The Mexican Liquidator has a duty to all creditors, must consider the rights of all creditors in distributing assets, and must do so according to a statutory priority waterfall that is

provided by Articles 241, 242 and 243 of the Mexican Corporations Law, Article 2 of the Mexican Commercial Code and Articles 2964, 2977, 2979, 2980, 2982, 2993, et. al., of the Mexican Federal Civil Code, as discussed above.  The Mexican Liquidator is not permitted to act for the benefit of a single party in interest or class of claims or interests.

### III.    The Mexican Liquidator's Duties and Responsibilities

32.    The Mexican Liquidator is a fiduciary that is supervised by the Mexican regulators and the Mexican courts.  He bears personal liability for 10 years for any act that exceeds the scope of his authority.  There is no need for any other fiduciary, such as an examiner, investigator or trustee to be appointed in the Mexican Liquidation Proceeding because they would be redundant in light of the Mexican Liquidator's functions and duties.

33.    The Mexican Corporations Law, as supplemented by applicable statutes, provides that the liquidator is the legal representative of the debtor.  According to Article 10 of the Mexican Corporations Law, "[t]he representation of any commercial company will correspond to its administrator or administrators, who may carry out all the operations inherent to the purpose of the company, except as expressly established by law and the social contract."[31]  In a liquidation scenario, the liquidator's authority as the company's representative is carrying out the operations necessary to complete the liquidation.

34.    The Mexican Corporations Law establishes that the liquidator owes a paramount duty of care to creditors, including to ensure that creditors are repaid ahead of shareholders.[32]

35.    Under the Mexican Corporations Law, the Liquidator also has the following

---

[31]      "La representación de toda sociedad mercantil corresponderá a su administrador o administradores, quienes podrán realizar todas las operaciones inherentes al objeto de la sociedad, salvo lo que expresamente establezcan la Ley y el contrato social."  Mexican Corporations Law, Art. 10.

[32]      *Supra* n. 24.

specific rights and duties:

(i)      conclude the corporate operations that were pending at the time of dissolution[33];

(ii)     all assets, books and documents of the company must be handed over to them, in any case making an inventory of all the company's assets and liabilities[34];

(iii)    collect what is owed to the company and pay what it owes[35];

(iv)    sell the assets of the company[36];

(v)     settle each partner's social assets[37];

(vi)    produce the final balance of the liquidation[38];

(vii)   obtain from the Public Registry of Commerce the cancellation of the registration of the social contract, once the liquidation is concluded[39];

(viii)  in case his appointment is revoked, continue in his position until the newly appointed person takes office[40];

(ix)    keep in deposit, for ten years after the date on which the liquidation is concluded, the books and papers of the Company[41];

(x)     duty to inform and abstain himself from acting in the case of conflict of interests[42];

---

[33]      Concluir las operaciones sociales que hubieren quedado pendientes al tiempo de la disolución. [Art. 242-I].

[34]      Debe entregárseles todos los bienes, libros y documentos de la sociedad, levantándose en todo caso un inventario del activo y pasivo sociales [Art. 241].

[35]      Cobrar lo que se deba a la sociedad y pagar lo que ella deba [Art. 242-II].

[36]      Vender los bienes de la sociedad [Art. 242-II].

[37]      Liquidar a cada socio su haber social [Art. 242-IV].

[38]      Practicar el balance final de la liquidación [Art. 242-V].

[39]      Obtener del Registro Público de Comercio la cancelación de la inscripción del contrato social, una vez concluida la liquidación [Art. 242-VI].

[40]      En caso de ser revocado su nombramiento, continuar en su encargo hasta que entre en funciones el nuevamente nombrado [Art. 238].

[41]      Mantener en depósito, durante diez años después de la fecha en que se concluya la liquidación, los libros y papeles de la Sociedad [Art. 245].

[42] Artículo 156.- El Administrador que en cualquiera operación tenga un interés opuesto al de la sociedad, deberá manifestarlo a los demás Administradores y abstenerse de toda deliberación y resolución. El Administrador que contravenga esta disposición, será responsable de los daños y perjuicios que se causen a la sociedad.

(xi)   duty of confidentiality to protect the confidential information and trade secrets of the company;[43] and

(xii)   to assume the responsibilities and liabilities that a chief executive officer or manager would have under Mexican law.[44]

36.   If a party in interest wishes to seek to remove the liquidator, any party in interests can apply to the Mexican Court to seek to remove the liquidator for cause.   *See* Mexican Corporations Law, Art. 236.

## IV.   The Mexican Court Is Unlikely To Enforce Orders of the U.S. Court

37.   The Mexican Court has accepted jurisdiction of the Mexican Liquidation Proceeding and has exercised exclusive jurisdiction over Crédito Real's assets.   The Mexican Court is likely to consider itself prohibited by statute from enforcing a conflicting order of a U.S. Court with respect to those same assets, and is very unlikely to do so.   *See* Mexican Commercial Code Art. 1347-A (for a foreign resolution to be enforced in Mexico it is a condition that such resolution and its content  - i.e. the parties and objects it refers to - are not part of a proceeding commenced in Mexico); *see also* Mexican Commercial Code, Art. 1054; Mexican Federal Procedure Code, Arts. 543 to 577, particularly relevant for rulings 569 and 574 to 576.

*[Remainder of Page Intentionally Left Blank]*

---

[43] Artículo 157. Los Administradores tendrán la responsabilidad inherente a su mandato y la derivada de las obligaciones que la ley y los estatutos les imponen. Dichos Administradores deberán guardar confidencialidad respecto de la información y los asuntos que tengan conocimiento con motivo de su cargo en la sociedad, cuando dicha información o asuntos no sean de carácter público, excepto en los casos en que la información sea solicitada por autoridades judiciales o administrativas. Dicha obligación de confidencialidad estará vigente durante el tiempo de su encargo y hasta un año posterior a la terminación del mismo.

[44] Artículo 158.- Los administradores son solidariamente responsables para con la sociedad:

I.- De la realidad de las aportaciones hechas por los socios; II.- Del cumplimiento de los requisitos legales y estatutarios establecidos con respecto a los dividendos que se paguen a los accionistas; III.- De la existencia y mantenimiento de los sistemas de contabilidad, control, registro, archivo o información que previene la ley; IV.- Del exacto cumplimiento de los acuerdos de las Asambleas de Accionistas.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: September 14, 2022
Mexico City, Mexico

/s/ Juan Pablo Estrada Michel
Juan Pablo Estrada Michel

López Melih y Estrada, S.C.
Sierra Gamón, No. 320, Lomas de Chapultepec
11000 Mexico City, Mexico
Telephone: + 52 (55) 5540-0707