**EN EL TRIBUNAL DE QUIEBRAS DE LOS ESTADOS UNIDOS
PARA EL DISTRITO DE DELAWARE**

| | | |
|---|---|---|
| Asunto | ) | Capítulo 15 / Capítulo 11 |
| | ) | |
| Crédito Real, S.A.B. de C.V., SOFOM, E.N.R., | ) | Caso No. 22-10630 (JTD) |
| | ) | Caso No. 22-10696 (JTD) |
| | ) | |
| Deudor en un Procedimiento Extranjero. | ) | |
| | ) | |

**DECLARACIÓN DE JOSÉ RAMÓN COSSÍO DÍAZ
PARA SUSTENTAR A LA PETICIÓN CONFORME AL CAPITULO 15 Y
LA SOLICITUD PARA DESESTIMAR**

Yo, José Ramón Cossío Díaz, declaro conforme a la Sección 1746, Título 28 del Código de los Estados Unidos [28 U.S.C. § 1746], bajo pena de perjurio según las leyes de los Estados Unidos de América, que las siguientes manifestaciones son correctas a mi leal saber y entender:

**I.        Curriculum Vitae**

1.        Nací en la Ciudad de México en 1960. Estudié la carrera de Derecho en la Universidad de Colima. Posteriormente cursé la Maestría en Derecho Constitucional y Ciencia Política en el Centro de Estudios Constitucionales de Madrid y obtuve el doctorado en la Facultad de Derecho de la Universidad Complutense de Madrid. Me gradué como maestro por la Facultad de Derecho de la Universidad Nacional Autónoma de México.

2.        A lo largo de mis estudios de licenciatura me desempeñé como pasante en una reconocida firma de abogados de la ciudad de Colima. En 1983 comencé mi trayectoria como profesor impartiendo clases en diversas instituciones académicas, especialmente en el Instituto Tecnológico Autónomo de México, en donde además ocupé el cargo de jefe del Departamento de Derecho de 1995 a 2003.

3.        Fui ministro de la Suprema Corte de Justicia de la Nación del 1 de diciembre

de 2003 al 30 de noviembre de 2018. Estuve adscrito a la Primera Sala, competente para conocer y resolver casos en materia civil, mercantil y penal, primordialmente. En este cargo tuve la oportunidad de analizar y resolver una amplia diversidad de casos, dadas las amplias competencias de la Suprema Corte mexicana. Así, por ejemplo, en materia de derechos humanos, delitos, contratos, responsabilidades administrativas o corrupción.

4.    Actualmente soy profesor-investigador asociado de El Colegio de México, dirijo el Instituto para el Fortalecimiento del Estado de Derecho, A.C. (IFED) y presido el Instituto Mexicano de la Mediación (IMM), asociación que agrupa a las más importantes firmas de abogados en México. Soy consejero de diversas organizaciones de la sociedad civil y del Grupo Financiero Citi-Banamex y del Banco Nacional de México.

5.    Mi formación profesional se ha dividido entre la docencia, la investigación y el servicio público. Mi principal vertiente de investigación es el derecho constitucional, aunque también he realizado investigaciones en otras ramas del derecho. He dirigido tesis de licenciatura, maestría y doctorado con alumnos de diversas universidades mexicanas y extrajeras. He impartido diversas pláticas, cursos, seminarios, ponencias y discursos en diversas universidades de México y del extranjero.

6.    Soy miembro de diversas instituciones académicas, científicas y profesionales, entre las que destacan: el Sistema Nacional de Investigadores como Investigador Nacional Nivel III; la Academia Mexicana de Ciencias; el American Law Institute; la Barra Mexicana-Colegio de Abogados; la Academia Mexicana de Derecho Internacional; la Academia Nacional de Medicina; El Colegio Nacional; la Sociedad Mexicana de Salud Pública; el Consejo Académico de la Cátedra de Estudios Jurídicos Iberoamericanos de la Universidad Carlos III de Madrid y la Editorial Tirant lo blanch; del Instituto Mexicano de la Mediación y de la Academia Mexicana de la Historia.

7.      He coordinado 13 libros, compilado 8 y escrito 32.  Me han otorgado diversos premios y reconocimientos, entre los que destacan: el Nacional de Investigación 1998, en el área de Ciencias Sociales; el Nacional de Ciencias y Artes 2009, en el Campo de Historia, Ciencias Sociales y Filosofía; el Nacional de Comunicación José Pagés Llergo en 2010 y en 2017; el "Nacional Malinalli 2011", para la Promoción de las Artes, los Derechos Humanos y la Diversidad Cultural y el Premio Nacional de Jurisprudencia 2019. Igualmente he recibido 8 doctorados honoris causa por parte de diversas universidades mexicanas.

**II.      Objeto de la opinión**

8.      Con base en la experiencia jurídica acumulada a lo largo de treinta y ocho años en el ámbito jurídico, procedo a responder las consultas que me fueron planteadas por los abogados de Crédito Real, S.A.B. de C.V., SOFOM, E.N.R., ("Crédito Real"), White & Case, LLP. Revisé y basé mis respuestas en la: *Petición conforme al Capítulo 15 para el Reconocimiento de Procedimiento Principal Extranjero* [Expediente No. 2] (la **Petición conforme al Capítulo 15**") presentada por Robert Wagstaff (el "**Representante Extranjero**"); *Declaración de Juan Pablo Estrada Michel conforme a la Sección 1746 del Título 28 del Código de los Estados Unidos [28 U.S.C. § 1746]* [Caso No. 22-10630 (JTD), Expediente No. 3]; la *Declaración Complementaria de Juan Pablo Estrada Michel* [Caso No. 22-10630 (JTD), Expediente No. 43]; la *Objeción del Grupo Ad Hoc a la (I) Petición conforme al Capítulo 15 de Reconocimiento de Procedimiento Principal Extranjero y (II) Solicitud de Crédito Real para Desestimar la Solicitud de Quiebra Involuntaria conforme al Capítulo 11* [Caso No. 22-10696 (JTD), Expediente No. 55] (la "**Obj. AHG**"); la *Declaración de Alejandro Sainz para Sustentar la Objeción del Grupo Ad Hoc de: (I) la Petición conforme al Capítulo 15 para el Reconocimiento de Procedimiento Principal Extranjero, y (II) la Solicitud del Deudor Putativo para Desestimar la Solicitud de Quiebra*

*Involuntaria conforme al Capítulo 11* [Caso No. 22- 10696 (JTD), Expediente No. 56]; la *Declaración de Jorge Villen Para Sustentar a la Objeción del Grupo Ad Hoc de: (I) la Petición conforme al Capítulo 15 para el Reconocimiento de Procedimiento Principal Extranjero, y (II) Solicitud del Deudor Putativo para Desestimar la Petición de Quiebra Involuntaria conforme al Capítulo 11* [Caso No. 22- 10696 (JTD), Expediente No. 57]; la *Declaración de Luis Manuel Camp Méjan Carrer* [Causa No. 22-10696 (JTD), Expediente No. 58]; la *Declaración Complementaria de Kenneth Monaghan en Nombre de Institutional Multiple Investment Fund, LLC* [Caso No. 22-10696 (JTD), Expediente No. 59], conforme a lo que se me proporcionó y a las disposiciones de la Constitución Política de los Estados Unidos Mexicanos, la Ley General de Sociedades Mercantiles (o la "**LGSM**"), la Ley de Concursos Mercantiles (o la "**LCM**"), el Código Civil Federal (o el "**Código Civil**"), el Código de Comercio, así como la jurisprudencia del Poder Judicial de la Federación y la doctrina mexicana.

### III.   Elementos jurídicos necesarios para resolver las cuestiones planteadas

9.    El pilar constitucional de las sociedades mercantiles lo podemos ubicar en el artículo 9 de la Constitución Política de los Estados Unidos Mexicanos el cual ordena que no se podrá coartar el derecho de asociarse o reunirse pacíficamente con cualquier objeto lícito, previendo dos derechos humanos, el de reunión y el de asociación. El derecho de asociación consiste en una congregación permanente y sus efectos producen la creación de la persona moral.

10.    En un principio el Código de Comercio contenía los artículos que regulaban estas sociedades y con el desarrollo económico a través de los años y la transformación de la sociedad mexicana se volvió necesario regular específicamente las sociedades mercantiles. El Código de Comercio continúa estableciendo lineamientos generales del régimen del

comerciante aplicables a las sociedades mercantiles.

11.     El 4 de agosto de 1934 se publicó la Ley General de Sociedades Mercantiles que remplazó el Título Segundo del Código de Comercio. Dicha ley regula la constitución de las sociedades mercantiles, las obligaciones que se derivan del contrato social, la estructura de la sociedad y su disolución y liquidación. La Ley General de Sociedades Mercantiles es parte de la legislación mercantil federal.

12.     El Código Civil Federal es de aplicación supletoria al regular normas generales relacionadas con la personalidad jurídica de las personas morales.

13.     El 12 de mayo del 2000, se publicó la Ley de Concursos Mercantiles ante la abrogación de la Ley de Quiebras y de Suspensión de Pagos. Su principal objetivo fue proporcionar la normatividad pertinente para maximizar el valor de una empresa en crisis mediante su conservación, con lo cual se protege el empleo de sus elementos humanos, se evita la repercusión económica negativa a la sociedad, producida por la pérdida de una empresa que le proporciona bienes o servicios, y se recupera el esfuerzo empresarial que dicha empresa representó para su titular y en caso de que fuese imposible conservar la empresa en manos de sus dueños, contener normas que permitieran preservar el valor económico de la empresa o de los bienes y derechos que la integran mediante un procedimiento de liquidación ordenado que maximizara el producto de enajenación y diera trato equitativo al comerciante y a sus acreedores. Ha sido reformada en el 2007, 2014, 2019 y recientemente en el 2020. La Ley de Concursos Mercantiles es parte de la legislación mercantil federal de México.  Por ello, la Ley de Concursos Mercantiles no substituye a la Ley General de Sociedades Mercantiles y ambos ordenamientos pueden coexistir.

14.     Una vez precisado el marco jurídico que rige el caso que dio lugar a la presente consulta, procedo a responder las preguntas concretas que me fueron formuladas.

**IV.**     **Contestación a las preguntas planteadas.**

  1. *¿La LGSM regula la disolución y liquidación de una sociedad constituida bajo leyes mexicanas?*

15.     Si. En primer lugar, es necesario señalar que como quedó precisado con anterioridad, la LGSM fue expedida en el año de 1943 y establece las disposiciones generales aplicables a todas las sociedades mercantiles, entre ellas las relativas a su creación, disolución y liquidación. Es así como específicamente en sus Capítulos X y XI, prevé los supuestos de disolución y liquidación de las sociedades. En concreto, en los artículos 229 al 233 se establecen los supuestos de disolución de sociedades y en los artículos 234 al 249 Bis 1 el procedimiento de liquidación de todo tipo de sociedades.

16.     La ley no distingue el tipo de sociedad que puede ser liquidada a través de la LGSM, por lo que se entiende que cualquier tipo de sociedad puede ser disuelta y liquidada bajo la LGSM.

  2. *¿Los acreedores de la sociedad pueden comparecer en el procedimiento de liquidación?*

17.     Si. Es cierto que la disolución de la sociedad puede provocar la liquidación de ésta si los socios no llegan a un acuerdo que haga desaparecer el motivo de disolución. Sin embargo, si se actualizara la liquidación, esto provocaría que la sociedad entrara en un estadio en donde quedarían debidamente protegidos los intereses de los socios y de los terceros.

18.     Al respecto, es importante acudir al contenido del artículo 232, párrafos tercero y cuarto de la LGSM, en los que se prevé que cualquier interesado – entendiendo por interesado también a los acreedores- podrá acudir ante la autoridad judicial para hacer valer sus derechos. En este aspecto es necesario subrayar que, si bien los artículos referidos a la disolución y liquidación de las sociedades en la LGSM no hacen alusión a los acreedores, a este ordenamiento le son aplicables supletoriamente las disposiciones contenidas en el

Código Federal de Procedimientos Civiles. Específicamente el artículo 1º que dispone que en un procedimiento judicial "puede intervenir quien tenga interés en que la autoridad judicial declare o constituya un derecho o imponga una condena, y quien tenga el interés contrario."

19.    Lo anterior implica que, aunque la LGSM no hable expresamente de los acreedores, éstos siempre tienen expedito su derecho de participar o comparecer en el procedimiento correspondiente para reclamar sus derechos.

*3.  ¿El artículo 229 de la LGSM es una norma válida y vigente?*

20.    Si, toda vez que es una norma que fue emitida por el órgano legislativo competente y cumplió con todo el proceso legislativo correspondiente. Además, no ha sido reformada ni derogada por el propio legislador ordinario, ni declarada inválida por ningún órgano jurisdiccional con competencias para ello.

*4.  ¿La Ley de Concursos Mercantiles es el único ordenamiento que regula la liquidación de una sociedad?*

21.    No. Como quedó señalado con anterioridad, la LGSM regula en su capítulo XI la liquidación de sociedades mercantiles.

*5.  ¿El procedimiento de liquidación es equiparable a la etapa de quiebra de un concurso mercantil?*

22.    De alguna manera sí.  Tanto el artículo 3 de la LCM como el artículo 242 de la LGSM permiten que la venta de los bienes de la empresa deudora se utilice para pagar las deudas de la empresa.

*6.  ¿El liquidador designado en un procedimiento de liquidación está sujeto a supervisión?*

23.    Si. El Poder Judicial de la Federación ha sostenido que una vez disuelta la sociedad y nombrado el liquidador, éste responderá por los casos que el liquidador excedió

los límites de su encargo.[1]

7. *¿En materia de la liquidación de una sociedad, la Ley de Concursos Mercantiles remplazó a la Ley General de Sociedades Mercantiles o ambas coexisten?*

24.    Ambas coexisten. En el orden jurídico mexicano una norma no deja de tener vigencia a menos de que sea derogada o abrogada expresamente por el legislador ordinario. En el caso de la LGSM, si bien es cierto que es previa a la expedición de la LCM, en su Decreto de promulgación publicado el 12 de mayo de 2000, no se prevé la abrogación de la LGSM, ni la derogación de ninguno de sus preceptos. Lo anterior se traduce en que son dos leyes que coexisten en el orden jurídico mexicano.

25.    De manera más puntual al expedirse la LCM con posterioridad a la LGSM, solamente abrogó la Ley de Quiebras y Suspensión de Pagos, tal y como se aprecia del artículo Transitorio Segundo que a la letra dice:

> SEGUNDO. - Se abroga la Ley de Quiebras y de Suspensión de Pagos publicada en el Diario Oficial de la Federación el día 20 de abril de 1943, y se derogan o modifican todas las demás disposiciones legales que se opongan a lo dispuesto en esta Ley.

26.    La LCM se reformó mediante decretos publicados en el Diario Oficial de la Federación el 17 de diciembre de 2007, sin haberse incluido ninguna modificación o ajuste a la diferenciación entre disolución y quiebras. El 10 de enero de 2014 se modificó también de manera importante un conjunto de disposiciones en materia financiera, sin incluirse a las sociedades mercantiles en general sino a las vinculadas con el sector financiero. El 9 de agosto de 2019 y el 11 de mayo del 2022 volvió a modificarse la LCM sin que en ninguno de esos casos se realizara ajuste alguno a fin de diferenciar o asimilar los dos procedimientos

---

[1] **SOCIEDADES MERCANTILES. SU PERSONALIDAD JURÍDICA SUBSISTE DESPUÉS DE SU DISOLUCIÓN Y POR EL TERMINO DE SU LIQUIDACIÓN**. Tesis: 3a. CXIII/91. Fuente: Semanario Judicial de la Federación. Tomo VII, Octava Época, junio de 1991, Registro digital: 206971.

señalados. Todo lo anterior corrobora que no ha sido intención del legislador subsumir el procedimiento de disolución-liquidación de la LGSM en el de concurso mercantil de la LCM.

*[EL RESTO DE LA PÁGINA SE DEJÓ EN BLANCO INTENCIONALMENTE]*

Declaro bajo pena de perjurio conforme a las leyes de los Estados Unidos de América

que lo anterior es verdadero y correcto conforme a mi leal saber y entender.

Fecha: 14 de septiembre del 2022
Ciudad de México, México

*/s/ José Ramón Cossío Díaz*
JOSÉ RAMÓN COSSÍO DÍAZ
jrcossiod@gmail.com