## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 15 |
| Crédito Real, S.A.B. de C.V., SOFOM, E.N.R.,[1] | Case No. 22-10630 (JTD) |
| Debtor in a Foreign Proceeding. | **Objection Deadline:** November 10, 2022 at 4:00 p.m. |
| | **Hearing Date:** To be determined. |

**FOREIGN REPRESENTATIVE'S MOTION FOR ENTRY OF ORDERS:
(I) (A) AUTHORIZING AND APPROVING BIDDING PROCEDURES RELATING TO
THE SALE OF CHAPTER 15 DEBTOR'S EQUITY INTERESTS IN CRÉDITO REAL
USA FINANCE, LLC, (B) SCHEDULING AN AUCTION FOR, AND HEARING TO
APPROVE, THE PROPOSED SALE, AND (C) APPROVING THE FORM AND
MANNER OF NOTICE THEREOF; (II) AUTHORIZING AND APPROVING THE
SALE OF CHAPTER 15 DEBTOR'S EQUITY INTERESTS IN CRÉDITO REAL USA
FINANCE, LLC FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES,
AND INTERESTS; AND (III) GRANTING RELATED RELIEF**

Robert Wagstaff (the "**Foreign Representative**"), in his capacity as duly appointed

foreign representative by Mr. Fernando Alonso-de-Florida Rivero, the court-appointed liquidator

(*Liquidador Judicial*) (the "**Mexican Liquidator**") of the Special Expedited Commercial

proceeding (*Via Sumaria Especial Mercantil*) for the dissolution and liquidation (the "**Mexican

Liquidation Proceeding**") of Crédito Real, S.A.B. de C.V., SOFOM, E.N.R., ("**Crédito Real**"

or the "**Chapter 15 Debtor**" and, together with its affiliates, the "**Company**") pending in the

52nd Civil State Court of Mexico City (the "**Mexican Court**") pursuant to, among others,

Articles 229, 232, 233, and 236 of the *Ley General de Sociedades Mercantiles* (as amended, the

"**Mexican Corporations Law**"), by and through his undersigned counsel, hereby files this

motion (the "**Motion**") for: (i) entry of an order substantially in the form attached hereto as

---

[1]     The last four identifying digits of the tax number and the jurisdiction in which the Chapter 15 Debtor pays taxes is Mexico – 6815.  The Chapter 15 Debtor's corporate headquarters is located at Avenida Insurgentes Sur No. 730, 20th Floor, Colonia del Valle Norte, Alcaldía Benito Juárez, 03103, Mexico City, Mexico.

**Exhibit A** (the "**Bidding Procedures Order**"), approving, among other things, the bidding procedures (the "**Bidding Procedures**")[2] attached to the Bidding Procedures Order as **Schedule I**; (ii) entry of an order approving the sale (the "**Sale Order**")[3] at the Sale Hearing (as defined below), following entry of, and compliance with, the Bidding Procedures Order; and (iii) related relief described below.

## RELIEF REQUESTED

1.      By this Motion, pursuant to sections 105(a), 363, 1501, 1507, 1520 and 1521 of title 11 of the United States Code (the "**Bankruptcy Code**"),[4] Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Foreign Representative requests the following:

(i) First, the entry of the Bidding Procedures Order:

(a) authorizing and approving the Bidding Procedures for conducting the auction for the proposed sale (the "**Sale**") of substantially all of the Chapter 15 Debtor's direct and/or indirect equity interests (the "**CRUSAFin Interests**") in a majority-owned, U.S. subsidiary, Crédito Real USA Finance, LLC ("**CRUSAFin**");

(b) scheduling an auction of the CRUSAFin Interests (the "**Auction**") and a final hearing to approve the Sale Transaction (as defined below) to a Successful Bidder (the "**Sale Hearing**");

---

[2]      Capitalized terms not otherwise defined herein shall the meaning given to such terms in the Bidding Procedures.

[3]      The proposed form of Sale Order will be filed with the Court prior to the deadline to object to the Sale Transaction (as defined below).

[4]      Except as otherwise indicated, section and chapter references are to the Bankruptcy Code.

(c) approving the form and manner of notice of the Bidding Procedures, the Auction, and the Sale Hearing; and

(d) granting related relief.

(ii) Second, at the Sale Hearing, subject to compliance with the Bidding Procedures and the results of the Auction (if any), the entry of the Sale Order, the form of which will be filed on the docket of this Chapter 15 case (the "**Chapter 15 Case**") prior to the Sale Hearing:[5]

(a) authorizing and approving the sale of the CRUSAFin Interests in accordance with the terms of the sale and purchase agreement executed by the Successful Bidder (as defined below) (the "**Successful SPA**"), which sale shall be free and clear of all obligations, pledges, liens, security interests, encumbrances, claims, charges, options, and other interests of any kind or nature, including rights or claims based on any successor or transferee liability (the "**Interests**"), all as more specifically set forth in the Successful SPA, as applicable (the "**Sale Transaction**"); and

(b) granting related relief.

## PRELIMINARY STATEMENT

2.      Based in Florida, CRUSAFin is an auto financing company that provides loans to sub-prime customers in the United States for the purchase of used cars ("**U.S. Car Loans**"). For over a year, the Chapter 15 Debtor has been marketing the CRUSAFin business for sale to a third party. Though the marketing process has yielded several competitive bids, uncertainty over the

---

[5]      This Motion contains the Foreign Representative's request for entry of the Bidding Procedures Order and ultimately for approval of the Sale Order. The Foreign Representative is seeking approval of the Bidding Procedures Order at the initial hearing to be conducted on this Motion to take place after the completion of a hearing on recognition of the Mexican Liquidation Proceeding as a foreign main proceeding. Entry of the Sale Order is requested to be considered at the Sale Hearing and will be subject to entry of an order recognizing the Mexican Liquidation Proceeding, or any other order that might be required under the circumstances.

Chapter 15 Debtor's financial distress has been a significant obstacle to finalizing a sale agreement with any buyer outside of a court process.  In late July, upon the final acceptance of the Mexican Liquidation Proceeding, the Mexican Liquidator and Foreign Representative determined that a sale of the CRUSAFin Interests pursuant to section 363 of the Bankruptcy Code overseen by this Court would provide greater certainty and transparency to interested buyers and maximize the value received by the Chapter 15 Debtor for the benefit of its stakeholders.

3.      To that end, in early August, the Mexican Liquidator re-launched a marketing process specifically aimed at obtaining a binding stalking horse bid that contemplates a section 363 sale of the CRUSAFin Interests as part of the Chapter 15 Case.  Since commencing that process, the Chapter 15 Debtor has seen robust engagement from interested parties, with several credible parties submitting proposals and progressing toward the submission of final binding stalking horse bids.  As of the filing of this Motion, the Mexican Liquidator and Foreign Representative continue to actively negotiate with various potential stalking horse bidders and may be in a position to seek authority from the Court to enter into a binding stalking horse agreement in short order.

4.      The Bidding Procedures proposed herein will provide a path for a final marketing process and will ensure that the Chapter 15 Debtor receives the highest and best price for the CRUSAFin Interests.  The closing of the Sale Transaction presents a significant source of value to creditors of the Chapter 15 Debtor and is a critical next step in the Mexican Liquidator's liquidation of the Chapter 15 Debtor's U.S. assets.  With this in mind, the Foreign Representative and the Mexican Liquidator developed the Bidding Procedures, which are designed to (a) preserve flexibility in this sale process, (b) facilitate a quick, but fair, process, and

(c) generate the highest or best value for the CRUSAFin Interests.  The proposed deadlines in the Bidding Procedures create an appropriate timetable for the Sale, accounting for the significant prepetition marketing efforts that have been made in connection with the sale of the CRUSAFin business.  Importantly, formally launching the in-court sale process as soon as possible is necessary to maximize value and push the process towards a final Sale Hearing within the time frame required.  As discussed further below, any further delay not only jeopardizes value, but presents significant risk under CRUSAFin's existing credit facility.

5.      For the reasons set forth herein, the Foreign Representative submits that the relief requested is in the best interests of the Chapter 15 Debtor, its creditors, and other parties in interest, and therefore should be granted.

## JURISDICTION, VENUE AND PREDICATES FOR RELIEF

6.      This Court has jurisdiction to consider the relief requested herein pursuant to sections 157 and 1334 of title 28 of the United States Code and the Amended Standing Order of Reference of the United States District Court for the District of Delaware, dated February 29, 2012 (Sleet, C.J.).

7.      This Chapter 15 Case has been properly commenced with respect to the Chapter 15 Debtor in accordance with sections 1504 and 1509(a) of the Bankruptcy Code by the filing of the form of voluntary petition [ECF No. 1] (the "**Form of Petition**") and the *Verified Petition for Recognition of Foreign Main Proceeding* [ECF No. 2] (the "**Verified Petition**", and together with the Form of Petition, the "**Petition**").  This is a core proceeding pursuant to section 157(b)(2)(P) of title 28 of the United States Code.

8.      Venue is proper in this Court pursuant to section 1410(1) of title 28 of the United States Code.

9.     The statutory predicates for the relief requested by this Motion are sections 105(a), 363, 1501, 1507, 1520 and 1521 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014.

10.     Pursuant to Local Rule 9013-1(f), the Foreign Representative consents to the entry of a final judgment or order with respect to this Motion if it is determined that this Court lacks Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## **BACKGROUND**

### I.     **General Background**

11.     On June 22, 2022, members of an ad hoc group of creditors alleging to hold a portion of the Chapter 15 Debtor's US$2.5 billion outstanding funded debt obligations (the "**Ad Hoc Group**")[6] filed an involuntary chapter 11 petition against the Chapter 15 Debtor in the United States Bankruptcy Court for the Southern District of New York (the "**New York Bankruptcy Court**") thereby commencing an involuntary chapter 11 case (the "**Involuntary Case**").[7]

12.     On June 28, 2022, Mr. Angel Francisco Romanos Berrondo,[8] solely in his capacity as a shareholder of the Chapter 15 Debtor, filed a petition with the Mexican Court seeking to commence the Mexican Liquidation Proceeding under the Mexican Corporations Law.  On July 13, 2022, the Mexican Court ultimately entered an order appointing the Mexican Liquidator on a final basis to act as the liquidator of the Chapter 15 Debtor [ECF No. 43-7] (the "**Final Mexican Order**").

---

[6]     The members of the Ad Hoc Group are the parties disclosed in the *Verified Statement Pursuant to Bankruptcy Rule 2019*, Case No. 22-10696 (JTD) (Bankr. D. Del. Aug 4, 2022) [ECF No. 27].

[7]     *See In re Crédito Real, S.A.B. de C.V., SOFOM, E.N.R.*, Case No. 22-10696 (JTD) (Bankr. D. Del. 2022) (former Case No. 22-10842 (DSJ) (Bankr. S.D.N.Y. 2022)).

[8]     Mr. Romanos is a former officer and director of the Chapter 15 Debtor.

13.     On July 14, 2022 (the "**Chapter 15 Petition Date**"), the Foreign Representative filed the Petition with this Court.

14.     On August 1, 2022, at the request of the Foreign Representative, the New York Bankruptcy Court ordered the Involuntary Case to be transferred to this Court.

15.     Additional factual background and information regarding the Chapter 15 Debtor, including its business operations, corporate and capital structure, the events leading to the commencement of this Chapter 15 Case, and the facts and circumstances surrounding the Mexican Liquidation Proceeding are set forth in detail in the Verified Petition, the *Declaration of Juan Pablo Estrada Michel Pursuant to 28 U.S.C. § 1746* [ECF No. 3], the *Supplemental Declaration of Juan Pablo Estrada Michel* [ECF No. 43], the *Third Declaration of Juan Pablo Estrada Michel* [ECF No. 57], *Declaration of José Ramón Cossío Díaz in Support of the Verified Petition and Motion to Dismiss* [ECF No. 58], and the *Fourth Declaration of Juan Pablo Estrada Michel* [ECF No. 84].

## II.     Crédito Real USA Finance, LLC

16.     CRUSAFin is a Delaware limited liability company that is based in Florida. It originates, services, and manages the Company's U.S. Car Loan portfolio across the United States and specializes in providing U.S. Car Loans to individuals with limited or no credit. By offering these customers tools, resources, financial education materials, and a wide variety of payment options, CRUSAFin enables customers to improve their overall credit situation.

17.     The Chapter 15 Debtor is the indirect owner of 95.28% of the membership interests in CRUSAFin. Those interests are directly owned by Crédito Real USA, Inc., which is in turn 100% owned by the Chapter 15 Debtor. *See* Verified Petition, at ¶ 38. The other 4.72% of CRUSAFin's membership interests are owned by Scot Seagrave, the current Chief Executive

Officer of CRUSAFin.  While all or portion of Mr. Seagrave's interests may also be purchased by the Successful Bidder, this Motion relates only to the Chapter 15 Debtor's interests in CRUSAFin.[9]

18.    CRUSAFin underwrites three types of U.S. Car Loans: (i) the "Classic Program," pursuant to which CRUSAFin provides traditional subprime loans to used car purchasers; (ii) the "Vamos" Program provided to customers who do not have a Social Security number but have a tax identification number and either have a positive or no credit score; and (iii) the "Bankruptcy Program," provided to Chapter 7 or Chapter 13 debtors or customers who are currently in bankruptcy or have been recently discharged from bankruptcy in the United States.

19.    To provide its products and services, CRUSAFin relies on third-party entities (franchises) or independent dealerships that assist CRUSAFin in originating the U.S. Car Loans (collectively, the "**Car Dealer Partners**").  Through its network of more than 1,500 Car Dealer Partners, who use their own sales force to promote U.S. Car Loans, CRUSAFin provides flexible subprime financing options for more than 11,700 customers in the United States.

20.    CRUSAFin employs approximately 80 people in the United States, of which approximately 10 are in the sales department.  As of the quarter ended December 31, 2021, CRUSAFin's portfolio of U.S. Car Loans represented almost twice the size of the Chapter 15 Debtor's car loan portfolio in Mexico and accounted for around 5.8% of the Company's total loan portfolio.

21.    CRUSAFin's business is funded through a $130 million securitization of receivables program issued in April 2021 (the "**CRUSA-2021 Program**") and a $100 million 2-

---

[9]    As discussed in paragraph 31 below, as part of any Sale there will be a reorganization substantially contemporaneous with a closing that will result in the CRUSAFin Interests being directly held by the Chapter 15 Debtor.

year secured credit facility from Wells Fargo Bank, N.A. (the "**Wells Fargo LOC**") that is guaranteed by the Chapter 15 Debtor. As of the date of this motion, CRUSAFin owes approximately (a) $72 million under the CRUSA-2021 Program and (b) $50 million in respect of the Wells Fargo LOC. The filing of the involuntary Chapter 11 petition, as well as certain defaults under the Chapter 15 Debtor's funded debt, triggered defaults under the Wells Fargo LOC. Additionally, the Wells Fargo LOC was set to mature on September 30, 2022. On September 26, 2022, Wells Fargo agreed to extend the maturity of the Wells Fargo LOC through January 31, 2023.

### III.   The Chapter 15 Debtor's Marketing and Sale Efforts

22.     After the coronavirus outbreak in early 2020 and the resulting severe liquidity constraints faced by the Company, Crédito Real and its shareholders initiated discussions to implement structural changes to its operations to optimize cash flows, maximize revenue streams, right-size operating costs, and monetize non-core assets. *See* Verified Petition at 2. In 2021, as part of this strategy, Crédito Real and its shareholders began considering the potential of a value-maximizing sale of its U.S. Car Loans unit in the United States through the sale of the CRUSAFin Interests. At the Crédito Real shareholders' meeting held on September 10, 2021, Crédito Real was authorized to consider offers for the sale of the CRUSAFin Interests in amounts that exceeded the threshold of 1.0x CRUSAFin's book value (the "**Minimum Price**"), which was approximately $45 million around such time.[10]

---

[10]     A copy in English of the publication of the Company shareholders' decision to sell the CRUSAFin Interests under a minimum purchase price is available on the Mexican stock exchange's website at https://www.bmv.com.mx/docs-pub/visor/visorXbrl.html?docins=../eventemi/eventemi_1127561_1.zip#/visorXbrl.

A.      **2021-2022 Sale Process**

23.      As early as October 2021, Crédito Real, with the assistance of its former investment banker, BNP Paribas Securities Corp. ("**BNPPSC**"), launched a marketing process for the sale of the CRUSAFin Interests.  As part of that marketing process, BNPPSC, with input from the Company, compiled a list of approximately 130 potential purchasers based in Mexico and beyond, including North American consumer lenders, dealer groups, financial investors, U.S. FinTech companies, and Latin American-based banks and U.S. regional banks.  BNPPSC contacted each of the identified potential purchasers and shared a short document summarizing the opportunity (teaser), and ultimately 14 interested parties entered into confidentiality agreements to access proprietary information and conduct diligence.

24.      CRUSAFin facilitated due diligence for these potential buyers, including by providing them a confidential information memorandum on or around December 8, 2021.  By January 5, 2022, the Company had received six non-binding proposals for the purchase of the CRUSAFin Interests (and a seventh on January 20, 2022), four of which were accepted and met the Minimum Price set by Crédito Real's shareholders.  To allow those parties to continue to conduct due diligence and prepare final, binding proposals, the Company opened a virtual data room in mid-January 2022.  The data room contained a substantial amount of information detailing CRUSAFin's finances, assets and operations.  BNPPSC also arranged management presentations with these four bidders that took place from January 28, 2022 through February 4, 2022.

25.      February 9, 2022 was established as the final bid deadline, and on that date, four potential purchasers submitted final binding offers.  One of those offers was selected by Crédito Real, and the parties continued to negotiate its final terms until April 2022.  These further

negotiations were ultimately unsuccessful, particularly given the uncertainty around the Company's financial distress.

26.     In early May 2022, discussions resumed with the runner-up in the process to explore potential sale structures, conduct confirmatory due diligence, and negotiate a purchase agreement.   Other interested parties also signed confidentiality agreements and started due diligence.

### B.     Re-Launch After Mexican Liquidation Proceeding

27.     In July 2022, after entry of the Final Mexican Order, the Foreign Representative and Mexican Liquidator, on behalf of the Chapter 15 Debtor, determined that resuming the marketing process to sell the CRUSAFin Interests via section 363 of the Bankruptcy Code as part of the Chapter 15 Case, would expedite a value-maximizing sale of the CRUSAFin Interests. Importantly, running a transparent and competitive process within the Chapter 15 Case provides potential buyers with greater transparency and certainty, the lack of which significantly hampered the success of the prior out-of-court sale process by materially impacting the sale price.  Accordingly, the Foreign Representative and the Mexican Liquidator decided to re-launch a stalking horse process for a 363 sale of the CRUSAFin Interests.

28.     As part of the re-launch, potential buyers that had signed confidentiality agreements and provided satisfactory indications of interest (whether oral or written) were given access to the virtual data room so that they could perform additional diligence and exchange information with the Foreign Representative and the Mexican Liquidator, on behalf of the Chapter 15 Debtor.

29.     Additionally, starting in May 2022, BNPPSC reached out to 12 additional potential investors, which resulted in five more parties executing confidentiality agreements.

11

From July through September 2022, four potential purchasers were active in the data room conducting diligence and having a dialogue with BNPPSC, the Foreign Representative, and the Mexican Liquidator. BNPPSC arranged numerous calls between these active potential purchasers and CRUSAFin's management, the Foreign Representative, Mexican Liquidator, and their respective legal advisors.

30.     On or around October 17, 2022, BNPSCC resigned as investment banker. Riveron Consulting, LLC was subsequently engaged to act as the financial advisor for the Sale of the CRUSAFin Interests. Although no stalking horse agreement has been finalized as of the date of this Motion, several parties remain interested in serving as the stalking horse bidder for the CRUSAFin Interests. The Mexican Liquidator and Foreign Representative are hopeful that a competitive stalking horse bid will be finalized very soon. The Foreign Representative and the Mexican Liquidator, in consultation with their advisors, have determined that it is nevertheless in the best interest of the Chapter 15 Debtor to proceed with the in-court sale process as any further delays may impact value and present issues under CRUSAFin's financing as discussed below. Accordingly, the Foreign Representative, Mexican Liquidator, and CRUSAFin management are working closely with potential stalking horse bidders to improve the terms of their bids and make them actionable proposals.

## IV.     The Proposed Sale

31.     The Foreign Representative seeks authority, among other things, to implement a robust, court-supervised sale process for the CRUSAFin Interests and ultimately sell the CRUSAFin Interests free and clear of all Interests pursuant to section 363(f) of the Bankruptcy Code. Although the Chapter 15 Debtor presently owns the CRUSAFin Interests indirectly, the CRUSAFin Interests are the Chapter 15 Debtor's most significant U.S. assets and therefore any

sale requires the approval of the Chapter 15 Debtor and Mexican Liquidator.  Ultimately, to facilitate a section 363 sale of its property and thereby maximize value for all stakeholders, the Sale Transaction contemplates that the CRUSAFin Interests will be reorganized such that the Chapter 15 Debtor will be the direct owner at closing.

32.     As this Court is aware, as of the Chapter 15 Petition Date, the Chapter 15 Debtor owed approximately US$2.5 billion in third-party financial debt obligations.  *See* Verified Petition, at ¶ 4.  Consummation of a Sale Transaction, will therefore unlock value for the Chapter 15 Debtor's creditors that can be distributed in accordance with Mexican law and to the benefit all creditors in the Mexican Liquidation Proceeding.  Additionally, CRUSAFin owes approximately $50 million under the Wells Fargo LOC, which is guaranteed by the Chapter 15 Debtor and, as a result of a number of extensions, is set to mature in January 2023.  The proposed Sale requires buyers to either assume, refinance or cash out the Wells Fargo LOC, which ultimately benefits the Chapter 15 Debtor and its other creditors by releasing the guaranty.

## V.     The Sale Timeline[11]

33.     The Foreign Representative proposes the following dates and deadlines for the Sale process (the "**Deadlines**"):[12]

| Deadline | Item |
|---|---|
| [_____], 2022 at [___] (Eastern Time) | Hearing to consider entry of the Bidding Procedures Order |
| **Within 2 business days of Entry of the Bidding Procedures Order** | Deadline for the Foreign Representative to file and serve the Sale Notice |
| **December [5], 2022 at 4:00 p.m. (Eastern Time)** | Deadline to file objections to the Sale Transaction |

---

[11]     Where context requires, capitalized terms used in this section, but not defined herein shall have the meaning ascribed to such terms in the Bidding Procedures Order.

[12]     The proposed Deadlines assume that a hearing on the Motion will be held on or around November 16, 2022 (i.e., after the hearing on recognition of the Mexican Liquidation Proceeding).

| Deadline | Item |
|---|---|
| December [14], 2022 at 4:00 p.m. (Eastern Time) | Final Bid Deadline |
| December [16], 2022 at 10:30 a.m. (Eastern Time) | Auction Date (if one is to be held) |
| Within 2 business days of conclusion of the Auction | Deadline to file the Post Auction Notice |
| December [20], 2022 at 4:00 p.m. (Eastern Time) | Deadline to file objections to the conduct of the Auction |
| December [22], 2022 at [___](Eastern Time) | Proposed hearing to approve the proposed Sale Transaction |

34.     In formulating the Deadlines, the Foreign Representative balanced the need to provide an adequate period for potential purchasers to conduct due diligence and submit bids on the CRUSAFin Interests, with the need to quickly and efficiently sell the CRUSAFin Interests to unlock value for the Chapter 15 Debtor's creditors.   Additionally, because certain defaults continue to exist under the Wells Fargo LOC and repayment of the Wells Fargo LOC is expected to occur as part of the Sale Transaction, CRUSAFin and the Chapter 15 Debtor must close the Sale by January 2023.   The proposed Deadlines will provide Qualified Bidders with approximately one month to finalize their review of the comprehensive materials made available to potential bidders many months ago, and conduct targeted additional diligence with management.   The Foreign Representative respectfully submits this is sufficient time for parties to formulate and submit bids.

## VI.     Bidding Procedures

35.     The Foreign Representative requests authorization to run an auction process with respect to the CRUSAFin Interests pursuant to the Bidding Procedures.   The Bidding Procedures are designed to generate the highest or otherwise best available recoveries to the Chapter 15 Debtor's stakeholders by encouraging potential purchasers to submit competitive bids for the CRUSAFin Interests.   The Bidding Procedures describe, among other things, the procedures for

interested parties to access due diligence, the manner in which Bidders and Bids become "qualified," the receipt and negotiation of bids received, the conduct of any auction, the selection and approval of any ultimately Successful Bidder and Back-Up Bidder (as defined below), and the deadlines with respect to the foregoing.

36.     While the Foreign Representative does not, at this time, seek authority pursuant to this Motion to enter into a stalking horse agreement, it may seek authority do so in the future, on an expedited basis, by separate motion and order (including entry into any bid protections that may be provided therein).

37.     Certain of the key terms of the Bidding Procedures are highlighted below pursuant to Local Bankruptcy Rule 6004-1(c):[13]

| Summary of Bidding Procedures | |
|---|---|
| *Consultation Party* | The Foreign Representative shall reasonably consult the Ad Hoc Group (the "**Consultation Party**") through its U.S. legal counsel, as explicitly provided for herein; provided, however, that, notwithstanding anything to the contrary herein, the Foreign Representative shall not be required to consult with the Consultation Party if (i) any member of the Ad Hoc Group submits a Bid or has a Bid submitted on its behalf, for so long as such Bid remains open, or (ii) the Foreign Representative determines, in his reasonable business judgment, that consulting with such Consultation Party regarding any issue, selection or determination would be likely to have a chilling effect on potential bidding or otherwise be contrary to goal of maximizing value for the CRUSAFin Interests from the sale process. |
| *Qualifications to Submit Bids and Participate in Auction* | To participate in the bidding process and to receive access to due diligence materials (the "**Diligence Materials**"), a party must submit to the Foreign Representative (i) an executed confidentiality agreement in form and substance satisfactory to the Mexican Liquidator and the Foreign Representative and (ii) reasonable evidence demonstrating the party's financial capability to consummate a purchase of the CRUSAFin Interests, as determined by the Foreign Representative and Mexican Liquidator in their sole discretion. |

---

[13]     The following summary is qualified in its entirety by reference to the provisions of the Bidding Procedures. In the event of any inconsistencies between the provisions of the Bidding Procedures and the terms herein, the terms of the Bidding Procedures shall govern. Unless otherwise defined in the summary set forth in the accompanying text, capitalized terms shall have the meanings ascribed to them in the Bidding Procedures.

| Summary of Bidding Procedures | |
|---|---|
| *Bid Deadline and Auction Qualification Process* | To be eligible to participate in the Auction, each offer, solicitation or proposal (each, a "**Bid**"), and each party submitting such a Bid (each, a "**Bidder**"), (i) must be determined by the Foreign Representative and Mexican Liquidator to satisfy each of the conditions set forth in the Bidding Procedures and (ii) must submit a Bid, in writing, so as to be **actually received** by (a) counsel to the Foreign Representative, White & Case LLP, Attn: John K. Cunningham (jcunningham@whitecase.com), Bill Parish (bill.parish@whitecase.com), Emilio Grandio (emilio.grandio@ whitecase.com), and Amanda Parra Criste (aparracriste@whitecase.com), (b) the Foreign Representative, Attn: Robert Wagstaff (robert.wagstaff@riveron.com), and (c) Riveron Consulting, LLC, Attn: Jabier Arbeloa (CruiseProject@riveron.com) **on or before December [14], 2022 at 4:00 p.m.** (prevailing Eastern Time) (the "**Bid Deadline**"). |
| *Designation of Qualified Bidder* | A Bid for the CRUSAFin Interests received from a Bidder before the Bid Deadline that meets the requirements in the Bidding Procedures shall constitute a "**Qualified Bid**", as determined by the Foreign Representative and Mexican Liquidator, and such Bidder shall constitute a "**Qualified Bidder**" for such assets. The Foreign Representative shall consult with the Consultation Party regarding whether (i) a Bid is or is not a Qualified Bid or (ii) any Bid or potential Qualified Bidder should be disqualified. |
| *Auction Baseline Bid* | Prior to or at the start of the Auction, the Foreign Representative will notify all Qualified Bidders participating in the Auction, and the Consultation Party of the highest or otherwise best Qualified Bid received before the Bid Deadline (the "**Auction Baseline Bid**"). |
| *Auction Procedures* | The Auction, if any, shall take place **on December [16], 2022 at 10:30 a.m. (prevailing Eastern Time)** in a virtual room hosted by the Foreign Representative's counsel, or such other place and time as the Foreign Representative shall notify all Qualified Bidders and the Consultation Party.<br><br>The Foreign Representative, Mexican Liquidator, and their professionals shall direct and preside over the Auction and the Auction shall be transcribed. Other than as expressly set forth herein, the Foreign Representative and Mexican Liquidator (in consultation with the Consultation Party) may conduct the Auction in the manner they determine will result in the highest or otherwise best offer for the CRUSAFin Interests. |
| *No Collusion* | Each Qualified Bidder participating in the Auction must confirm on the record that it: (i) has not engaged in any collusion with respect to the bidding or sale of any of the CRUSAFin Interests; (ii) has reviewed, understands and accepts the Bidding Procedures; and (iii) has consented to the core jurisdiction of the Bankruptcy Court with respect to the Sale, including the Bidding Procedures, and the Auction, and, as applicable, any Stalking Horse SPA, any Modified SPA, or the construction and enforcement of documents relating to any Sale Transaction. |
| *Overbids* | An "**Overbid**" is any bid made at the Auction subsequent to the Foreign Representative's announcement of the respective Auction Baseline Bid. To |

| Summary of Bidding Procedures | |
|---|---|
| | submit an Overbid for purposes of the Auction, a Bidder must comply with the following conditions:<br><br>1. <u>Minimum Overbid Increments</u>: Any Overbid after and above the respective Auction Baseline Bid shall be made in increments valued at not less than $250,000.00.  The Foreign Representative reserves the right, after consultation with the Consultation Party, to announce reductions or increases in the minimum incremental bids (or in valuing such bids) at any time during the Auction.  Additional consideration in excess of the amount set forth in the respective Auction Baseline Bid must be in cash.<br><br>2. <u>Remaining Terms Are the Same as for Qualified Bids</u>: Except as modified herein, an Overbid at the Auction must comply with the conditions for a Qualified Bid set forth above; <u>provided</u>, <u>however</u>, that the Bid Deadline shall not apply.  Any Overbid must include, in addition to the amount and the form of consideration of the Overbid, a description of all changes requested by the Bidder to the Stalking Horse SPA (if applicable) or Modified SPA, as the case may be, in connection therewith.  Any Overbid must remain open and binding on the Bidder as set forth in these Bidding Procedures. |
| *Successful Bidder* | The Auction shall continue until the Foreign Representative and Mexican Liquidator select such Qualified Bid, in consultation with the Consultation Party, that is the best Qualified Bid taking into account any factors the Foreign Representative and Mexican Liquidator reasonably deem relevant to the value and certainty of the Qualified Bid to the Chapter 15 Debtor (such Qualified Bid, the "**Successful Bid**," and the Bidder submitting such Successful Bid, the "**Successful Bidder**") as the winner of the Auction.<br><br>The Auction shall close when the Successful Bidder submits a fully executed Successful SPA and transaction documents memorializing the terms of the Successful Bid. |
| *Back-Up Bidder* | Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next highest or otherwise best Bid to the Successful Bid at the Auction, as determined by the Foreign Representative and Mexican Liquidator, in the exercise of their business judgment and after consulting with the Consultation Party, will be designated as the backup bidder (the "**Back-Up Bidder**").  The Back-Up Bidder shall be required to keep its initial Qualified Bid (or if the Back-Up Bidder submitted one or more Overbids at the Auction, the Back-Up Bidder's final Overbid) (the "**Back-Up Bid**") open and irrevocable until the earlier of (i) the closing of the transaction with the Successful Bidder, (ii) 5:00 p.m. (prevailing Eastern Time) on the date that is sixty (60) days after the date of entry of the Sale Order, or such other date as may be agreed to by the Back-Up Bidder as reflected in a Modified SPA. |

| Summary of Bidding Procedures | |
|---|---|
| | Following the Sale Hearing, if the Modified SPA or Stalking Horse SPA, as applicable, related to the Successful Bid is terminated for any reason prior to consummation of the transaction contemplated thereby (a "**Successful Bid Failure**"), the Back-Up Bidder will be deemed to be the new Successful Bid, and the Chapter 15 Debtor will be authorized, without further order of the Bankruptcy Court, to consummate the transaction with the Back-Up Bidder, <u>provided</u> that the Foreign Representative shall provide prompt notice of such Successful Bid Failure to the Consultation Party and shall post a notice on the docket of the Chapter 15 Case regarding the Successful Bid Failure and the consummation of the transaction with the Back-Up Bidder. In the case of a Successful Bid Failure, the Successful Bidder's deposit shall either be returned or forfeited in accordance with the terms of the terminated Stalking Horse SPA or Modified SPA. |
| *Reservation of Rights of the Foreign Representative; Modification of Bidding and Auction Procedures* | Except as otherwise provided in the Bidding Procedures Order, the Foreign Representative further reserves the right as it may reasonably determine in its discretion, after consultation with the Consultation Party, to be in the best interest of the Chapter 15 Debtor estates to: (i) determine which bidders are Qualified Bidders; (ii) determine which Bids are Qualified Bids; (iii) determine which Qualified Bid is the highest or best proposal and which is the next highest or best proposal; (iv) reject any Bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code or (c) contrary to the best interests of the Chapter 15 Debtor and its stakeholders; (v) waive terms and conditions set forth herein with respect to all potential bidders; (vi) impose additional terms and conditions with respect to all potential bidders; (vii) extend the deadlines set forth herein; (viii) continue or cancel the Auction and/or Sale Hearing in open court without further notice; and (ix) modify the Bidding Procedures and implement additional procedural rules that the Foreign Representative determines (together with the Bidding Procedures, the "**Auction Rules**"), in his business judgment, will better promote the goals of the bidding process and discharge his fiduciary duties and are not inconsistent with any Bankruptcy Court order, <u>provided</u> that nothing herein shall limit any party in interest's right to file an objection with the Bankruptcy Court with respect to any Auction Rules (other than the Bidding Procedures). |

## VII. Notice Procedures

38.     <u>Notice of Sale Transaction and Sale Hearing</u>. Within two (2) business days after the entry of the Bidding Procedures Order, or as soon thereafter as practicable, the Foreign Representative (or his agents) shall serve by first-class mail, postage prepaid, and email (if known), the sale notice (the "**Sale Notice**"), substantially in the form attached to the Bidding

Procedures Order as **Schedule II** on the following parties: (i) the U.S. Trustee; (ii) counsel to the Ad Hoc Group, Akin Gump Stauss Hauer & Feld LLP, Attn: Ira S. Dizengoff (idizengoff@akingump.com), David H. Botter (dbotter@akingump.com); (iii) counsel to Wells Fargo Bank, N.A.; (iv) counsel to The Bank of New York Mellon as indenture trustee under the indentures of certain senior unsecured notes and certain subordinated perpetual notes issued by the Chapter 15 Debtor; (v) any known affected creditor(s) asserting a lien, claim, or encumbrance against, or interest in, the relevant assets; (vi) any party that has expressed an interest in purchasing the CRUSAFin Interests during the last three (3) months; (vii) the Internal Revenue Service; (viii) United States Attorney for the District of Delaware; (ix) the Mexican National Banking and Securities Commission (*Comisión Nacional Bancaria y de Valores*); (x) the state attorneys general for all states in which the Chapter 15 Debtor conducts business; and (xi) any such other party entitled to receive notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**").   The Foreign Representative shall also publish the Sale Notice, in English and Spanish, on the Chapter 15 Debtor's website.   The Foreign Representative submits that such notice is sufficient and proper notice of the occurrence of the Sale Transaction with respect to known interested parties.

39.     Post Auction Notice.  No later than two (2) business days after the conclusion of the Auction (if one is conducted), the Foreign Representative shall file on the docket and post on the Company's website, in English and Spanish, a notice substantially in the form attached to the Bidding Procedures Order as **Schedule III** (the "**Post Auction Notice**"), that, among other things: (i) identifies the Successful Bidder and the Back-Up Bidder; (ii) contains information for how parties may access the transaction documentation related to the Successful Bid; and (iii) provides the date and time of the Sale Objection Deadline and Sale Hearing.

**BASIS FOR RELIEF**

## I.      Section 363 of the Bankruptcy Code Applies to the Sale Transaction

40.      The Foreign Representative requests authority, pursuant to sections 363(b) and 1520(a) of the Bankruptcy Code, to sell the CRUSAFin Interests.  Section 1520(a)(2) of the Bankruptcy Code provides that, upon the court's recognition of the foreign proceeding, section 363 of the Bankruptcy Code automatically applies to any "transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States to the same extent that the sections would apply to property of a[] [domestic bankruptcy] estate."  11 U.S.C. § 1520(a)(2).  "Any property subject to attachment or garnishment that may be properly seized or garnished by an action in" a United States court is deemed to be "within the territory of the United States."  11 U.S.C. § 1502(8).  Pursuant to section 1520(a)(3), a foreign representative may operate the debtor's business and may exercise the rights and powers of a trustee under and to the extent provided by section 363.  *See* 11 U.S.C. § 1520(a)(3).

41.      As discussed in paragraph 17 above, the CRUSAFin Interests are property of the Chapter 15 Debtor located within the territorial jurisdiction of the United States.  Therefore, to the extent the Court has recognized the Mexican Liquidation Proceeding as a foreign main proceeding, section 363 of the Bankruptcy Code applies to this Chapter 15 Case pursuant to section 1520(a)(2) of thee Bankruptcy Code.[14]

---

[14]      In the event that the Court declines to grant the relief requested under section 363 pursuant to section 1520, the Foreign Representative requests that this Court provide additional relief and assistance pursuant to sections 105(a), 1507(a), 1519 and 1521(a) of the Bankruptcy Code to further an orderly administration of the Chapter 15 Debtor's assets.

II.     **The Sale Transaction and the Bidding Procedures are Appropriate and in the Best Interests of the Chapter 15 Debtor's Creditors**

42.     Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."   11 U.S.C. § 363(b)(1).   Under section 1520(a)(3), "the foreign representative may operate the debtor's business and may exercise the rights and powers of a trustee under and to the extent provided by section…363."   11 U.S.C. § 1520(a)(2). Accordingly, a foreign representative may sell a chapter 15 debtor's U.S. assets out of the ordinary course of business only subject to the notice and hearing requirements of section 363(b)(1).  *See In re Elpida Memory, Inc.*, 2012 Bankr. LEXIS 5367, *16-17 (Bankr. D. Del. Nov. 16, 2012) ("[Section 1520(a)(2)] clearly provides that section 363 and, by implication, its standards are applicable to the transfer of assets located in the United States by a foreign debtor in a foreign main proceeding of assets outside the ordinary course of business."); s*ee also In re Fairfield Sentry Limited*, 768 F.3d 239, 244 (2d Cir. 2014) (stating that the bankruptcy court is required to conduct a section 363 review in a chapter 15 case when a debtor seeks a transfer of an interest in property within the territorial jurisdiction of the United States).  In addition, section 105(a) of the Bankruptcy Code empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

43.     While the Bankruptcy Code does not state the standard for approving sales of property under section 363, courts in this district and in other districts, uniformly agree that the business judgment standard applies.  *See, e.g.*, *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under [section 363(b)], courts require the debtor to show

that a sound business purpose justifies such actions"); *Meyers v. Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) ("under normal circumstances the court would defer to the trustee's judgment so long as there is a legitimate business justification")); *In re Elpida Memory*, 2012 Bankr. LEXIS 5367, at \*17 ("The section 363(b) standard is well-settled. A debtor may sell assets outside the ordinary course of business when it has demonstrated that the sale of such assets represents the sound exercise of business judgment.")

44.    "Under Delaware law, the business judgment rule operates as a presumption 'that directors making a business decision, not involving self-interest, act on an informed basis, in good faith and in the honest belief that their actions are in the corporation's best interest.'" *Continuing Creditors' Comm. of Star Telecomms., Inc. v. Edgecomb*, 385 F. Supp. 2d 449, 462 (D. Del. 2004) (quoting *Grobow v. Perot*, 539 A.2d 180, 187 (Del. 1988)); *see also Stanziale v. Nachtomi* (*In re Tower Air, Inc.*), 416 F.3d 229, 238 (3d Cir. 2005). To satisfy the business judgment standard, courts in this Circuit require that a sale satisfy four requirements: (1) a sound business purpose exists for the sale; (2) the sale price is fair; (3) the debtor has provided adequate and reasonable notice; and (4) the purchaser has acted in good faith. *See In re Elpida Memory*, 2012 Bankr. LEXIS 5367, at \*17.

45.    A sound business justification exists for the Sale of the CRUSAFin Interests, which is a necessary and critical next step in the sale of the Chapter 15 Debtor's assets that will unlock significant value for the Chapter 15 Debtor's creditors. The Bidding Procedures are fair, reasonable, and designed to maximize the value of the CRUSAFin Interests on a realistic, value-maximizing timeline, for the benefit of all creditors in the Mexican Liquidation Proceeding. The Bidding Procedures establish an open and transparent bidding process. All qualified potential

bidders will be given sufficient notice and opportunity to acquire Diligence Materials necessary to submit a timely and informed bid.  The periods set forth in the Bidding Procedures will provide interested parties with an adequate opportunity to conduct diligence and submit a Bid. Moreover, the Bidding Procedures provide the Foreign Representative the opportunity to consider all competing offers and to select, in his reasonable business judgment, and after consultation with the Consultation Party, the highest and best offer for the CRUSAFin Interests.

46.     Any stalking horse agreement the Foreign Representative may be able to identify and obtain Court approval for will only bolster the competitiveness of the process by setting a floor for the value of the CRUSAFin Interests.  From now until the Sale Hearing, the Foreign Representative and Mexican Liquidator intend to continue their marketing and sale efforts.  At the Sale Hearing, the Foreign Representative will provide evidence sufficient to show that all parties have complied with the Bidding Procedures and that the Successful Bid is the highest and best offer for the CRUSAFin Interests.

47.     The approval of the Bidding Procedures for conducting the Auction, and ultimately the Sale of the CRUSAFin Interests, is also necessary to "protect[] and maximize[e] [] the value of the debtor's assets" and promote the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities."  11 U.S.C. § 1501(a)(3) and (4).  Notably, courts in this District have approved sales under section 363 in several chapter 15 cases: *In re Motorcycle Tires & Accessories LLC*, Case No. 19-12706 (KBO) (Bankr. D. Del. 2020) [ECF No. 37] (authorizing the debtors to enter into an agency agreement to sell U.S. assets under section 363); *In re G.I. Sportz Inc.*, Case No. 20-12610 (CSS) (Bankr. D. Del. 2020) [ECF No. 37] (approving a sale and the transfer of the debtor's interest in assets located within the United States pursuant to sections 363 and 1521 of the Bankruptcy

Code); *In re Irish Bank Resolution Corporation Limited (In Special Liquidation)*, Case No. 13-12159 (CSS) (Bankr. D. Del. 2014) [ECF No. 253] (approving the sale of certain U.S. loan assets under section 363).

48.     In sum, the Foreign Representative has a sound business justification for effectuating the Sale and respectfully requests that the Court approve the Bidding Procedures.

### III.   The Court Should Approve the Forms of Notice and Notice Procedures for the Bidding Procedures, the Auction, and the Sale Hearing

49.     Bankruptcy Rules 2002(a)(2) and 2002(i) generally require that a minimum of 21 days' notice of the proposed sale of property outside the ordinary course of business under section 363(b)(1) of the Bankruptcy be provided by mail to "debtor, the trustee, all creditors  and indenture trustees" and any committee appointed under section 1102 of the Bankruptcy Code. Fed. R. Bankr. P. 2002.  Such notice must include the time and place of any public sale, the terms and conditions of any private sale, and the time fixed for filing objections.  Fed. R. Bankr. P. 2002(c).  Courts are authorized to limit notice of a proposed sale to the United States trustee, any official committee appointed under section 1102 of the Bankruptcy Code, and any other creditor or equity holder who requests notice.  *See* Fed. R. Bankr. P. 2002(a) and 2002(i).

50.     The notice procedures described above fully comply with Bankruptcy Rule 2002 and are reasonably calculated to provide timely and adequate notice of the Bidding Procedures, the Auction, and the Sale Hearing to the Chapter 15 Debtor's creditors and all other interested parties that are entitled to notice.  Accordingly, the Foreign Representative respectfully requests that the Court approve the notice procedures set forth herein, including the form and manner of the Sale Notice and the Post Auction Notice, and find that no other or further notice is required.

IV.    **The Court Should Approve the Proposed Sale Transaction Free and Clear of Liens, Claims, Interests, and Encumbrances under Bankruptcy Code Section 363(f)**

51.    Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in such property if: (i) applicable nonbankruptcy law permits such a free and clear sale; (ii) the holder of the interest consents; (iii) the interest is a lien and the sales price of the property exceeds the value of all liens on the property; (iv) the interest is in bona fide dispute; or (v) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.  11 U.S.C. § 363(f).  As indicated by the use of the disjunctive term "or," when selling property of the estate, it is only necessary to meet one of the five conditions listed in that section.  *See Folger Adam Sec., Inc. v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 257 (3d Cir. 2000) (noting that a debtor is authorized to sell property free and clear of "any interest" if any one of the five prescribed conditions under section 363(f) is met); *In re Kellstrom Indus.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002).

52.    As will be demonstrated at the Sale Hearing, the proposed Sale Transaction satisfies section 363(f) of the Bankruptcy Code because parties with an Interest in the CRUSAFin Interests will have consented to the Sale Transaction, either expressly or implicitly after notice and an opportunity for hearing, or could be compelled to accept a money satisfaction of their interests.  Moreover, such parties will receive replacement liens and interests, to the same extent and with the same priority as existed immediately prior to consummation of the Sale Transaction, in the proceeds of the Sale Transaction.

53.    To the extent that the Court finds that the Sale Transaction satisfies section 363(f) of the Bankruptcy Code, the Foreign Representative requests that the Court also hold that the Sale Transaction is free and clear of successor liability relating to the Chapter 15 Debtor's businesses.  The purpose of a free and clear sale under section 363(f) would be frustrated if

claimants could thereafter assert claims arising from a debtor's pre-sale conduct against the purchaser.  Moreover, the absence of such assurance may chill bidding or result in reduced bids.

## V.     The Successful Bidder Should Be Entitled to the Protections of Section 363(m) of the Bankruptcy Code Because the Bidding Procedures Ensure a Good Faith Process

54.     Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

55.     While the Bankruptcy Code does not define good faith, the Third Circuit has held that "[t]he requirement that a purchaser act in good faith . . . speaks to the integrity of [purchaser's] conduct in the course of the sale proceedings."  *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (internal citations omitted).

56.     Here, the Bidding Procedures establish a transparent and fair process for the submission of bids and selection of the Successful Bid.  At the Sale Hearing, the Foreign Representative will provide evidence to establish that the Successful SPA executed by a Successful Bidder was negotiated at arms'-length and that the parties complied with the Bidding Procedures in all respects and that there was no collusion.

57.     Providing the Successful Bidder with the protections afforded to a good faith purchaser under section 363(m) will ensure that the Chapter 15 Debtor receives the maximum price for the CRUSAFin Interests and that closing of the Sale Transaction will occur promptly. Accordingly, the Foreign Representative requests that the Sale Order include a provision that the Successful Bidder for the CRUSAFin Interests is a "good faith" purchaser and entitled to the protections of section 363(m) of the Bankruptcy Code.

26

## WAIVER OF BANKRUPTCY RULE 6004(h) AND 6006(d)

58.     To implement the foregoing successfully, and given the nature of the relief requested herein, the Foreign Representative respectfully requests that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) and waive the 14-day stay of an order authorizing the use, sale or lease of property and the assumption and assignment of executory contracts and unexpired leases under Bankruptcy Rules 6004(h) and 6006(d) is waived.  The sale of the CRUSAFin Interests must be approved and consummated promptly in order to preserve the value of such equity interests, and the relief requested herein is necessary to avoid immediate and irreparable harm to the Chapter 15 Debtor.  Accordingly, ample cause exists to find the notice requirements of Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the 14-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d).

## NOTICE

59.     Notice of this Motion has been provided via email and/or ECF to certain of the Notice Parties. To alleviate the burden on the Mexican Liquidator and Chapter 15 Debtor, a shortened notice of the Motion and any hearing on the Motion that contains information for how parties can receive copies of the Motion, the Bidding Procedures, and the proposed Bidding Procedures Order will be provided to those Notice Parties that are not able to receive service via email or ECF.  The Foreign Representative submits that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

## NO PRIOR REQUEST

60.     No previous request for the relief sought herein has been made by the Foreign Representative to this Court or any other court.

27

## **CONCLUSION**

WHEREFORE, for the reasons set forth herein, the Foreign Representative respectfully requests that the Court: (A) enter the Bidding Procedures Order (i) authorizing and approving the Bidding Procedures, (ii) scheduling the Auction and Sale Hearing, (iii) approving the form and manner of notice of the Bidding Procedures, the Auction, and the Sale Hearing; (B) after the Sale Hearing, enter the Sale Order authorizing and approving the sale of the CRUSAFin Interests free and clear of all Interests to the Successful Bidder or to a Back-Up Bidder; and (C) grant such other and further relief as is just and proper.

Dated: October 26, 2022

Respectfully submitted,

*/s/ Amanda R. Steele*

**RICHARDS, LAYTON & FINGER, P.A.**

Mark D. Collins (No. 2981)
John H. Knight (No. 3848)
Paul N. Heath (No. 3704)
Amanda R. Steele (No. 4430)
920 North King Street
Wilmington, DE 19801
Telephone:  (302) 651-7700
Facsimile: (302) 651-7701
collins@rlf.com
knight@rlf.com
heath@rlf.com
steele@rlf.com

*Co-Counsel to Petitioner and Foreign
Representative*

**WHITE & CASE LLP**

John K. Cunningham (admitted *pro hac vice*)
Philip M. Abelson (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
jcunningham@whitecase.com
philip.abelson@whitecase.com

Richard S. Kebrdle (admitted *pro hac vice*)
Jesse Green (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
rkebrdle@whitecase.com
jgreen@whitecase.com

Jason N. Zakia (admitted *pro hac vice*)
111 S. Wacker Drive, Suite 5100
Chicago, IL 60606
Telephone: (312) 881-5400
jzakia@whitecase.com

*Co-Counsel to Petitioner and Foreign
Representative*