# Exhibit A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | ) | Chapter 15 |
| | ) | |
| Crédito Real, S.A.B. de C.V., SOFOM, E.N.R.,[1] | ) | Case No. 22-10630 (JTD) |
| | ) | |
| Debtor in a Foreign Proceeding. | ) | **Re: Dkt. No. 95** |
| | ) | **Obj. Deadline: December 6, 2022 at 4:00 p.m. (ET)** |
| | ) | **Hearing Date: TBD** |

**FOREIGN REPRESENTATIVE'S AMENDED MOTION FOR
ENTRY OF ORDERS PURSUANT TO 11 U.S.C. §§ 105(a) AND 1519(a):
(I) (A) AUTHORIZING AND APPROVING BIDDING PROCEDURES RELATING
TO THE SALE OF CHAPTER 15 DEBTOR'S EQUITY INTERESTS IN
CRÉDITO REAL USA FINANCE, LLC, (B) SCHEDULING AN AUCTION FOR, AND
HEARING TO APPROVE, THE PROPOSED SALE, AND (C) APPROVING THE
FORM AND MANNER OF NOTICE THEREOF; (II) AUTHORIZING AND
APPROVING THE SALE OF CHAPTER 15 DEBTOR'S EQUITY INTERESTS IN
CRÉDITO REAL USA FINANCE, LLC FREE AND CLEAR OF ALL LIENS, CLAIMS,
ENCUMBRANCES, AND INTERESTS; AND (III) GRANTING RELATED RELIEF**

Robert Wagstaff (the "**Foreign Representative**"), in his capacity as duly appointed

foreign representative by Mr. Fernando Alonso-de-Florida Rivero, the court-appointed liquidator

(*Liquidador Judicial*) (the "**Mexican Liquidator**") of the Special Expedited Commercial

proceeding (*Via Sumaria Especial Mercantil*) for the dissolution and liquidation (the "**Mexican

Liquidation Proceeding**") of Crédito Real, S.A.B. de C.V., SOFOM, E.N.R., ("**Crédito Real**"

or the "**Chapter 15 Debtor**" and, together with its affiliates, the "**Company**") pending in the

52nd Civil State Court of Mexico City (the "**Mexican Court**") pursuant to, among others,

Articles 229, 232, 233, and 236 of the *Ley General de Sociedades Mercantiles* (as amended, the

"**Mexican Corporations Law**"), by and through his undersigned counsel, hereby files this

---

[1]     The last four identifying digits of the tax number and the jurisdiction in which the Chapter 15 Debtor pays taxes is Mexico – 6815. The Chapter 15 Debtor's corporate headquarters is located at Avenida Insurgentes Sur No. 730, 20th Floor, Colonia del Valle Norte, Alcaldía Benito Juárez, 03103, Mexico City, Mexico.

amended motion (the "**Amended Motion**") for: (i) entry of the amended order substantially in the form attached hereto as **Exhibit A** (the **"Amended Bidding Procedures Order"**) applying sections 363 of the Bankruptcy Code in the above-captioned chapter 15 case (the "**Chapter 15 Case**") pursuant to §§ 105(a) and 1519(a) of the Bankruptcy Code, and approving, among other things, the bidding procedures (the "**Bidding Procedures**")[2] attached to the Amended Bidding Procedures Order as **Schedule I**; (ii) entry of an order approving the sale (the "**Sale Order**")[3] at the Sale Hearing (as defined below), following entry of, and compliance with, the Amended Bidding Procedures Order; and (iii) related relief described below.

The Chapter 15 Debtor also relies upon the *Declaration of Robert Wagstaff in Support of Foreign Representative's Amended Motion for Entry of Orders Pursuant to 11 U.S.C. §§ 105(a) and 1519(a): (I)(A) Authorizing and Approving Bidding Procedures Relating to the Sale of Chapter 15 Debtor's Equity Interests in Crédito Real USA Finance, LLC, (B) Scheduling an Auction for, and Hearing to Approve, the Proposed Sale, and (C) Approving the Form and Manner of Notice Thereof; (II) Authorizing and Approving the Sale of Chapter 15 Debtor's Equity Interests in Crédito Real USA Finance, LLC Free and Clear of All Liens, Claims, Encumbrances and Interests; and (III) Granting Related Relief* (the "**Wagstaff Declaration**"), filed contemporaneously herewith, which is incorporated herein by reference.

---

[2]     Capitalized terms not otherwise defined herein shall the meaning given to such terms in the Bidding Procedures.

[3]     The proposed form of Sale Order will be filed with the Court prior to the deadline to object to the Sale Transaction (as defined below).

2

### PRELIMINARY STATEMENT[4]

1.      The Foreign Representative very much appreciates the Court's patience and accommodations in granting the joint requests of the Foreign Representative and the Ad Hoc Group in adjourning the previously scheduled evidentiary hearings before the Court on the pending (i) Verified Petition in respect of the Company filed by the Foreign Representative and (ii) involuntary chapter 11 petition in respect of the Company filed by the petitioning creditors and supported by the Ad Hoc Group.  Such joint requests were made to facilitate continuing confidential settlement discussions between the Company and the Ad Hoc Group and their respective advisors regarding the pending proceedings in Mexico and the United States.

2.      On October 26, 2022, prior to the latest joint request by the parties to adjourn the previously scheduled hearing dates of November 3 and 4, 2022, the Foreign Representative filed the original motion to approve the Bidding Procedures [ECF No. 95] (the "**Original Motion**"). The Original Motion sought approval by this Court of the Bidding Procedures *only after* the Court decided the Verified Petition for recognition of the Mexican Liquidation Proceeding as a foreign main proceeding.  However, as set forth in this Amended Motion and the Wagstaff Declaration, urgent developments regarding the proposed sale (the "**Sale**" or "**Sale Transaction**") of substantially all of the Company's direct and/or indirect equity interests (the "**CRUSAFin Interests**") in a majority-owned, U.S. subsidiary, Crédito Real USA Finance, LLC ("**CRUSAFin**"), a leading auto loan lending business based in Fort Lauderdale, Florida and the principal U.S. asset of the Company, requires the Foreign Representative to seek the relief from the Court *now* under section 1519(a) of the Bankruptcy Code prior to resolution of the Verified

---

[4] Capitalized terms used but not otherwise defined in this Preliminary Statement shall have the meaning given to such terms in this Amended Motion.

3

Petition by the Court.  Put simply, time is of the essence, and the Foreign Representative respectfully submits a formal sale process under the supervision of this Court is urgently needed to maximize the value of the CRUSAFin Interests.

3.       The Amended Motion and proposed Amended Bidding Procedures Order make clear that the status quo of the pending chapter 15 and chapter 11 petitions regarding the Company shall be unaffected by the relief requested in Amended Motion.  The Foreign Representative is not requesting any relief that would pre-judge any of the issues to be decided by the Court on the pending chapter 15 and 11 petitions.  Rather, the relief requested in the Amended Motion will substantially maximize the value of the CRUSAFin Interests in the U.S. for the benefit of the Company, its creditors, and all parties in interest.  Further, the Foreign Representative agrees to protect the interests of all creditors and parties in interest by including in the proposed Amended Bidding Procedures Order a requirement that all net proceeds from the Sale shall be held in the United States pending further order of this Court.

4.       Since filing the Original Motion, the Foreign Representative, the Mexican Liquidator, and their advisors have been working diligently to continue marketing the CRUSAFin Interests and keep several potential purchasers engaged in the Sale process.  The delays caused by the consensual adjournments in the Chapter 15 Case, however, now have the unintended consequence of potentially harming the prospect of closing the Sale within the necessary time frame and maximizing of value of the CRUSAFin Interests.  As discussed in the Original Motion, a closing before the end of January is required, as CRUSAFin's principal secured lender, Wells Fargo Bank, N.A. ("**Wells Fargo**"), has only agreed to extend maturity of its approximately $48 million outstanding loan to the end of January 2023.  Because certain defaults continue to exist under the Wells Fargo credit facility, CRUSAFin and the Chapter 15

4

Debtor must close the Sale and repay Wells Fargo from the proceeds before that date or else Wells Fargo may begin exercising enforcement rights and remedies under its credit facility. Additionally, the launch of the formal process will create greater certainty and transparency for the many potential bidders that have expressed an interest in participating in the Sale process.

5.      The closing of the Sale Transaction presents a significant source of value to all creditors of the Chapter 15 Debtor and is a critical next step in the Mexican Liquidator's liquidation of the Chapter 15 Debtor's U.S. assets.  With this in mind, the Foreign Representative and Mexican Liquidator developed the Bidding Procedures, which are designed to (a) preserve flexibility in the Sale process, (b) facilitate a quick, but fair, process, and (c) generate the highest or best value for the CRUSAFin Interests.  Importantly, the CRUSAFin Interests are located exclusively in the United States and none of the Chapter 15 Debtor's creditors have any liens or rights to the CRUSAFin Interests.  Therefore, a final resolution on the Chapter 15 Debtor's restructuring in Mexico or the U.S. should not hinder the Foreign Representative's efforts to conduct an expeditious and value-maximizing sale of the Chapter 15 Debtor's U.S. assets.

6.      For these reasons and as set forth herein, the Foreign Representative submits that the application of section 363 to the Sale in this Chapter 15 Case is urgently needed to protect the interests of creditors.  The formal launch of the Sale process as soon as possible will not only provide a clear path for a final marketing process of the CRUSAFin Interests— thereby increasing bidder interest and value—but will also ensure a Sale closing before maturity of the Wells Fargo LOC.  The relief should therefore be granted.

## **RELIEF REQUESTED**

7.      By this Amended Motion, pursuant to sections 105(a), 105(d), 363, 1501, 1507, and 1519 of title 11 of the United States Code (the "**Bankruptcy Code**"),[5] Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Foreign Representative requests the following:

(i) First, the application of section 363 of the Bankruptcy Code to this Chapter 15 Case solely with respect to the proposed Sale of the CRUSAFin Interests;

(ii) Second, the entry of the Amended Bidding Procedures Order:

(a) authorizing and approving the Bidding Procedures for conducting the auction for the Sale of the CRUSAFin Interests;

(b) scheduling an auction of the CRUSAFin Interests (the "**Auction**") and a final hearing to approve the Sale Transaction (as defined below) to a Successful Bidder (the "**Sale Hearing**");

(c) approving the form and manner of notice of the Bidding Procedures, the Auction, and the Sale Hearing; and

(d) granting related relief.

(iii) Third, at the Sale Hearing, subject to compliance with the Bidding Procedures and the results of the Auction (if any), the entry of the Sale Order, the form of which will be filed on the docket of this Chapter 15 Case prior to the Sale Hearing:

---

[5]      Except as otherwise indicated, section and chapter references are to the Bankruptcy Code.

AMERICAS 118678912

(a) authorizing and approving the sale of the CRUSAFin Interests in accordance with the terms of the sale and purchase agreement executed by the Successful Bidder (as defined below) (the "**Successful SPA**"), which sale shall be free and clear of all obligations, pledges, liens, security interests, encumbrances, claims, charges, options, and other interests of any kind or nature, including rights or claims based on any successor or transferee liability (the "**Interests**"), all as more specifically set forth in the Successful SPA, as applicable (the "**Sale Transaction**"); and

(b) granting related relief.

## JURISDICTION, VENUE AND PREDICATES FOR RELIEF

8.      This Court has jurisdiction to consider this matter pursuant to sections 157 and 1334 of title 28 of the United States Code and the Amended Standing Order of Reference of the United States District Court for the District of Delaware, dated February 29, 2012 (Sleet, C.J.).

9.      This Chapter 15 Case has been properly commenced with respect to the Chapter 15 Debtor in accordance with sections 1504 and 1509(a) of the Bankruptcy Code by the filing of the form of voluntary petition [ECF No. 1] (the "**Form of Petition**") and the *Verified Petition for Recognition of Foreign Main Proceeding* [ECF No. 2] (the "**Verified Petition**", and together with the Form of Petition, the "**Petition**").  This is a core proceeding pursuant to section 157(b)(2)(P) of title 28 of the United States Code.

10.     Venue is proper in this Court pursuant to section 1410(1) of title 28 of the United States Code.

11.     The statutory predicates for the relief requested by this Amended Motion are sections 105(a), 105(b), 363, 1501, 1507, and 1519 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014.

7

12.     Pursuant to Local Rule 9013-1(f), the Foreign Representative consents to the entry of a final judgment or order with respect to this Amended Motion if it is determined that this Court lacks Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## BACKGROUND

### I.     General Background

13.     On June 22, 2022, members of the Ad Hoc Group filed an involuntary chapter 11 petition against the Chapter 15 Debtor in the United States Bankruptcy Court for the Southern District of New York (the "**New York Bankruptcy Court**") thereby commencing an involuntary chapter 11 case (the "**Involuntary Case**").[6]

14.     On June 28, 2022, Mr. Angel Francisco Romanos Berrondo,[7] solely in his capacity as a shareholder of the Chapter 15 Debtor, filed a petition with the Mexican Court seeking to commence the Mexican Liquidation Proceeding under the Mexican Corporations Law.  On July 13, 2022, the Mexican Court ultimately entered an order appointing the Mexican Liquidator on a final basis to act as the liquidator of the Chapter 15 Debtor [ECF No. 43-7] (the "**Final Mexican Order**").

15.     On July 14, 2022 (the "**Chapter 15 Petition Date**"), the Foreign Representative filed the Petition with this Court.

16.     On August 1, 2022, at the request of the Foreign Representative, the New York Bankruptcy Court ordered the Involuntary Case to be transferred to this Court.

---

[6]     *See In re Crédito Real, S.A.B. de C.V., SOFOM, E.N.R.*, Case No. 22-10696 (JTD) (Bankr. D. Del. 2022) (former Case No. 22-10842 (DSJ) (Bankr. S.D.N.Y. 2022)).

[7]     Mr. Romanos is a former officer and director of the Chapter 15 Debtor.

8

17.     Additional factual background and information regarding the Chapter 15 Debtor, including its business operations, corporate and capital structure, the events leading to the commencement of this Chapter 15 Case, and the facts and circumstances surrounding the Mexican Liquidation Proceeding are set forth in detail in the Verified Petition, the *Declaration of Juan Pablo Estrada Michel Pursuant to 28 U.S.C. § 1746* [ECF No. 3], the *Supplemental Declaration of Juan Pablo Estrada Michel* [ECF No. 43], the *Third Declaration of Juan Pablo Estrada Michel* [ECF No. 57], *Declaration of José Ramón Cossío Díaz in Support of the Verified Petition and Motion to Dismiss* [ECF No. 58], the *Fourth Declaration of Juan Pablo Estrada Michel* [ECF No. 84], and the *Fifth Declaration of Juan Pablo Estrada Michel* [ECF No. 94].

## II.     Crédito Real USA Finance, LLC

18.     CRUSAFin is a Delaware limited liability company that is based in Florida.  It originates, services, and manages the Company's U.S. Car Loan portfolio across the United States and specializes in providing U.S. Car Loans to individuals with limited or no credit.  By offering these customers tools, resources, financial education materials, and a wide variety of payment options, CRUSAFin enables customers to improve their overall credit situation.

19.     The Chapter 15 Debtor is the indirect owner of 95.28% of the membership interests in CRUSAFin.  Those interests are directly owned by Crédito Real USA, Inc., which is in turn 100% owned by the Chapter 15 Debtor.  *See* Verified Petition, at ¶ 38.  The other 4.72% of CRUSAFin's membership interests are owned by Scot Seagrave, the current Chief Executive Officer of CRUSAFin.  While all or portion of Mr. Seagrave's interests may also be purchased

9

by the Successful Bidder, this Amended Motion relates only to the Chapter 15 Debtor's interests in CRUSAFin.[8]

20.    CRUSAFin underwrites three types of U.S. Car Loans: (i) the "Classic Program," pursuant to which CRUSAFin provides traditional subprime loans to used car purchasers; (ii) the "Vamos" Program provided to customers who do not have a Social Security number but have a tax identification number and either have a positive or no credit score; and (iii) the "Bankruptcy Program," provided to Chapter 7 or Chapter 13 debtors or customers who are currently in bankruptcy or have been recently discharged from bankruptcy in the United States.

21.    To provide its products and services, CRUSAFin relies on third-party entities (franchises) or independent dealerships that assist CRUSAFin in originating the U.S. Car Loans (collectively, the "**Car Dealer Partners**").  Through its network of more than 1,500 Car Dealer Partners, who use their own sales force to promote U.S. Car Loans, CRUSAFin provides flexible subprime financing options for more than 11,700 customers in the United States.

22.    CRUSAFin employs approximately 80 people in the United States, of which approximately 10 are in the sales department.  As of the quarter ended December 31, 2021, CRUSAFin's portfolio of U.S. Car Loans represented almost twice the size of the Chapter 15 Debtor's car loan portfolio in Mexico and accounted for around 5.8% of the Company's total loan portfolio.

23.    CRUSAFin's business is funded through a $130 million securitization of receivables program issued in April 2021 (the "**CRUSA-2021 Program**") and a $100 million 2-year secured credit facility from Wells Fargo (the "**Wells Fargo LOC**") that is guaranteed by the

---

[8]    As part of any Sale there will be a reorganization prior to or substantially contemporaneous with a closing that will result in the CRUSAFin Interests being directly held by the Chapter 15 Debtor.

AMERICAS 118678912

Chapter 15 Debtor.  As of the date of this Amended Motion, CRUSAFin owes approximately (a) $72 million under the CRUSA-2021 Program and (b) $48 million in respect of the Wells Fargo LOC.  The filing of the involuntary Chapter 11 petition, as well as certain defaults under the Chapter 15 Debtor's funded debt, triggered defaults under the Wells Fargo LOC.  Additionally, the Wells Fargo LOC was set to mature on September 30, 2022.  On September 26, 2022, Wells Fargo agreed to extend the maturity of the Wells Fargo LOC through January 31, 2023.

## III.    The Chapter 15 Debtor's Marketing and Sale Efforts

24.    After the coronavirus outbreak in early 2020 and the resulting severe liquidity constraints faced by the Company, Crédito Real and its shareholders initiated discussions to implement structural changes to its operations to optimize cash flows, maximize revenue streams, right-size operating costs, and monetize non-core assets.  *See* Verified Petition at 2.  In 2021, as part of this strategy, Crédito Real and its shareholders began considering the potential of a value-maximizing sale of its U.S. Car Loans unit in the United States through the sale of the CRUSAFin Interests.  At the Crédito Real shareholders' meeting held on September 10, 2021, Crédito Real was authorized to consider offers for the sale of the CRUSAFin Interests in amounts that exceeded the threshold of 1.0x CRUSAFin's book value (the "**Minimum Price**"), which was approximately $45 million around such time.[9]  Wagstaff Decl. ¶ 11.

---

[9]    A copy in English of the publication of the decision to sell the CRUSAFin Interests is available on the Mexican stock exchange's website at https://www.bmv.com.mx/docs-pub/visor/visorXbrl.html?docins=../eventemi/eventemi_ 1127561_1.zip#/visorXbrl.

A.  **2021-2022 Sale Process**

25.    As early as October 2021, Crédito Real, with the assistance of its former investment banker, BNP Paribas Securities Corp. ("**BNP**"), launched a marketing process for the sale of the CRUSAFin Interests.  Wagstaff Decl. ¶ 12.  As part of that marketing process, BNP, with input from the Company, compiled a list of approximately 130 potential purchasers based in Mexico and beyond, including North American consumer lenders, dealer groups, financial investors, U.S. FinTech companies, and Latin American-based banks and U.S. regional banks. BNP contacted each of the identified potential purchasers and shared a short document summarizing the opportunity (teaser), and ultimately 14 interested parties entered into confidentiality agreements to access proprietary information and conduct diligence.

26.    CRUSAFin facilitated due diligence for these potential buyers, including by providing them a confidential information memorandum on or around December 8, 2021.  By January 5, 2022, the Company had received six non-binding proposals for the purchase of the CRUSAFin Interests (and a seventh on January 20, 2022), four of which were accepted and met the Minimum Price set by Crédito Real's shareholders.  To allow those parties to continue to conduct due diligence and prepare final, binding proposals, the Company opened a virtual data room in mid-January 2022.  *Id.* ¶13.  The data room contained a substantial amount of information detailing CRUSAFin's finances, assets, and operations.  *Id.*  BNP also arranged management presentations with these four bidders that took place from January 28, 2022 through February 4, 2022.

27.    February 9, 2022 was established as the final bid deadline, and on that date, four potential purchasers submitted final binding offers. *Id.* ¶ 14.  One of those offers was selected by Crédito Real, and the parties continued to negotiate its final terms until April 2022.  These

12

further negotiations were ultimately unsuccessful, particularly given the uncertainty around the Company's financial distress.  *Id.*

28.     In early May 2022, discussions resumed with an interested party in the process to explore potential sale structures, conduct confirmatory due diligence, and negotiate a purchase agreement.   Other interested parties also signed confidentiality agreements and started due diligence.  Wagstaff Decl. ¶ 15.

**B.  Re-Launch After Mexican Liquidation Proceeding**

29.     In July 2022, after entry of the Final Mexican Order, the Foreign Representative and Mexican Liquidator, on behalf of the Chapter 15 Debtor, determined that resuming the marketing process via section 363 of the Bankruptcy Code as part of the Chapter 15 Case, would expedite a value-maximizing sale of the CRUSAFin Interests.   A transparent and competitive process within the Chapter 15 Case provides potential buyers with greater transparency and certainty, the lack of which significantly hampered the success of the prior out-of-court Sale process by materially impacting the sale price.  *Id.* ¶ 16.

30.     As part of the re-launch, potential buyers that had signed confidentiality agreements and provided satisfactory indications of interest (whether oral or written) were given access to the virtual data room so that they could perform additional diligence and exchange information with BNP, CRUSAFin, the Foreign Representative and the Mexican Liquidator, on behalf of the Chapter 15 Debtor.  *Id.* ¶ 17.

31.     Additional outreach to 12 new potential investors resulted in five more parties executing confidentiality agreements.  *Id.*  From July through September 2022, four potential purchasers were active in the data room conducting diligence and having a dialogue with BNP, the Foreign Representative, and the Mexican Liquidator.  *Id.*  BNP arranged numerous calls

13

between these active potential purchasers and CRUSAFin's management, the Foreign Representative, the Mexican Liquidator, and their respective legal advisors. *Id.*

32.    On or around October 17, 2022, BNP resigned as investment banker. Riveron RTS, LLC together with its subsidiaries (collectively, including Riveron Consulting, LLC, "**Riveron**") was subsequently engaged to act as the financial advisor for the Sale of the CRUSAFin Interests. Wagstaff Decl. ¶ 5.

### C. Marketing Efforts Following the Original Motion

33.    Since its engagement, Riveron has engaged with the potential purchasers who had provided competitive indications of interest. *Id.* ¶ 19. As of the date hereof, several potential purchasers continue to conduct diligence and engage in discussions with management, Riveron, the Foreign Representative, and the Mexican Liquidator. *Id.* Although no stalking horse agreement has been finalized as of the date of this Amended Motion, several parties remain interested in serving as the stalking horse bidder for the CRUSAFin Interests. *Id.* The Mexican Liquidator and Foreign Representative are hopeful that a competitive stalking horse bid will be finalized very soon. The Foreign Representative, Mexican Liquidator, CRUSAFin's management, and Riveron are working closely with potential stalking horse bidders to improve the terms of their bids and make them actionable proposals. *Id.*

34.    During this time, Wells Fargo has continued to express its concern to the Company and its advisors with the uncertainty about the Sale process and the Chapter 15 Debtor's ability to close the Sale Transaction before the January 2023 maturity date. *Id*. ¶ 18. Wells Fargo is under no obligation to further extend the maturity of the Wells Fargo LOC beyond January 2023 and has provided no indication that it would be willing to do so consensually. *Id*. Therefore, time is of the essence, and the Foreign Representative and Mexican

14

Liquidator believe it is paramount that the Sale process move forward to ensure there is no unnecessary loss of value. *Id*.

## IV.    The Proposed Sale

35.    The Foreign Representative seeks authority, among other things, to implement a robust, court-supervised Sale process for the CRUSAFin Interests and ultimately sell the CRUSAFin Interests free and clear of all Interests pursuant to section 363(f) of the Bankruptcy Code. Although the Chapter 15 Debtor presently owns the CRUSAFin Interests indirectly, the CRUSAFin Interests are the Chapter 15 Debtor's most significant U.S. assets and therefore any sale requires the approval of the Chapter 15 Debtor and Mexican Liquidator. Ultimately, to facilitate a section 363 sale of its property and thereby maximize value for all stakeholders, the Sale Transaction contemplates that the CRUSAFin Interests will be reorganized such that the Chapter 15 Debtor will be the direct owner at closing.

36.    As this Court is aware, as of the Chapter 15 Petition Date, the Chapter 15 Debtor owed approximately US$2.5 billion in third-party financial debt obligations. *See* Verified Petition, at ¶ 4. Consummation of a Sale Transaction will therefore unlock value for the Chapter 15 Debtor's creditors that can be distributed in accordance with Mexican law and to the benefit all creditors in the Mexican Liquidation Proceeding. Additionally, CRUSAFin owes approximately $48 million under the Wells Fargo LOC, which is guaranteed by the Chapter 15 Debtor and, as a result of a number of extensions, is set to mature in January 2023. The proposed Sale requires buyers to either assume, refinance or cash out the Wells Fargo LOC, which ultimately benefits the Chapter 15 Debtor and its other creditors by releasing the guaranty.

AMERICAS 118678912

V.    **The Sale Timeline**[10]

37.    The Foreign Representative proposes the following dates and deadlines for the Sale process (the "**Deadlines**"):[11]

| Deadline | Item |
|---|---|
| **Within 2 business days of Entry of the Amended Bidding Procedures Order** | Deadline for the Foreign Representative to file and serve the Sale Notice |
| **December [28], 2022 at 4:00 p.m. (Eastern Time)** | Deadline to file objections to the Sale Transaction |
| **January [6], 2023 at 4:00 p.m. (Eastern Time)** | Final Bid Deadline |
| **January [9], 2023 at 10:30 a.m. (Eastern Time)** | Auction Date (if one is to be held) |
| **Within 2 business days of conclusion of the Auction** | Deadline to file the Post Auction Notice |
| **January [12], 2023 at 4:00 p.m. (Eastern Time)** | Deadline to file objections to the conduct of the Auction |
| **January [17], 2023 at [____](Eastern Time)** | Proposed hearing to approve the proposed Sale Transaction |

38.    In formulating the Deadlines, the Foreign Representative balanced the need to provide an adequate period for potential purchasers to conduct due diligence and submit bids on the CRUSAFin Interests, with the need to quickly and efficiently sell the CRUSAFin Interests to unlock value for the Chapter 15 Debtor's creditors.  Wagstaff Decl. ¶ 23.  The Deadlines also account for the substantial marketing process that was conducted prior to the Chapter 15 Case. *Id*.  Additionally, because certain defaults continue to exist under the Wells Fargo LOC and repayment of the Wells Fargo LOC is expected to occur as part of the Sale Transaction, CRUSAFin and the Chapter 15 Debtor must close the Sale by the end of January 2023. *Id*.  The

---

[10]    Where context requires, capitalized terms used in this section, but not defined herein shall have the meaning ascribed to such terms in the Amended Bidding Procedures Order.

[11]    The proposed Deadlines assume that the hearing on the Amended Motion will be held on or around December 7, 2022 (i.e., before the hearing on recognition of the Mexican Liquidation Proceeding).

16

proposed Deadlines will provide Qualified Bidders with approximately one month to finalize their review of the comprehensive materials made available to potential bidders many months ago, and conduct targeted additional diligence with management. *Id.* The Foreign Representative respectfully submits this is sufficient time for parties to formulate and submit bids.

## VI.    Bidding Procedures

39.    The Foreign Representative requests authorization to run an auction process with respect to the CRUSAFin Interests pursuant to the Bidding Procedures. The Bidding Procedures are designed to generate the highest or otherwise best available recoveries to the Chapter 15 Debtor's stakeholders by encouraging potential purchasers to submit competitive bids for the CRUSAFin Interests. The Bidding Procedures describe, among other things, the procedures for interested parties to access due diligence, the manner in which Bidders and Bids become "qualified," the receipt and negotiation of bids received, the conduct of any auction, the selection and approval of any ultimately Successful Bidder and Back-Up Bidder (as defined below), and the deadlines with respect to the foregoing.

40.    While the Foreign Representative does not, at this time, seek authority pursuant to this Amended Motion to enter into a stalking horse agreement, it may seek authority do so in the future, on an expedited basis, by separate motion and order (including entry into any bid protections that may be provided therein), subject to the terms of the Bidding Procedures.

41.    Certain of the key terms of the Bidding Procedures are highlighted below pursuant to Local Bankruptcy Rule 6004-1(c):[12]

---

[12]    The following summary is qualified in its entirety by reference to the provisions of the Bidding Procedures. In the event of any inconsistencies between the provisions of the Bidding Procedures and the terms herein, the terms of the Bidding Procedures shall govern. Unless otherwise defined in the summary

17

| Summary of Bidding Procedures | |
|---|---|
| *Consultation Party* | The Foreign Representative shall reasonably consult the Ad Hoc Group (the "**Consultation Party**") through its U.S. counsel, as explicitly provided for in the Bidding Procedures; provided, however, that, notwithstanding anything to the contrary, the Foreign Representative shall not be required to consult with the Consultation Party if (i) any member of the Ad Hoc Group submits a Bid or has a Bid submitted on its behalf, for so long as such Bid remains open or (ii) the Foreign Representative determines, in his reasonable business judgment, that consulting with such Consultation Party regarding any issue, selection or determination would be likely to have a chilling effect on potential bidding or otherwise be contrary to the goal of maximizing value for the CRUSAFin Interests.  Additionally, subject to the foregoing proviso, the Foreign Representative shall provide the Consultation Party with all information pertaining to the bidding and sale process contemplated by the Bidding Procedures as may be reasonably requested by the Consultation Party. |
| *Qualifications to Submit Bids and Participate in Auction* | To participate in the bidding process and to receive access to due diligence materials (the "**Diligence Materials**"), a party must submit to the Foreign Representative (i) an executed confidentiality agreement in form and substance satisfactory to the Mexican Liquidator and the Foreign Representative and (ii) reasonable evidence demonstrating the party's financial capability to consummate a purchase of the CRUSAFin Interests, as determined by the Foreign Representative and Mexican Liquidator in their sole discretion. |
| *Bid Deadline and Auction Qualification Process* | To be eligible to participate in the Auction, each offer, solicitation or proposal (each, a "**Bid**"), and each party submitting such a Bid (each, a "**Bidder**"), (i) must be determined by the Foreign Representative and Mexican Liquidator, in consultation with the Consultation Party, to satisfy each of the conditions set forth in the Bidding Procedures and (ii) must submit a Bid, in writing, so as to be **actually received** by (a) counsel to the Foreign Representative, White & Case LLP, Attn: John K. Cunningham (jcunningham@whitecase.com), Bill Parish (bill.parish@whitecase.com), Emilio Grandio (emilio.grandio@ whitecase.com), and Amanda Parra Criste (aparracriste@whitecase.com), (b) the Foreign Representative, Attn: Robert Wagstaff (robert.wagstaff@riveron.com), and (c) Riveron Consulting, LLC, Attn: Jabier Arbeloa (CruiseProject@riveron.com) **on or before January [6], 2023 at 4:00 p.m.** (prevailing Eastern Time) (the "**Bid Deadline**"). |
| *Designation of Qualified Bidder* | A Bid for the CRUSAFin Interests received from a Bidder before the Bid Deadline that meets the requirements in the Bidding Procedures shall constitute a "**Qualified Bid**", as determined by the Foreign Representative and Mexican Liquidator, in consultation with the Consultation Party, and such Bidder shall constitute a "**Qualified Bidder**" for such assets.  The |

set forth in the accompanying text, capitalized terms shall have the meanings ascribed to them in the Bidding Procedures.

18

| Summary of Bidding Procedures | |
|---|---|
| | Foreign Representative shall consult with the Consultation Party regarding whether (i) a Bid is or is not a Qualified Bid or (ii) any Bid or potential Qualified Bidder should be disqualified. |
| *Auction Baseline Bid* | Prior to or at the start of the Auction, the Foreign Representative will notify the other Qualified Bidder(s) participating in the Auction, and the Consultation Party of the highest or otherwise best Qualified Bid received before the Bid Deadline (the "**Auction Baseline Bid**"). |
| *Auction Procedures* | The Auction, if any, shall take place **on January [9], 2023 at 10:30 a.m. (prevailing Eastern Time)** in a virtual room hosted by the Foreign Representative's counsel, or such other place and time as the Foreign Representative shall notify all Qualified Bidders and the Consultation Party. |
| | The Foreign Representative, Mexican Liquidator, and their professionals shall direct and preside over the Auction and the Auction shall be transcribed.   Other than as expressly set forth herein, the Foreign Representative and Mexican Liquidator (in consultation with the Consultation Party) may conduct the Auction in the manner they determine will result in the highest or otherwise best offer for the CRUSAFin Interests. |
| *No Collusion* | Each Qualified Bidder participating in the Auction must confirm on the record that it: (i) has not engaged in any collusion with respect to the bidding or sale of any of the CRUSAFin Interests; (ii) has reviewed, understands and accepts the Bidding Procedures; and (iii) has consented to the core jurisdiction of the Bankruptcy Court with respect to the Sale, including the Bidding Procedures, and the Auction, and, as applicable, any Stalking Horse SPA, any Modified SPA, or the construction and enforcement of documents relating to any Sale Transaction. |
| *Overbids* | An "**Overbid**" is any bid made at the Auction subsequent to the Foreign Representative's announcement of the respective Auction Baseline Bid.  To submit an Overbid for purposes of the Auction, a Bidder must comply with the following conditions: |
| | 1.  <u>Minimum Overbid Increments</u>: Any Overbid after and above the respective Auction Baseline Bid shall be made in increments valued at not less than $250,000.00.  The Foreign Representative reserves the right, after consultation with the Consultation Party, to announce reductions or increases in the minimum incremental bids (or in valuing such bids) at any time during the Auction.  Additional consideration in excess of the amount set forth in the respective Auction Baseline Bid must be in cash. |
| | 2.  <u>Remaining Terms Are the Same as for Qualified Bids</u>: Except as modified herein, an Overbid at the Auction must comply with the conditions for a Qualified Bid set forth above; <u>provided</u>, <u>however</u>, that the Bid Deadline shall not apply.  Any Overbid must include, in addition to the amount and the form of |

19

| **Summary of Bidding Procedures** | |
|---|---|
| | consideration of the Overbid, a description of all changes requested by the Bidder to the Stalking Horse SPA (if applicable) or Modified SPA, as the case may be, in connection therewith.  Any Overbid must remain open and binding on the Bidder as set forth in the Bidding Procedures. |
| *Successful Bidder* | The Auction shall continue until the Foreign Representative and Mexican Liquidator select such Qualified Bid, in consultation with the Consultation Party, that is the highest and best Qualified Bid taking into account any factors the Foreign Representative and Mexican Liquidator, in consultation with the Consultation Party, reasonably deem relevant to the value and certainty of the Qualified Bid to the Chapter 15 Debtor (such Qualified Bid, the "**Successful Bid**," and the Bidder submitting such Successful Bid, the "**Successful Bidder**") as the winner of the Auction.<br><br>The Auction shall close when the Successful Bidder submits a fully executed Successful SPA and transaction documents memorializing the terms of the Successful Bid. |
| *Back-Up Bidder* | Notwithstanding anything in the Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next highest or otherwise best Bid to the Successful Bid at the Auction, as determined by the Foreign Representative and Mexican Liquidator, in the exercise of their business judgment and after consulting with the Consultation Party, will be designated as the backup bidder (the "**Back-Up Bidder**").  The Back-Up Bidder shall be required to keep its initial Qualified Bid (or if the Back-Up Bidder submitted one or more Overbids at the Auction, the Back-Up Bidder's final Overbid) (the "**Back-Up Bid**") open and irrevocable until the earlier of (i) the closing of the transaction with the Successful Bidder, (ii) 5:00 p.m. (prevailing Eastern Time) on the date that is sixty (60) days after the date of entry of the Sale Order, or such other date as may be agreed to by the Back-Up Bidder as reflected in a Modified SPA.<br><br>Following the Sale Hearing, if the Modified SPA or Stalking Horse SPA, as applicable, related to the Successful Bid is terminated for any reason prior to consummation of the transaction contemplated thereby (a "**Successful Bid Failure**"), the Back-Up Bid will be deemed to be the new Successful Bid, and the Chapter 15 Debtor will be authorized, without further order of the Bankruptcy Court, to consummate the transaction with the Back-Up Bidder, provided that the Foreign Representative shall provide prompt notice of such Successful Bid Failure to the Consultation Party and shall post a notice on the docket of the Chapter 15 Case regarding the Successful Bid Failure and the consummation of the transaction with the Back-Up Bidder.  In the case of a Successful Bid Failure, the Successful Bidder's deposit shall either be returned or forfeited in accordance with the terms of the terminated Stalking Horse SPA or Modified SPA. |
| *Reservation of Rights of the Foreign* | Except as otherwise provided in the Amended Bidding Procedures Order, the Foreign Representative further reserves the right as it may reasonably |

| Summary of Bidding Procedures | |
|---|---|
| *Representative; Modification of Bidding and Auction Procedures* | determine in its discretion, after consultation with the Consultation Party, to be in the best interest of the Chapter 15 Debtor to: (i) determine which bidders are Qualified Bidders; (ii) determine which Bids are Qualified Bids; (iii) determine which Qualified Bid is the highest or best proposal and which is the next highest or best proposal; (iv) reject any Bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Amended Bidding Procedures or the requirements of the Bankruptcy Code or (c) contrary to the best interests of the Chapter 15 Debtor and its stakeholders; (v) waive terms and conditions set forth herein with respect to all potential bidders; (vi) impose additional terms and conditions with respect to all potential bidders; (vii) extend the deadlines set forth herein; (viii) continue or cancel the Auction and/or Sale Hearing in open court without further notice; and (ix) modify the Bidding Procedures and implement additional procedural rules that the Foreign Representative determines (together with the Bidding Procedures, the "**Auction Rules**"), in his business judgment, will better promote the goals of the bidding process and discharge his fiduciary duties and are not inconsistent with any Bankruptcy Court order, provided that nothing herein shall limit any party in interest's right to file an objection with the Bankruptcy Court with respect to any Auction Rules (other than the Bidding Procedures). |

## VII.    Notice Procedures

42.    <u>Notice of Sale Transaction and Sale Hearing</u>.  Within two (2) business days after the entry of the Amended Bidding Procedures Order, or as soon thereafter as practicable, the Foreign Representative (or his agents) shall serve by first-class mail, postage prepaid, and email (if known), the sale notice (the "**Sale Notice**"), substantially in the form attached to the Amended Bidding Procedures Order as **<u>Schedule II</u>** on the following parties: (i) the U.S. Trustee; (ii) counsel to the Ad Hoc Group, Akin Gump Strauss Hauer & Feld LLP, Attn: Ira S. Dizengoff (idizengoff@akingump.com), David H. Botter (dbotter@akingump.com), Abid Qureshi (aqureshi@akingump.com), and James R. Savin (jsavin@akingump.com); (iii) counsel to Wells Fargo Bank, N.A.; (iv) counsel to The Bank of New York Mellon as indenture trustee under the indentures of certain senior unsecured notes and certain subordinated perpetual notes issued by the Chapter 15 Debtor; (v) any known affected creditor(s) asserting a lien, claim, or

21

encumbrance against, or interest in, the relevant assets; (vi) any party that has expressed an interest in purchasing the CRUSAFin Interests during the last three (3) months; (vii) the Internal Revenue Service; (viii) United States Attorney for the District of Delaware; (ix) the Mexican National Banking and Securities Commission (*Comisión Nacional Bancaria y de Valores*); (x) the state attorneys general for all states in which the Chapter 15 Debtor conducts business; and (xi) any such other party entitled to receive notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**").   The Foreign Representative shall also publish the Sale Notice, in English and Spanish, on the Chapter 15 Debtor's website.  The Foreign Representative submits that such notice is sufficient and proper notice of the occurrence of the Sale Transaction with respect to known interested parties.

43.     Post Auction Notice.  No later than two (2) business days after the conclusion of the Auction (if one is conducted), the Foreign Representative shall file on the docket and post on the Company's website, in English and Spanish, a notice substantially in the form attached to the Amended Bidding Procedures Order as **Schedule III** (the "**Post Auction Notice**"), that, among other things: (i) identifies the Successful Bidder and the Back-Up Bidder; (ii) contains information for how parties may access the transaction documentation related to the Successful Bid; and (iii) provides the date and time of the Sale Objection Deadline and Sale Hearing.

## BASIS FOR RELIEF

**I.     Provisional Relief Is Authorized under Sections 105(a), 363, and 1519 of the Bankruptcy Code**

44.     Section 1519 of the Bankruptcy Code provides the Court with broad discretion to grant provisional relief during the period between the filing of a chapter 15 petition and the court's ruling on that petition.  *In re Elpida Memory, Inc.*, No. 12-10947 (CSS), 2012 Bankr. LEXIS 5367, at *27 (Bankr. D. Del. Nov. 16, 2012) ("Sections 1507, 1519, 1521, and 1522

22

provide the Court with broad discretion to grant any appropriate relief."). Specifically, section 1519(a) of the Bankruptcy Code permits the Court to grant provisional relief where such relief is "urgently needed to protect the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1519(a).

45. Section 1519(a)(3) of the Bankruptcy Code empowers the Court to issue a provisional order "granting any relief referred to in paragraph (3), (4), and (7) of section 1521(a)." 11 U.S.C. § 1519(a)(3). Relevant here, section 1521(a)(7) of the Bankruptcy Code allows the Court to grant the foreign representative "any additional relief that may be available to a trustee," subject to certain statutory exceptions regarding certain avoidance powers that are not applicable here. 11 U.S.C. § 1519(a)(7). Additionally, the list in section 1519(a) is not exhaustive. *See, e.g.*, *In re Ran*, 607 F.3d 1017, 1021 (5th Cir. 2010) (Sections 1519(a)(1)-(3) represent a "non-exhaustive list of relief available to a foreign proceeding's representative in a Chapter 15 case"); *In re Vitro*, 455 B.R. 571, 579 (Bankr. N.D. Tex. 2011) ("[T]he relief enumerated in section 1519 is not all-inclusive" and "[t]he plain language of section 1519 of the Bankruptcy Code does not contain a limitation on the Court's authority to issue a stay or injunction, and that is where the Court's analysis must end."); Hr'g Tr., *In re Daewoo Corp.*, No. 06-12242 (REG) (Bankr. S.D.N.Y. Oct. 11, 2006) [ECF No. 24] (interpreting section 1519(a)'s use of "including" to mean the list that follows is not exhaustive).

46. Moreover, section 105(a) of the Bankruptcy Code is a separate basis for applying 363 to a chapter 15 case on a provisional basis as is necessary to protect a chapter 15 debtor and its creditors. *See In re Pro-Fit Holdings Ltd.*, 391 B.R. 850, 867 (Bankr. C.D. Cal. 2008) (acknowledging that section 363 could immediately apply to chapter 15 under sections 1519(a), 105(a), and 105(d) of the Bankruptcy Code). Thus, the Court has discretion under both sections

23

1519(a) and 105 of the Bankruptcy Code to grant the relief requested in this Amended Motion prior to entry of a recognition order.

47.    Here, the application of section 363 of the Bankruptcy Code to the Sale and approval of the Bidding Procedures is urgently needed to protect the interest of creditors.  In the absence of such relief, there is a risk of (i) devaluation of the CRUSAFin Interests, (ii) potential purchasers for the CRUSAFin Interests walking away from negotiations, and (iii) the closing of the Sale Transaction not occurring prior to Wells Fargo LOC's January 2023 maturity date – all of which would irreparably harm a value-maximizing Sale Transaction and in the interests of the Chapter 15 Debtor's creditors.  Wagstaff Decl. ¶ 20.

## II.    Section 1519(e) is Inapplicable to the Provisional Relief Requested in this Amended Motion

48.    Section 1519(e) provides that the "standards, procedures, and limitations applicable to an injunction shall apply to relief under [section 1519]."  *See* 11 U.S.C. § 1519(e). There is a split of authority as to whether this provision requires the injunction standard be met for all types of relief requested under section 1519, or whether it only applies to injunctive type of relief.  The Third Circuit has not addressed this precise issue.  Although the majority of courts find that the injunction standard applies to all types of relief, at least two courts have held that non-injunctive relief under section 1519 of the Bankruptcy Code is not subject to the requirements for the issuance of an injunction.  *See In re Pro-Fit,* 391 B.R. at 859-860; *In re Ace Track Co.*, *Ltd.*, 556 B.R. 887, 894 (Bankr. N.D. Ill. 2016).

49.    In *Pro-Fit Intl.*, the court declined to impose the 1519(e) standards on the foreign representative's request for the application of section 362 to stay the enforcement of a U.S. district court order.  *In re Pro-Fit,* 391 B.R. at 867.  The court concluded that the requirements of

1519(e) should apply only to requests for injunctive relief, and are not applicable to requests that are *not* injunctive in nature.  *Id*. at 860-61 (holding that "if the foreign representative is seeking different relief, and not an injunction, subsection (e) [of 1519] does not apply"); *see also In re Ace Track*, 556 B.R. at 894 n. 6.  The *ProFit* court reasoned that such broad application of § 1519(e) would be inconsistent with the legislative history, which states: "'Subsection (e) makes clear that this section contemplates injunctive relief and that ***such relief*** is subject to specific rules and a body of jurisprudence.'"  *In re Pro-Fit*, 391 B.R. at 860 (quoting H.R. REP. NO. 109–31(1) at 116 (2005), as reprinted in 1005 U.S.C.C.A.N. 88, 178) (emphasis added).

50.    Here, the relief requested by the Amended Motion is not injunctive in nature.  In approving sales of property under section 363, bankruptcy courts uniformly agree that the business judgment standard applies;[13] satisfaction of the requirements for an injunction is never required.

51.    Those courts that have expressly rejected *ProFit* are distinguishable to this case as they concerned requests for stays under section 362, and not relief under section 363 of the Bankruptcy Code.  *See*, *e.g*, *In re Worldwide Educ. Services, Inc.*, 494 B.R. 494 (Bankr. C.D. Cal. 2013) (rejecting *Pro-Fit* and determining that the standard of proof for preliminary injunctive relief should apply to a preliminary stay request pending recognition).  Therefore, for the same reasons espoused in *ProFit* and *Ace Track*, the relief requested herein should be approved on a provisional basis pursuant to sections 1519 and 105(a) without requiring compliance with the procedural or substantive requirements for obtaining an injunction.

---

[13] *See*, e.g., *In re Elpida Memory*, 2012 Bankr. LEXIS 5367, *17 (Bankr. D. Del. Nov. 16, 2012) ("The section 363(b) standard is well-settled. A debtor may sell assets outside the ordinary course of business when it has demonstrated that the sale of such assets represents the sound exercise of business judgment.")

AMERICAS 118678912

### III. The 1519(e) Standards are Nevertheless Satisfied With Respect to the Provisional Relief Requested in this Amended Motion

52.     Even if approval of provisional relief in this Chapter 15 Case is subject to section 1519(e) of the Bankruptcy Code, the relief requested in this Amended Motion satisfies the standards for injunctive relief.

53.     "In the Third Circuit, that [injunction]] standard requires an analysis of: "(1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest." *U.S. v. Bell*, 414 F.3d 474, 478 n.4 (3d Cir. 2005) (citing *ACLU of N.J. v. Black Horse Pike Reg'l Bd. of Educ.*, 84 F.3d 1471, 1477 n.2 (3d Cir. 1996)); *see also In re Nortel Networks UK Ltd.*, 538 B.R. 699, 704-05 (Bankr. D. Del. 2015) (applying the injunctive standard in *Bell* where debtors sought to enjoin pre-petition claims in chapter 15 case).

54.     As to the first factor, the Foreign Representative submits that it is reasonably probable that a Sale process conducted in accordance with the Bidding Procedures will lead to a value-maximizing transaction that is approved by this Court.  As discussed further in Section IV below, to approve the Sale, the Court must find that it is a sound exercise of business judgment. Because the Bidding Procedures are designed to promote a competitive and robust Sale process the Foreign Representative will be able to provide evidence at the Sale Hearing that the Sale was conducted in accordance with the Bidding Procedures and that the Successful Bid is the highest and best return for the CRUSAFin Interests.  Therefore, it is more than reasonably probable that the Sale will be approved.

26

55.     As to the second factor, the Chapter 15 Debtor will suffer irreparable harm absent immediate approval of the relief requested herein.  If the Chapter 15 Debtor is forced to wait until approval of the Verified Petition in order to conduct the Sale, it will be impossible for the Foreign Representative to close the Sale Transaction within the required time frame.  Wagstaff Decl. ¶ 20.  By granting the relief on a provisional basis, the Foreign Representative will be able to properly complete the Sale as expeditiously as possible for the benefit of all stakeholders.  *Id.* Moreover, the Foreign Representative fears that any further delay will significantly slow the current momentum and cause potential bidders to lose interest.  *Id.*  In essence, the costs of further delay far outweigh any benefit to waiting until recognition.

56.     As to the third factor, the balance of harms also weighs in favor of granting the relief requested pursuant to §1519.  As explained above, the Bidding Procedures would open the Sale process to all interested stakeholders and would allow the Chapter 15 Debtor to maximize the value of the CRUSAFin Interests for the benefit of all creditors under the supervision of this Court.  The application of section 363 will not bar or otherwise disenfranchise parties from participating in the Sale process or the Mexican Liquidation Proceeding.  Moreover, absent such provisional relief, Wells Fargo may begin enforcement proceedings or seek other compensation to extend the Wells Fargo LOC before the Sale can be completed, which will require the Foreign Representative to explore other options—all of which will likely cost money and result in less value for creditors.  On the other hand, as set forth above, the harm to the Chapter 15 Debtor, in the absence of immediate, provisional relief, would be severe.

57.     Finally, granting the relief on a provisional basis is also consistent with the public policies of chapter 15 by facilitating the Chapter 15 Debtor's efforts to conduct an orderly and efficient liquidation of its assets for the benefit of its creditors and other stakeholders.  *In re*

27

*Tribune Co.*, 477 B.R. 465, 475 (Bankr. D. Del. 2012) ("[T]here is also a strong public interest in the swift and efficient resolution of bankruptcy proceedings").  Moreover, the requested relief promotes the purposes of chapter 15, including by: (i) providing greater legal certainty for trade and investment; (ii) fostering the fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested parties, including the Chapter 15 Debtor; and (iii) maximizing the value of the Chapter 15 Debtor's assets, in particular as the assets subject to the Sale are located in the U.S.; (iv) promoting cooperation between the courts in the United States with those in foreign jurisdictions involved in cross-border insolvency cases. *See* 11 U.S.C. §§ 1501(a), 1525.

58.    For these reasons, courts in this circuit have frequently granted requests for provisional relief in chapter 15 cases in which the foreign debtor is subject to foreign liquidation proceedings.  *See, e.g.*, *In re Point Investments, Ltd.*, Case No. 22-10261 (JKS) (Bankr. D. Del. Apr. 5, 2022) [ECF No. 37] (granting provisional relief pursuant to sections 1519 and 1521); *In re CDS U.S. Holdings, Inc., et. al*, Case No. 20-11719 (CSS) (Bankr. D. Del. July 17, 2020) [ECF No. 53] (granting recognition and stay relief on a provisional basis and granting the foreign representative and the debtors "full protections and rights available pursuant to section 1519(a)(1)-(3) of the Bankruptcy Code"), (Bankr. D. Del. July 17, 2020) [ECF No. 53] (granting provisional recognition of a foreign court order); *In re Unique Broadband Systems Ltd.*, No. 19-11321 (KG) (Bankr. D. Del. June 13, 2019) [ECF No. 12] (granting recognition and stay relief on a provisional basis); *In re Kraus Carpet Inc.*, No. 18-12057 (KG) (Bankr. D. Del. Sept. 12, 2018) [ECF No. 17] (same).

AMERICAS 118678912

IV.     **The Sale Transaction and the Bidding Procedures are Appropriate and in the Best Interests of the Chapter 15 Debtor's Creditors**

59.     Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Accordingly, a foreign representative may sell a chapter 15 debtor's U.S. assets out of the ordinary course of business only subject to the notice and hearing requirements of section 363(b)(1). *See In re Elpida Memory, Inc.*, 2012 Bankr. LEXIS 5367, *16-17 (Bankr. D. Del. Nov. 16, 2012) (finding that section 363 sale standards apply to a sale in chapter 15); s*ee also In re Fairfield Sentry Limited*, 768 F.3d 239, 244 (2d Cir. 2014) (stating that the bankruptcy court is required to conduct a section 363 review in a chapter 15 case when a debtor seeks a transfer of an interest in property within the territorial jurisdiction of the United States). In addition, section 105(a) of the Bankruptcy Code empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

60.     While the Bankruptcy Code does not state the standard for approving sales of property under section 363, courts in this district and in other districts, uniformly agree that the business judgment standard applies. *See, e.g., Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under [section 363(b)], courts require the debtor to show that a sound business purpose justifies such actions"); *Meyers v. Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) ("under normal circumstances the court would defer to the trustee's judgment so long as there is a legitimate business justification")); *In re Elpida Memory*, 2012 Bankr. LEXIS 5367, at *17

29

("The section 363(b) standard is well-settled. A debtor may sell assets outside the ordinary course of business when it has demonstrated that the sale of such assets represents the sound exercise of business judgment.")

61.    "Under Delaware law, the business judgment rule operates as a presumption 'that directors making a business decision, not involving self-interest, act on an informed basis, in good faith and in the honest belief that their actions are in the corporation's best interest.'" *Continuing Creditors' Comm. of Star Telecomms., Inc. v. Edgecomb*, 385 F. Supp. 2d 449, 462 (D. Del. 2004) (quoting *Grobow v. Perot*, 539 A.2d 180, 187 (Del. 1988)); *see also Stanziale v. Nachtomi* (*In re Tower Air, Inc.*), 416 F.3d 229, 238 (3d Cir. 2005).  To satisfy the business judgment standard, courts in this Circuit require that a sale satisfy four requirements: (1) a sound business purpose exists for the sale; (2) the sale price is fair; (3) the debtor has provided adequate and reasonable notice; and (4) the purchaser has acted in good faith.  *See In re Elpida Memory*, 2012 Bankr. LEXIS 5367, at *17.

62.    A sound business justification exists for the Sale of the CRUSAFin Interests, which is a necessary and critical next step in the sale of the Chapter 15 Debtor's assets that will unlock significant value for the Chapter 15 Debtor's creditors.  The Bidding Procedures are fair, reasonable, and designed to maximize the value of the CRUSAFin Interests on a realistic, value-maximizing timeline, for the benefit of all creditors in the Mexican Liquidation Proceeding.  The Bidding Procedures establish an open and transparent bidding process.  All qualified potential bidders will be given sufficient notice and opportunity to acquire Diligence Materials necessary to submit a timely and informed bid.  The periods set forth in the Bidding Procedures will provide interested parties with an adequate opportunity to conduct diligence and submit a Bid.  Moreover, the Bidding Procedures provide the Foreign Representative the opportunity to

30

consider all competing offers and to select, in his reasonable business judgment, and after consultation with the Consultation Party, the highest and best offer for the CRUSAFin Interests.

63.    Any stalking horse agreement the Foreign Representative may be able to identify and obtain Court approval for will only bolster the competitiveness of the process by setting a floor for the value of the CRUSAFin Interests.  From now until the Sale Hearing, the Foreign Representative and Mexican Liquidator intend to continue their marketing and sale efforts.  At the Sale Hearing, the Foreign Representative will provide evidence sufficient to show that all parties have complied with the Bidding Procedures and that the Successful Bid is the highest and best offer for the CRUSAFin Interests.

64.    The approval of the Bidding Procedures for conducting the Auction, and ultimately the Sale of the CRUSAFin Interests, is also necessary to "protect[] and maximize[e] [] the value of the debtor's assets" and promote the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities."  11 U.S.C. § 1501(a)(3) and (4).  Notably, courts in this District have approved sales under section 363 in several chapter 15 cases: *In re Motorcycle Tires & Accessories LLC*, Case No. 19-12706 (KBO) (Bankr. D. Del. 2020) [ECF No. 37] (authorizing the debtors to enter into an agency agreement to sell U.S. assets under section 363); *In re G.I. Sportz Inc*., Case No. 20-12610 (CSS) (Bankr. D. Del. 2020) [ECF No. 37] (approving a sale and the transfer of the debtor's interest in assets located within the United States pursuant to sections 363 and 1521 of the Bankruptcy Code); *In re Irish Bank Resolution Corporation Limited (In Special Liquidation)*, Case No. 13-12159 (CSS) (Bankr. D. Del. 2014) [ECF No. 253] (approving the sale of certain U.S. loan assets under section 363).

AMERICAS 118678912

65.    In sum, the Foreign Representative has a sound business justification for effectuating the Sale and respectfully requests that the Court approve the Bidding Procedures.

## V.    The Court Should Approve the Forms of Notice and Notice Procedures for the Bidding Procedures, the Auction, and the Sale Hearing

66.    Bankruptcy Rules 2002(a)(2) and 2002(i) generally require that a minimum of 21 days' notice of the proposed sale of property outside the ordinary course of business under section 363(b)(1) of the Bankruptcy be provided by mail to "debtor, the trustee, all creditors and indenture trustees" and any committee appointed under section 1102 of the Bankruptcy Code. Fed. R. Bankr. P. 2002.  Such notice must include the time and place of any public sale, the terms and conditions of any private sale, and the time fixed for filing objections.  Fed. R. Bankr. P. 2002(c).  Courts are authorized to limit notice of a proposed sale to the United States trustee, any official committee appointed under section 1102 of the Bankruptcy Code, and any other creditor or equity holder who requests notice.  *See* Fed. R. Bankr. P. 2002(a) and 2002(i).

67.    The notice procedures described above fully comply with Bankruptcy Rule 2002 and are reasonably calculated to provide timely and adequate notice of the Bidding Procedures, the Auction, and the Sale Hearing to the Chapter 15 Debtor's creditors and all other interested parties that are entitled to notice.  Accordingly, the Foreign Representative respectfully requests that the Court approve the notice procedures set forth herein, including the form and manner of the Sale Notice and the Post Auction Notice, and find that no other or further notice is required.

## VI.    The Court Should Approve the Proposed Sale Transaction Free and Clear of Liens, Claims, Interests, and Encumbrances under Bankruptcy Code Section 363(f)

68.    Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in such property if: (i) applicable non-bankruptcy law permits such a free and clear sale; (ii) the holder of the interest consents; (iii) the interest is a lien and the

AMERICAS 118678912

sales price of the property exceeds the value of all liens on the property; (iv) the interest is in bona fide dispute; or (v) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.  11 U.S.C. § 363(f).  As indicated by the use of the disjunctive term "or," when selling property of the estate, it is only necessary to meet one of the five conditions listed in that section.  *See Folger Adam Sec., Inc. v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 257 (3d Cir. 2000) (noting that a debtor is authorized to sell property free and clear of "any interest" if any one of the five prescribed conditions under section 363(f) is met); *In re Kellstrom Indus.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002).

69.     As will be demonstrated at the Sale Hearing, the proposed Sale Transaction satisfies section 363(f) of the Bankruptcy Code because parties with an interest in the CRUSAFin Interests will have consented to the Sale Transaction, either expressly or implicitly after notice and an opportunity for hearing, or could be compelled to accept a money satisfaction of their interests.  Moreover, such parties with liens on the CRUSAFin Interests will receive replacement liens, to the same extent and with the same priority as existed immediately prior to consummation of the Sale Transaction, in the proceeds of the Sale Transaction.

70.     To the extent that the Court finds that the Sale Transaction satisfies section 363(f) of the Bankruptcy Code, the Foreign Representative requests that the Court also hold that the Sale Transaction is free and clear of successor liability relating to the Chapter 15 Debtor's businesses.  The purpose of a free and clear sale under section 363(f) would be frustrated if claimants could thereafter assert claims arising from a debtor's pre-sale conduct against the purchaser.  Moreover, the absence of such assurance may chill bidding or result in reduced bids.

33

**VII.    The Successful Bidder Should Be Entitled to the Protections of Section 363(m) of the Bankruptcy Code Because the Bidding Procedures Ensure a Good Faith Process**

71.     Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

72.     While the Bankruptcy Code does not define good faith, the Third Circuit has held that "[t]he requirement that a purchaser act in good faith . . . speaks to the integrity of [purchaser's] conduct in the course of the sale proceedings." *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (internal citations omitted).

73.     Here, the Bidding Procedures establish a transparent and fair process for the submission of bids and selection of the Successful Bid.  At the Sale Hearing, the Foreign Representative will provide evidence to establish that the Successful SPA executed by a Successful Bidder was negotiated at arms'-length and that the parties complied with the Bidding Procedures in all respects and that there was no collusion.

74.     Providing the Successful Bidder with the protections afforded to a good faith purchaser under section 363(m) will ensure that the Chapter 15 Debtor receives the maximum price for the CRUSAFin Interests and that closing of the Sale Transaction will occur promptly. Accordingly, the Foreign Representative requests that the Sale Order include a finding that the Successful Bidder for the CRUSAFin Interests is a "good faith" purchaser and entitled to the protections of section 363(m) of the Bankruptcy Code.

## WAIVER OF BANKRUPTCY RULE 6004(h) AND 6006(d)

75.     To implement the foregoing successfully, and given the nature of the relief requested herein, the Foreign Representative respectfully requests that the Court find that notice of the Amended Motion is adequate under Bankruptcy Rule 6004(a) and waive the 14-day stay of an order authorizing the use, sale or lease of property and the assumption and assignment of executory contracts and unexpired leases under Bankruptcy Rules 6004(h) and 6006(d).  The sale of the CRUSAFin Interests must be approved and consummated promptly to preserve the value of such equity interests, and the relief requested herein is necessary to avoid immediate and irreparable harm to the Chapter 15 Debtor.  Accordingly, ample cause exists to find the notice requirements of Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the 14-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d).

## NOTICE

76.     Notice of this Amended Motion has been provided via email and/or ECF to certain of the Notice Parties.  To alleviate the burden on the Mexican Liquidator and Chapter 15 Debtor, a shortened notice of the Amended Motion and any hearing on the Amended Motion, which contains information for how parties can receive copies of the Amended Motion, the Bidding Procedures, and the proposed Amended Bidding Procedures Order will be provided to those Notice Parties that are not able to receive service via email or ECF.  The Foreign Representative submits that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

## <u>CONCLUSION</u>

WHEREFORE, for the reasons set forth herein, the Foreign Representative respectfully requests that the Court: (A) enter the Amended Bidding Procedures Order (i) authorizing and approving the Bidding Procedures, (ii) scheduling the Auction and Sale Hearing, (iii) approving the form and manner of notice of the Bidding Procedures, the Auction, and the Sale Hearing; (B) after the Sale Hearing, enter the Sale Order authorizing and approving the sale of the CRUSAFin Interests free and clear of all Interests to the Successful Bidder or to a Back-Up Bidder; and (C) grant such other and further relief as is just and proper.

AMERICAS 118678912

Dated: November 29, 2022


Respectfully submitted,


/s/ Amanda R. Steele
_____

**RICHARDS, LAYTON & FINGER, P.A.**

Mark D. Collins (No. 2981)
John H. Knight (No. 3848)
Amanda R. Steele (No. 4430)
920 North King Street
Wilmington, DE 19801
Telephone:  (302) 651-7700
Facsimile: (302) 651-7701
collins@rlf.com
knight@rlf.com
steele@rlf.com

*Co-Counsel to Petitioner and Foreign*
*Representative*

**WHITE & CASE LLP**

John K. Cunningham (admitted *pro hac vice*)
Philip M. Abelson (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
jcunningham@whitecase.com
philip.abelson@whitecase.com

Richard S. Kebrdle (admitted *pro hac vice*)
Amanda Parra Criste (*pro hac vice* pending)
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
rkebrdle@whitecase.com
aparracriste@whitecase.com

Jason N. Zakia (admitted *pro hac vice*)
111 S. Wacker Drive, Suite 5100
Chicago, IL 60606
Telephone: (312) 881-5400
jzakia@whitecase.com

*Co-Counsel to Petitioner and Foreign Representative*

37

**<u>Exhibit A</u>**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 15 |
| Crédito Real, S.A.B. de C.V., SOFOM, E.N.R.,[1] | Case No. 22-10630 (JTD) |
| Debtor in a Foreign Proceeding. | **Re: Docket No. [●]** |

### ORDER: (A) AUTHORIZING AND APPROVING BIDDING PROCEDURES RELATING TO THE SALE OF THE CHAPTER 15 DEBTOR'S EQUITY INTERESTS IN CRÉDITO REAL USA FINANCE, LLC; (B) SCHEDULING AN AUCTION FOR, AND HEARING TO APPROVE, THE PROPOSED SALE; AND (C) APPROVING THE FORM AND MANNER THEREOF; AND (D) GRANTING RELATED RELIEF

Upon the amended motion (the "**Amended Motion**")[2] of the Foreign Representative for entry of an order (this "**Order**") pursuant to §§ 105(a) and 1519(a) of the Bankruptcy Code (i) authorizing and approving the bidding procedures attached hereto as **Schedule I** (the "**Bidding Procedures**") for the proposed sale (the "**Sale**") of substantially all of the Chapter 15 Debtor's direct and/or indirect equity interests in a majority-owned, U.S. subsidiary, Crédito Real USA Finance, LLC (the "**CRUSAFin Interests**"); (ii) scheduling an auction of the CRUSAFin Interests (the "**Auction**") and a final hearing to consider approval of a sale of the CRUSAFin Interests to a Successful Bidder (the "**Sale Hearing**"); (iii) approving the form and manner of notice of the Bidding Procedures, the Auction, and the Sale Hearing, including the form of notice of the proposed Sale substantially in the form attached hereto as **Schedule II** (the "**Sale Notice**") and notice of, among other things, the Foreign Representative's selection of a Successful Bidder

---

[1] The last four identifying digits of the tax number and the jurisdiction in which the Chapter 15 Debtor pays taxes is Mexico – 6815. The Chapter 15 Debtor's corporate headquarters is located at Avenida Insurgentes Sur No. 730, 20th Floor, Colonia del Valle Norte, Alcaldía Benito Juárez, 03103, Mexico City, Mexico.

[2] Where context requires, capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such term in the Bidding Procedures or the Amended Motion.

substantially in the form attached hereto as **<u>Schedule III</u>** (the "**Post Auction Notice**"); and (iv) granting related relief; and upon the Verified Petition, the Wagstaff Declaration, and any other evidence submitted in support of the Amended Motion; and this Court having considered the Amended Motion, and the arguments of counsel made, and the evidence adduced, at the hearing (the "**Bidding Procedures Hearing**"), if any, on the Amended Motion; and in accordance with Bankruptcy Rules 2002, 6004, and 9014 and Local Rule 6004, due and sufficient notice of the Amended Motion having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and it appearing that the relief set forth herein is necessary to preserve the value of the Chapter 15 Debtor's assets and in the best interests of the Chapter 15 Debtor, the Chapter 15 Debtor's creditors and other parties in interest; and after due deliberation thereon and good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW, SUBJECT, IN EACH CASE, TO PARAGRAPH 18 OF THIS ORDER:**

      A.    <u>Jurisdiction and Venue</u>.  This Court has jurisdiction to consider the Amended Motion and the relief requested under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012 (Sleet, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P) as to which the Bankruptcy Court has the power to enter a final judgment.  Venue of the Chapter 15 Case and the Amended Motion is proper in this District pursuant to 28 U.S.C. §§ 1410(1).

      B.    <u>Statutory Predicates</u>.  The predicates for the relief granted herein are sections 105, 363, 1501, 1507, and 1519 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1(b) and 6004-1 of

2

the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

C. <u>Provisional Relief Necessary</u>. The relief set forth herein is consistent with the purpose of chapter 15 of the Bankruptcy Code and urgently needed to protect the interests of the Chapter 15 Debtor's creditors. The Foreign Representative has demonstrated a substantial likelihood of success on the merits. The Foreign Representative has demonstrated that unless section 363 of the Bankruptcy Code is applied to the Sale in the Chapter 15 Case, there is a material risk of immediate and irreparable harm to the Chapter 15 Debtor and its sale efforts. The Foreign Representative has demonstrated that no injury will result to any party that is greater than the harm to the Chapter 15 Debtor's efforts to maximize value for its creditors. All creditors and other parties in interest are sufficiently protected by the grant of the relief ordered hereby as required by section 1522(a) of the Bankruptcy Code. Due to the nature of the relief requested, no security is required under Rule 65(c) of the Federal Rules of Civil Procedure, as made applicable in chapter 15 cases by Bankruptcy Rule 7065, if applicable, or otherwise. The interests of the public will be served by this Court's entry of this Order.

D. <u>Bidding Procedures</u>. The relief granted herein is in the best interests of the Chapter 15 Debtor and its creditors and other stakeholders. The Foreign Representative has articulated good, sufficient, and sound business reasons for authorizing and approving the following, all of which were developed in good faith and are fair, reasonable, and appropriate under the circumstances: (i) the Bidding Procedures; (ii) the date of the Auction and the Sale Hearing; and (iii) the form and manner of notice of the Bidding Procedures, the Auction, the Sale Transaction, and the Sale Hearing. The relief granted herein is designed to maximize the recovery on, and

3

realizable value of, the CRUSAFin Interests.   The Bidding Procedures comply with the requirements of Local Rule 6004-1(c).

      E.    <u>Notice of the Amended Motion</u>.   The Foreign Representative's notice of the Amended Motion, Bidding Procedures Hearing, and the proposed entry of this Order was sufficient under the circumstances of this case and complied with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.   Accordingly, no other or further notice of the Amended Motion or the entry of this Order is necessary or required.   A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to all parties in interest.

      F.    <u>Sale Notice</u>.   The Foreign Representative has set forth a notice process that is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale, including notice of the following:   (i) the Bidding Procedures and certain dates and deadlines related thereto; (ii) the date, time, and place of the Auction (if one is held); (iii) the objection deadlines for the Sale and the date, time, and place of the Sale Hearing; (iv) reasonably specific identification of the assets for sale; and (v) representations describing the Sale as being free and clear of liens, claims, interests, and other encumbrances, with all such liens, claims, encumbrances, and other interests of any kind or nature, including rights or claims based on any successor or transferee liability (collectively, the "**Interests**") attaching with the same validity and priority to the sale proceeds subject to customary exceptions for permitted liens.   Such notice process is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of each, and no other or further notice of the Sale shall be required.

      G.    <u>Other Findings</u>.  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this

<div align="center">4</div>

proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the foregoing findings of

fact constitute conclusions of law, they are adopted as such.  To the extent any of the following

conclusions of law constitute findings of fact, they are adopted as such.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Amended Motion and the relief requested therein is **GRANTED** and

**APPROVED**, in accordance with the terms and conditions set forth in this Order.

2.      All objections to the Amended Motion with respect to the entry of this Order, to the

extent not withdrawn, waived, settled, or not otherwise resolved, and all reservation of rights

included therein, are hereby **DENIED** and **OVERRULED** on the merits with prejudice.  All

withdrawn objections are deemed withdrawn with prejudice.

3.      Section 363 of the Bankruptcy Code shall apply to the Chapter 15 Case with respect

to the sale of the CRUSAFin Interests, without the requirement that the Foreign Representative

commence an adversary proceeding.

4.      The entry of this Order shall be without prejudice to the right of the Foreign

Representative to seek additional provisional or final relief from this Court in these Chapter 15

Cases.

5.      The entry of this Order shall be without prejudice to the rights of the Foreign

Representative, the Ad Hoc Group, any member of the Ad Hoc Group, and any other party in

interest with respect to (i) the Ad Hoc Group's objection to the Verified Petition for recognition

of the Mexican Liquidation Proceeding, (ii) the Involuntary Case filed by certain members of the

Ad Hoc Group, or (iii) the Foreign Representative's motion to dismiss the Involuntary Case, and

all such parties' rights and remedies with respect to the foregoing are hereby expressly preserved.

5

**Important Dates and Deadlines**

6.     The following dates and deadlines regarding the Sale are hereby established, subject to the right of the Foreign Representative to modify the following dates pursuant to the Bidding Procedures, after consultation with the Consultation Party as provided in the Bidding Procedures:[3]

| Deadline | Item |
| --- | --- |
| [____], 2022 at [___] (Eastern Time) | Hearing to consider entry of the Bidding Procedures Order |
| Within 2 business days of Entry of the Bidding Procedures Order | Deadline for the Foreign Representative to file and serve the Sale Notice |
| December [28], 2022 at 4:00 p.m. (Eastern Time) | Deadline to file objections to the Sale Transaction |
| January [6], 2023 at 4:00 p.m. (Eastern Time) | Final Bid Deadline |
| January [9], 2023 at 10:30 a.m. (Eastern Time) | Auction Date (if one is to be held) |
| Within 2 business days of conclusion of the Auction | Deadline to file the Post Auction Notice |
| January [12], 2023 at 4:00 p.m. (Eastern Time) | Deadline to file objections to the conduct of the Auction |
| January [17], 2023 at [___](Eastern Time) | Proposed hearing to approve the proposed Sale Transaction |

**The Bidding Procedures**

7.     The Bidding Procedures are hereby approved in their entirety and incorporated herein by reference.  The Foreign Representative and Mexican Liquidator, on behalf of the Chapter 15 Debtor, are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

---

[3] The "**Consultation Party**" consists of the Ad Hoc Group constituting of the parties disclosed in the *Verified Statement Pursuant to Bankruptcy Rule 2019*, Case No. 22-10696 (JTD) (Bankr. D. Del. Aug 4, 2022) [ECF No. 27].

8.       The failure to specifically include or reference any particular provision of the Bidding Procedures in the Amended Motion or this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being this Court's intent that the Bidding Procedures be authorized and approved in their entirety, as if fully set forth in this Order.

9.       The Foreign Representative and Mexican Liquidator may, as they deem necessary and appropriate in the prudent exercise of their business judgment and after consultation with the Consultation Party, execute one or more "stalking horse" agreements (a "**Stalking Horse SPA**") for the CRUSAFin Interests and seek approval by separate Amended Motion and order, on an expedited basis, of such Stalking Horse SPA, including any bid protections that may be provided therein.

## Notice of the Sale Transaction and the Sale Hearing

10.       Sale Notice. Within two (2) business days after the entry of this Order, or as soon as practicable, the Foreign Representative (or his agents) shall serve the Sale Notice in substantially the form attached hereto as **Schedule II**, by first-class mail, postage prepaid, and e-mail (if known), upon the following parties: (i) the U.S. Trustee; (ii) counsel to the Ad Hoc Group, Akin Gump Strauss Hauer & Feld LLP, Attn: Ira S. Dizengoff (idizengoff@akingump.com), David H. Botter (dbotter@akingump.com), Abid Qureshi (aqureshi@akingump.com) and James R. Savin (jsavin@akingump.com); (iii) counsel to Wells Fargo; (iv) counsel to The Bank of New York Mellon as indenture trustee under the indentures of certain senior unsecured notes and certain subordinated perpetual notes issued by the Chapter 15 Debtor; (v) any known affected creditor(s) asserting a lien, claim, or encumbrance against, or interest in, the relevant assets; (vi) any party that has expressed an interest in purchasing the CRUSAFin Interests during the last three (3) months; (vii) the Internal Revenue Service; (viii) United States Attorney for the District of

7

Delaware; (ix) the Mexican National Banking and Securities Commission (*Comisión Nacional Bancaria y de Valores*); (x) the state attorneys general for all states in which the Chapter 15 Debtor conducts business; and (xi) any such other party entitled to receive notice pursuant to Bankruptcy Rule 2002.  The Foreign Representative shall also publish the Sale Notice, in English and Spanish, on the Chapter 15 Debtor's website.  Such notice shall be sufficient and proper notice of this Order, the Bidding Procedures, the Sale, and the Sale Hearing.

11.     <u>Post Auction Notice</u>.  No later than two (2) Business Days after the conclusion of the Auction (if one is conducted), the Foreign Representative shall file on the docket and post on the Chapter 15 Debtor's website, in English and Spanish, the Post Auction Notice substantially in the form attached to this Order as **<u>Schedule III</u>**, that, among other things: (i) identifies the Successful Bidder and the Back-Up Bidder and contains information for how parties may access the transaction documentation related to Successful Bid; and (ii) provides the date and time of the Sale Objection Deadline and Sale Hearing.

<div align="center">**<u>The Auction</u>**</div>

12.     To the extent one or more Qualified Bids are received, the Foreign Representative is authorized to conduct the Auction with respect to the CRUSAFin Interests.  The Auction (if conducted) shall take place **on January [9], 2023 at 10:30 a.m. (prevailing Eastern Time)** in a virtual room hosted by the Foreign Representative's counsel, or such other place and time as the Foreign Representative shall notify all Qualified Bidders and the Consultation Party.  The Foreign Representative is authorized, subject to the terms of this Order and the Bidding Procedures, to take all actions necessary, based on his reasonable discretion and in consultation with the Consultation Party, to conduct the Auction in a manner that will result in the highest and otherwise best offer for the CRUSAFin Interests.

## **The Sale Hearing and Objections to the Sale Transaction**

13.     The Sale Hearing to approve the sale of the CRUSAFin Interests to a Successful Bidder is currently scheduled to take place on **January [17], 2023 at [___] (prevailing Eastern Time)**.  The Sale Hearing may be continued to a later date by the Foreign Representative by filing a notice on the docket prior to, or making an announcement at, the Sale Hearing.  No further notice of any such continuance will be required.

14.     Objections to the Sale Transaction and entry of any order approving the sale (the "**Sale Order**") must: (i) be in writing and specify the nature of such objection; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules, and all orders of the Bankruptcy Court; and (iii) be filed with the Bankruptcy Court and served **so as to be actually received by the Foreign Representative and counsel to the Foreign Representative by December [28], 2022 at 4:00 p.m. (prevailing Eastern Time)** (the "**Sale Objection Deadline**"); provided that Parties may file or supplement an objection based solely on the conduct of the Auction, which objection must comply with the aforementioned form requirements and must be served so as to be actually received by the Foreign Representative and counsel to the Foreign Representative by **January [12], 2023 at 4:00 p.m. (prevailing Eastern Time)** (the "**Auction Objection Deadline**").

15.     If any party fails to timely file with the Court and serve on Foreign Representative and counsel to the Foreign Representative (i) an objection to the or Sale Order by the Sale Objection Deadline or (ii) an objection to the conduct of the Auction by the Auction Objection Deadline, or otherwise abide by the procedures set forth in the Bidding Procedures regarding an objection to the Sale Transaction, such party shall be barred from asserting, at the Sale Hearing or otherwise, any objection to the relief requested in the Amended Motion, or to the consummation

and performance of the Sale Transaction, including the transfer of the CRUSAFin Interests to the Successful Bidder or Back-Up Bidder, free and clear of all liens, claims, interests and Encumbrances pursuant to section 363(f) of the Bankruptcy Code, and shall be deemed to "consent" for the purposes of section 363(f) of the Bankruptcy Code.

### Related Relief

16.     All persons and entities (whether or not selected as a Qualified Bidder) that submit a bid for the CRUSAFin Interests during the sale process, including at the Auction, shall be deemed to have knowingly and voluntarily: (a) submitted to the exclusive jurisdiction of this Court with respect to all matters related to the terms and conditions of the transfer of the CRUSAFin Interests, the Auction, and any Sale Transaction; (b) consented to the entry of a final order by the Court in connection with the Amended Motion or this Order (including any disputes relating to the bidding and auction process, the Auction, and/or any Sale Transaction) to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution; and; (c) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

17.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, (i) this Order shall be effective immediately and enforceable upon entry; (ii) the Foreign Representative shall not be subject to any stay in the implementation, enforcement or realization of the relief granted in this Order; and (iii) the Foreign Representative is authorized and empowered, and may in its discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of this Order.

18.     In the event that the Foreign Representative's request for recognition of the Mexican Liquidation Proceeding is denied, all parties' rights with respect to the further

10

implementation, interpretation, and enforcement of this Order are preserved; *provided*, *however*, that this Order shall remain in full force and effect and not be subject to challenge by any party if the Foreign Representative's request for recognition is (i) granted or still pending, or (ii) denied and a Sale Transaction is approved by separate order of this Court prior to such denial; *provided further* that this Court has and will retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order, as well as any matter, claim or dispute arising from or relating to the Bidding Procedures, any Successful SPA, any Sale Transaction, and any Qualified Bid.

19.     The Foreign Representative is hereby authorized and empowered to take such actions as may be necessary to implement and effect the terms and requirements established in this Order.

20.     In the event of any inconsistencies between this Order and the Bidding Procedures, the Order shall govern in all respects.

21.     Notice of the Amended Motion as provided therein shall be deemed good and sufficient notice of such Amended Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

22.     This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

23.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, 9014, or any applicable provisions of the Bankruptcy Rules or the Local Rules or otherwise stating the contrary, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and any applicable stay of the effectiveness and enforceability of this Order is hereby waived.

24.    Notwithstanding anything to the contrary in the Amended Motion or the Bidding Procedures, the Chapter 15 Debtor shall not be permitted to transfer the proceeds of any Sale of the CRUSAFin Interests outside of the United States, absent further order of this Court.

25.    The Court has and will retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order, including, but not limited to, any matter, claim or dispute arising from or relating to the Bidding Procedures, any Successful SPA, any Sale Transaction, and any Qualified Bid.

## <u>Schedule I</u>

**Bidding Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re | ) | Chapter 15 |
|  | ) |  |
| Crédito Real, S.A.B. de C.V., SOFOM, E.N.R.,[1] | ) | Case No. 22-10630 (JTD) |
|  | ) |  |
| Debtor in a Foreign Proceeding. | ) |  |
|  | ) |  |

## BIDDING PROCEDURES

On July 14, 2022, Robert Wagstaff (the "**Foreign Representative**"), in his capacity as foreign representative duly appointed by Mr. Fernando Alonso-de-Florida Rivero, the court-appointed liquidator (*Liquidador Judicial*) (the "**Mexican Liquidator**") of the Special Expedited Commercial proceeding (*Via Sumaria Especial Mercantil*) for the dissolution and liquidation (the "**Mexican Liquidation Proceeding**") of Crédito Real, S.A.B. de C.V., SOFOM, E.N.R. (the "**Chapter 15 Debtor**") filed a petition for relief under chapter 15 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").

On [_____], 2022, the Bankruptcy Court entered the *Order: (A) Authorizing and Approving Bidding Procedures Relating to the Sale of Chapter 15 Debtor's Equity Interests in Crédito Real USA Finance, LLC; (B) Scheduling an Auction for, and Hearing to Approve, the Proposed Sale; and (C) Approving the Form and Manner of Notice of Thereof; and (D) Granting Related Relief* [ECF. No. ____] (the "**Bidding Procedures Order**"),[2] by which the Bankruptcy Court approved the following Bidding Procedures.

These Bidding Procedures set forth the process to determine the highest or otherwise best offer for the sale (the "**Sale**" or "**Sale Transaction**") of substantially all the Chapter 15 Debtor's direct and/or indirect equity interests (the "**CRUSAFin Interests**") in a majority-owned, U.S. subsidiary, Crédito Real USA Finance, LLC ("**CRUSAFin**").

**COPIES OF THE BIDDING PROCEDURES ORDER OR ANY OTHER RELATED DOCUMENTS ARE AVAILABLE ON THE CHAPTER 15 DEBTOR'S WEBSITE AT www.creal.mx/en/financiera/eventos OR UPON REQUEST TO WHITE &**

---

[1]     The last four identifying digits of the tax number and the jurisdiction in which the Chapter 15 Debtor pays taxes is Mexico – 6815.  The Chapter 15 Debtor's corporate headquarters is located at Avenida Insurgentes Sur No. 730, 20th Floor, Colonia del Valle Norte, Alcaldía Benito Juárez, 03103, Mexico City, Mexico.

[2]     Where context requires, capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Bidding Procedures Order.

**CASE AT wccrusafin@whitecase.com OR 305-371-2700, ATTN: CRÉDITO REAL TEAM.**

### Assets to Be Auctioned

The Foreign Representative is offering for sale all of the Chapter 15 Debtor's right, title and interest, whether direct or indirect, in and to the CRUSAFin Interests, which shall be sold free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon (collectively, the "**Interests**"), subject only to any Permitted Liens (as will be defined in a Successful SPA), to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Interests (if any) to attach to the net proceeds of the Sale with the same validity, force, effect, and priority as such Interests applied against the CRUSAFin Interests, subject to any rights, claims, and defenses of the Chapter 15 Debtor.

### Key Dates and Deadlines

The Bidding Procedures provide interested parties with the opportunity to qualify for and participate in an auction to be conducted by the Foreign Representative (the "**Auction**") and to submit competing bids for the CRUSAFin Interests. The key dates and deadlines (the "**Deadlines**") for the sale process are as follows:

| Deadline | Item |
|---|---|
| **[_____], 2022 at [____] (Eastern Time)** | Hearing to consider entry of the Bidding Procedures Order |
| **Within 2 business days of Entry of the Bidding Procedures Order** | Deadline for the Foreign Representative to file and serve the Sale Notice |
| **December [28], 2022 at 4:00 p.m. (Eastern Time)** | Deadline to file objections to the Sale Transaction |
| **January [6], 2023 at 4:00 p.m. (Eastern Time)** | Final Bid Deadline |
| **January [9], 2023 at 10:30 a.m. (Eastern Time)** | Auction Date (if one is to be held) |
| **Within 2 business days of conclusion of the Auction** | Deadline to file the Post Auction Notice |
| **January [12], 2023 at 4:00 p.m. (Eastern Time)** | Deadline to file objections to the conduct of the Auction |
| **January [17], 2023 at [____](Eastern Time)** | Proposed hearing to approve the proposed Sale Transaction |

### Consultation Party

The Foreign Representative shall reasonably consult with the Ad Hoc Group[3] (the "**Consultation Party**") through its U.S. counsel, as explicitly provided for herein; provided, however, that, notwithstanding anything herein to the contrary, the Foreign Representative shall

---

[3]    The Ad Hoc Group consists of those parties identified in the *Verified Statement Pursuant to Bankruptcy Rule 2019*, Case No. 22-10696 (JTD) (Bankr. D. Del. Aug 4, 2022) [ECF No. 27].

not be required to consult with the Consultation Party if any member of the Ad Hoc Group submits a Bid or has a Bid submitted on its behalf for so long as such Bid remains open. Additionally, subject to the foregoing proviso, the Foreign Representative shall provide the Consultation Party with all information pertaining to the bidding and sale process contemplated by these Bidding Procedures as may be reasonably requested by the Consultation Party.

## Stalking Horse Selection

The Foreign Representative and Mexican Liquidator may, as they deem necessary and appropriate in the exercise of their business judgment and after consultation with the Consultation Party, select one or more "stalking horse" bids (the "**Stalking Horse Bid**" and the bidder the "**Stalking Horse Bidder**") and the respective stalking horse sale and purchase agreement ("**Stalking Horse SPA**"), for the CRUSAFin Interests and seek Bankruptcy Court approval by separate motion and order, on an expedited basis, of such Stalking Horse SPA, including any bid protections that may be provided therein.  If any Stalking Horse SPA is approved, the Foreign Representative may modify these Bidding Procedures, in consultation with the Consultation Party, as may be necessary and appropriate to account for such Stalking Horse SPA.

## Qualifications to Submit Bids and Participate in Auction

A.    **Diligence Materials**

To participate in the bidding process and to receive access to due diligence materials (the "**Diligence Materials**"), a party must submit to the Foreign Representative (i) an executed confidentiality agreement in  form and substance satisfactory to the Mexican Liquidator and the Foreign Representative and (ii) reasonable evidence demonstrating the party's financial capability to consummate a purchase of the CRUSAFin Interests, as determined by the Foreign Representative and Mexican Liquidator in their sole discretion.  ***No party will be permitted to conduct any due diligence without entering into an acceptable confidentiality agreement.***

A party who qualifies for access to Diligence Materials shall be a "**Preliminary Interested Buyer**."  The Foreign Representative will afford any Preliminary Interested Buyer the time and opportunity to conduct due diligence, as determined by him and the Mexican Liquidator in their reasonable discretion and within the Deadlines; provided, however, that the Foreign Representative shall not be obligated to furnish any due diligence information after the Bid Deadline.  The Foreign Representative will post substantially all written due diligence provided to a Preliminary Interested Buyer to an electronic data room (the "**Data Room**").  The Foreign Representative may restrict or limit access of a Preliminary Interested Buyer to the Data Room if he determines, based on his reasonable business judgment, that certain information in the Data Room is sensitive, proprietary, or otherwise not appropriate for disclosure to such Potential Bidder.  Neither the Foreign Representative, Mexican Liquidator, nor any of their respective representatives shall be obligated to furnish information of any kind whatsoever to any person that is not determined to be a Preliminary Interested Buyer.

All due diligence requests must be directed to the Foreign Representative's financial advisor, Riveron Consulting, LLC at CruiseProject@riveron.com.

Notwithstanding anything to the contrary herein, the Foreign Representative shall provide the advisors for the Consultation Party with reasonable access to the Data Room on a Professionals' Eyes Only basis.

**B.      Due Diligence from Preliminary Interested Buyers and Bidders**

Each Preliminary Interested Buyer and Bidder (as defined below) shall comply with all reasonable requests with respect to information and due diligence access by the Foreign Representative or his advisors regarding such Preliminary Interested Buyer or Bidder, as applicable, and its contemplated transaction.

**C.      Bid Deadline and Auction Qualification Process**

To be eligible to participate in the Auction, each offer, solicitation or proposal (each, a "**Bid**"), and each party submitting such a Bid (each, a "**Bidder**"), (i) must be determined by the Foreign Representative and Mexican Liquidator, in consultation with the Consultation Party, to satisfy each of the conditions set forth in this section and (ii) must submit a Bid, in writing, so as to be **actually received** by: (a) counsel to the Foreign Representative, White & Case LLP, Attn: John K. Cunningham (jcunningham@whitecase.com), Bill Parish (bill.parish@whitecase.com), Emilio Grandio (emilio.grandio@whitecase.com), and Amanda Parra Criste (aparracriste@whitecase.com); (b) the Foreign Representative, Attn: Robert Wagstaff (robert.wagstaff@riveron.com); and (c) Riveron Consulting, LLC, Attn: Jabier Arbeloa (CruiseProject@riveron.com) **on or before January [6], 2023 at 4:00 p.m.** (prevailing Eastern Time) (the "**Bid Deadline**").   The Foreign Representative shall provide counsel to the Consultation Party (provided that none of the members of the Ad Hoc Group are Bidders) copies of any Bid received within one (1) Business Days of such receipt.

A Bid will not be considered qualified for the Auction if such Bid does not satisfy each of the following conditions:

1.   All CRUSAFin Interests.   Each Bid must be for all of the Chapter 15 Debtor's CRUSAFin Interests.

2.   Executed Agreement: Each Bid must be based on the form sale and purchase agreement provided by the Foreign Representative via the Data Room (the "**Proposed SPA**") and signed by an authorized representative of such Bidder, pursuant to which the Bidder proposes to effectuate a Sale Transaction (a "**Modified SPA**").   A Bid must also include either a redline of the Modified SPA marked against the Proposed SPA, if no Stalking Horse Bid has been approved by the Bankruptcy Court or (2) the Modified SPA against the Stalking Horse SPA, if a Stalking Horse Bid has been approved by the Bankruptcy Court.   Each Modified SPA must provide a commitment to close within three (3) Business Days after all closing conditions are met.

3.   Good Faith Deposit: Each Bid must be accompanied by a deposit in the amount of five percent (5.0%) of the purchase price contained in the Modified SPA, before any adjustments to the purchase price, to an interest-bearing escrow account established by Richards, Layton & Finger PA, as local Delaware counsel to the Foreign

4

Representative (the "**Good Faith Deposit**"); provided that to the extent a Qualified Bid is modified before, during, or after the Auction in any manner that increases the purchase price contemplated by such Qualified Bid, the Foreign Representative, on behalf of the Chapter 15 Debtor, reserves the right to require that such Qualified Bidder increase its Good Faith Deposit so that it equals five percent (5.0%) of the increased Purchase Price; provided further that any Bid selected as a Successful Bid is required to deposit an amount that equals ten percent (10.0%) of the purchase price contained in the applicable Modified SPA for such Successful Bid.

4.  Same or Better Terms: If a Stalking Horse Bid is approved by the Bankruptcy Court prior to the Bid Deadline, each Bid must be on terms that the Foreign Representative and Mexican Liquidator, in their sole business judgment and after consulting with the Consultation Party, determine are the same or better than the terms of the Stalking Horse SPA.

5.  Credit Facility Extension / Refinancing:  A Bid must provide for adequate treatment of the existing credit facility between CRUSAFin and Wells Fargo Bank, N.A. (the "**Existing Credit Facility**"), including, for example, providing for an extension of the facility, a refinancing by Wells Fargo or a third party lender, and/or a pay off of all or a portion of the Existing Credit Facility.

6.  CRUSAFin CEO: A Bid must also provide for either (i) the purchase of all equity interests held by Scot Seagrave (the "**Seagrave Interests**") (CRUSAFin's Chief Executive Officer) or (ii) such other treatment of the Seagrave Interests as agreed to by Mr. Seagrave, including for example, a rollover of all or a portion of the Seagrave Interests.

7.  Minimum Bid. If a Stalking Horse Bid is approved by the Court, a Bid must propose a cash purchase price that, in Foreign Representative's and Mexican Liquidator's reasonable business judgment, in consultation with the Consultation Party, has a value greater than the sum of (i) the Purchase Price (as defined in the Stalking Horse SPA), plus (ii) $500,000, plus (iii) any bid protections that may be payable under any Stalking Horse Bid that has been approved by the Court as of the Bid Deadline.

8.  Corporate Authority: A Bid must include written evidence reasonably acceptable to the Foreign Representative and Mexican Liquidator, in consultation with the Consultation Party, demonstrating appropriate corporate authorization to consummate the proposed Sale Transaction; provided that, if the Bidder is an entity specially formed for the purpose of effectuating the Sale Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Foreign Representative and Mexican Liquidator, in consultation with the Consultation Party, of the approval of the Bid and Modified SPA by the equity holder(s) of such Bidder.

9.  Disclosure of Identity of Bidder: A Bid must fully disclose the identity of each entity that will be bidding for or purchasing the CRUSAFin Interests or otherwise directly or indirectly participating in connection with such Bid, and the complete terms of any such participation, including any agreements, arrangements or understandings concerning a collaborative or joint bid or any other combination concerning the proposed Bid.

10. Proof of Financial Ability to Perform: A Bid must include written evidence that demonstrates, to the satisfaction of the Foreign Representative and Mexican Liquidator, in consultation with the Consultation Party, that the Bidder has the necessary financial ability to timely close the Sale Transaction, including, without limitation:

   a. If the Bidder intends to raise any debt financing to fund any portion of the Bidder's obligations, the Bid must include final form of debt financing commitment letter(s) with no diligence conditions, in customary form, which letter(s) must be fully executed by the financing sources with financing commitments that remain outstanding until the Outside Back-Up Date;

   b. The Bidder's most current audited (if any) and latest unaudited financial statements or, if the Bidder is an entity formed for the purpose of making a bid, the current audited (if any) and latest unaudited financial statements of the equity holder(s) of the Bidder or such other form of financial disclosure reasonably acceptable to the Foreign Representative and Mexican Liquidator, in consultation with the Consultation Party;

   c. Evidence of the Bidder's ability to provide adequate treatment of the Existing Credit Facility, including, if applicable, a term sheet from any third party financing source that has agreed to refinance such facility or a written agreement from Well Fargo as to any alternative arrangement.

   d. A description of the Bidder's pro forma capital structure; and

   e. Any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Foreign Representative and Mexican Liquidator, in consultation with the Consultation Party, demonstrating that such Bidder (or, if the Bidder is an entity formed for the purpose of making a Bid, its equity holders) has the ability to close the Sale Transaction.

11. Regulatory and Third-Party Approvals: A Bid must set forth each regulatory and third-party approval required for the Bidder to consummate the Sale Transaction, and the time period within which the Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty (30) days following execution and delivery of the Modified SPA, those actions the Bidder will take to ensure receipt of such approval(s) as promptly as possible).

12. Contact Information and Affiliates:  The Bid must provide the identity and contact information for the Bidder and full disclosure of any affiliates of the Bidder.

13. Contingencies: Each Bid (i) may not contain representations and warranties, covenants, or termination rights materially more onerous in the aggregate to the Sellers than those set forth in the Stalking Horse Bid, if one has been designated and

approved by the Bankruptcy Court, and (ii) may not be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence.

14. <u>Irrevocable</u>: Each Bid must be irrevocable until the Outside Back-Up Date; <u>provided</u> that if a Bid is accepted as the Successful Bid or the Back-Up Bid (each as defined herein), such Bid shall continue to remain irrevocable, subject to the terms and conditions of these Bidding Procedures.

15. <u>Compliance with Diligence Requests</u>: The Bidder submitting the Bid must have complied with reasonable requests for additional information and due diligence access from the Foreign Representative to the satisfaction of the Foreign Representative and Mexican Liquidator in consultation with the Consultation Party.

16. <u>Confidentiality Agreement</u>: To the extent not already executed, the Bid must include an executed confidentiality agreement in form and substance reasonably satisfactory to the Foreign Representative and Mexican Liquidator in consultation with the Consultation Party.

17. <u>Back-Up Bid</u>: Each Bid shall provide that the Bidder will serve as backup bidder, on the terms provided herein, if the Bidder's Bid is selected as the next highest or otherwise best bid after the Successful Bid.

18. <u>Consent to Jurisdiction</u>: Each Bidder must (i) consent to the jurisdiction of the Bankruptcy Court to enter an order or orders, which shall be binding in all respects, in any way related to the Chapter 15 Debtor, the chapter 15 case, the Bidding Procedures, the Auction, any Modified SPA, or the construction and enforcement of documents relating to any Sale Transaction, (ii) waive any right to a jury trial in connection with any disputes relating to the Chapter 15 Debtor, the chapter 15 case, the Bidding Procedures, the Auction, any Modified SPA, or the construction and enforcement of documents relating to any Sale Transaction, and (iii) consent to the entry of a final order or judgment in any way related to the Chapter 15 Debtor, the chapter 15 case, the Bidding Procedures, the Auction, any Modified SPA, any Sale Transaction, or the construction and enforcement of documents relating to any Sale Transaction if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

19. <u>Disclaimer of Break-Up Fees and Expense Reimbursement</u>: Except with respect to any Stalking Horse Bidder approved by the Bankruptcy Court, the Bid must not entitle the Bidder to any break-up fee, termination fee or similar type of payment, compensation or expense reimbursement and, by submitting the Bid, the Bidder (other than the Stalking Horse Bidder) waives the right to pursue any administrative expense claim (including under a theory of substantial contribution) under 11 U.S.C. § 503 related in any way to the submission of its Bid or participation in any Auction.

A Bid received from a Bidder before the Bid Deadline that meets the above requirements shall constitute a "**Qualified Bid**" for the CRUSAFin Interests, as determined by the Foreign Representative and Mexican Liquidator, in consultation with the Consultation Party, and such Bidder shall constitute a "**Qualified Bidder**" for the CRUSAFin Interests; <u>provided</u> that if the Foreign Representative and Mexican Liquidator receive a Bid by the Bid Deadline that is not a

Qualified Bid, the Foreign Representative, in consultation with the Consultation Party, may provide the Bidder with the opportunity to remedy any deficiencies by no later than one (1) Business Day prior to the Auction; provided, further, that, for the avoidance of doubt, if any Qualified Bidder fails to comply with reasonable requests for additional information and due diligence access to the satisfaction of the Foreign Representative and Mexican Liquidator, in consultation with the Consultation Party, then the Foreign Representative and Mexican Liquidator, may disqualify any Qualified Bidder and Qualified Bid, in the Foreign Representative's and Mexican Liquidator's sole discretion after consultation with the Consultation Party, and such Bidder shall not be entitled to attend or participate in the Auction. For the avoidance of doubt, the Foreign Representative shall consult with the Consultation Party regarding whether (i) a Bid is or is not a Qualified Bid or (ii) any Bid or potential Qualified Bidder should be disqualified.

Any Stalking Horse SPA approved by the Bankruptcy Court shall be deemed a Qualified Bid in all respects, and any such Stalking Horse Bidder shall be deemed a Qualified Bidder, such that the Stalking Horse Bidder shall not be required to submit an additional Qualified Bid, and shall not be required to provide any additional information or due diligence access to the Foreign Representative.

## **Auction**

If one or more Qualified Bids (other than any Stalking Horse Bid, if any) are received by the Bid Deadline, the Foreign Representative will conduct the Auction to determine the highest or otherwise best Qualified Bid.  The determination of the best Qualified Bid shall take into account any factors the Foreign Representative and Mexican Liquidator, in their discretion and in consultation with the Consultation Party, reasonably deem relevant to the value and certainty of the Qualified Bid to the Chapter 15 Debtor and may include, but are not limited to, the following: (i) the amount and nature of the consideration; (ii) the number, type and nature of any changes to the Proposed SPA requested by each Bidder; (iii) the extent to which such modifications are likely to delay closing of the Sale and the cost to the Chapter 15 Debtor of such modifications or delay; (iv) the total consideration to be received by the Chapter 15 Debtor; (v) any contingencies or conditions to closing the transaction; (vi) the likelihood of the Bidder's ability to close a transaction and the timing thereof; (vii) the net benefit to the Chapter 15 Debtor, taking into account any bid protections that a Stalking Horse Bidder may be entitled to; (viii) the tax consequences of such Qualified Bid; and (ix) any other qualitative or quantitative factor that the Foreign Representative or Mexican Liquidator, in consultation with the Consultation Party, deem reasonably appropriate under the circumstances (collectively, the "**Bid Assessment Criteria**").

If no Qualified Bid other than the Stalking Horse Bid, if any, is received by the Bid Deadline, the Foreign Representative, in consultation with the Consultation Party, may (i) postpone the Bid Deadline or reschedule the Auction, in which case the Foreign Representative shall promptly file on the docket a notice of postponement setting forth the new Bid Deadline and the date, time, and location of the Auction or (ii) cancel the Auction and accept any Stalking Horse Bid approved by the Bankruptcy Court as the Successful Bid, in which case the Foreign Representative will promptly file on the docket a notice of no auction and identify the Stalking Horse Bidder as the Successful Bidder.

## A.    Location and Date of Auction

The Auction, if any, shall take place **on January [9], 2023 at 10:30 a.m. (prevailing Eastern Time)** in a virtual room hosted by the Foreign Representative's counsel, or such other place and time as the Foreign Representative shall notify all Qualified Bidders and the Consultation Party.

## B.    Attendees and Participants

Except as otherwise determined by the Foreign Representative and Mexican Liquidator, only: (i) the Chapter 15 Debtor and any other sellers; (ii) the Consultation Party; (iii) the United States Trustee; (iv) the Stalking Horse Bidder, if one has been designated and approved by the Bankruptcy Court; (v) any other Qualified Bidder; (vi) any other creditors of the Chapter 15 Debtor that at least five (5) Business Days prior to the Auction deliver to the Foreign Representative's counsel a written request to attend the Auction (by email to wccrusafin@whitecase.com); and (vii) in each case, along with their representatives, counsel and financial advisors, shall attend the Auction. Only a Stalking Horse Bidder (if any) and such other Qualified Bidders will be entitled to participate and make any Overbids at the Auction.

Each Qualified Bidder participating in the Auction must confirm on the record that it: (i) has not engaged in any collusion with respect to the bidding or sale of any of the CRUSAFin Interests; (ii) has reviewed, understands and accepts the Bidding Procedures; and (iii) has consented to the core jurisdiction of the Bankruptcy Court with respect to the Sale, including the Bidding Procedures, and the Auction, and, as applicable, any Sale Transaction, any Modified SPA, or the construction and enforcement of documents relating to any Sale Transaction (as described more fully below).

## C.    Conducting the Auction

The Foreign Representative, Mexican Liquidator, and their professionals shall direct and preside over the Auction and the Auction shall be transcribed. Other than as expressly set forth herein, the Foreign Representative and Mexican Liquidator (in consultation with the Consultation Party) may conduct the Auction in the manner they determine will result in the highest or otherwise best offer for the CRUSAFin Interests.

## D.    Auction Baseline Bid

Prior to or at the start of the Auction, the Foreign Representative will notify the other Qualified Bidder(s) participating in the Auction and the Consultation Party of the highest or otherwise best Qualified Bid received before the Bid Deadline (the "**Auction Baseline Bid**").

## E.    Terms of Overbids

An "**Overbid**" is any bid made at the Auction subsequent to the Foreign Representative's announcement of the respective Auction Baseline Bid. To submit an Overbid for purposes of the Auction, a Bidder must comply with the following conditions:

1.  <u>Minimum Overbid Increments</u>: Any Overbid after and above the respective Auction Baseline Bid shall be made in increments valued at not less than $250,000.00. The

Foreign Representative reserves the right, after consultation with the Consultation Party, to announce reductions or increases in the minimum incremental bids (or in valuing such bids) at any time during the Auction. Additional consideration in excess of the amount set forth in the respective Auction Baseline Bid must be in cash.

2.  Remaining Terms Are the Same as for Qualified Bids: Except as modified herein, an Overbid at the Auction must comply with the conditions for a Qualified Bid set forth above; provided, however, that the Bid Deadline shall not apply. Any Overbid must include, in addition to the amount and the form of consideration of the Overbid, a description of all changes requested by the Bidder to the Stalking Horse SPA (if applicable) or Modified SPA, as the case may be, in connection therewith. Any Overbid must remain open and binding on the Bidder as set forth in these Bidding Procedures.

**F.    Announcement and Consideration of Overbids**

1.  Announcement of Overbids: The Foreign Representative shall announce at the Auction the material terms of each Overbid, the total amount of consideration offered in each such Overbid, and the basis for calculating such total consideration.

2.  Consideration of Overbids: Subject to the deadlines set forth herein, the Foreign Representative reserves the right, in its reasonable business judgment and in consultation with the Consultation Party, to make one or more continuances of the Auction to, among other things: facilitate discussions between the Foreign Representative and individual Qualified Bidders; allow individual Qualified Bidders to consider how they wish to proceed; or give Qualified Bidders the opportunity to provide additional evidence as he or the Mexican Liquidator in their reasonable business judgment, in consultation with the Consultation Party, may require, that the Qualified Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed Sale Transaction at the prevailing Overbid amount.

**G.    Closing the Auction**

The Auction shall continue until the Foreign Representative and Mexican Liquidator select such Qualified Bid, in consultation with the Consultation Party, that is the highest and best Qualified Bid taking into account any factors the Foreign Representative and Mexican Liquidator, in consultation with the Consultation Party, reasonably deem relevant to the value and certainty of the Qualified Bid to the Chapter 15 Debtor and may include, but are not limited to, the Bid Assessment Criteria (such Qualified Bid, the "**Successful Bid**," and the Bidder submitting such Successful Bid, the "**Successful Bidder**") as the winner of the Auction.

The Auction shall close when the Successful Bidder submits a fully executed Modified SPA and transaction documents memorializing the terms of the Successful Bid.

Promptly following the Foreign Representative's selection of the Successful Bid and the conclusion of the Auction, the Foreign Representative shall announce the Successful Bid and Successful Bidder and shall file with the Bankruptcy Court notice of the Successful Bid and Successful Bidder.

The Foreign Representative shall not consider any Overbids submitted after the conclusion of the Auction.

## Back-Up Bidder

Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next highest or otherwise best Bid to the Successful Bid at the Auction, as determined by the Foreign Representative and Mexican Liquidator, in the exercise of their business judgment and after consulting with the Consultation Party, will be designated as the backup bidder (the "**Back-Up Bidder**").  The Back-Up Bidder shall be required to keep its initial Qualified Bid (or if the Back-Up Bidder submitted one or more Overbids at the Auction, the Back-Up Bidder's final Overbid) (the "**Back-Up Bid**") open and irrevocable until the earlier of (i) the closing of the transaction with the Successful Bidder, (ii) 5:00 p.m. (prevailing Eastern Time) on the date that is sixty (60) days after the date of entry of the Sale Order (the "**Outside Back-Up Date**"), or such other date as may be agreed to by the Back-Up Bidder as reflected in a Modified SPA.

Following the Sale Hearing, if the Modified SPA or Stalking Horse SPA, as applicable, related to the Successful Bid is terminated for any reason prior to consummation of the transaction contemplated thereby (a "**Successful Bid Failure**"), the Back-Up Bidder will be deemed to be the new Successful Bid, and the Chapter 15 Debtor will be authorized, without further order of the Bankruptcy Court, to consummate the transaction with the Back-Up Bidder, provided that the Foreign Representative shall provide prompt notice of such Successful Bid Failure to the Consultation Party and shall post a notice on the docket of the chapter 15 case regarding the Successful Bid Failure and the consummation of the transaction with the Back-Up Bidder.  In the case of a Successful Bid Failure, the Successful Bidder's deposit shall either be returned or forfeited in accordance with the terms of the terminated Stalking Horse SPA or Modified SPA, as applicable.  The Foreign Representative and the Chapter 15 Debtor specifically reserve the right to seek all available damages, including specific performance, from any defaulting Successful Bidder (including any Back-Up Bidder designated as a Successful Bidder) in accordance with the terms of the Bidding Procedures, the Bidding Procedures Order, the Stalking Horse SPA, or the Modified SPA, as applicable.

## Approval of the Sale

A hearing to consider the approval of the Sale Transaction (the "**Sale Hearing**"), is currently scheduled to take place on **January [17], 2023 at [___]** (prevailing Eastern Time), before the Honorable John T. Dorsey, at the United States Bankruptcy Court for the District of Delaware, 824 Market Street North, 3rd Floor, Wilmington, DE 19801.

At the Sale Hearing certain findings will be sought from the Bankruptcy Court regarding the Auction, including, among other things, that: (1) the Auction was conducted (if held), and the Successful Bidder was selected, in accordance with the Bidding Procedures; (2) the Auction (if held) was fair in substance and procedure; (3) the Successful Bid was a Qualified Bid as defined in the Bidding Procedures; and (4) consummation of any Sale as contemplated by the Successful Bid in the Auction will provide the highest or otherwise best offer for the CRUSAFin Interests and is in the best interests of the Chapter 15 Debtor and its stakeholders. **The Sale Hearing may be continued to a later date by the Foreign Representative by filing a notice on the docket**

of the chapter 15 case prior to, or making an announcement at, the Sale Hearing.  No further notice of any such continuance will be required.

Objections to the Sale Transaction and entry of any order approving the sale (the "**Sale Order**") must: (i) be in writing and specify the nature of such objection; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules, and all orders of the Bankruptcy Court; and (iii) be filed with the Bankruptcy Court and served **so as to be actually received by the Foreign Representative and counsel to the Foreign Representative by December [28], 2022 at 4:00 p.m. (prevailing Eastern Time)** (the "**Sale Objection Deadline**"), <u>provided</u> that any party may file or supplement an objection after the Sale Objection Deadline solely with respect to the events at or following the Auction **by January [12], 2023 at 4:00 p.m. (prevailing Eastern Time)**.

## Communications Between Bidders

There shall be no communications regarding the Chapter 15 Debtor's sale process between and among Preliminary Interested Buyers or Qualified Bidders, including, for the avoidance of doubt, the Stalking Horse Bidder (if any), unless the Foreign Representative has previously authorized such communication in writing.  The Foreign Representative reserves the right, in his reasonable business judgment, in consultation with the Consultation Party, to disqualify any Preliminary Interested Buyer or Qualified Bidders that violate this provision.

## Additional Procedures

The Foreign Representative, after consulting with the Consultation Party, may announce, at the Auction or any time, additional procedural rules that are reasonable under the circumstances for conducting the Auction so long as such rules are not inconsistent in any material respect with the Bidding Procedures.

## Consent to Jurisdiction and Authority as Condition to Bidding

All Qualified Bidders shall be deemed to have (1) consented to the jurisdiction of the Bankruptcy Court to enter an order or orders, which shall be binding in all respects, in any way related to the Chapter 15 Debtor, the chapter 15 case, the Bidding Procedures, the Auction, any Stalking Horse SPA, any Modified SPA, as applicable, any Sale Transaction, or the construction and enforcement of documents relating to any Sale Transaction, (2) **WAIVED ANY RIGHT TO A JURY TRIAL IN CONNECTION WITH ANY DISPUTES RELATING TO THE CHAPTER 15 DEBTOR, THE CHAPTER 15 CASE, THE BIDDING PROCEDURES, THE AUCTION, ANY STALKING HORSE SPA, ANY MODIFIED SPA, AS APPLICABLE, ANY SALE TRANSACTION, OR THE CONSTRUCTION AND ENFORCEMENT OF DOCUMENTS RELATING TO ANY SALE TRANSACTION**, and (3) consented to entry of a final order or judgment in any way related to the Chapter 15 Debtor, the chapter 15 case, the Bidding Procedures, the Auction, any Stalking Horse SPA, any Modified SPA, any Sale Transaction, or the construction and enforcement of documents relating to any Sale Transaction if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

### Sale Is As Is/Where Is

The CRUSAFin Interests sold pursuant to the Bidding Procedures shall be conveyed at closing in their then-present condition, "**AS IS, WITH ALL FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED**."

### Return of Good Faith Deposits

The Good Faith Deposits of all Qualified Bidders, including any Stalking Horse Bidder, shall be held in one or more interest-bearing escrow accounts by the Foreign Representative's local Delaware counsel, Richards, Layton & Finger PA, and shall not constitute property of the Chapter 15 Debtor unless forfeited or conveyed to the Chapter 15 Debtor pursuant to the Modified SPA of a Successful Bid. The Good Faith Deposit of any Qualified Bidder, including the Stalking Horse Bidder, that is neither the Successful Bidder nor the Back-Up Bidder shall be returned to such Qualified Bidder not later than five (5) Business Days after entry of the Sale Order. The Good Faith Deposit of the Successful Bidder and Back-Up Bidder shall be either credited or returned in accordance with the applicable Modified SPA. Upon any return of the Good Faith Deposits, their respective owners shall receive any and all interest that will have accrued thereon.

### Reservation of Rights of the Foreign Representative and Modifications

Except as otherwise provided in the Bidding Procedures Order, the Foreign Representative further reserves the right as it may reasonably determine in its discretion, after consultation with the Consultation Party, to be in the best interest of the Chapter 15 Debtor to: (i) determine which bidders are Qualified Bidders; (ii) determine which Bids are Qualified Bids; (iii) determine which Qualified Bid is the highest or best proposal and which is the next highest or best proposal; (iv) reject any Bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (c) contrary to the best interests of the Chapter 15 Debtor and its stakeholders; (v) waive terms and conditions set forth herein with respect to all potential bidders; (vi) impose additional terms and conditions with respect to all potential bidders; (vii) extend the deadlines set forth herein; (viii) continue or cancel the Auction and/or Sale Hearing in open court without further notice; and (ix) modify the Bidding Procedures and implement additional procedural rules that the Foreign Representative determines (together with the Bidding Procedures, the "**Auction Rules**"), in his business judgment, will better promote the goals of the bidding process and discharge his fiduciary duties and are not inconsistent with any Bankruptcy Court order, provided that nothing herein shall limit any party in interest's right to file an objection with the Bankruptcy Court with respect to any Auction Rules (other than the Bidding Procedures).

Notwithstanding anything to the contrary herein, nothing in this Bidding Procedures will prevent the Mexican Liquidator and his agents and representatives from exercising their respective fiduciary duties under applicable law.

## **Schedule II**

**Sale Notice**

AMERICAS 118638963

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | ) Chapter 15 |
| | ) |
| Crédito Real, S.A.B. de C.V., SOFOM, E.N.R.,[1] | ) Case No. 22-10630 (JTD) |
| | ) |
| Debtor in a Foreign Proceeding. | ) |
| | ) |

## NOTICE OF AUCTION, SALE, AND SALE HEARING

**PLEASE TAKE NOTICE OF THE FOLLOWING**:

On [_____], 2022, the United States Bankruptcy Court for the District of Delaware (the "**Court**") entered the *Order: (A) Authorizing and Approving Bidding Procedures Relating to the Sale of Chapter 15 Debtor's Equity Interests in Crédito Real USA Finance, LLC; (B) Scheduling an Auction for, and Hearing to Approve, the Proposed Sale; and (C) Approving the Form and Manner of Notice of Thereof; and (D) Granting Related Relief* [ECF No. [___]] (the "**Bidding Procedures Order**").[2] The Bidding Procedures Order, among other things: (a) approved the bidding and auction procedures attached to the Bidding Procedures Order as Schedule I (the "**Bidding Procedures**"); (b) authorized the Foreign Representative, on behalf of the Chapter 15 Debtor, to conduct an auction (the "**Auction**"), in accordance with the Bidding Procedures, for the sale (the "**Sale**") of substantially all of its direct and/or indirect equity interests in Crédito Real USA Finance, LLC (the "**CRUSAFin Interests**"); (c) established the form and manner of notice of the Bidding Procedures, the Auction, and the Sale Hearing; (d) scheduled a hearing to approve the Sale Transaction (the "**Sale Hearing**"); and (e) granted related relief.

### Assets to be Auctioned

The Foreign Representative is offering for sale all of the Chapter 15 Debtor's right, title and interest, whether direct or indirect, in and to the CRUSAFin Interests to be sold free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon (collectively, the "**Interests**"), subject only to any Permitted Liens (as may be defined in the Successful SPA), to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Interests (if any) to attach to the net proceeds of the Sale with the same validity, force, effect, and priority as such Interests applied against the CRUSAFin Interests, subject to any rights, claims, and defenses of the Chapter 15 Debtor.

---

[1] The last four identifying digits of the tax number and the jurisdiction in which the Chapter 15 Debtor pays taxes is Mexico – 6815. The Chapter 15 Debtor's corporate headquarters is located at Avenida Insurgentes Sur No. 730, 20th Floor, Colonia del Valle Norte, Alcaldía Benito Juárez, 03103, Mexico City, Mexico.

[2] Capitalized terms not otherwise defined herein have the meanings ascribed in the Bidding Procedures Order or Bidding Procedures.

## Key Dates and Deadlines

**Bid Deadline.**  To be eligible to participate in the Auction, each offer, solicitation or proposal (each, a "**Bid**"), and each party submitting such a Bid (each, a "**Bidder**"), (i) must be determined by the Foreign Representative and Mexican Liquidator, in consultation with the Consultation Party, to satisfy each of the conditions set forth in the Bidding Procedures and (ii) must submit a Bid, in writing, so as to be **actually received** by (a) counsel to the Foreign Representative, White & Case LLP Attn: John K. Cunningham (jcunningham@whitecase.com), Bill Parish (bill.parish@whitecase.com), Emilio Grandio (emilio.grandio@whitecase.com), and Amanda Parra Criste (aparracriste@whitecase.com), (b) the Foreign Representative, Attn: Robert Wagstaff (robert.wagstaff@riveron.com), and (c) Riveron Consulting, LLC, Attn: Jabier Arbeloa (CruiseProject@riveron.com) **on or before January [6], 2023 at 4:00 p.m.** (prevailing Eastern Time) (the "**Bid Deadline**").

**Auction.**  If more than one Qualified Bid is received by the Bid Deadline, the Foreign Representative will conduct an Auction to determine the highest or otherwise best Qualified Bid. The Auction, if any, shall take place **on January [9], 2023 at 10:30 a.m. (prevailing Eastern Time)** in a virtual room hosted by the Foreign Representative's counsel, or such other place and time as the Foreign Representative shall notify all Qualified Bidders and the Consultation Party. The Auction shall continue until the Foreign Representative and Mexican Liquidator select the Qualified Bid, in consultation with the Consultation Party, that is the highest and best Qualified Bid taking into account any factors the Foreign Representative and Mexican Liquidator, in consultation with the Consultation Party, reasonably deem relevant to the value and certainty of the Qualified Bid to the Chapter 15 Debtor and may include, but are not limited to, the Bid Assessment Criteria (such Qualified Bid, the "**Successful Bid**," and the Bidder submitting such Successful Bid, the "**Successful Bidder**") as the winner of the Auction.  The Auction shall close when the Successful Bidder submits a fully executed Successful SPA and transaction documents memorializing the terms of the Successful Bid.

**Sale Objection Deadline.**  Objections to the Sale Transaction and entry of any order approving the sale must: (i) be in writing and specify the nature of such objection; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules, and all orders of the Bankruptcy Court; and (iii) be filed with the Bankruptcy Court and served **so as to be actually received by the Foreign Representative and counsel to the Foreign Representative by December [28], 2022 at 4:00 p.m. (prevailing Eastern Time)** (the "**Sale Objection Deadline**"), provided that any party may file or supplement an objection after the Sale Objection Deadline solely with respect to the events at or following the Auction and shall submit such objection by **January [12], 2023 at 4:00 p.m. (prevailing Eastern Time)** (the "**Auction Objection Deadline**").

**Sale Hearing.**  A hearing to consider the approval of the Sale Transaction to the Successful Bidder (the "**Sale Hearing**"), is currently scheduled to take place on **January [17], 2023 at [___] (prevailing Eastern Time)**, before the Honorable John T. Dorsey, at the United States Bankruptcy Court for the District of Delaware, 824 Market Street North, 3rd Floor, Wilmington, DE 19801.  **The Sale Hearing may be continued to a later date by the Foreign Representative by filing a notice prior to, or making an announcement at, the Sale**

2

**Hearing.  No further notice of any such continuance will be required**.

## Submitting a Bid and Obtaining Additional Information

Any party interested in submitting a Bid for the CRUSAFin Interests should review the Bidding Procedures and Bidding Procedures Order carefully and contact the Foreign Representative or his advisors.  **Failure to abide by the Bidding Procedures and the Bidding Procedures Order may result in the rejection of a Bid.**

**COPIES OF THE BIDDING PROCEDURES ORDER OR ANY OTHER RELATED DOCUMENTS ARE AVAILABLE ON THE CHAPTER 15 DEBTOR'S WEBSITE AT www.creal.mx/en/financiera/eventos OR UPON REQUEST TO WHITE & CASE AT wccrusafin@whitecase.com OR 305-371-2700, ATTN: CRÉDITO REAL TEAM.**

## Consequences of Failing to Object

**ANY PERSON OR ENTITY WHO FAILS TO FILE AND SERVE AN OBJECTION IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER AND THIS NOTICE TO THE PROPOSED SALE BY THE SALE OBJECTION DEADLINE OR THE CONDUCT OF THE AUCTION BY THE AUCTION OBJECTION DEADLINE, AS APPLICABLE, OR OTHERWISE ABIDE BY THE PROCEDURES SET FORTH IN THE BIDDING PROCEDURES REGARDING AN OBJECTION TO THE SALE TRANSACTION SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE PROPOSED SALE, AND TRANSFER OF THE CRUSAFIN INTERESTS FREE AND CLEAR OF ALL INTERESTS.**

AMERICAS 118638963

Dated: **[___]**, 2022


/*draft*/

<div style="display: flex;">
<div style="width: 50%;">

**RICHARDS, LAYTON & FINGER, P.A.**

Mark D. Collins (No. 2981)
John H. Knight (No. 3848)
Amanda R. Steele (No. 4430)
920 North King Street
Wilmington, DE 19801
Telephone:  (302) 651-7700
Facsimile: (302) 651-7701
collins@rlf.com
knight@rlf.com
steele@rlf.com

*Co-Counsel to Petitioner and Foreign
Representative*

</div>
<div style="width: 50%;">

**WHITE & CASE LLP**

John K. Cunningham (admitted *pro hac vice*)
Philip M. Abelson (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
jcunningham@whitecase.com
philip.abelson@whitecase.com

Richard S. Kebrdle (admitted *pro hac vice*)
Amanda Parra Criste (*pro hac vice* pending)
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
rkebrdle@whitecase.com
aparracriste@whitecase.com

Jason N. Zakia (admitted *pro hac vice*)
111 S. Wacker Drive, Suite 5100
Chicago, IL 60606
Telephone: (312) 881-5400
jzakia@whitecase.com

*Co-Counsel to Petitioner and Foreign
Representative*

</div>
</div>

4

## **Schedule III**

**Post Auction Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re | ) | Chapter 15 |
|  | ) |  |
| Crédito Real, S.A.B. de C.V., SOFOM, E.N.R.,[1] | ) | Case No. 22-10630 (JTD) |
|  | ) |  |
| Debtor in a Foreign Proceeding. | ) |  |
|  | ) |  |

**NOTICE OF SUCCESSFUL BIDDER AND BACK-UP BIDDER WITH RESPECT TO
THE SALE OF CERTAIN OF THE CHAPTER 15 DEBTOR'S U.S. ASSETS**

    **PLEASE TAKE NOTICE** that, on [\_\_\_], 2022, the United States Bankruptcy Court for the District of Delaware (the "**Court**") entered the *Order: (A) Authorizing and Approving Bidding Procedures Relating to the Sale of Chapter 15 Debtor's Equity Interests in Crédito Real USA Finance, LLC; (B) Scheduling an Auction for, and Hearing to Approve, the Proposed Sale; and (C) Approving the Form and Manner of Notice of Thereof; and (D) Granting Related Relief* [ECF No. [\_\_\_]] (the "**Bidding Procedures Order**").[2] The Bidding Procedures Order, among other things: (a) approved the bidding and auction procedures attached to the Bidding Procedures Order as **Schedule I** (the "**Bidding Procedures**"); (b) authorized the Foreign Representative, on behalf of the Chapter 15 Debtor, to conduct an auction (the "**Auction**"), in accordance with the Bidding Procedures, for the sale (the "**Sale**") of substantially all of its direct and/or indirect equity interests in Crédito Real USA Finance, LLC (the "**CRUSAFin Interests**"); (c) established the form and manner of notice of the Bidding Procedures, the Auction, and the Sale Hearing; (d) scheduled a hearing to approve the Sale Transaction (the "**Sale Hearing**"); (e) granted related relief.

    **PLEASE TAKE FURTHER NOTICE** that on **January [9], 2023 at 10:30 a.m. (Eastern Time)**, pursuant to the Bidding Procedures Order, the Foreign Representative conducted an Auction.

    **PLEASE TAKE FURTHER NOTICE** that, in accordance with the Bidding Procedures Order and the Bidding Procedures, at the conclusion of the Auction, the Foreign Representative and Mexican Liquidator, in their discretion and in consultation with the Consultation Party, selected the following Successful Bidder and Back-Up Bidder:

---

[1]    The last four identifying digits of the tax number and the jurisdiction in which the Chapter 15 Debtor pays taxes is Mexico – 6815. The Chapter 15 Debtor's corporate headquarters is located at Avenida Insurgentes Sur No. 730, 20th Floor, Colonia del Valle Norte, Alcaldía Benito Juárez, 03103, Mexico City, Mexico.

[2]    Capitalized terms not otherwise defined herein have the meanings ascribed in the Bidding Procedures Order or Bidding Procedures.

| Successful Bidder(s) | Back-Up Bidder(s) |
|---|---|
|  |  |

**PLEASE TAKE FURTHER NOTICE** that the time for filing any objections to the Sale Transaction and entry of any order approving the sale has expired. Parties may file or supplement an objection based solely on the conduct of the Auction, which must: (i) be in writing and specify the nature of such objection; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules, and all orders of the Bankruptcy Court; and (iii) be filed with the Bankruptcy Court and served so as to be **actually received by January [12], 2023 at 4:00 p.m. (prevailing Eastern Time) (the "Auction Objection Deadline")**.

**PLEASE TAKE FURTHER NOTICE** the Sale Hearing is currently scheduled to take place on **January [17], 2023 at [___] (prevailing Eastern Time),** before the Honorable John T. Dorsey, at the United States Bankruptcy Court for the District of Delaware, 824 Market Street North, 3rd Floor, Wilmington, DE 19801. At the Sale Hearing, the Foreign Representative will present the results of the Auction and certain findings will be sought from the Bankruptcy Court regarding the Auction, including, among other things, that: (1) the Auction (if held) was conducted, and the Successful Bidder and Back-Up Bidder were selected, in accordance with the Bidding Procedures; (2) the Auction (if held) was fair in substance and procedure; (3) the Successful Bid and Back-Up Bid were each a Qualified Bid(s) as defined in the Bidding Procedures; and (4) consummation of any Sale Transaction as contemplated by the Successful Bid or Backup Bid in the Auction will provide the highest or otherwise best offer for the CRUSAFin Interests subject to such Successful Bid or Backup Bid and is in the best interests of the Chapter 15 Debtor. **The Sale Hearing may be continued to a later date by the Foreign Representative by filing a notice prior to, or making an announcement at, the Sale Hearing. No further notice of any such continuance will be required**.

**PLEASE TAKE FURTHER NOTICE** that, if the sale and purchase agreement executed by the Successful Bidder is terminated for any reason prior to consummation of the transaction contemplated thereby (a "**Successful Bid Failure**"), the Back-Up Bidder will be deemed to have the new Successful Bid, and the Chapter 15 Debtor will be authorized, without further order of the Bankruptcy Court, to consummate the transaction with the Back-Up Bidder, provided that the Foreign Representative shall provide prompt notice of such Successful Bid Failure to the Consultation Party and shall post a notice on the docket of the chapter 15 case regarding the Successful Bid Failure and the consummation of the transaction with the Back-Up Bidder.

**PLEASE TAKE FURTHER NOTICE** that this Notice is subject to the terms and conditions of the Bidding Procedures Order, and the Foreign Representative encourages parties in interest to review the Bidding Procedures Order in its entirety.

2

**PLEASE TAKE FURTHER NOTICE** that parties interested in receiving more information regarding the contemplated Sale Transaction and/or copies of the Successful SPA or any related documents may contact White & Case at wccrusafin@whitecase.com or 305-371-2700, Attn: Crédito Real Team.

<u>**Consequence of Failing to Object**</u>

**ANY PERSON OR ENTITY WHO FAILS TO FILE AND SERVE AN OBJECTION IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER AND THIS NOTICE TO THE PROPOSED SALE BY THE SALE OBJECTION DEADLINE OR THE CONDUCT OF THE AUCTION BY THE AUCTION OBJECTION DEADLINE, AS APPLICABLE, OR OTHERWISE ABIDE BY THE PROCEDURES SET FORTH IN THE BIDDING PROCEDURES REGARDING AN OBJECTION TO THE SALE TRANSACTION SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE PROPOSED SALE AND TRANSFER OF THE CRUSAFIN INTERESTS FREE AND CLEAR OF ALL INTERESTS.**

AMERICAS 108803551

Dated: **[\_\_\_]**, 2023

*/draft/*

| | |
|---|---|
| **RICHARDS, LAYTON & FINGER, P.A.** | **WHITE & CASE LLP** |
| Mark D. Collins (No. 2981) | John K. Cunningham (admitted *pro hac vice*) |
| John H. Knight (No. 3848) | Philip M. Abelson (admitted *pro hac vice*) |
| Amanda R. Steele (No. 4430) | 1221 Avenue of the Americas |
| 920 North King Street | New York, NY 10020 |
| Wilmington, DE 19801 | Telephone: (212) 819-8200 |
| Telephone:  (302) 651-7700 | jcunningham@whitecase.com |
| Facsimile: (302) 651-7701 | philip.abelson@whitecase.com |
| collins@rlf.com | |
| knight@rlf.com | Richard S. Kebrdle (admitted *pro hac vice*) |
| steele@rlf.com | Amanda Parra Criste (*pro hac vice* pending) |
| | 200 South Biscayne Boulevard, Suite 4900 |
| *Co-Counsel to Petitioner and Foreign Representative* | Miami, FL 33131 |
| | Telephone: (305) 371-2700 |
| | rkebrdle@whitecase.com |
| | aparracriste@whitecase.com |
| | |
| | Jason N. Zakia (admitted *pro hac vice*) |
| | 111 S. Wacker Drive, Suite 5100 |
| | Chicago, IL 60606 |
| | Telephone: (312) 881-5400 |
| | jzakia@whitecase.com |
| | |
| | *Co-Counsel to Petitioner and Foreign Representative* |

4

AMERICAS 108803551