# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) Chapter 15 |
| Crédito Real, S.A.B. de C.V., SOFOM, E.N.R.,[1] | ) Case No. 22-10630 (JTD) |
| Debtor in a Foreign Proceeding. | ) Re: Docket No. 103 |

**DECLARATION OF ROBERT WAGSTAFF IN SUPPORT OF
FOREIGN REPRESENTATIVE'S AMENDED MOTION FOR ENTRY OF
ORDERS PURSUANT TO 11 U.S.C. §§ 105(a) AND 1519(a):
(I) (A) AUTHORIZING AND APPROVING BIDDING PROCEDURES
RELATING TO THE SALE OF CHAPTER 15 DEBTOR'S EQUITY INTERESTS
IN CRÉDITO REAL USA FINANCE, LLC, (B) SCHEDULING AN AUCTION
FOR, AND HEARING TO APPROVE, THE PROPOSED SALE, AND
(C) APPROVING THE FORM AND MANNER OF NOTICE THEREOF;
(II) AUTHORIZING AND APPROVING THE SALE OF CHAPTER 15
DEBTOR'S EQUITY INTERESTS IN CRÉDITO REAL USA FINANCE, LLC
FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND
INTERESTS; AND (III) GRANTING RELATED RELIEF**

I, Robert Wagstaff, pursuant to 28 U.S.C. § 1746 and under penalty of perjury, hereby declare as follows:

1. I am a Managing Director in the Restructuring & Turnaround Services division at Riveron Consulting, LLC ("**Riveron Consulting**"). During my career of over 30 years, I have led and executed financial advisory engagements in every major country in the Americas, including managing restructuring and acquisition advisory engagements and managing post-acquisition integrations.

2. I submit this declaration (the "**Declaration**") in support of the *Foreign Representative's Amended Motion for Entry of Orders Pursuant to 11 U.S.C. §§ 105(a) and 1519(a): (I)(A) Authorizing and Approving Bidding Procedures Relating to the Sale of Chapter*

---

[1] The last four identifying digits of the tax number and the jurisdiction in which the Chapter 15 Debtor pays taxes is Mexico – 6815.  The Chapter 15 Debtor's corporate headquarters is located at Avenida Insurgentes Sur No. 730, 20th Floor, Colonia del Valle Norte, Alcaldía Benito Juárez, 03103, Mexico City, Mexico.

*15 Debtor's Equity Interests in Crédito Real USA Finance, LLC, (B) Scheduling an Auction for, and Hearing to Approve, the Proposed Sale, and (C) Approving the Form and Manner of Notice Thereof; (II) Authorizing and Approving the Sale of Chapter 15 Debtor's Equity Interests in Crédito Real USA Finance, LLC Free and Clear of All Liens, Claims, Encumbrances, and Interests; and (III) Granting Related Relief* (the "**Amended Motion**").[2]

3. On July 12, 2022, Mr. Fernando Alonso-de-Florida Rivero, the liquidator (*Liquidador Judicial*) (the "**Mexican Liquidator**") appointed by the 52nd Civil State Court of Mexico City (the "**Mexican Court**"), appointed me as the foreign representative of Crédito Real, S.A.B. de C.V., SOFOM, E.N.R., ("**Crédito Real**" or the "**Chapter 15 Debtor**" and, together with its affiliates, the "**Company**") with respect to the Special Expedited Commercial proceeding (*Via Sumaria Especial Mercantil*) for the dissolution and liquidation (the "**Mexican Liquidation Proceeding**") of Crédito Real, for purposes of this Chapter 15 Case.

4. On July 14, 2022, I filed the *Verified Petition for Recognition of Foreign Main Proceeding* [ECF No. 2] (the "**Verified Petition**"), along with the form of voluntary petition [ECF No. 1], requesting that the United States Bankruptcy Court for the District of Delaware recognize the Mexican Liquidation Proceeding as the foreign main proceeding of the Chapter 15 Debtor, authorize me to act as the Mexican Liquidation Proceeding's foreign representative, and grant certain related relief.

5. Following the resignation of BNP Paribas Securities Corp. ("**BNP**") as investment banker on October 17, 2022, Riveron RTS, LLC together with its subsidiaries (collectively, including Riveron Consulting, "**Riveron**") was engaged to act as the financial advisor for

---

[2] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Amended Motion (as defined herein).

Crédito Real USA, Inc. ("**Crédito USA**") in respect of the sale of its outstanding equity interests in Crédito Real USA Finance, LLC ("**CRUSAFin**").

6. I lead the Riveron team that has been advising and assisting the Chapter 15 Debtor and Crédito USA in connection with the proposed Sale and proposed Bidding Procedures. A key part of my role is to engage directly with potential purchasers and participate in diligence discussions, and deal negotiations. In doing so, I have been working closely with the Mexican Liquidator, CRUSAFin's management team, and outside counsel and other advisors, in my capacity as both foreign representative and financial advisor. Accordingly, I am fully authorized to act on behalf of the Chapter 15 Debtor in this Chapter 15 Case.

7. In developing the views set forth herein, I have relied upon and/or considered, among other things, the following: (a) my experience as a financial advisor sourcing and valuing deals, managing restructuring and due diligence engagements from start to finish, and managing post-acquisition integration; (b) the Amended Motion, the Bidding Procedures, and the exhibits attached thereto; (c) the form of voluntary petition [ECF No. 1] and Verified Petition; (d) certain of the Chapter 15 Debtor's and CRUSAFin's financial statements and reports; (e) documents related to the proposed Sale; (f) discussions with CRUSAFin's management concerning their business and finances; (g) discussions with, and proposals by, prospective purchasers; and (h) discussions with certain other professionals at BNP, Riveron, the Mexican Liquidator, and other advisors to the Chapter 15 Debtor.

8. I am not being compensated specifically for this testimony other than through payments received by Riveron as a professional retained by the Chapter 15 Debtor and Crédito USA. I am authorized to submit this Declaration. If called to testify, I could and would testify to

each of the facts set forth herein based on such personal knowledge, discussions, review of documents, and/or opinion.

## Background and Qualifications

9. Riveron is a national business advisory firm specializing in accounting, finance, technology, and operations with its principal office located at 2515 McKinney Avenue Suite 1200 Dallas, TX 75201. Riveron was founded in 2006, is privately held, and has 12 offices across the United States. The current executive leaders and directors at Riveron have extensive experience advising financially troubled companies on performance improvement, restructuring and turnaround, bankruptcy, and interim management.

10. I have over 30 years' experience in turnarounds, financial restructurings, and divestitures, buy-side and sell-side financial due diligence, merger integration, business viability evaluations, valuation, and deal structuring. I joined Riveron in 2017 as a Managing Director in the Restructuring & Turnaround Services division and am the Miami Office Lead. I have previously held senior positions with Berkeley Research Group LLC, Frontera Capital Advisors, FTI Consulting, and Sitel Group. I began my career with PricewaterhouseCoopers LLP. I have a Bachelor of Commerce degree in Accounting and Finance from Concordia University.

## The Chapter 15 Debtor's Marketing and Sale Efforts

11. As part of Crédito Real's strategy to optimize its operations and risk management, its shareholders, at a meeting held on September 10, 2021, authorized Crédito Real to consider offers for the sale of the CRUSAFin Interests in amounts that exceeded the threshold of 1.0x CRUSAFin's book value, which was approximately $45 million around such time.[3]

---

[3] A copy in English of the publication of the decision to sell the CRUSAFin Interests is available on the Mexican stock exchange's website at https://www.bmv.com.mx/docs-pub/visor/visorXbrl.html?docins=../eventemi/eventemi_1127561_1.zip#/visorXbrl.

### A. The 2021-2022 Sale Process

12.     The marketing process for the sale of the CRUSAFin Interests has been ongoing for over a year.  Since its launch in October 2021, Crédito Real, with the assistance of its former investment banker, BNP, conducted outreach to potential purchasers based in Mexico and beyond, some of whom entered into confidentiality agreements to access proprietary information and conduct diligence.

13.     Throughout the months that followed, the Company and BNP shared informational materials with certain potential purchasers, including a summary about the Sale, confidential memorandum, and management presentations.  The Company opened a virtual data room in mid-January 2022 with a substantial amount of information detailing CRUSAFin's finances, assets, and operations.

14.     By February 9, 2022, the Company and BNP received four final binding offers for the purchase of CRUSAFin, but subsequent negotiations were ultimately unsuccessful, particularly given the uncertainty around the Company's financial distress.

15.     Nevertheless, discussions continued with one party into early May 2022 to explore potential sale structures, conduct confirmatory due diligence, and negotiate a purchase agreement.  Other interested parties also signed confidentiality agreements and started due diligence.

### B. Re-Launch After Mexican Liquidation Proceeding

16.      In July 2022, after entry of the Final Mexican Order, the Mexican Liquidator and I, on behalf of the Chapter 15 Debtor, determined that resuming the marketing process via section 363 of the Bankruptcy Code as part of the Chapter 15 Case, would expedite a value-maximizing sale of the CRUSAFin Interests.  A transparent and competitive process within the

Chapter 15 Case provides potential buyers with greater transparency and certainty, the lack of which significantly hampered the success of the prior out-of-court sale process by materially impacting the sale price.

17. As part of the re-launch, potential buyers that had signed confidentiality agreements and provided satisfactory indications of interest (whether oral or written) were given access to the virtual data room so that they could perform additional diligence and exchange information with BNP, CRUSAFin, the Mexican Liquidator and me, on behalf of the Chapter 15 Debtor. Additional outreach to 12 new potential investors, resulted in five more parties executing confidentiality agreements. From July through September 2022, four potential purchasers were active in the data room conducting diligence and having a dialogue with BNP, the Mexican Liquidator, and me. BNP arranged numerous calls between these active potential purchasers and CRUSAFin's management, the Mexican Liquidator, and me, together with respective legal advisors.

18. During this time, Wells Fargo Bank, N.A. ("**Wells Fargo**") has continued to express its concern with the uncertainty about the Sale process and the Chapter 15 Debtor's ability to close the Sale Transaction before the January 2023 maturity date. Wells Fargo is under no obligation to further extend the maturity of the outstanding approximately $48 million 2-year secured credit facility from Wells Fargo Bank, N.A. (the "**Wells Fargo LOC**") beyond January 2023 and has provided no indication that it would be willing to do so consensually. Therefore, time is of the essence, and the Mexican Liquidator and I believe it is paramount that the Sale process move forward to ensure there is no unnecessary loss of value.

AMERICAS 118471218

### C. Marketing Efforts Following the Original Motion

19. Since its engagement, Riveron has engaged with the potential purchasers who had provided competitive indications of interest. As of the date hereof, several potential purchasers continue to conduct diligence and engage in discussions with management, Riveron, the Mexican Liquidator, and me. Although no stalking horse agreement has been finalized as of the filing the Amended Motion, several parties remain interested in serving as the stalking horse bidder for the CRUSAFin Interests. The Mexican Liquidator, CRUSAFin's management, Riveron, and I, in consultation with advisors, are working closely with potential stalking horse bidders to improve the terms of their bids and make them actionable stalking horse proposals. The Mexican Liquidator and I are hopeful that the negotiations will result in a competitive and actionable stalking horse bid.

### **Provisional Relief Required to Protect Interests of Creditors**

20. I believe immediate approval of the Bidding Procedures and application of section 363 of the Bankruptcy Code are crucial to ensuring the Sale process remains robust and that potential bidders remain actively engaged. I believe the clarity and certainty provided by approval of the Bidding Procedures and application of section 363 of the Bankruptcy Code to the Sale on a provisional basis will significantly improve the process and result in more and better bids. Moreover, if the Chapter 15 Debtor is forced to wait until approval of the Verified Petition in order to conduct the Sale, it will be impossible for me to close the Sale Transaction within the time frame imposed by the Wells Fargo LOC. If approval of the Bidding Procedures and application of section 363 of the Bankruptcy Code to the Sale are granted on a provisional basis, I will be able to properly complete the Sale as expeditiously as possible for the benefit of all stakeholders.

AMERICAS 118471218

21. In sum, without immediate approval of the Bidding Procedures and application of section 363 of the Bankruptcy Code to the Sale there is a risk of (i) devaluation of the CRUSAFin Interests, (ii) potential purchasers for the CRUSAFin Interests walking away from negotiations, and (iii) the closing of the Sale Transaction not occurring prior to Wells Fargo LOC's January 2023 maturity date – all of which would irreparably harm a value-maximizing Sale Transaction and in the interests of the Chapter 15 Debtor's creditors.

### Reasonableness of the Bidding Procedures

22. I believe the proposed Bidding Procedures are designed to facilitate a robust bidding and competitive auction process that will maximize the value received for the CRUSAFin Interests under the circumstances.

23. In formulating the Deadlines, the Mexican Liquidator and I, in consultation with Riveron and advisors, balanced the need to provide an adequate period for potential purchasers to conduct due diligence and submit bids on the CRUSAFin Interests, with the need to quickly and efficiently close the Sale to unlock value for the Chapter 15 Debtor's creditors. The Deadlines also account for the substantial marketing process that was conducted prior to the Chapter 15 Case. I believe that the Deadlines will provide interested parties with sufficient time to review diligence materials and formulate and submit an informed bid for the CRUSAFin Interests. It is critical for this long and complex sale process to come to a swift conclusion, and any further delay may jeopardize value maximization and present considerable risk because the Wells Fargo LOC was extended only to January 2023.

AMERICAS 118471218

24. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 29, 2022
       New York, NY

*/s/ Robert Wagstaff*
Robert Wagstaff
Managing Director
Riveron Consulting, LLC