## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 15 |
| | ) | |
| Crédito Real, S.A.B. de C.V., SOFOM, E.N.R.,[1] | ) | Case No. 22-10630 (JTD) |
| | ) | |
| Debtor in a Foreign Proceeding. | ) | **Re: Dkt. Nos. 95, 103, 104, 113 & 133** |
| | ) | **Proposed Objection Deadline:** |
| | ) | **January 24, 2023 at 12:00 p.m. (ET)** |
| | ) | **Proposed Hearing Date:** |
| | ) | **January 25, 2023 at 10:00 a.m. (ET)** |

### FOREIGN REPRESENTATIVE'S MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING ENTRY INTO STALKING HORSE AGREEMENT AND RELATED BID PROTECTIONS IN CONNECTION WITH THE SALE OF CHAPTER 15 DEBTOR'S EQUITY INTERESTS IN CRÉDITO REAL USA FINANCE, LLC, (II) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, AND (III) GRANTING RELATED RELIEF

Robert Wagstaff (the "**Foreign Representative**"), in his capacity as duly appointed foreign representative by Mr. Fernando Alonso-de-Florida Rivero, the court-appointed liquidator (*Liquidador Judicial*) (the "**Mexican Liquidator**") of the Special Expedited Commercial proceeding (*Via Sumaria Especial Mercantil*) for the dissolution and liquidation (the "**Mexican Liquidation Proceeding**") of Crédito Real, S.A.B. de C.V., SOFOM, E.N.R., ("**Crédito Real**" or the "**Chapter 15 Debtor**" and, together with its affiliates, the "**Company**") pending in the 52nd Civil State Court of Mexico City pursuant to, among others, Articles 229, 232, 233, and 236 of the *Ley General de Sociedades Mercantiles*, by and through his undersigned counsel, hereby files this motion (the "**Motion**") for entry of an order substantially in the form attached hereto as **Exhibit A** (the "**Stalking Horse Order**") authorizing and approving: (i) the Mexican Liquidator's and the Foreign Representative's designation of the Stalking Horse Bidder

---

[1] The last four identifying digits of the tax number and the jurisdiction in which the Chapter 15 Debtor pays taxes is Mexico – 6815. The Chapter 15 Debtor's corporate headquarters is located at Avenida Insurgentes Sur No. 730, 20th Floor, Colonia del Valle Norte, Alcaldía Benito Juárez, 03103, Mexico City, Mexico.

(as defined below); (ii) the Chapter 15 Debtor's entry into a purchase and sale agreement with

the Stalking Horse Bidder (the "**Stalking Horse PSA**"), a copy of which is attached hereto as

**Exhibit B**; (iii) the grant of certain Bid Protections (as defined below) to the Stalking Horse

Bidder in connection therewith; (iv) the form and manner of notice thereof; and (v) related relief.

In support of the Motion, the Foreign Representative relies upon and incorporates by reference

the *Declaration of Robert Wagstaff in Support of Foreign Representative's Motion for Entry of

an Order (I) Authorizing and Approving Entry into Stalking Horse Agreement and Related Bid

Protections in Connection with the Sale of Chapter 15 Debtor's Equity Interests in Crédito Real

USA Finance, LLC, (II) Approving the Form and Manner of Notice Thereof, and (III) Granting

Related Relief* (the "**Third Wagstaff Declaration**"), filed contemporaneously herewith.[2]   In

further support of the Motion, the Foreign Representative, by and through the undersigned

counsel, states as follows:

## PRELIMINARY STATEMENT

1.      By this Motion, the Foreign Representative seeks, among other relief, approval of

(i) Bepensa Capital, Inc. as the stalking horse bidder (the "**Stalking Horse Bidder**" or

"**Bepensa**") for the purposes of establishing a minimum acceptable offer, solicitation, or

---

[2]      Additional factual background and information regarding the proposed Sale is set forth in detail in the *Declaration of Robert Wagstaff in Support of Foreign Representative's Amended Bidding Procedures Motion for Entry of Orders Pursuant to 11 U.S.C. §§ 105(a) and 1519(a): (I)(A) Authorizing and Approving Bidding Procedures Relating to the Sale of Chapter 15 Debtor's Equity Interests in Crédito Real USA Finance, LLC; (B) Scheduling an Auction for, and Hearing to Approve, the Proposed Sale; and (C) Approving the Form and Manner of Notice Thereof; (II) Authorizing and Approving the Sale of Chapter 15 Debtor's Equity Interests in Crédito Real USA Finance, LLC Free and Clear of all Liens, Claims, Encumbrances, and Interests; and (III) Granting Related Relief* [ECF No. 104] (the "**First Wagstaff Declaration**"), and the *Supplemental Declaration of Robert Wagstaff in Support of Foreign Representative's Amended Bidding Procedures Motion for Entry of Orders Pursuant to 11 U.S.C. §§ 105(a) and 1519(a): (I)(A) Authorizing and Approving Bidding Procedures Relating to the Sale of Chapter 15 Debtor's Equity Interests in Crédito Real USA Finance, LLC; (B) Scheduling an Auction for, and Hearing to Approve, the Proposed Sale; and (C) Approving the Form and Manner of Notice Thereof; (II) Authorizing and Approving the Sale of Chapter 15 Debtor's Equity Interests in Crédito Real USA Finance, LLC Free and Clear of all Liens, Claims, Encumbrances, and Interests; and (III) Granting Related Relief* [ECF No. 113] (the "**Second Wagstaff Declaration**").

proposal for the CRUSAFin Interests (as defined below) and (ii) the granting of certain bid protections to the Stalking Horse Bidder in connection therewith.  As outlined in the Third Wagstaff Declaration, the Foreign Representative believes the Stalking Horse PSA represents the highest and best bid received to date and provides a competitive baseline bid for the CRUSAFin Interests.

2.      Since 2021, the Company has been actively marketing the sale of Crédito Real USA Finance, LLC ("**CRUSAFin**"), a majority-owned, U.S. subsidiary that is a leading auto loan lending business based in Fort Lauderdale, Florida and the principal U.S. asset of the Company.  Ultimately, on December 15, 2022, the Court entered an order [ECF No. 133] (the "**Bidding Procedures Order**") authorizing the Foreign Representative to run a formal section 363 sale process with related bidding procedures [ECF 133-1] (the "**Bidding Procedures**")[3] for the proposed sale (the "**Sale**" or "**Sale Transaction**") of the Chapter 15 Debtor's direct and/or indirect equity interests in CRUSAFin (the "**CRUSAFin Interests**").   Consistent with the Bidding Procedures, the Foreign Representative and the Mexican Liquidator launched the Court-supervised 363 sale process in December 2022.  In parallel, the Foreign Representative, Mexican Liquidator, CRUSAFin's management, and Riveron Consulting LLC ("**Riveron**"), continued to conduct a competitive stalking horse bidding process and, as outlined in the Third Wagstaff Declaration, received a robust stalking horse proposal from the Stalking Horse Bidder.  Over the course of several weeks, including through the holidays, all parties continued to negotiate in good faith to finalize the legal documentation in connection therewith.  This Motion is the culmination of all those efforts and marks the next critical step in the Sale process.

---

[3]      Capitalized terms not otherwise defined or indicated herein shall have the meanings given to such terms in the Bidding Procedures approved by the Court pursuant to the Bidding Procedures Order.

AMERICAS 119035839
RLF1 28498863v.1

3.       The Stalking Horse PSA represents the highest and best offer for 100% of the equity interests of CRUSAFin, including the CRUSAFin Interests and the interests held by Scot Seagrave.   Although the Stalking Horse PSA represents a bid for 100% of the equity at a purchase price at $62 million, the Stalking Horse Bidder has negotiated an agreement with Mr. Seagrave whereby he has agreed to retain and rollover half of his equity interests and sell the other half under the Stalking Horse PSA.   Therefore, the Stalking Horse Bid provides for the purchase of a total of 97.64% of the existing equity interests of CRUSAFin (the "**Acquired Interests**") for a base purchase price of $60,536,800.00, subject to certain adjustments as detailed in the Stalking Horse PSA.   As is customary, the Stalking Horse Bidder's agreement to the terms contained in the Stalking Horse PSA, including holding its offer open though the remainder of the sale process, is contingent on the Court's entry of the proposed Stalking Horse Order and grant of bid protections.   These bid protections include a breakup fee equal to approximately 3.0% of the proposed purchase price for 100% of the equity interests, and the reimbursement of the Stalking Horse Bidder's expenses up to $750,000, all as more fully detailed below and in the Stalking Horse PSA.

4.       As is also customary, the Stalking Horse PSA requires that this Court grant the bid protections by a date certain (here, within 15 days of the filing of this Motion) or the Stalking Horse Bidder would have the right to terminate the Stalking Horse Bid.   Because time is of the essence, contemporaneously with the filing of this Motion, the Foreign Representative filed a motion to shorten notice of this Motion with a request that the Court schedule a hearing on the Motion on January 25, 2023 (or as soon as possible thereafter).   Expeditious consideration of the Motion is critical to maintaining a competitive bidding for the CRUSAFin Interests and a value-maximizing sale process for the benefit of all stakeholders.

AMERICAS 119035839
RLF1 28498863v.1

5.      Importantly, based on the progress that has been made in the Sale Process and the finalization of the Stalking Horse PSA, CRUSAFin's largest secured lender, Wells Fargo Bank, N.A. ("**Wells Fargo**"), agreed to extend the maturity date of its existing credit facility from January 30, 2023 to April 14, 2023.  This extension allows the Chapter 15 Debtor additional time to complete its sale process and close a transaction with a successful bidder.  In light of this extension, and assuming the Stalking Horse Order is entered on or around January 25, 2023, the Foreign Representative proposes to further extend the remaining Sale process Deadlines by one week to allow other interested buyers additional time to review the Stalking Horse PSA and finalize their Bids by the Bid Deadline.  Specifically, the Foreign Representative would extend the Deadlines in the Bidding Procedures as follows: (i) the Bid Deadline will be extended from January 27, 2023 to February 3, 2023; (ii) the Auction date from January 31, 2023 to February 7, 2023; (iii) the Auction Objection Deadline from February 3, 2023 to February 10, 2023; and (iv) the Sale Hearing to be scheduled on February 15, 2023 at 2:00 p.m. (ET).  The Foreign Representative will provide notice of the extended dates and deadlines in the Stalking Horse Notice (as defined herein).

6.      In sum, the Foreign Representative believes that the relief requested herein, combined with the relief granted by the Bidding Procedures Order, will allow the Chapter 15 Debtor to efficiently pursue a value-maximizing Sale of the CRUSAFin Interests and provide a significant source of value to all creditors of the Chapter 15 Debtor.  The proposed transaction with the Stalking Horse Bidder, entry into the Stalking Horse PSA, and approval of the Bid Protections clearly serve the best interests of the Chapter 15 Debtor and its creditors and other stakeholders.  Therefore, the Foreign Representative respectfully requests that the Court grant the relief requested herein.

AMERICAS 119035839
RLF1 28498863v.1

**RELIEF REQUESTED**

7.    By this Motion, pursuant to sections 105(a), 363, 1501, 1519, and 1522 of title 11

of the United States Code (as amended, the "**Bankruptcy Code**"), Rules 2002, 6004, and 9007

of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1,

6004-1, and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United

States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Foreign

Representative seeks entry of the Stalking Horse Order, substantially in the form attached hereto

as **Exhibit A**:

   (i)    approving and designating Bepensa Capital, Inc. as the Stalking Horse Bidder for the CRUSAFin Interests;[4]

   (ii)   authorizing the Chapter 15 Debtor to enter into and perform certain obligations under the Stalking Horse PSA, subject to the solicitation of higher or otherwise better Bids, on the terms set forth in the Stalking Horse Bid and the Stalking Horse PSA;

   (iii)  approving the Break-Up Fee and Expense Reimbursement (each as defined in the Stalking Horse PSA and, collectively, the "**Bid Protections**") and authorizing the Chapter 15 Debtor to pay any amounts that may become payable to the Stalking Horse Bidder on account of such Bid Protections pursuant to the terms and conditions of the Stalking Horse PSA;

   (iv)   approving the form and manner of the notice of, among other things, entry of the Stalking Horse Order and designation of the Stalking Horse Bid (the "**Stalking Horse Notice**"); and

   (v)    granting related relief.

**JURISDICTION, VENUE AND PREDICATES FOR RELIEF**

8.    This Court has jurisdiction to consider this Motion and the relief requested herein

under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* of the United

---

[4]    The Stalking Horse Bidder's ultimate parent, Bepensa Capital S.A. de C.V., is also a party to the Stalking Horse PSA for purposes of guaranteeing the Stalking Horse Bidder's obligations thereunder, including its financial obligations.  The Stalking Horse Bidder, however, is the entity that is proposed to acquire the Acquired Interests at Closing, subject to all conditions in the Stalking Horse PSA, including the Court's approval of the Sale.

6

States District Court for the District of Delaware dated February 29, 2012 (Sleet, C.J.).  This is a core proceeding under 28 U.S.C. § 157(b)(2) as to which the Bankruptcy Court has the power to enter a final judgment.

9.      Venue of this Chapter 15 Case and the Motion is proper in this District pursuant to 28 U.S.C. § 1410(1).

10.      Pursuant to Local Rule 9013-1(f), the Foreign Representative consents to the entry of a final judgment or order with respect to this Motion if it is determined that this Court lacks Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## BACKGROUND

### I.      Overview

11.      After marketing the CRUSAFin Interests for sale outside of a bankruptcy proceeding for almost a year, in July 2022, the Foreign Representative and Mexican Liquidator, on behalf of the Chapter 15 Debtor, determined that resuming the marketing process via section 363 of the Bankruptcy Code as part of the Chapter 15 Case, would expedite a value-maximizing sale of the CRUSAFin Interests.

12.      On October 26, 2022, the Foreign Representative filed a motion seeking approval of the Bidding Procedures and ultimate approval of a Sale of the CRUSAFin Interests [ECF No. 95].  Multiple adjournments of the pending chapter 15 Verified Petition [ECF No. 2], however, delayed approval of the Bidding Procedures.  As a result, on November 29, 2022, the Foreign Representative filed an amended bidding procedures motion seeking approval of the Bidding Procedures pursuant to section 1519 of the Bankruptcy Code [ECF No. 103] (the "**Amended Bidding Procedures Motion**").

7

13.     On December 15, 2022, the Court approved the Bidding Procedures [ECF No. 133-1], setting key dates and deadlines for the Foreign Representative to obtain Bids on the CRUSAFin Interests, conduct an Auction, and hold a Sale Hearing.  The Bidding Procedures Order and Bidding Procedures contemplated that the Foreign Representative may select one or more stalking horse bids and enter into a stalking horse agreement for the CRUSAFin Interests upon which he would seek expedited approval by separate motion and order of such stalking horse agreement, including any bid protections provided therein.  *See* Bidding Procedures at 3; *see id.* Bidding Procedures Order ¶ 9.

14.     On January 9, 2023, the Foreign Representative and Mexican Liquidator, in the exercise of their reasonable business judgment, and after consulting with the Consultation Party, determined that a two-week extension to the Bid Deadline, date for the Auction, and Sale Hearing was in the best interest of the Chapter 15 Debtor and its creditors.  The Foreign Representative subsequently filed a notice [ECF No. 146] reflecting the originally modified Deadlines and communicated the new dates to all active bidders.

### A.     Stalking Horse Solicitation Process

15.     In July 2022, as part of the re-launch of a section 363 sale process, the Mexican Liquidator granted virtual data room access to potential buyers that had signed confidentiality agreements and provided satisfactory indications of interest (whether oral or written) so that they could perform additional diligence and exchange information with BNP (the Company's former investment banker), CRUSAFin, the Foreign Representative, and the Mexican Liquidator, on behalf of the Chapter 15 Debtor.  First Wagstaff Decl. ¶ 17.  Additional outreach to 12 new potential investors resulted in five more parties executing confidentiality agreements.  *Id.*  From July through September 2022, four potential purchasers were active in the data room conducting

8

diligence and having a dialogue with BNP, the Foreign Representative, and the Mexican Liquidator. *Id.* Although several non-binding proposals were received during this time, the uncertainty regarding recognition of the Mexican Liquidation Proceeding and the ability to conduct a section 363 sale process in this Chapter 15 Case resulted in no bid being finalized.

16.    In October 2022, Riveron, with the input of the Mexican Liquidator and the Chapter 15 Debtor's advisors, created a shortlist of two potential purchasers that could serve as a stalking horse bidder (the "**Potential Stalking Horse Bidders**"). Third Wagstaff Decl. ¶ 7. Riveron considered the following parameters when constructing that shortlist: (1) overall attractiveness of the proposal from a valuation perspective and other material terms; (2) whether the proposed buyer had sufficient capital to complete a sale; (3) whether the proposed buyer had familiarity with the CRUSAFin business and the North-American consumer automobile loan market; and (4) whether the proposed buyer had expertise with both the business services and financing elements of the CRUSAFin platform. *Id*.

17.    On or around November 2, 2022, Riveron, on behalf of the Chapter 15 Debtor, sent a formal stalking horse process letter to the Potential Stalking Horse Bidders requesting that final binding stalking horse proposals be submitted by November 11, 2022. Third Wagstaff Decl. ¶ 8. On November 10, 2022, Riveron, on behalf of the Chapter 15 Debtor, sent an email to the Potential Stalking Horse Bidders informing them that the deadline for the submission of stalking horse proposals was extended to November 30, 2022. *Id*. Between October and November 30, 2022, CRUSAFin's management, Riveron, and the Foreign Representative held various calls with the Potential Stalking Horse Bidders. *Id*. During that same time period, CRUSAFin's management and Riveron continued to support the diligence efforts of all other interested parties that had signed a non-disclosure agreement. *Id*. On November 11, 2022, in

9

compliance with the initial deadline contained in the November 2nd formal stalking horse process letter, the Stalking Horse Bidder submitted its binding proposal to the Foreign Representative. *Id*.  Throughout December 2022 and early January 2023, the Mexican Liquidator, the Foreign Representative, and Riveron negotiated extensively with the Stalking Horse Bidder and its advisors to finalize the terms of its Bid.  *Id*.  The final terms of the Bid are memorialized in the Stalking Horse PSA.

18.    In parallel with the discussions with the Stalking Horse Bidder, the Foreign Representative, the Mexican Liquidator, and their advisors have successfully negotiated a further extension of the maturity of the existing credit facility of approximately $52.6 million outstanding (the "**Wells Fargo LOC**") between CRUSAFin and Wells Fargo, which is guaranteed by the Chapter 15 Debtor.  *Id.* ¶ 10.  Wells Fargo has agreed to extend the maturity date of the Wells Fargo LOC from January 31, 2023 to April 14, 2023.  *Id.*

## II.    The Stalking Horse Bid

19.    As noted, over the course of several months, the Stalking Horse Bidder has performed a substantial amount of diligence and engaged in good faith, arms'-length negotiations, all of which culminated in the material terms of the Stalking Horse Bid and the Stalking Horse PSA.  Third Wagstaff Decl. ¶ 11.  The Stalking Horse PSA was actively negotiated and finalized between the Chapter 15 Debtor, Scot Seagrave, and the Stalking Horse Bidder, with the assistance of each of their respective advisors.  *Id.*  The Stalking Horse Bid is valued at $62,000,000.00 (the "**Initial Purchase Price**") for 100% of the equity interests of CRUSAFin.  *Id.* ¶ 12.  Mr. Seagrave, however, has agreed with the Stalking Horse Bidder to roll over half of his membership interests into membership interests in the post-closing CRUSAFin. *Id.*  This is reflected in the Stalking Horse PSA, which provides for a base purchase price of

$60,536,800.00 (the "**Base Purchase Price**") for the purchase of a total of 97.64% of the outstanding equity interests of CRUSAFin (comprised of all of the CRUSAFin Interests (95.28%) plus half of Mr. Seagrave's equity interests (2.36%)). The Base Purchase Price is subject to a book value adjustment at Closing. *Id*. Without accounting for such book value adjustments, the portion of the Base Purchase Price allocated for the CRUSAFin Interests equals $59,073,600.00. *Id.* The Stalking Horse Bid contemplates payment of the final purchase price in cash, providing the Chapter 15 Debtor certainty of value. *Id*. When compared to other offers received, the Stalking Horse Bid is the best bid received to date. *Id*.

20.   An accurate summary of the material terms of the Stalking Horse Bid, which are memorialized in the Stalking Horse PSA (including terms that are required to be highlighted pursuant to Local Rule 6004-1(b)), is set forth in the table below.

| Summary of Stalking Horse Bid[5] | |
| --- | --- |
| **Purchased Assets** | The assets to be purchased by the Stalking Horse Bidder include (i) 100% of the CRUSAFin Interests and (ii) 50% of Mr. Seagrave's equity interests in CRUSAFin, for a total of 97.64% of the equity interests of CRUSAFin (referred to herein and in the Stalking Horse PSA as the "**Acquired Interests**"). |
| **Purchase Price**<br>*Stalking Horse PSA § 2.2* | The Stalking Horse Bid represents a bid for 100% of the equity interests of CRUSAFin valued at $62 million. The Stalking Horse Bidder, however, has agreed with Mr. Seagrave that half of his membership interests shall roll over. Therefore, the aggregate base purchase price for the Acquired Interests equals $60,536,800.00, and is subject to certain adjustments based on any book value surplus or book value deficit. Without accounting for such book value adjustments, the base purchase price for the CRUSAFin Interests equals $59,073,600.00. |

---

[5]      This summary is provided for the convenience of the Court and parties in interest. To the extent there is any conflict between this summary and the Stalking Horse PSA, the Stalking Horse PSA shall govern in all respects. Capitalized terms that are not otherwise defined in this table shall have the meanings ascribed to them in the Stalking Horse PSA attached hereto as **Exhibit B**.

| Summary of Stalking Horse Bid[5] | |
|---|---|
| **Termination**<br><br>*Stalking Horse PSA § 9.1* | As set forth in Section 9.1 of the Stalking Horse PSA, the Stalking Horse PSA may be terminated based on several events, including, *inter alia*, the following: (i) by mutual consent of the parties; (ii) by Sellers or Buyer if there is a law that makes consummation of the Transaction illegal or otherwise prohibited; (iii) upon Sellers' written agreement to enter into an Alternative Transaction; (iv) by Buyer or Sellers, if the other party has breached the terms of the Stalking Horse PSA that would prevent satisfaction of the conditions to Closing; (v) by Buyer, if the Sale Order has not been entered by March 3, 2023; (vi) by Buyer, if Sellers consummate an Alternative Transaction; or (vi) by either party if the Sale has not been consummated by the Outside Date.<br><br>The Chapter 15 Debtor may also terminate the Stalking Horse PSA if the Mexican Liquidator determines, upon advice from outside legal counsel, that not proceeding with the Transaction or terminating the Stalking Horse PSA is in the best interests of the Chapter 15 Debtor's creditors, and is necessary for him to fulfill his fiduciary obligations under Law (the "**Fiduciary Duty**"), including to pursue an Alternative Transaction. |

AMERICAS 119035839
RLF1 28498863v.1

| Summary of Stalking Horse Bid[5] | |
|---|---|
| **Bid Protections and Overbid Protections**<br><br>*Stalking Horse PSA §§ 6.12(a)(i)(5), 6.12(h)* | A break-up fee equal to $1,860,000.00 (the "**Break-Up Fee**") (3.0% of the Initial Purchase Price) and reimbursement of all actual, documented and necessary reasonable out of pocket costs, fees and expenses incurred by Buyer in connection with the Transaction, including in the investigation, evaluation, negotiation, and documentation of the Transaction (other than any cost or expense related to or arising from any claims or disputes among Buyer or its Affiliates, on the one hand, and any Seller or its Affiliates, on the other hand, arising from Buyer's breach or failure to perform any of its agreements, covenants or obligations hereunder or under any other Transaction Document), up to an aggregate amount of $750,000.00 (the "**Expense Reimbursement**").<br><br>The Bid Protections shall be deemed earned upon the valid termination of Stalking Horse PSA under either Section 9.1(b)(ii) (*Written Agreement for Alternative Transaction*), Section 9.1(f)(i) (*Alternative Transaction Consummated*), or Section 9.1(i) (*Fiduciary Out*) of the Stalking Horse PSA, <u>but only if</u>, Buyer is not then in breach of any provision of the Stalking Horse PSA.  Upon satisfaction of any trigger for the Bid Protections, Buyer shall be deemed to have earned the Break-Up Fee and Expense Reimbursement, which shall be paid in cash, by wire transfer of immediately available funds following consummation of such Alternative Transaction out of the proceeds of such Alternative Transaction to an account designated by Buyer.<br><br>To be deemed a Qualified Bid, a Bid must provide cash consideration that, in the Foreign Liquidator's and Mexican Liquidator's reasonable business judgment, in consultation with the Consultation Party, is greater than $65,110,000 with respect to 100% of the equity interests of CRUSAFin (which is comprised of (i) a $62 million valuation for 100% of the equity interests of CRUSAFin, plus (ii) the Bid Protections, plus (iii) $500,000); *provided, however*, and for the avoidance of doubt, if a Bid proposes to purchase less than 100% of the Seagrave Interests (as defined in the Bidding Procedures) based on an agreement with Mr. Seagrave, then the amount in (i) above, and consequently the total amount, shall be adjusted accordingly.<br><br>Pursuant to the proposed Stalking Horse Order, if the Stalking Horse Bidder submits an Overbid at the Auction (if one is to be held), the Stalking Horse Bidder shall be entitled to a dollar-for-dollar credit equal to the sum of the Break-Up Fee and Expense Reimbursement in connection with such Overbid. |
| **Sale to Insider**<br>*Del. Bank. L.R. 6004-1(b)(iv)(A)* | The transactions contemplated by the Stalking Horse PSA do not include any sales to Insiders. |

AMERICAS 119035839<br>RLF1 28498863v.1

| Summary of Stalking Horse Bid[5] | |
|---|---|
| **Agreements with Management**<br>*Del. Bank. L.R. 6004-1(b)(iv)(B)* | The Stalking Horse Bidder plans on retaining certain key CRUSAFin executives, including Mr. Seagrave, after the Closing of the Sale pursuant to separate individual employment agreements. |
| **Releases**<br>*Del. Bank. L.R. 6004-1(b)(iv)(C)*<br><br>*Stalking Horse PSA § 6.10* | The Stalking Horse PSA contains standard and customary releases by the Buyer in favors of the Sellers and their predecessors, successors, and assigns of all claims arising out of or related to facts, events, circumstances or actions taken by any of the released parties occurring or failing to occur, in each case, at or prior to the Closing.<br><br>The Stalking Horse PSA also contains a release by the Sellers in favor of CRUSAFin and its predecessors, successors, and assigns arising out of or related to facts, events, circumstances or actions taken by any of such persons occurring or failing to occur, in each case, at or prior to the Closing. |
| **Private Sale/No Competitive Bidding**<br>*Del. Bank. L.R. 6004-1(b)(iv)(D)*<br><br>*Stalking Horse PSA § 6.12(b)* | The Stalking Horse PSA is subject to consideration by the Foreign Representative and Mexican Liquidator (in consultation with the Consultation Party) of higher or otherwise better Qualified Bid for the sale of the CRUSAFin Interests.  An Auction, if any, is contemplated to be conducted on February 7, 2023 if more than one Qualified Bid is received by the Bid Deadline. |
| **Selected Affirmative Covenants**<br>*Del. Bank. L.R. 6004-1(b)(iv)(E)*<br><br>*Stalking Horse PSA Article VI* | The Stalking Horse PSA contains standard and customary covenants for transactions of this type.  Additionally, the Stalking Horse PSA requires the parties to use commercially reasonable efforts to, as applicable to such party (i) promptly take, or cause to be taken, any and all actions that may be necessary, proper or advisable to consummate the Transaction and the other transactions contemplated by Stalking Horse PSA or the Transaction Documents, (ii) prepare and make, as soon as is practical following the date when Buyer is selected as the Successful Bidder, all necessary, proper or advisable filings, notices or other communications in connection with the Transaction or the other transactions contemplated by the Stalking Horse PSA or by any of the Transaction Documents that may be required to obtain any necessary Consent or Regulatory Approvals prior to the Closing Date and (iii) with respect to the Consents set forth in <u>Section 3.5(a)</u> of the Seller Disclosure Schedule and Regulatory Approvals in <u>Section 3.5(b)</u> of the Seller Disclosure Schedule, as soon as is practical following the date when Buyer is approved as the Successful Bidder, submit such necessary, proper or advisable filings or notices.<br><br>The Stalking Horse PSA also contemplates that non-debtor Crédito Real USA, Inc. will, prior to or at closing, dividend the CRUSAFin Interests to the Chapter 15 Debtor, such that following such dividend, CRUSAFin will become a direct subsidiary of the Chapter 15 Debtor (such transfer, the **"Reorganization"**). |

14

| Summary of Stalking Horse Bid[5] | |
|---|---|
| **Closing Deadlines**<br>*Del. Bank. L.R. 6004-1(b)(iv)(E)*<br><br>*Stalking Horse PSA § 2.4* | The Outside Date for the Closing of the Sale is 90 days following entry of the Sale Order.<br><br>The Closing shall occur (i) on the ninth Business Day following the satisfaction or waiver of the conditions set forth in Article VII of the Stalking Horse PSA (other than any such conditions which by their terms are not capable of being satisfied until the Closing Date) is satisfied or, when permissible, waived, or (ii) on such other date on a Business Day or at such other time or place as the Parties may mutually agree upon in writing. |
| **Bankruptcy Milestones**<br>*Del. Bank. L.R. 6004-1(b)(iv)(E)*<br><br>*Stalking Horse PSA § 6.12(d)* | No later than 15 days after filing this Motion, the Stalking Horse Order shall have been entered.<br><br>No later than March 3, 2023, the Bankruptcy Court shall have entered the Sale Order.<br><br>Within two Business Days of entry of the Sale Order, Parent shall have caused the publication of a Notice of Entry of the Sale Order.<br><br>No less than fifteen (15) days after the entry of the Sale Order and no later than the Outside Date, the Closing shall have occurred. |
| **Good Faith Deposit**<br>*Del. Bank. L.R. 6004-1(b)(iv)(F)*<br><br>*Stalking Horse PSA § 2.3* | Promptly, but no later than two Business Days following the filing of this Motion, Buyer shall immediately deposit an aggregate amount equal to five percent of the Base Purchase Price in cash into an escrow account with RLF. Upon selection of the Stalking Horse Bidder as the Successful Bidder, Buyer shall promptly (and in any event within two Business Days thereof) deposit an additional aggregate amount equal to five percent of the Base Purchase Price in cash in RLF's escrow account, such that the Deposit will equal ten percent of the Base Purchase Price. |
| **Interim Arrangements with Proposed Buyer**<br>*Del. Bank. L.R. 6004-1(b)(iv)(G)* | The Stalking Horse PSA does not contemplate entry into any interim arrangements with the Buyer. |
| **Use of Proceeds**<br>*Del. Bank. L.R. 6004-1(b)(iv)(H)* | There are no provisions in the Stalking Horse PSA that restrict the Chapter 15 Debtor's use of the proceeds of the Transaction. |
| **Tax Exemption**<br>*Del. Bank. L.R. 6004-1(b)(iv)(I)* | The Sellers and the Buyer will structure the Transaction in a tax-efficient manner (mutually agreed to by the parties) to the extent practicable. |

AMERICAS 119035839<br>RLF1 28498863v.1

| Summary of Stalking Horse Bid[5] | |
|---|---|
| **Record Retention**<br>*Del. Bank. L.R. 6004-1(b)(iv)(J)*<br><br>*Stalking Horse PSA § 6.18* | For a period of seven (7) years after the Closing Date or such other longer period as required by Law, Buyer shall preserve and retain all corporate, accounting, legal, auditing, human resources and other books and records of the CRUSAFin and its subsidiaries (including (i) any documents relating to any governmental or non-governmental claims, actions, suits, proceedings or investigations and (ii) all tax returns, schedules, work papers and other material records or other documents relating to taxes of the Company Entities), in each case, to the extent in the possession of Buyer and relating to the conduct of the business and operations of CRUSAFin and its subsidiaries prior to the Closing Date. |
| **Sale of Avoidance Actions**<br>*Del. Bank. L.R. 6004-1(b)(iv)(K)* | The Stalking Horse PSA does not provide for the sale of any claims or avoidance actions of the Chapter 15 Debtor. |
| **Requested Findings as to Successor Liability**<br>*Del. Bank. L.R. 6004-1(b)(iv)(L)*<br><br>*Stalking Horse PSA § 6.12(a)(ii)* | A condition precedent to the closing of the Transaction is that the Court shall have entered the Sale Order in form and substance reasonably satisfactory to Buyer, and such Sale Order shall be a final, non-appealable order.<br><br>The Chapter 15 Debtor expects the Sale Order will include customary findings concerning the absence of successor liability with respect to the CRUSAFin Interests for the Buyer, including a finding that Buyer is not a mere continuation of Parent and shall have no obligations with respect to any liabilities of or claims against Parent, except as may be expressly set forth in the Stalking Horse PSA. |
| **Sale Free and Clear of Liens**<br>*Del. Bank. L.R. 6004-1(b)(iv)(M)*<br><br>*Stalking Horse PSA § 6.12(a)(ii)* | A condition precedent to the closing of the Sale Transaction is that the Court shall have entered a Sale Order finding that the CRUSAFin Interests are being sold free and clear of all liabilities not expressly assumed by the Buyer under the Stalking Horse PSA after giving effect to the Reorganization. |
| **Credit Bid**<br>*Del. Bank. L.R. 6004-1(b)(iv)(N)* | No portion of the consideration provided is in the form of a credit bid. |
| **Relief from Bankruptcy Rule 6004(h)**<br>*Del. Bank. L.R. 6004-1(b)(iv)(O)*<br><br>*Stalking Horse PSA § 7.1(b)* | The Foreign Representative will not be requesting any relief from Bankruptcy Rule 6004(h).  The Sale Order becoming a final, non-appealable order is a condition precedent to the Closing. |

21.    The Chapter 15 Debtor and other Sellers have agreed to pay the Stalking Horse Bidder, under certain conditions outlined in the Stalking Horse PSA, (i) a Break-Up Fee in the amount of $1,860,000.00, which equates to 3.0% of the Initial Purchase Price, and (ii) an Expense Reimbursement up to an aggregate amount of $750,000.00.  Third Wagstaff Decl. ¶ 14.

16

In the aggregate, the Bid Protections represent 4.2% of the Initial Purchase Price. *Id*. As summarized above, the Bid Protections shall be deemed earned only in the event the Sellers decide to terminate the Stalking Horse PSA because they (i) have entered into or consummated an alternative Sale Transaction for the CRUSAFin Interests or (ii) determine that not proceeding with the Sale to the Stalking Horse Bidder or terminating the Stalking Horse PSA is in the best interests of the Chapter 15 Debtor's creditors and is necessary to fulfill their fiduciary obligations (the "**Fiduciary Out**").  Stalking Horse PSA §6.12(h).

22.    Importantly, if the Bid Protections become payable pursuant to the Stalking Horse PSA, such payments are the sole and exclusive remedy of the Stalking Horse Bidder with respect to the termination and/or breach of the Stalking Horse PSA.  If the Expense Reimbursement becomes due and payable pursuant to the terms of the Stalking Horse PSA, and the Stalking Horse Bidder seeks payment of any such amount from the Chapter 15 Debtor, the Stalking Horse Bidder will have to provide reasonably detailed documentation for such Expense Reimbursement to the Chapter 15 Debtor (which documentation shall not be required to contain time entries and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any confidential or commercially sensitive information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege, any benefits of the attorney work-product doctrine, or any privilege or protection from disclosure of such information).

23.    The Chapter 15 Debtor and the Stalking Horse Bidder and their advisors are negotiating a proposed form of sale order approving the Sale Transaction pursuant to the Stalking Horse PSA (the "**Proposed Sale Order**").  The Foreign Representative intends to file the Proposed Sale Order prior to the Sale Hearing, and intends to seek entry of the Proposed Sale

17

Order upon the selection of the Successful Bidder pursuant to the Bidding Procedures. The Proposed Sale Order will likely, among other things, (i) approve the sale of the CRUSAFin Interests free and clear under section 363(f) of the Bankruptcy Code after giving effect to the Reorganization, (ii) contain a finding that the Stalking Horse Bidder is not a successor or mere continuation of the Chapter 15 Debtor, (iii) require the Sellers to cause a notice of entry of the Sale Order to be published in the *New York Times* and *El Financiero* within two business days of the Court's entry of the Sale Order, and (iv) require the Sellers to consummate the Reorganization prior to the Closing of the Sale Transaction.

## III.   Notice Procedures

24.   <u>Stalking Horse Notice</u>.   Within two (2) business days after the entry of the Stalking Horse Order, or as soon thereafter as practicable, the Foreign Representative (or his agents) shall serve by first-class mail, postage prepaid, and email (if known), the Stalking Horse Notice, substantially in the form attached to the Stalking Horse Order as <u>Schedule II</u> on the following parties: (i) the U.S. Trustee; (ii) counsel to the Ad Hoc Group, Akin Gump Strauss Hauer & Feld LLP, Attn: Ira S. Dizengoff (idizengoff@akingump.com), David H. Botter (dbotter@akingump.com), Abid Qureshi (aqureshi@akingump.com), and James R. Savin (jsavin@akingump.com); (iii) counsel to Wells Fargo Bank, N.A.; (iv) counsel to The Bank of New York Mellon as indenture trustee under the indentures of certain senior unsecured notes and certain subordinated perpetual notes issued by the Chapter 15 Debtor; (v) any known affected creditor(s) asserting a lien, claim, or encumbrance against, or interest in, the relevant assets; (vi) any party that has expressed an interest in purchasing the CRUSAFin Interests during the last three (3) months; (vii) the Internal Revenue Service; (viii) United States Attorney for the District of Delaware; (ix) the Mexican National Banking and Securities Commission (*Comisión*

18

*Nacional Bancaria y de Valores*); (x) the state attorneys general for all states in which the Chapter 15 Debtor conducts business; and (xi) any such other party entitled to receive notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**").    The Foreign Representative shall also publish the Stalking Horse Notice, in English and Spanish, on the Chapter 15 Debtor's website.  The Foreign Representative submits that such notice is sufficient and proper notice of the Chapter 15 Debtor's designation of the Stalking Horse Bidder, Stalking Horse PSA, the Bid Protections, and the extension of the Deadlines with respect to known interested parties.

## BASIS FOR RELIEF

A.    **Designation of the Stalking Horse Bidder and Entry into the Stalking Horse PSA is a Sound Exercise of the Foreign Representative's and Mexican Liquidator's Business Judgment and Should be Approved.**

25.    Sections 105(a), 363(b), 1501, 1519, and 1522 of the Bankruptcy Code and the Bidding Procedures Order allow the Foreign Representative to enter into the Stalking Horse PSA and designate Bepensa as the Stalking Horse Bidder to facilitate a robust process for the Sale of the CRUSAFin Interests.

26.    This Court already ordered that section 363 of the Bankruptcy Code apply to this Chapter 15 Case with respect to the sale of the CRUSAFin Interests, pursuant to sections 105(a) and 1519 of the Bankruptcy Code.  Bidding Procedures Order ¶ 3.  Specifically, the Bidding Procedures Order authorizes the Foreign Representative and Mexican Liquidator to pursue the Sale pursuant to the Bidding Procedures and to the "prudent exercise of their business judgment" to execute an agreement with a stalking horse bidder after consulting with the Consultation Party (if any) as provided in the Bidding Procedures.  Bidding Procedures Order ¶ 9.  Moreover, the Bidding Procedures Order authorizes the Foreign Representative to seek approval "on an

19

expedited basis, of [a stalking horse agreement], including any bid protections that may be provided therein." *Id.* The relief sought herein is an extension of the Bidding Procedures Order and furthers the process for such Sale by guaranteeing a transaction with the Stalking Horse Bidder pursuant to the Stalking Horse PSA.

27.     Approval of the Motion is also entirely consistent with section 1519 of the Bankruptcy Code. Section 1519 permits the Court to grant provisional relief where such relief is "urgently needed to protect the assets of the debtor or the interests of the creditors" and "if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. §§ 1519(a), 1522(a). Here, approval of the Stalking Horse Bidder and of entry into the Stalking Horse PSA are urgently needed to protect the interests of creditors, parties in interest, and the Chapter 15 Debtor. Having a Stalking Horse Bid in place prior to the extended Bid Deadline is critical to maximizing the value of the CRUSAFin Interests for the benefit of all stakeholders. As set forth in the Third Wagstaff Declaration, the Stalking Horse Bid enhances participation of potential Bidders by setting a minimum price for the CRUSAFin Interests prior to the extended Bid Deadline and the commencement of the Auction. Third Wagstaff Declaration ¶ 16. Absent the relief sought in the Motion, other bidders may submit very low-ball Bids on the Bid Deadline, or not submit a Bid at all. Accordingly, in addition to the relief already granted in the Bidding Procedures Order, section 1519[6] of the Bankruptcy Code also provides a basis for granting the relief sought herein under section 363.

---

[6]     *See, e.g., In re Pro-Fit Holdings Ltd.*, 391 B.R. 850, 867 (Bankr. C.D. Cal. 2008) (acknowledging that section 363 could immediately apply to chapter 15 under sections 1519(a), 105(a), and 105(d) of the Bankruptcy Code). Section 1519(a)(3) of the Bankruptcy Code empowers the Court to issue a provisional order "granting any relief referred to in paragraph (3), (4), and (7) of section 1521(a)." 11 U.S.C. § 1519(a)(3). Relevant here, section 1521(a)(7) of the Bankruptcy Code allows the Court to grant the foreign representative "any additional relief that may be available to a trustee," subject to certain statutory exceptions regarding certain avoidance powers that are not applicable here. 11 U.S.C. § 1519(a)(7). Even though the list in section 1519(a) is not exhaustive, there is no question that section 363 relief is available to a trustee under the Bankruptcy Code.

28.     Consistent with section 363(b)(1), a foreign representative may sell a chapter 15 debtor's U.S. assets out of the ordinary course of business only subject to the notice and hearing requirements of section 363(b)(1).  11 U.S.C. § 363(b)(1); *see In re Elpida Memory, Inc.*, 2012 Bankr. LEXIS 5367, *16-17 (Bankr. D. Del. Nov. 16, 2012) (finding that section 363 sale standards apply to a sale in chapter 15); *see also In re Fairfield Sentry Limited*, 768 F.3d 239, 244 (2d Cir. 2014) (stating that the bankruptcy court is required to conduct a section 363 review in a chapter 15 case when a debtor seeks a transfer of an interest in property within the territorial jurisdiction of the United States).

29.     While the Bankruptcy Code does not state the standard for approving sales of property under section 363, courts uniformly agree that the business judgment standard applies. *See, e.g.*, *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under [section 363(b)], courts require the debtor to show that a sound business purpose justifies such actions"); *Meyers v. Martin*, 91 F.3d 389, 395 (3d. Cir. 1996) (citing *Fulton State Bank v. Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) ("under normal circumstances the court would defer to the trustee's judgment so long as there is a legitimate business justification")); *In re Elpida Memory*, 2012 Bankr. LEXIS 5367, at *17 ("The section 363(b) standard is well-settled. A debtor may sell assets outside the ordinary course of business when it has demonstrated that the sale of such assets represents the sound exercise of business judgment.")

30.     "Under Delaware law, the business judgment rule operates as a presumption 'that directors making a business decision, not involving self-interest, act on an informed basis, in good faith and in the honest belief that their actions are in the corporation's best interest.'" *Continuing Creditors' Comm. of Star Telecomms., Inc. v. Edgecomb*, 385 F. Supp. 2d 449, 462

(D. Del. 2004) (quoting *Grobow v. Perot*, 539 A.2d 180, 187 (Del. 1988)); *see also Stanziale v. Nachtomi* (*In re Tower Air, Inc.*), 416 F.3d 229, 238 (3d Cir. 2005). To satisfy the business judgment standard, courts in this Circuit require that a sale satisfy four requirements: (1) a sound business purpose exists for the sale; (2) the sale price is fair; (3) the debtor has provided adequate and reasonable notice; and (4) the purchaser has acted in good faith. *See In re Elpida Memory*, 2012 Bankr. LEXIS 5367, at *17.

31.     In the Amended Bidding Procedures Motion, the Mexican Liquidator and Foreign Representative provided sufficient business justification for selling the CRUSAFin Interests pursuant to section 363(b). By this Motion, the Mexican Liquidator and Foreign Representative continue to exercise their business judgment to maximize the value of the Chapter 15 Debtor by selecting a Stalking Horse Bidder and asking this Court to grant the related Bid Protections.

32.     *First*, the Foreign Representative and Mexican Liquidator have demonstrated sound business reasons for selecting Bepensa Capital, Inc. as the Stalking Horse Bidder and entering into the Stalking Horse PSA in connection therewith. As set forth in the First and Third Wagstaff Declaration, the Chapter 15 Debtor and BNP (followed by Riveron in its capacity as financial advisor after BNP's resignation) marketed the CRUSAFin Interests extensively prior to and following the Chapter 15 Petition Date. First Wagstaff Decl. ¶¶ 12 *et seq.*, *see also* Third Wagstaff Decl. ¶¶ 7 *et seq.* While the Bidding Procedures provide for a fair and organized sale process, the approval of the Stalking Horse Bidder will bolster the competiveness of such process to maximize the value of the CRUSAFin Interests. *Id.* ¶ 15. Specifically, as part of the Bidding Procedures, the Foreign Representative has required each Bidder to mark up the Stalking Horse PSA and submit it as part of their Bid (along with a redline to the form), which

AMERICAS 119035839
RLF1 28498863v.1

will allow the Mexican Liquidator and Foreign Representative to determine and select the qualifying Bids and Bidders for the CRUSAFin Interests.

33.     *Second*, the Purchase Price in the Stalking Horse Bid is fair as it constitutes the highest and best offer received to date after over a year of marketing the CRUSAFin Interests. Third Wagstaff Decl. ¶ 12.  Accordingly, the Foreign Representative believes that the Stalking Horse PSA establishes a competitive baseline against which other interested parties may formulate their Bids.  *Id.* ¶ 16.  Furthermore, the Mexican Liquidator and Foreign Representative intend to continue the Chapter 15 Debtor's marketing and sale efforts after this Motion is filed and the Stalking Horse Order entered.  *Id.* ¶ 13.

34.     *Third*, upon service of the Stalking Horse Notice, all qualified potential bidders will be given notice of the Stalking Horse PSA and extended Deadlines.  The extension of the Deadlines will provide interested parties with an adequate opportunity to analyze the Stalking Horse PSA and acquire Diligence Materials necessary to submit a timely and informed Bid by the extended Bid Deadline.

35.     *Fourth*, the Stalking Horse PSA, including the Bid Protections, were negotiated between the Mexican Liquidator, the Foreign Representative, Scot Seagrave, and the Stalking Horse Bidder at arm's length and in good faith, after the Chapter 15 Debtor's extensive marketing process and months-long negotiations.  Third Wagstaff Decl. ¶¶ 11, 14.

36.     In addition, pursuant to Bankruptcy Code section 105(a), a court may fashion an order or decree that helps preserve or protect the value of a debtor's assets.  *Momentum Mfg. Corp. v. Emp. Creditors Comm.* (*In re Momentum Mfg. Corp.*), 25 F.3d 1132, 1136 (2d Cir. 1994) ("It is well settled that bankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process [where] . . .

23

[s]ection 105(a) of the Code provides that '[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.'"); *Patrick v. Dell Fin. Servs. (In re Patrick)*, 344 B.R. 56, 58 (Bankr. M.D. Penn. 2005) (quoting *Joubert v. ABN AMRO Mortgage Group, Inc. (In re Joubert)*, 411 F.3d 452, 455 (3d Cir. 2005)) ("There is no doubt that § 105(a) is a 'powerful [and] versatile tool' designed to empower bankruptcy courts to fashion orders in furtherance of the Bankruptcy Code."). Accordingly, section 105(a) allows the Court to grant the relief requested in this Motion to allow the Chapter 15 Debtor to enter into the Stalking Horse PSA.

37.   Finally, the requested relief herein promotes the purposes of chapter 15, including by: (i) providing greater legal certainty for trade and investment; (ii) fostering the fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested parties, including the Chapter 15 Debtor; (iii) maximizing the value of the Chapter 15 Debtor's assets, in particular as the assets subject to the Sale are located in the U.S.; and (iv) promoting cooperation between the courts in the United States with those in foreign jurisdictions involved in cross-border insolvency cases. *See* 11 U.S.C. §§ 1501(a), 1525. Notably, as explained above, designation of the Stalking Horse Bidder and entry into the Stalking Horse PSA are reasonably crafted to "protect[] and maximize[e] [] the value of the debtor's assets" and promote the "fair and efficient administration of crossborder insolvencies that protects the interests of all creditors, and other interested entities." 11 U.S.C. § 1501(a)(3) and (4).

38.   In sum, the Mexican Liquidator and Foreign Representative have a sound business justification for designating Bepensa as the Stalking Horse Bidder and entering into the Stalking Horse PSA, and the Court should approve the Chapter 15 Debtor's entry into the

24

Stalking Horse PSA, and its performance of certain obligations thereunder.  For the avoidance of doubt, by this Motion, the Foreign Representative is not requesting approval of the Sale Transaction and such approval will occur, if at all, at the Sale Hearing.

**B.    The Bid Protections Benefit the Chapter 15 Debtor, Its Creditors and Other Stakeholders and thus, Should be Approved.**

39.    The Foreign Representative seeks authority to pay the Bid Protections to the Stalking Horse Bidder in the event such obligations become payable in accordance with the terms of the Stalking Horse PSA.   In the Third Circuit, break-up fees and expense reimbursements may be approved if they "provide some benefit to the debtor's estate."  *See Calpine Corp. v. O'Brien Envtl. Energy, Inc.* (*In re O'Brien Envtl. Energy, Inc.*), 181 F.3d 527, 536 (3rd Cir. 1999).   Whether a proposed break-up fee benefits the estate depends on the "totality of the circumstances" and ultimately requires "a judgment call about whether the proposed fee's potential benefits to the estate outweigh any potential harms."  *In re Energy Future Holdings Corp.*, 904 F.3d 298, 314 (3d Cir. 2018).

40.    The Third Circuit has recognized several instances in which a break-up fee might confer a benefit on the estate.  *Id.  First*, benefit may be found "if assurance of a break-up fee promoted more competitive bidding, such as by inducing a bid that otherwise would not have been made and without which bidding would have been limited" or by "serv[ing] as a catalyst to higher bids."  *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d at 537.  *Second*, break-up fees may also benefit the estate by "induc[ing] a bidder to research the value of the debtor and convert that value to a dollar figure on which other bidders can rely," thereby "increasing the likelihood that the price at which the debtor is sold will reflect its true worth."  *Id.  Third*, a break-up fee may also benefit the estate if it induces a bidder to remain committed to its purchase after an auction

AMERICAS 119035839
RLF1 28498863v.1

is ordered.  *See In re Reliant Energy Channelview LP*, 594 F.3d 200, 207-08 (3d Cir. 2010); *see also In re Energy Future Holdings Corp.*, 904 F.3d at 314.

41.     In *In re O'Brien*, the Third Circuit referred to nine factors that the bankruptcy court viewed as relevant in deciding whether to award a break-up fee or expense reimbursement: (a) the presence of self-dealing or manipulation in negotiating the break-up fee; (b) whether the fee harms, rather than encourages, bidding; (c) the reasonableness of the break-up fee relative to the purchase price; (d) whether the "unsuccessful bidder place[d] the estate property in a sales configuration mode to attract other bidders to the auction"; (e) the ability of the request for a break-up fee "to attract or retain a potentially successful bid, establish a bid standard or minimum for other bidders, or attract additional bidders"; (f) the correlation of the fee to a maximization of value of the debtor's estate; (g) the support of the principal secured creditors and creditors' committee of a break-up fee; (h) the benefits of the safeguards to the debtor's estate; and (i) the "substantial adverse impact [of the break-up fee] on unsecured creditors, where such creditors are in opposition to the break-up fee."  *See In re O'Brien*, 181 F.3d at 536.

42.     Approval of the Bid Protections is warranted under the *O'Brien* standards.  The Bid Protections are the product of extensive arm's-length, good faith negotiations.  The Bid Protections are necessary to induce the Stalking Horse Bidder to serve as the stalking horse. Indeed, the Stalking Horse Bidder may withdraw its offer if the Bid Protections are not approved under the Stalking Horse Order.  In that case, the Chapter 15 Debtor's creditors may lose the benefits of both a committed fair purchase price for the CRUSAFin Interests and the simultaneous ability to shop for higher and better offers.  Additionally, by establishing a fair price based on extensive diligence and negotiations, the Stalking Horse PSA sets the baseline value of the CRUSAFin Interests to other potentially interested parties to submit competing,

higher bids and encourages such parties to participate in the Auction, thereby maximizing the value to the benefit of all Chapter 15 Debtor's creditors. As the proposed Stalking Horse Order provides, in order for any other Bid to be deemed a Qualified Bid, it must contain a valuation for 100% of the equity interests of CRUSAFin that meets or exceeds the Initial Purchase Price, plus the aggregate Bid Protections, plus a $500,000 of additional cash consideration.

43.    Moreover, if the Chapter 15 Debtor consummates an alternative sale, transfer, or other disposition of a material portion of the Acquired Interests, the Bid Protections will be paid from the proceeds of such alternative sale following valid termination of the Stalking Horse PSA (i.e., where the Chapter 15 Debtor stands to realize a net economic benefit). Third Wagstaff Decl. ¶ 15. As set forth in paragraph 21, *supra,* the Break-Up Fee and Expense Reimbursement combined equal approximately 4.2% of the Initial Purchase Price. Finally, providing the Bid Protections to the Stalking Horse Bidder on the terms set forth in this Motion, and as memorialized in the Stalking Horse PSA, is supported by the Ad Hoc Group.

44.    Moreover, the Break-Up Fee and Expense Reimbursement are consistent with bid protections approved by this Court in other cases. *See, e.g.*, *In re CCX, Inc.*, Case No. 22-10252 (JTD) (Bankr. D. Del. Mar. 27, 2022) [ECF No. 83] (approving a break-up fee of 3% and expense reimbursement of $50,000); *In re Alpha Latam Management LLC*, Case No. 21-11109 (JKS) (Bankr. D. Del. Oct. 1, 2021) [ECF No. 255] (approving a break-up fee and expense reimbursement of up to 5.0% of final purchase price in the aggregate); *In re The Hertz Corporation, et al,* Case No. 20-11218 (MFW) (Bankr. D. Del. Dec. 17, 2020) [ECF No. 2158] (approving termination payments); *In re GNC Holding Inc.*, Case No. 20-11662 (KBO) (Bankr. D. Del. Aug. 19, 2020) [ECF No. 811] (approving a termination fee up to 3% and separate expense reimbursement of $3,000,000); *In re Lucky's Mkt. Parent Co.*, No. 20-10166 (JTD)

AMERICAS 119035839
RLF1 28498863v.1

(Bankr. D. Del. Feb. 26, 2020) [ECF No. 282] (approving a break-up fee equal to 3% of the purchase price and up to $250,000 in expense reimbursement).

45.    In sum, the Bid Protections significantly benefit the Chapter 15 Debtor's creditors by promoting competitive bidding at the Auction and thereby ensuring the highest and best offer for the CRUSAFin Interests is obtained.  Hence, the Foreign Representative submits that the Bid Protections, which must be approved under the Stalking Horse PSA, should be approved by the Court.

**C.    The Court Should Approve the Form of Stalking Horse Notice**

46.    As mentioned above, the Foreign Representative has simultaneously herewith filed the Motion to Shorten under Bankruptcy Rule 9006(c) and Local Rule 9006-l(c), seeking Court authority to shorten the notice and objection periods for this Motion so that it can be heard and considered by the Court by January 25, 2023 (or as soon as possible thereafter).  Not only is entry of the Stalking Horse Order by such date a pre-condition to the Stalking Horse Bidder being willing to hold its offer open, but the Foreign Representative believes that it is imperative that this Motion be heard as soon as possible so that interested parties have certainty that the Court-approved Stalking Horse PSA is the baseline bid off which they must submit an offer and that such offer must contain a purchase price sufficient to cover the Bid Protections.  Third Wagstaff Decl. ¶ 16.  Having this information as soon as possible provides Bidders with sufficient runway to actively engage in diligence and discussions with the Chapter 15 Debtor so as to best position their Bids prior to the extended Bid Deadline.

47.    This Court previously approved, among others, the form of Sale Notice and notice procedures in connection with the Bidding Procedures.  Bidding Procedures Order ¶ 10.  Given the circumstances and timing of the Stalking Horse Bid, the Chapter 15 Debtor timely filed the

AMERICAS 119035839
RLF1 28498863v.1

court-approved Sale Notice on December 16, 2022 [ECF No. 135] without disclosing the designation of the Stalking Horse Bidder, Stalking Horse PSA, Bid Protections, or extended Deadlines since they were not definitive at the time.  Therefore, the Foreign Representative now seeks approval of the procedures set forth above and the form of Stalking Horse Notice substantially in the form attached to the Stalking Horse Order as <u>Schedule II</u>.  The Foreign Representative also requests authority to publish a notice substantially similar in all respects to the Stalking Horse Notice, in English and Spanish, on the Chapter 15 Debtor's website, in the same manner provided for in the Bidding Procedures Order.

48.     The Foreign Representative believes the proposed notice procedure, which follows the same procedures approved by this Court in connection with the Sale Notice, provides sufficient notice of the Stalking Horse Bidder designation, Stalking Horse PSA, Bid Protections, and extended Deadlines.

## WAIVER OF BANKRUPTCY RULE 6004 (h)

49.     To implement the foregoing successfully, and given the nature of the relief requested herein, the Foreign Representative respectfully requests that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) and waive the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).  The Bid Protections must be approved so that the Stalking Horse Bidder continues to hold its Bid open through the extended Bid Deadline of February 3, 2023.  Thus, approval of the Bid Protections is a critical element to ensuring the Auction is successful and generates the highest and best value for the Chapter 15 Debtor's creditors.  Accordingly, ample cause exists to find the notice requirements of Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h).

AMERICAS 119035839
RLF1 28498863v.1

## **NOTICE**

50.     Notice of this Motion has been provided via email and/or ECF to certain of the following parties, or, in lieu thereof, their counsel: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Stalking Horse Bidder; (iii) counsel to the Ad Hoc Group, Akin Gump Strauss Hauer & Feld LLP, Attn: Ira S. Dizengoff (idizengoff@akingump.com), David H. Botter (dbotter@akingump.com), Abid Qureshi (aqureshi@akingump.com), and James R. Savin (jsavin@akingump.com); (iv) counsel to Wells Fargo Bank, N.A.; (v) counsel to The Bank of New York Mellon as indenture trustee under the indentures of certain senior unsecured notes and certain subordinated perpetual notes issued by the Chapter 15 Debtor; (vi) any known affected creditor(s) asserting a lien, claim, or encumbrance against, or interest in, the relevant assets; (vii) any party that has expressed an interest in purchasing the CRUSAFin Interests during the last three (3) months; (viii) the Internal Revenue Service; (ix) United States Attorney for the District of Delaware; (x) the Mexican National Banking and Securities Commission (*Comisión Nacional Bancaria y de Valores*); (xi) the state attorneys general for all states in which the Chapter 15 Debtor conducts business; and (xii) any such other party entitled to receive notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**").

51.     To alleviate the burden on the Mexican Liquidator and Chapter 15 Debtor, a shortened notice of the Motion and any hearing on the Motion, which contains information for how parties can receive copies of the Motion, the proposed Stalking Horse Order, and the Stalking Horse PSA, will be provided to those Notice Parties that are not able to receive service via email or ECF.

52.     The Foreign Representative submits that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

## NO PRIOR REQUEST

53.     No previous request for the relief sought herein has been made by the Foreign Representative to this Court or any other court, other than as discussed in this Motion.

*[Remainder of Page Left Intentionally Blank]*

31

## **CONCLUSION**

WHEREFORE, for the reasons set forth herein, the Foreign Representative respectfully requests that this Court enter the Stalking Horse Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in the Motion and such other and further relief as may be just and proper.

32

Dated: January 18, 2023

Respectfully submitted,

*/s/ Amanda R. Steele*

**RICHARDS, LAYTON & FINGER, P.A.**

Mark D. Collins (No. 2981)
John H. Knight (No. 3848)
Amanda R. Steele (No. 4430)
920 North King Street
Wilmington, DE 19801
Telephone:  (302) 651-7700
Facsimile: (302) 651-7701
collins@rlf.com
knight@rlf.com
steele@rlf.com

*Co-Counsel to Petitioner and Foreign
Representative*

**WHITE & CASE LLP**

John K. Cunningham (admitted *pro hac vice*)
Philip M. Abelson (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
jcunningham@whitecase.com
philip.abelson@whitecase.com

Richard S. Kebrdle (admitted *pro hac vice*)
Amanda Parra Criste (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
rkebrdle@whitecase.com
aparracriste@whitecase.com

Jason N. Zakia (admitted *pro hac vice*)
111 S. Wacker Drive, Suite 5100
Chicago, IL 60606
Telephone: (312) 881-5400
jzakia@whitecase.com

*Co-Counsel to Petitioner and Foreign
Representative*

33