**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re | ) ) | Chapter 15 |
| Crédito Real, S.A.B. de C.V., SOFOM, E.N.R.,[1] | ) ) | Case No. 22-10630 (JTD) |
| Debtor in a Foreign Proceeding. | ) ) ) ) | **Re: Dkt. Nos. 95, 103, 104, 113, 133 & 150** |

**DECLARATION OF ROBERT WAGSTAFF IN SUPPORT OF
FOREIGN REPRESENTATIVE'S MOTION FOR ENTRY OF AN ORDER
(I) AUTHORIZING AND APPROVING ENTRY INTO STALKING HORSE
AGREEMENT AND RELATED BID PROTECTIONS IN CONNECTION WITH
THE SALE OF CHAPTER 15 DEBTOR'S EQUITY INTERESTS IN CRÉDITO REAL
USA FINANCE, LLC, (II) APPROVING THE FORM AND MANNER OF NOTICE
THEREOF, AND (III) GRANTING RELATED RELIEF**

I, Robert Wagstaff, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am a Managing Director in the Restructuring & Turnaround Services division at Riveron Consulting, LLC ("**Riveron Consulting**"), which, together with Riveron RTS, LLC and its other subsidiaries (collectively, including Riveron Consulting, "**Riveron**") is the financial advisor in respect of the sale of its outstanding equity interests in Crédito Real USA Finance, LLC ("**CRUSAFin**"). I am the authorized Foreign Representative with respect to the Special Expedited Commercial proceeding (*Via Sumaria Especial Mercantil*) (the "**Mexican Liquidation Proceeding**") pending before the 52nd Civil State Court of Mexico City for the dissolution and liquidation of Crédito Real, S.A.B. de C.V., SOFOM, E.N.R., ("**Crédito Real**" or the "**Chapter 15 Debtor**" and, together with its affiliates, the "**Company**").

---

[1] The last four identifying digits of the tax number and the jurisdiction in which the Chapter 15 Debtor pays taxes is Mexico – 6815. The Chapter 15 Debtor's corporate headquarters is located at Avenida Insurgentes Sur No. 730, 20th Floor, Colonia del Valle Norte, Alcaldía Benito Juárez, 03103, Mexico City, Mexico.

2. As discussed in my previous declarations [ECF No. 104] (the "**First Wagstaff Declaration**") and [ECF No. 113] (the "**Second Wagstaff Declaration**"),[2] Riveron has been retained as a financial advisor with respect to the Sale of the CRUSAFin Interests.

3. I lead the Riveron team that is advising and assisting the Chapter 15 Debtor in connection with the proposed Sale, including the negotiation of the Stalking Horse Bid and Stalking Horse PSA (each, as defined below), and I participated directly in discussions with potential purchasers and the Stalking Horse Bidder, as the Chapter 15 Debtor's Foreign Representative and, after BNP Paribas Securities Corp.'s ("**BNP**") resignation, also as their financial advisor. In doing so, I worked closely with the Mexican Liquidator, CRUSAFin's management, Riveron, outside counsel, and other advisors.

4. I am over the age of 18 and authorized to submit this declaration on behalf of the Chapter 15 Debtor. If called as a witness, I would testify competently to the facts set forth in this Declaration.

5. I submit this declaration (the "**Third Wagstaff Declaration**") in support of the (i) *Motion for Entry of an Order (I) Authorizing and Approving Entry into Stalking Horse Agreement and Related Bid Protections in Connection with the Sale of Chapter 15 Debtor's Equity Interests in Crédito Real USA Finance, LLC, (II) Approving the Form and Manner of Notice Thereof, and (III) Granting Related Relief* (the "**Motion**")[3] and (ii) *Motion for Entry of an Order Shortening the Notice and Objection Periods for, and Scheduling and Expedited Hearing on, the Stalking Horse Motion* (the "**Motion to Shorten**").

---

[2] I rely upon and incorporate herein by reference my First Wagstaff Declaration and Second Wagstaff Declaration.

[3] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Motion.

6. In forming the views set forth herein, I have relied upon and/or considered, among other things, the following: (a) my experience as a financial advisor sourcing and valuing deals, managing restructurings and due diligence engagements from start to finish, and managing post-acquisition integration; (b) the Motion and the Stalking Horse PSA (defined below); (c) other documents related to the proposed Sale; (d) diligence materials provided to prospective buyers regarding CRUSAFin's business; (e) discussions with, and proposals by, prospective purchasers, including the Stalking Horse Bidder, and their advisors; and (f) discussions with the Mexican Liquidator, CRUSAFin's management, certain other professionals at Riveron, and other advisors to the Chapter 15 Debtor.

## I. Stalking Horse Solicitation Process

7. Since its engagement by the Chapter 15 Debtor in October 2022, Riveron had various discussions with several potential purchasers, including those that had previously provided competitive indications of interest to acquire the CRUSAFin Interests, to see if any could serve as a stalking horse bidder. Based on feedback from those discussions, Riveron, with the input of the Mexican Liquidator and the Chapter 15 Debtor's advisors, created a shortlist of two (2) potential purchasers that could serve as a stalking horse bidder (the "**Potential Stalking Horse Bidders**"). Riveron considered the following parameters when constructing that shortlist: (1) the overall terms of the proposal from a valuation perspective and other materials terms; (2) whether the proposed buyer had sufficient capital to complete a sale; (3) whether the proposed buyer had familiarity with the CRUSAFin business and the North-American consumer automobile loan market; and (4) the entity had expertise with both the business services and financing elements of the CRUSAFin platform.

8. On or around November 2, 2022, Riveron, on behalf of the Chapter 15 Debtor, sent a formal stalking horse process letter to the Potential Stalking Horse Bidders requesting that final binding stalking horse proposals be submitted by November 11, 2022. On November 10, 2022, Riveron, on behalf of the Chapter 15 Debtor, sent an email to the Potential Stalking Horse Bidders informing them that the deadline for the submission of stalking horse proposals was extended to November 30, 2022. Between October and November 30, 2022, CRUSAFin's management, Riveron, and I held various calls with the Potential Stalking Horse Bidders. During that same time period, CRUSAFin's management and Riveron, continued to support the diligence efforts of all other interested parties that had signed a non-disclosure agreement. On November 11, 2022, in compliance with the initial deadline contained in the November 2nd formal stalking horse process letter, the Stalking Horse Bidder submitted its binding proposal. Throughout December 2022 and early January 2023, the Mexican Liquidator, Riveron, and I negotiated extensively with the Stalking Horse Bidder and its advisors to improve the terms of its Bid.

9. After significant deliberations with advisors, several rounds of negotiation, extensive diligence, and consultation with the Ad Hoc Group, the Mexican Liquidator and I, in consultation with the Ad Hoc Group, selected Bepensa Capital, Inc.[4] as the Stalking Horse Bidder, who had presented a binding offer (the "**Stalking Horse Bid**") for the proposed sale of the CRUSAFin Interests. The Stalking Horse Bid represents the most attractive offer for the CRUSAFin Interests.

---

[4] The Stalking Horse Bidder's ultimate parent, Bepensa Capital S.A. de C.V., is also a party to the Stalking Horse PSA for purposes of guaranteeing the Stalking Horse Bidder's obligations thereunder, including its financial obligations. The Stalking Horse Bidder, however, is the entity that is proposed to acquire the Acquired Interests (as defined below) at Closing, subject to all conditions in the Stalking Horse PSA, including the Court's approval of the Sale.

10. In parallel with the discussions with the Stalking Horse Bidder, the Mexican Liquidator and I, together with the Chapter 15 Debtor's advisors, successfully negotiated a further extension of the maturity of the existing credit facility with Wells Fargo, N.A. from January 31, 2023 to April 14, 2023.

**II. The Stalking Horse Bid**

11. For several weeks, the Stalking Horse Bidder and the Mexican Liquidator, assisted by Riveron and White & Case LLP, negotiated the material terms of the Stalking Horse Bid. All negotiations with the Stalking Horse Bidder have been conducted in good faith and at arms' length. The Stalking Horse Bid is memorialized in a purchase and sale agreement (the "**Stalking Horse PSA**"), which was actively negotiated and finalized between the Chapter 15 Debtor, Scot Seagrave, and the Stalking Horse Bidder, with the assistance of each of their respective advisors. I have reviewed the Motion and confirm that the summary of the Stalking Horse Bid contained therein is true and accurate in all respects.

12. The Stalking Horse PSA represents a bid for 100% of the equity interests of CRUSAFin at a total value of $62,000,000.00 (the "**Initial Purchase Price**"). Mr. Seagrave, however, has agreed with the Stalking Horse Bidder to roll over half of his membership interests into membership interests in the post-closing CRUSAFin. This is reflected in the Stalking Horse PSA, which provides for a base purchase price of $60,536,800.00 (the "**Base Purchase Price**") for the purchase of a total of 97.64% of the outstanding equity interests of CRUSAFin, which is comprised of all of the CRUSAFin Interests (95.28%) plus half of Mr. Seagrave's equity interests (2.36%) (collectively, the "**Acquired Interests**"). The Base Purchase Price is subject to a book value adjustment at Closing. Without accounting for such book value adjustments, the base purchase price allocated for the CRUSAFin Interests equals $59,073,600.00. The Stalking Horse

5

PSA provides for the payment of the final purchase price in cash, providing the Chapter 15 Debtor certainty of value and making it an attractive offer as compared to a piecemeal sale of the CRUSAFin equity interests. Though the actual purchase price at closing will vary, when compared to other bids received, the Stalking Horse Bid is fair and constitutes the highest and best offer received to date after over a year of marketing the CRUSAFin Interests.

13. The Stalking Horse PSA is subject to a competitive sale and auction process as further described in the Bidding Procedures and the Court's approval of a sale to the Successful Bid after the process has been completed. The Mexican Liquidator and I, with the aid of Riveron and other advisors, will continue to market the CRUSAFin Interests to potential bidders by (a) engaging parties that may have an interest in bidding for the CRUSAFin Interests, (b) continuing to assist with diligence and delivering any updated materials to interested parties, (c) providing any additional interested parties with access to the data room of confidential information on the CRUSAFin Interests, (d) coordinating calls between interested parties and CRUSAFin management, if necessary and appropriate, and (e) continuing to work with the other Bidders to improve the terms of their bids.

**III.    The Stalking Horse Bid Protections**

14. The Stalking Horse Bid contains standard bid protections that are customary for similar section 363 sale transactions. These protections are the product of extensive arm's-length, good faith negotiations between the Chapter 15 Debtor and the Stalking Horse Bidder. Specifically, the Stalking Horse Bid provides for the payment, in certain circumstances outlined in the Stalking Horse PSA, of a Break-Up Fee equal to $1,860,000.00 and an Expense Reimbursement (each as defined in the Motion) capped at $750,000.00 (the Break-Up Fee and Expense Reimbursement, collectively, referred to as the "**Bid Protections**"). The Break-Up Fee,

therefore, represents 3% of the Initial Purchase Price and the Break-Up Fee and Expense Reimbursement, together, represent 4.2% of the Initial Purchase Price. I believe the Bid Protections are well-within the range of, and consistent with, the bid protections approved in recent bankruptcy sale transactions.

15. The Bid Protections were a material inducement for the Stalking Horse Bidder's engagement and extensive investment in the transaction, including performing substantial diligence and negotiation of the Stalking Horse PSA. Without assurance of payment of the Bid Protections under the conditions set forth in the Stalking Horse PSA, the Stalking Horse Bidder would not be willing to enter into the Stalking Horse PSA, which guarantees the Sale of the CRUSAFin Interests at a fair price. Approval of the Stalking Horse PSA and Bid Protections will also encourage other parties to submit competing, higher bids. Additionally, if the Chapter 15 Debtor consummates an alternative sale, transfer, or other disposition of a material portion of the Acquired Interests, the Bid Protections will be paid from the proceeds of such alternative sale. As a result, I believe approval of the Stalking Horse Bid and award of the Bid Protections is critical to ensuring a competitive final phase of our sale process.

16. Additionally, I believe it is critical that the Stalking Horse PSA be approved as soon as possible so that all potential bidders have access to the Stalking Horse PSA and knowledge of the Bid Protections and have ample time to formulate a higher and better bid prior to the extended Bid Deadline of February 3, 2023. Approval of the Bid Protections within 15 days of the filing of the Motion was required by the Stalking Horse Bidder and is reflected in the Stalking Horse PSA. Therefore, the relief sought in the Motion to Shorten is not only necessary to ensuring the Stalking Horse Bidder does not walk away from the deal, but to promoting competitive bidding.

17. In sum, the Mexican Liquidator and I believe that granting the Bid Protections to the Stalking Horse Bidder is appropriate given the benefits conferred upon the Chapter 15 Debtor's creditors, and reasonable in light of the circumstances.

RLF1 28498919v.1

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 18, 2023
New York, NY

                                                 */s/ Robert Wagstaff*
                                                 Robert Wagstaff
                                                 Managing Director
                                                 Riveron Consulting, LLC